IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

_____
                                  )
UNITED STATES OF AMERICA,         )
                                  )
          Plaintiff,              )
                                  )
vs.                               )    Case No.:  3:17-CR-82
                                  )
RANDALL BEANE,                    )
                                  )
          Defendant.              )
_____)

**PROCEEDINGS**
**BEFORE THE HONORABLE C. CLIFFORD SHIRLEY, JR.**

**August 29, 2017**
**2:36 p.m. to 3:25 p.m.**

**APPEARANCES:**

**FOR THE PLAINTIFF:**         CYNTHIA F. DAVIDSON, ESQUIRE
                               ANNE-MARIE SVOLTO, ESQUIRE
                               Assistant United States Attorney
                               United States Department of Justice
                               Office of the United States Attorney
                               800 Market Street
                               Suite 211
                               Knoxville, Tennessee 37902


**FOR THE DEFENDANT:**         BOBBY E. HUTSON, JR., ESQUIRE
                               Federal Defender Services of
                               Eastern Tennessee, Inc.
                               800 South Gay Street
                               Suite 2400
                               Knoxville, Tennessee 37929-9714




**REPORTED BY:**




Rebekah M. Lockwood, RPR, CRR
Official Court Reporter
(865) 210-6698
800 Market Street, Suite 130

1       THE COURTROOM DEPUTY:  All rise.  This Court is again

2   in session with the Honorable C. Clifford Shirley, Jr., United

3   States Magistrate Judge, presiding.  Please come to order and be

4   seated.

5       We are here for a scheduled motion hearing in case

6   3:17-CR-82, United States of America versus Randall Beane.

7       Here on behalf of the government are Cynthia Davidson,

8   Anne-Marie Svolto.  Is the government ready to proceed?

9       MS. DAVIDSON:  Yes, Your Honor.

10      THE COURTROOM DEPUTY:  And here on behalf of the

11  defendant is Bobby Hutson, Jr.  Is the defendant ready to

12  proceed?

13      MR. HUTSON:  Present and ready, Your Honor.

14      THE COURT:  All right.  Mr. Hutson, We're here on your

15  motion to, quote, review the attorney/client relationship.  And

16  cutting to the chase, it looks like Mr. Beane wants to represent

17  himself as opposed to having you represent him.  So tell me

18  about it.

19      MR. HUTSON:  Your Honor, may I approach?

20      THE COURT:  Please.

21      MR. HUTSON:  Thank you.

22      Your Honor, before I begin, I will note for the Court

23  that under Section 5 of my motion, I do indicate that giving

24  additional information could interfere with the attorney/client

25  confidentiality requirement that I have, especially in open

UNITED STATES DISTRICT COURT

1    court in a situation that we have today.

2         But what I will say is that Mr. Beane has requested

3    that I file the motion.  Mr. Beane asked the Court to remove

4    counsel from his case.  He asserts that he does not have

5    confidence in the legal advice provided by myself, and that he

6    does not feel that I am effectively representing him in this

7    proceeding.

8         He has indicated to me that he wishes to represent

9    himself, although there may be slight differences in how he

10   describes that, given our conversation today.  He has a

11   different take on representing himself and what that might mean.

12   But in terms of the language that I'm comfortable filing with

13   the Court, he does indicate that he wants to represent himself.

14        There is additional information that he may like to

15   provide to the Court.  I feel that it may be best coming from

16   Mr. Beane, given the environment.  If Mr. Beane does wish to

17   talk about the attorney/client relationship today, matters that

18   are unrelated to the case in chief, I would ask that counsel for

19   the government be excluded from the courtroom so that he does

20   not further damage any of his interest in the case.

21        THE COURT:  All right.  Thank you.

22        Ms. Davidson, any comments?

23        MS. DAVIDSON:  I would just like to point out that if

24   the defendant represents himself, that any non-lawyer assistance

25   or paralegal filings are -- that would not be permitted.  He

UNITED STATES DISTRICT COURT

1    will be representing himself and Ms. Heather Ann Tucci-Jarraf

2    will not be available to represent him.  We received information

3    that that is in fact what he wants.  And Ms. Tucci-Jarraf is not

4    an attorney, and she's representing herself in this matter.

5          Thank you, Your Honor.

6          THE COURT:  All right.  Ordinarily, if there's a

7    question of conflict of interest or the dismissal of a lawyer

8    for any reason, the Court has to hold a hearing sometimes where

9    it's just me and the defendant, so that no confidential

10   information is heard by anybody else.

11         But in this case, it sounds like, Mr. Hutson, that

12   Mr. Beane is simply wanting to exercise his right to

13   self-representation.  And while the Sixth Amendment clearly

14   provides that a criminal defendant has a right to have an

15   attorney and assistance of counsel to represent him in the case,

16   since the Faretta opinion, there's a corollary rule that also

17   allows him to proceed without counsel, to represent himself.

18         And while that's not an absolute right and that the

19   Court has to first determine that that election is being made

20   voluntarily and intelligently, he still has that right.  So I

21   don't see the need to hold a hearing.

22         I'm going to have to ask you some questions, Mr. Beane.

23   Before I do that, I want to remind you what you were told

24   before, among the rights you have is the right to remain silent

25   and not say anything about the charges, about the allegations

UNITED STATES DISTRICT COURT

1    against you or about any matter that might incriminate you.

2            Do you understand that right?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Okay.  And do you remember I told you that

5    before?

6            THE DEFENDANT:  Yes.

7            THE COURT:  So if you can stick to just answering my

8    questions without going off on some diatribe that you want to

9    tell me about, you'll probably be fine.

10           If you do start talking about things, the problem is,

11   you will either think they are beneficial to you or innocuous

12   and the U.S. Attorney's Office may think they are quite

13   incriminating and may use them against you.  And you wouldn't

14   want to do that if you didn't have to.

15           Do you understand that?

16           THE DEFENDANT:  Yes.

17           THE COURT:  All right then.  If you'll --

18           MR. HUTSON:  Your Honor, may I briefly --

19           THE COURT:  Yes.

20           MR. HUTSON:  -- note something for the record?  We

21   agree with the Court that assessing the Faretta issue can be

22   done in an open environment.  I would just ask that the Court

23   reiterate to Mr. Beane that if he should go into issues related

24   to representation, allegations of any kind, that we would ask

25   the Court to handle those matters ex parte as a separate issue,

UNITED STATES DISTRICT COURT

1    because they truly are separate, and the communication issue,

2    the issues related to our interviews, and case strategy, they

3    are an important part of the second issue.

4         So if Mr. Beane, again, could just stick to the

5    original issue of representation under Faretta, that may

6    alleviate any cause for concern to the second issue.

7         THE COURT:  Yeah.  And I think -- and to be sure

8    everybody understands the position I'm taking is that because he

9    wants to represent himself, whether he loves you or he can't

10   stand you or he's anywhere in between doesn't really matter.  So

11   there's no need for him to critique you.  There's no need for me

12   to hear any problems he's had.  If he's had no problems or he's

13   had myriad problems, that doesn't factor in into a request for

14   self-representation.

15        Those kind of questions, which I usually am faced with,

16   involve when somebody wants to replace an attorney.  They say,

17   "I want an attorney, I just don't want this one."

18        That's not what I'm hearing here.  So I will avoid

19   those questions, and hopefully he will avoid going into those

20   areas, because they simply don't matter.

21        The question is whether you want to represent yourself,

22   whether you want to give up your right to have a lawyer, and

23   whether you're making that decision voluntarily and

24   intelligently.  Do you understand that?

25        THE DEFENDANT:  Yes.

                    UNITED STATES DISTRICT COURT

 1          THE COURT:  All right.  Then let's begin, and we'll

 2     start with having you raise your right hand and be sworn in.  So

 3     like we did before, if you'll have him just raise his right

 4     hand.

 5          THE COURTROOM DEPUTY:  Do you solemnly swear or affirm

 6     to tell the truth, the whole truth, and nothing but the truth,

 7     so help you God?  If so, please say, "I do."

 8          THE DEFENDANT:  No.  Standing due identification

 9     correction, I am source of all that is, original, nunc pro tunc,

10     praeterea, pre terea, and I do swear to speak only true,

11     accurate, and complete.

12          THE COURT:  Do you know what that nonsense means?

13          THE DEFENDANT:  I do.

14          THE COURT:  Tell me.  Read each line and tell me

15     exactly what it means.

16          THE DEFENDANT:  Standing due identification correction,

17     I am here in my original capacity.  I am source of all that is

18     original.

19          THE COURT:  You're the source of all that is?

20          THE DEFENDANT:  I am source of all that is.

21          THE COURT:  So you are God?  I thought God was the

22     source of all that is.  Are you telling me you are God?  Is that

23     a yes or a no?

24          If you don't take an oath, I can't let you represent

25     yourself.

                    UNITED STATES DISTRICT COURT

1    THE DEFENDANT:  I am source of all that is.

2    THE COURT:  What does that mean?

3    THE DEFENDANT:  I am original.

4    THE COURT:  We're all original.  It's like saying

5    you're a human being.  What's that mean?  Legally, what's that

6    mean?  Do you not know?  Do you know what it means legally?

7    THE DEFENDANT:  To be a human being?

8    THE COURT:  No.  To be whatever those words were you

9    used, source original.

10   THE DEFENDANT:  Yes, I understand that.

11   THE COURT:  What's that mean?

12   THE DEFENDANT:  That I am source of all that is.

13   THE COURT:  I don't know what that means.

14   THE DEFENDANT:  I am source of all that is.

15   THE COURT:  I don't know what that means.  There's a

16   Kleenex box by you that is a Kleenex box.  Are you the source of

17   that?

18   THE DEFENDANT:  I am source of all that is.

19   THE COURT:  Are you the source of the sun and the moon?

20   THE DEFENDANT:  I am source of all that is original.

21   THE COURT:  All right.  Well, my guess is we'll have to

22   have another hearing on this.  I can't swear him in.  We can't

23   have a hearing.

24   He won't swear in, so when are you available next?

25   MR. HUTSON:  Your Honor, one other option might be if

UNITED STATES DISTRICT COURT

```
 1    the Court could give me a few moments -- a few moments to

 2    discuss with him the implications.

 3              THE COURT:  I doubt that will have much effect on him.

 4              MR. HUTSON:  It may not.

 5              THE COURT:  He's got a litany he needs to say.  I'm

 6    used to this.  I've had dozens of this.

 7              MR. HUTSON:  He also --

 8              THE COURT:  And he can keep coming back every few days,

 9    say it.  We'll keep doing it.  Doesn't bother me.  I'm here all

10    day every day.

11              MR. HUTSON:  I understand, Your Honor.  He is also

12    potentially going to want to request some type of detention

13    hearing or update.

14              THE COURT:  We can't get started, we can't get to that.

15              MR. HUTSON:  Correct, your Honor.  And perhaps that may

16    alleviate some of these issues.  I would be happy to take a

17    moment to talk to him, or we can reschedule for another day.

18              THE COURT:  Well, I'll give you a couple minutes.  I

19    just don't like your chances.

20              MR. HUTSON:  Duly noted, Your Honor.

21              THE COURT:  Okay.  How much time you think you need?

22    Want to get -- want to have five minutes?

23              MR. HUTSON:  Five minutes is fine, Your Honor.

24              THE COURT:  All right.  Why don't you make sure that

25    the sound is off so nobody's picking up anything, and I'll step
```

UNITED STATES DISTRICT COURT

1   out and give you a couple minutes --

2           MR. HUTSON:  Thank you, Your Honor.

3           THE COURT:  -- so I don't overhear anything.

4           THE COURTROOM DEPUTY:  All rise.  This honorable court

5   stands in recess.

6       (Recess from 2:48 p.m. to 2:51 p.m.)

7           THE COURTROOM DEPUTY:  All rise.  This Court is again

8   in session with the Honorable C. Clifford, Jr., United States

9   Magistrate Judge, presiding.  Please come to order and be

10  seated.

11          THE COURT:  All right.  Mr. Hutson, did you have any

12  success?

13          MR. HUTSON:  I believe so, Your Honor.

14          THE COURT:  All right.  We'll try again.  Mr. Beane, if

15  you'll stand up and raise your right hand.

16          THE COURTROOM DEPUTY:  Do you solemnly swear or affirm

17  to tell the truth, the whole truth, and nothing but the truth,

18  so help you God?  If so, please say, "I do."

19          THE DEFENDANT:  I do.

20          THE COURT:  All right.  Have a seat, please.

21          All right.  Again, Mr. Beane, I remind you that it

22  would be best for you not to speak or say anything about the

23  charges in this case or about anything other than the questions

24  I'm going to ask you, which are simply about your

25  self-representation.  Okay?

                    UNITED STATES DISTRICT COURT

1          THE DEFENDANT:  Okay.

2          THE COURT:  All right.  Now, as I mentioned to you

3     earlier, the Sixth Amendment and a case called Faretta vs.

4     California provides that you have the right to have legal

5     counsel, but that if you prefer to represent yourself, that you

6     also have that right.

7          Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Now, Mr. Hutson has indicated to me that

10    that's what you would like to do, that you would like to waive

11    the right to counsel, and to represent yourself.

12         Is that correct?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Would you like me, then, to terminate

15    Mr. Hutson's services and have you represent yourself?

16         THE DEFENDANT:  Yes.

17         THE COURT:  All right.  Now, I have to decide if that

18    decision that you're making is being made intelligently and

19    voluntarily, so I have to ask you number of questions.  Okay?

20         THE DEFENDANT:  Okay.

21         THE COURT:  And I want you to consider your answers to

22    these questions, and at the end of which, I will also give you

23    my thoughts on the matter.  Okay?

24         THE DEFENDANT:  Okay.

25         THE COURT:  Now, have you ever studied law, Mr. Beane?

                     UNITED STATES DISTRICT COURT

1          THE DEFENDANT:  As in school?

2          THE COURT:  Sure.

3          THE DEFENDANT:  No.

4          THE COURT:  Have you ever represented anyone in a

5 criminal case?

6          THE DEFENDANT:  No.

7          THE COURT:  Have you ever represented yourself in a

8 criminal case?

9          THE DEFENDANT:  No.

10          THE COURT:  Have you ever represented yourself in any

11 case?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Where and when?

14          THE DEFENDANT:  South Carolina.

15          THE COURT:  And was that a civil case?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Okay.  Do you realize the difference in a

18 civil case and a criminal case?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you know that a civil case is usually

21 one in which somebody sues somebody else for money, so either

22 you sued somebody or somebody sued you and it was about money,

23 whereas in a criminal case, the government is essentially

24 charging you with having committed a criminal offense?

25          Do you understand the differences?

1         THE DEFENDANT:  Yes.

2         THE COURT:  All right.  Do you realize that in this

3 case, you are charged with the crimes of -- I don't have the

4 indictment in front of me.  Remind me, is it wire fraud and bank

5 fraud and money laundering?

6         MS. DAVIDSON:  Yes, Your Honor.  It's wire fraud and

7 money laundering.

8         THE COURT:  Okay.  Wire fraud and money laundering.

9 And what are the potential range of penalties for that -- those

10 two charges?

11         MS. DAVIDSON:  Yes, Your Honor.  Because this wire

12 fraud involves a bank scheme, it's not more than 30 years, a

13 million-dollar fine, three years supervised release.

14         With regard to the conspiracy to commit money

15 laundering, it's not more than 20 years, a $500,000 fine, or

16 double the actual loss, which in this case is over a million

17 dollars, and three years supervised release.

18         THE COURT:  Do you realize that if you are found guilty

19 of either of those crimes or both of those crimes, that you

20 could be sentenced up to those amounts?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Do you realize that if you are found guilty

23 of more than one count, that is if you are found guilty of two

24 or more crimes, that those sentences could be ordered to be

25 served consecutively?  That means on top of each other.

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you realize that if you represent

3  yourself, that neither I nor any other judge can give you any

4  help, that you're on your own, and that we can't advise you what

5  to do, how to do it, or how to try your case?

6          THE DEFENDANT:  Yes.

7          THE COURT:  So are you familiar with the Federal Rules

8  of Evidence?

9          THE DEFENDANT:  No.

10         THE COURT:  Do you understand that when the court

11 determines what evidence can come into the record, what evidence

12 can be introduced at trial or any other hearing, that they have

13 to comply with the Federal Rules of Evidence?

14         THE DEFENDANT:  I would understand that -- that it

15 would, yes.

16         THE COURT:  All right.  What I'm saying is, you

17 understand that the Federal Rules of Evidence are going to

18 determine what comes into evidence and what doesn't?

19         THE DEFENDANT:  Okay.

20         THE COURT:  So it would be important to know those,

21 because it might be that you couldn't get a piece of evidence in

22 just because you didn't know how to do it.

23         THE DEFENDANT:  Okay.

24         THE COURT:  You didn't know the rule.

25         Do you understand that?

UNITED STATES DISTRICT COURT

1           THE DEFENDANT:  Yes.

2           THE COURT:  Are you familiar with the Federal Rules of

3  Criminal Procedure?

4           THE DEFENDANT:  No.

5           THE COURT:  Do you realize that those rules govern the

6  way a criminal action is tried in federal court?

7           Do you understand that?

8           THE DEFENDANT:  Yes.

9           THE COURT:  So how we actually proceed and the

10  procedures are contained in those rules, and you could run afoul

11  of those if you don't understand those rules.

12           Do you understand that?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Do you realize that if you decide to

15  testify, that is if you choose to take the witness stand and

16  testify, that you would not only be giving up your right to

17  self-incrimination and be subject to being cross-examined, but

18  that you would also have to present that testimony by basically

19  asking yourself questions?

20           THE DEFENDANT:  Yes.

21           THE COURT:  As opposed to just getting up and giving

22  some long narrative.

23           THE DEFENDANT:  Yes.

24           THE COURT:  All I can say, Mr. Beane, is I would advise

25  you that, in my opinion, you would be much better served to be

UNITED STATES DISTRICT COURT

represented by a trained attorney, one who is very familiar with the Federal Rules of Evidence, one that is very familiar with the Federal Criminal Rules of Procedure and one who understands how to try a case in this court, and I believe you would be much better off to be defended by such a person rather than by yourself.

I also think it is very unwise of you to try to represent yourself when you're not familiar with the law, when you don't know the rules of evidence and you don't know the rules of criminal procedure.

I would strongly urge you not to try to represent yourself, particularly in light of the potential severe penalty that the assistant United States attorney has told you could occur if you were found guilty of these charges.

Now, in light of the penalty that you might suffer, if you're found guilty and in light of all the difficulties I've just mentioned in representing yourself, is it still your desire to represent yourself and give up your right to be represented by a lawyer?

THE DEFENDANT: Yes.

THE COURT: Is that decision entirely voluntary on your part?

THE DEFENDANT: Yes, it is.

THE COURT: Is anybody else telling you to do that?

THE DEFENDANT: No.

UNITED STATES DISTRICT COURT

1          THE COURT:  Seems to me that Mr. Beane has knowingly

2     and voluntarily waived his right to counsel, and I'm inclined to

3     allow him to -- permit him to represent himself.

4          Ms. Davidson?

5          MS. DAVIDSON:  Your Honor, I would have to agree with

6     you.

7          THE COURT:  Okay.  Mr. Hutson?

8          MR. HUTSON:  We defer to the Court on that ruling, but

9     it does appear that he understands those issues, Your Honor.

10    Thank you.

11         THE COURT:  Before I make that actual ruling, I do want

12    to cover one thing that Mr. Hutson said earlier, that you might

13    have some kind of a different idea of what representing yourself

14    means.

15         What do you think representing yourself means?

16         THE DEFENDANT:  What do I think it means?

17         THE COURT:  Yes.

18         THE DEFENDANT:  It means representing myself.  I mean,

19    what else would it mean?

20         THE COURT:  Well, I don't know.  Mr. Hutson seemed to

21    think that you might have a different idea of what that means

22    from what he told you it meant, which what I would have expected

23    him to say was what you just said.

24         Ms. Davidson seemed to think that you might be of the

25    notion that your codefendant in this case, Ms. Tucci-Jarraf,

1  might be able to represent you, and I can assure you she cannot.

2        THE DEFENDANT:  Right.

3        THE COURT:  Do you want to discuss with him whatever

4  issue he had and see if he wants to raise that, Mr. Hutson?

5        MR. HUTSON:  Your Honor, I'm happy to take a moment to

6  speak with him about that issue.

7        THE COURT:  Why don't you do that.  I'm going to sit

8  right here for this one.

9        MR. HUTSON:  Thank you.  I would note that some of

10  these issues do relate to confidentiality issues, and so

11  therefore I'm not sure how much I will be able to relate to the

12  Court, but I will certainly try to clear up --

13        THE COURT:  I'm not asking you to relate.  I just want

14  to know -- I want to be sure he understands that he's

15  representing himself and what that means.

16        MR. HUTSON:  Yes, Your Honor.

17        THE COURT:  Nothing else.

18     (Discussion off the record.)

19        MR. HUTSON:  Your Honor, we're ready to proceed.

20        THE COURT:  All right.  I guess the way I would phrase

21  that, Mr. Beane, is, do you have any questions or concerns --

22        THE DEFENDANT:  I do have some questions.

23        THE COURT:  Okay.

24        THE DEFENDANT:  I need -- I would like to represent

25  myself, but be able to have someone who can file, since I'm not

UNITED STATES DISTRICT COURT

1    in the capacity to do that, of course.

2          THE COURT:  Okay.  We have a position that's either

3    called standby counsel or elbow counsel that we can provide.

4    That person can do those things for you, and that person can

5    explain to you and hopefully enforce the basic rules of

6    courtroom protocol, procedure, and decorum.

7          That person can file things for you.  You have to

8    prepare them yourself.  That person can help you overcome

9    certain procedural or evidentiary obstacles, like advising you

10   how to introduce the evidence.  But you have to do it yourself.

11   And can provide you basically technical assistance in the --

12   presenting your defense and preserving the record.

13         Do you understand that?

14         THE DEFENDANT:  I do.  But I need someone who can help

15   me prepare, since I'm not in a capacity to do that as well.

16         THE COURT:  What do you mean by help you prepare?

17         THE DEFENDANT:  The documents.  I can't -- there's no

18   way I can prepare documents from jail.

19         THE COURT:  You can't handwrite them?

20         THE DEFENDANT:  We're not allowed to have paper or

21   anything in jail.  So how can I write anything, if I'm not

22   allowed paper?

23         THE COURT:  Well, that would kind of surprise me, as

24   many pro se filings as I get every day from the jail.  You're

25   the only person --

                    UNITED STATES DISTRICT COURT

1        THE DEFENDANT:  I've been trying to order paper for the

2   past four weeks, and we're not allowed to order paper.

3        THE COURT:  What do you know about that, Mr. Sanchez?

4   You ever heard of them telling them, "You can't have paper"?

5        MR. SANCHEZ:  No, Your Honor.  That's the first time

6   I've heard of that.

7        THE COURT:  Yeah.  Me too.  I get filings by people

8   over there all day every day, so prisoners are filing stuff from

9   there.  I'm not saying I don't believe you --

10       THE DEFENDANT:  Okay.

11       THE COURT:  -- and you're not telling me the truth.

12  What I'm telling you is my experience.  There's a whole lot of

13  people over there with paper and pencils, because I'm getting

14  the results of their efforts.

15       So how would you propose to go about that?

16       THE DEFENDANT:  Someone who can help me and prepare

17  documents.

18       THE COURT:  Well, how are they going to do that?

19       THE DEFENDANT:  How would you propose they do that?

20       THE COURT:  I was asking you.  I mean, you're thinking

21  they're going to sit in the jail with you?

22       THE DEFENDANT:  I understand there's a capacity of

23  someone who can help me in submitting and preparing documents,

24  since --

25       THE COURT:  Well, they are.  You hand them the document

UNITED STATES DISTRICT COURT

```
1   and they will help you file it.

2           THE DEFENDANT:  Okay.  But can they type it?

3           THE COURT:  I guess that's possible.

4           THE DEFENDANT:  Okay.

5           THE COURT:  That's, you know --

6           THE DEFENDANT:  I can't type in jail, so --

7           THE COURT:  Well, I'm not saying you type.  I'm just

8   saying you can write.  Can you write?

9           THE DEFENDANT:  I can write.  But I would prepare -- I

10  would like the documents to be typed.

11          THE COURT:  Well, we'd all like a lot of things.

12          THE DEFENDANT:  Right.

13          THE COURT:  That's part of what you may give up by

14  representing yourself --

15          THE DEFENDANT:  Okay.

16          THE COURT:  -- is the ability to have that.

17          THE DEFENDANT:  Okay.

18          THE COURT:  Now, if it might help and Mr. Hutson has

19  that potential, I guess he can do it.

20          Would you want Mr. Hutson to be that elbow counsel or

21  that --

22          THE DEFENDANT:  No.

23          THE COURT:  -- standby counsel?

24          THE DEFENDANT:  No.

25          THE COURT:  All right.  You want somebody else?
```

UNITED STATES DISTRICT COURT

1          THE DEFENDANT:  Yes.

2          THE COURT:  Okay.  All right.  Is there any other

3   questions you have about representing yourself or standby

4   counsel?

5          THE DEFENDANT:  Not at this point, no.

6          THE COURT:  All right.  My point to you is, if you

7   represent yourself, just like you said, it means you represent

8   yourself.  Okay?

9          THE DEFENDANT:  Right.

10          THE COURT:  The lawyer doesn't represent you.  The

11   lawyer doesn't provide you with legal advice.  You represent

12   yourself.

13          THE DEFENDANT:  Right.

14          THE COURT:  And that's your choice.

15          THE DEFENDANT:  Yes.

16          THE COURT:  All right.  While I've noted to you that I

17   think that is a very poor decision, it's nonetheless a decision

18   that you're entitled to make.  While I think it's the wrong

19   decision, again, you have the right to make a wrong decision.

20          So I find that you have knowingly and voluntarily

21   waived your right to counsel and that you should be permitted to

22   represent yourself.  I don't have any other lawyer here today

23   present to appoint -- to represent you as standby counsel.

24   However, I will endeavor to locate one and we'll have them

25   contact you as soon as possible.

UNITED STATES DISTRICT COURT

1          THE DEFENDANT:  All right.

2          THE COURT:  All right?  All right.  Now, I think with

3     that, Mr. Hutson, you will be relieved of your duties.  And

4     going forward, you will have no further obligations as to

5     Mr. Beane.

6          Now, have you received any discovery from the

7     government?

8          MR. HUTSON:  I have, Your Honor.  I provided Mr. Beane

9     with one copy.  He also through written correspondence over the

10    past two weeks has asked me to provide a second copy to someone

11    who is here today on his behalf.  Usually if -- if elbow counsel

12    is taking on the case, I would like to give them the second

13    copy, but I will proceed however Mr. Beane would like me to

14    proceed today.

15         THE COURT:  He can give it to anybody he wants.  But

16    you understand that they don't represent you, Mr. Beane?

17         THE DEFENDANT:  Yes, I understand that.

18         THE COURT:  And anybody and their brother, I guess, can

19    give you advice.  But the old adage "you get what you pay for"

20    probably stands no more truer than in this case.

21         Do you understand that?

22         THE DEFENDANT:  Yes, I do.

23         THE COURT:  All right.  You do with it what you want.

24    I would expect either you or Ms. Davidson to provide standby

25    counsel with a copy as well.  I don't know how voluminous it is.

1    But if you've got -- is that your only copies?

2         MR. HUTSON:  Your Honor, I have three total copies.  I

3    have actually four.  One for Mr. Beane that was given to him

4    initially, a digital copy, a copy for my file, and a fourth copy

5    for the individual that Mr. Beane would like this to go to

6    today.

7         THE COURT:  All right.  Do you have any objection to

8    him giving a copy to an individual?

9         MS. DAVIDSON:  I mean, Mr. Hutson can do what he wants

10   to, but I do object to a non-attorney representing Mr. Beane.  I

11   mean --

12        THE COURT:  No.

13        MS. DAVIDSON:  -- the non-attorney has made attempts at

14   filing things on his behalf, which the Court struck from the

15   record before I had an opportunity to make a motion to strike,

16   but --

17        THE COURT:  No non-attorney is going to represent

18   Mr. Beane.

19        MS. DAVIDSON:  Okay.  Thank you, Your Honor.

20        THE COURT:  Can't make that any clearer.  Nobody can

21   file -- somebody tried to file an appearance for you.  We

22   don't -- there's no such thing as that.

23        And that's my concern for you, is a lot of things I

24   think you've been told or things that people have said, they

25   don't exist.  So there's no such thing as one person appearing

                    UNITED STATES DISTRICT COURT

1  for another person.  There's no such thing as somebody filing

2  something on your behalf.  Particularly in a criminal case, the

3  only person who can do that is you or your lawyer.

4          And you can see why.  If somebody didn't like you, they

5  could start filing things on your behalf and really mess up your

6  case.  So we wouldn't know, John Doe filed something, I don't

7  know what their relationship is with you.  So we just don't let

8  anybody do that.  That's the law.

9          Unfortunately, a lot of people come in here, have a

10  pretty crazy view of what the law is, because other people have

11  told them things that simply aren't true.  And I don't want you

12  to get caught that way.  And that's why I'm wanting to appoint

13  you elbow counsel or a lawyer who can tell you fact from

14  fiction.

15          THE DEFENDANT:  With elbow counsel, will it be possible

16  for them to get to me in the jail and have documents signed as

17  appropriately needed?

18          THE COURT:  Yes.

19          THE DEFENDANT:  Okay.  That's not been the case this

20  far.

21          THE COURT:  I don't think anybody prohibited

22  Mr. Hutson, unless he tells me otherwise.

23          MR. HUTSON:  That is correct, Your Honor.

24          THE COURT:  Okay.  Now, we've spent enough time with

25  the jailers and things.  Access is available.  And I will tell

UNITED STATES DISTRICT COURT

1    you that in the past, other people have sat there and told me

2    the same things, and I have called in the particular jailers and

3    the sheriff and had everybody testify, and find out that the

4    person sitting there wasn't telling me the truth.  And that

5    would not bode well for you if that were the case.

6              So all I'm saying is, before you make statements and

7    accusations, be careful, because I take that stuff very serious.

8    Because I've got hundreds of defendants who have to have access

9    to their lawyer, and they know that.  And if I were to find out

10   that access was not being provided, they would know that would

11   be a serious problem.

12             So when you make those accusations, they better be

13   true.  And my guess is they're not.  I'm not going to take it up

14   at this point.  What I'm telling you is that standby counsel

15   should have that opportunity.  They always have.  And my

16   position, they always will.  Okay?  So they'll be able to see

17   you --

18             THE DEFENDANT:  Okay.

19             THE COURT:  -- and get that information.  Now, having

20   said that, there's always exceptions.

21             Go ahead.

22             MS. DAVIDSON:  Your Honor, I just wanted to point out

23   one thing.  When I prepared the discovery with it going to

24   Mr. Hutson and to the defendant, I may or may not have redacted

25   all personal information, like Social Security numbers.  I don't

UNITED STATES DISTRICT COURT

1  know that there's any privileged or Social Security number

2  information on there, but there is a lot of bank records and

3  such.

4         And in this case, the codefendant has been publishing

5  everything that has been provided to her.  And so we believe

6  that it's possible that all of this will immediately be

7  published once it's turned over to whoever it is.  And I just

8  wanted to point that out to the Court.

9         We provided Jencks material to Ms. Tucci-Jarraf for her

10  identity hearing, and she published the grand jury transcript on

11  the Internet.  And I'm just hesitant about that information

12  being provided to a non-attorney at this point.

13         I would like the opportunity perhaps to look over it

14  again to make sure that there's no Social Security information

15  or the like that goes -- I mean, the defendant already has it,

16  but if Mr. Hutson is providing it to outside parties, I'm a

17  little uncomfortable.

18         THE COURT:  Well, I mean, I can't think of a case where

19  a defendant didn't get to see his own discovery, and I can't

20  think of a case where I've ever limited what they did with it.

21  Now, if other people choose to start publishing other people's

22  Social Security numbers, bank numbers, you know, they run their

23  own danger in that.  And, you know, there's -- that's their own

24  problem.

25         So if he gives it to them, that may be his problem, and

1    if they do anything with it to publicize it, that could be their

2    problem, and we might be seeing them, but --

3          MS. DAVIDSON:  Yes, Your Honor.  I just wanted to bring

4    it to the attention of the Court.

5          THE COURT:  Okay.  Well, everybody has to do what they

6    want to do, and all I can do is advise them not to.  You know,

7    if there's other people's Social Security numbers on there, you

8    know, you have a right not to have yours publicized, and so does

9    everybody else.

10          And personal identifiers are usually redacted here so

11    people can't get ahold of that information and do nefarious

12    things with it.  We protect people's identity.  We protect

13    people's medical records.  We protect things like that.  And so,

14    you know, if you start doing other things or people do that on

15    your behalf, you'll be running afoul of the law.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Yeah.  And I hope those all within

19    listening distance of me understand that as well.

20          I don't expect that.  But if that happens, then we'll

21    have to handle it however we have to handle it.

22          So I will get you elbow counsel who hopefully will come

23    out to see you posthaste.  You currently have a trial date of

24    October the 3rd.  You've talked to me about wanting to make some

25    filings.  I assume you want to file some motions?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Your motion -- time for filing motions has

3     already run.

4          You've got a trial date in just over a month.  Would

5     you like to continue that trial date?

6          THE DEFENDANT:  Does that further extend the time to

7     file motions?

8          THE COURT:  Yes.

9          THE DEFENDANT:  Yes.

10          THE COURT:  Yes, it would.

11          THE DEFENDANT:  Yes.

12          THE COURT:  Now, in your codefendant's case, who I

13     believe you're familiar with, Ms. Tucci-Jarraf, I went ahead and

14     reset a new trial date for January 23rd of next year.  I set a

15     deadline for filing motions for September the 29th.  That will

16     give you just about exactly a month to get those filed.  The

17     government will have until October 13th.  They'll have a couple

18     weeks to file a response.  And then I've set a motion hearing to

19     hear any of those motions on October the 18th at 9:30.  And

20     that's also your what we call reciprocal discovery deadline.

21          The government is giving you discovery.  Under certain

22     situations, you have to give the government discovery.  You

23     probably have no idea what that means, but the rules provide it.

24     And hopefully your elbow counsel can explain it to you.

25          And then I set a plea deadline -- that means a deadline

UNITED STATES DISTRICT COURT

 1    for you to determine if you want to enter into a plea or not --

 2    of December 21st of this year.

 3                Are all those dates good with you?

 4                THE DEFENDANT:  Yes.

 5                THE COURT:  All right.  Then we will give him a new

 6    motion filing deadline, September 29th.  And we'll hear those

 7    motions on October the 18th at 9:30.  The trial will be moved

 8    till January 23rd.  I believe for the reasons I stated this

 9    morning, because I anticipate these motions to be dispositive in

10    nature, that the Court will need up to 30 days to make a ruling

11    on it.

12                If Mr. Beane doesn't like my ruling, he'll want to

13    appeal or object.  If the government doesn't like my ruling,

14    they'll want to appeal or object.  Whoever doesn't like what I

15    rule always objects.  And then the district judge will have up

16    to 30 days to rule on it.  And then everybody still needs time

17    to prepare for trial.

18                So I believe in my calculation that mid to late January

19    is the earliest we can set this under the Speedy Trial Act, and,

20    therefore, I find that all the time to be fully excludable for

21    Speedy Trial Act purposes.

22                Would you agree with that, Ms. Davidson?

23                MS. DAVIDSON:  Yes, Your Honor, I would.

24                THE COURT:  You may not be familiar with that,

25    Mr. Beane.  Speedy Trial Act in federal court means you have the

                    UNITED STATES DISTRICT COURT

1    right to have a speedy trial.  And if you ask for time to file

2    motions, that time is excluded.  The time the court has the case

3    under advisement, that time is excluded.  And so it looks like

4    that's the earliest I could set you a hearing.  And so I think

5    that's as speedy as we can do it.  We could set it off into the

6    spring, but I don't think that would be very speedy.

7           Do you have any objections to that?

8           THE DEFENDANT:  No.

9           THE COURT:  Okay.  We will put those dates down and

10   everything in order, and you will get a copy of that so you will

11   have those dates in writing, so that you can know what those

12   are.  Okay?

13          THE DEFENDANT:  Okay.

14          THE COURT:  I'm just telling them to you now and maybe,

15   Mr. Hutson, if you wanted to jot those down real quickly, he

16   could take them with him.  I don't think he has a writing

17   utensil there.  The trial date is January 23rd, 2018.  Deadline

18   to file motions, September 29th, this year.  Motion hearing is

19   October 18th at 9:30.  The plea deadline is December 21st.

20          MR. HUTSON:  Thank you, Your Honor.

21          THE COURT:  All right.  All right.  The only advice I

22   will give you -- and it's not in the nature of legal advice,

23   it's in the nature of judicial advice -- is that you have

24   already filed a large stack of documents, you know, your UCC

25   filings and purported trust documents and such things.  You

UNITED STATES DISTRICT COURT

1   don't need to refile those again.

2           THE DEFENDANT:  Okay.

3           THE COURT:  If you file a motion, you can just refer to

4   those.

5           THE DEFENDANT:  Okay.

6           THE COURT:  And, you know, if you refer to them however

7   you want, as specifically as you want, for whatever purpose you

8   want, just don't file them again, because I don't need that big

9   of a stack a second, third, and fourth time.  Your codefendant's

10  also filed a similar stack, and I told her the exact same thing.

11  Okay?  Just refer to them, but don't refile them.

12          THE DEFENDANT:  Okay.

13          THE COURT:  Okay.  All right.  Anything else we need to

14  take up or can take up today, Ms. Davidson, on behalf of the

15  government?

16          MS. DAVIDSON:  No, Your Honor.

17          THE COURT:  Okay.  Anything else, Mr. Beane, you want

18  to take up today?

19          THE DEFENDANT:  No, sir.

20          THE COURT:  All right.  Mr. Hutson is going to be

21  removed as your counsel.  You've already provided him with the

22  discovery.  It's up to you what you do with the rest of it, the

23  other copies.

24          I would request that when I do appoint standby counsel,

25  that I'll probably tell them to contact you, and I would expect

                    UNITED STATES DISTRICT COURT

1   you to provide them with a copy as well.  But other than that,

2   do as you see fit.  But you no longer have any responsibility in

3   this case.

4          And with that, Mr. Beane, you'll be remanded back to

5   the custody of the United States Marshals.  And at this point,

6   I'll plan to see you back on October 18th at 9:30 for the motion

7   hearing unless I order you back sooner.  Okay?

8          THE DEFENDANT:  Can I have Mr. Hutson hand the

9   discovery to Patricia Crawford in the courtroom?

10          THE COURT:  That's fine with me.

11          Court stands adjourned.

12          THE COURTROOM DEPUTY:  All rise.  This honorable court

13   stands adjourned.

14      (Proceedings adjourned at 3:25 p.m.)

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1                   **CERTIFICATE OF REPORTER**

2   STATE OF TENNESSEE

3   COUNTY OF KNOX

4         I, Rebekah M. Lockwood, RPR, CRR, do hereby certify

5   that I was authorized to and did stenographically report the

6   foregoing proceedings; and that the foregoing pages constitute a

7   true and complete computer-aided transcription of my original

8   stenographic notes to the best of my knowledge, skill, and

9   ability.

10      I further certify that I am not a relative, employee,

11   attorney, or counsel of any of the parties, nor am I a relative

12   or employee of any of the parties' attorney or counsel connected

13   with the action, nor am I financially interested in the action.

14      IN WITNESS WHEREOF, I have hereunto set my hand at

15   Knoxville, Knox County, Tennessee this 5th day of September,

16   2017.

17

18

19

20                                  _____
                                 REBEKAH M. LOCKWOOD, RPR, CRR

21                                  Official Court Reporter
                                 United States District Court

22                                  Eastern District of Tennessee

23

24

25