IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
          Plaintiff,                )
                                    )
vs.                                 )   Case No.:  3:17-CR-82
                                    )
RANDALL KEITH BEANE AND             )
HEATHER ANN TUCCI-JARRAF,           )
                                    )
          Defendants.               )
_____    )


**VOLUME VII of VIII**


**JURY TRIAL PROCEEDINGS**
**BEFORE THE HONORABLE THOMAS A. VARLAN**

**January 31, 2018**
**8:53 a.m. to 4:46 p.m.**

**APPEARANCES:**

**FOR THE PLAINTIFF:**          CYNTHIA F. DAVIDSON, ESQUIRE
                                ANNE-MARIE SVOLTO, ESQUIRE
                                Assistant United States Attorney
                                United States Department of Justice
                                Office of the United States Attorney
                                800 Market Street
                                Suite 211
                                Knoxville, Tennessee 37902


**FOR THE DEFENDANT:**          RANDALL KEITH BEANE, PRO SE
**RANDALL BEANE**               Blount County Detention Center
                                920 East Lamar Alexander Parkway
                                Maryville, Tennessee 37904


**FOR THE DEFENDANT:**          STEPHEN G. McGRATH, ESQUIRE
(As Elbow Counsel)              9111 Cross Park Drive
                                Suite D-200
                                Knoxville, Tennessee 37923


**REPORTED BY:**
Rebekah M. Lockwood, RPR, CRR
Official Court Reporter
(865) 210-6698
P.O. Box 1823

**APPEARANCES (CONTINUED):**

**FOR THE DEFENDANT:**     HEATHER ANN TUCCI-JARRAF, PRO SE
**HEATHER ANN**             105 Orchard Lane
**TUCCI-JARRAF**           Oak Ridge, Tennessee 37830

**FOR THE DEFENDANT:**     FRANCIS LLOYD, ESQUIRE
(As Elbow Counsel)      9111 Cross Park Drive
                           Suite D-200
                           Knoxville, Tennessee 37923

**REPORTED BY:**
Rebekah M. Lockwood, RPR, CRR
Official Court Reporter
(865) 210-6698
P.O. Box 1823

1                              **INDEX**

2   **GOVERNMENT'S REBUTTAL WITNESSES**                    **PAGE**

3   TERRY WILSHIRE
    Cross-Examination by Ms. Tucci-Jarraf                      7
4   Cross-Examination by Mr. Beane                           29
    Redirect Examination by Ms. Svolto                       32
5   Recross-Examination by Ms. Tucci-Jarraf                  40

6   RACHEL HALL
    Direct Examination by Ms. Svolto                         44
7   Cross-Examination by Mr. Beane                           48

8   Government Rests                                         51

9   **DEFENDANT TUCCI-JARRAF'S REBUTTAL WITNESSES**         **PAGE**

10  PARKER STILL
    Direct Examination by Ms. Tucci-Jarraf                   53
11  Cross-Examination by Ms. Davidson                        56
    Cross-Examination by Mr. Beane                           57
12  Redirect Examination by Ms. Tucci-Jarraf                 59
    Recross-Examination by Ms. Davidson                      60
13
    Defendant Heather Ann Tucci-Jarraf Rests                 61
14
    Defendant Randall Keith Beane Rests                      61
15

              **GOVERNMENT'S EXHIBITS (ADMITTED INTO EVIDENCE)**
16
    **NO.   DESCRIPTION**                                  **PAGE**
17
18  172  Check written to Rachel Hall by Randall Beane       46

              **DEFENDANTS' EXHIBITS (ADMITTED INTO EVIDENCE)**
19
    **NO.   DESCRIPTION**                                  **PAGE**
20
21  7    NCIC printout                                        9

22  8    NCIC printout "For ID"                              11

23  9    Memo to Knox County Sheriff's Office from FBI, Date  11
         7/12/2017

24  10   Knox County Sheriff's Office Arrest Report Person    11
         Information, Arresting Officer Leah Spoone
25
    11   Current Charges Report 7/13/2017                     11

                    Rebekah M. Lockwood, RPR, CRR
                       Official Court Reporter
                          (865) 210-6698
                          P.O. Box 1823
                            Knoxville, Tennessee

Case 3:17-cr-00082-TAV-DCP  Document 167  Filed 04/20/18  Page 3 of 97   PageID #: 17283

**DEFENDANTS' EXHIBITS (ADMITTED INTO EVIDENCE)**
**(CONTINUED)**

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| 12 | E-mail from Heather Ann Tucci-Jarraf to Randall Beane, 1 attachment | 11 |
| 13 | General Sessions Court, Knox County, Tennessee, Affidavit of Complaint | 11 |
| 14 | State of Tennessee, Knox County, Release | 11 |
| 15 | Current Charges Report 7/13/2017 (handwriting on the bottom) | 11 |
| 16 | Knox County Sheriff's Office Arrest Report Person Information, Arresting Officer Sara Andersen | 11 |
| 22 | Warrant No. 1202006 | 11 |
| 23 | Warrant No. 1202373 | 11 |
| 24 | NCIC printout | 11 |
| 25 | NCIC printout Hit Confirmation Response | 11 |
| 26 | Detainer | 11 |
| 27 | Letter from D.T. Harnett, TFO, FBI | 11 |
| 28 | Current Charges Report 7/27/2017 | 11 |
| 29 | Current Charges Report 7/19/2017 | 11 |
| 30 | Order to issue writ for Randall Keith Beane | 11 |
| 31 | Writ of Habeas Corpus Ad Prosequendum | 11 |
| 32 | Copy of Fugitive from Justice Warrant and AFfidavit of Complaint | 11 |
| 33 | Bench Warrant Failure to Appear | 42 |
| 34 | UCC documents | 84 |

Rebekah M. Lockwood, RPR, CRR
Official Court Reporter
(865) 210-6698
P.O. Box 1823

1          (Call to Order of the Court)

2               THE COURT:  All right.  Thank you.  I wanted to go

3     back to the charge conference, the jury charges.  I understand

4     you reviewed the updated jury charge draft, particularly as it

5     relates to the -- particularly as it relates to the charge

6     related to object offenses money laundering and the requirement

7     of unanimity as revised and discussed therein.

8               We also, consistent with our first earlier charge

9     conference, deleted some jury charges that were not applicable

10    or no longer applicable.  So I want to see at this point if

11    there are any further questions or objections as to the charge

12    as currently written or as to the special verdict form.

13              Ms. Davidson?

14              MS. DAVIDSON:  Your Honor, we have no objections or

15    comments.  It is good as written.

16              THE COURT:  Thank you.

17              Ms. Tucci-Jarraf?

18              Mr. Lloyd on her behalf?

19              MR. LLOYD:  The same, Your Honor.  No objections.

20              THE COURT:  Mr. Beane or Mr. McGrath?

21              MR. McGRATH:  Same, Your Honor.  I did speak to my

22    client.  He does want to write something about his defendant's

23    theory under 6.01, but --

24              THE REPORTER:  Mr. McGrath, can you speak up, please?

25              MR. McGRATH:  Oh, I'm sorry.  I'm not on the mic.

                      UNITED STATES DISTRICT COURT

1   Sorry.

2           No.  We don't have any more objections or comments.

3   The only addition I will have will be under the 6.01, where the

4   defendant wants to write something small under there, so ...

5           THE COURT:  Will he be ready to submit that by the

6   close of the evidence?

7           MR. McGRATH:  I'm going to help him with that, so,

8   yes.

9           THE COURT:  All right.  Ms. Tucci-Jarraf, do you plan

10  to submit a proposed theory or consideration?

11          MS. TUCCI-JARRAF:  I do, yes.

12          THE COURT:  All right.  Can you have that ready by

13  the close of the evidence?

14          MS. TUCCI-JARRAF:  Yes.

15          THE COURT:  All right.  Is there anything else we

16  need to take up?

17          If not, then the government has the officer here for

18  cross-examination, and then you have a couple more short

19  witnesses?

20          MS. DAVIDSON:  I think we only have one more after

21  this.

22          THE COURT:  All right.  Then do either of the

23  defendants at this point plan to present any rebuttal

24  testimony?

25          MS. TUCCI-JARRAF:  Yes, I do.

                    UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1        THE COURT:  Okay.  Mr. Beane?

2        MR. BEANE:  Not at this point, no.

3        THE COURT:  Okay.  Then we'll stand in recess.

4        When the jury is assembled and ready to come in,

5   we'll proceed forward.  Thank you.

6        THE COURTROOM DEPUTY:  All rise.

7        (Recess from 8:56 a.m. to 9:16 a.m.)

8        THE COURTROOM DEPUTY:  Please remain seated and come

9   to order.

10        THE COURT:  All right.  Thank you.  We'll begin.

11        Our jury is all here.  We'll bring them in.

12        (Jury in at 9:17 a.m.)

13        THE COURT:  Thank you.  Everyone may be seated.  Good

14   morning to our members of the jury.  I understand a few of you

15   had some traffic issues, so I'm glad everyone made it here safe

16   and sound and ready to continue with this witness.

17        Ms. Tucci-Jarraf, cross-examination?

18        MS. TUCCI-JARRAF:  Thank you.

**CROSS-EXAMINATION**

20   BY MS. TUCCI-JARRAF:

21   Q    Good morning.  Without prejudice, I have a few

22   questions for you.

23        Before we begin, I'm going to move to enter some of

24   defendants' exhibits in so that we can do the cross.  These are

25   documents that were provided to me by the DOJ, which this

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1    officer had brought to them yesterday, and we were provided a

2    copy.

3         MS. SVOLTO:  We don't object to the documents going

4    in.  But we would like to hear the foundation for them, please.

5         THE COURT:  Go ahead.

6         MS. TUCCI-JARRAF:  Of course.  That's what I'm going

7    to do.

8         Okay.  I'm going to put this up so we can show the

9    witness and the prosecutor.  Thank you.

10        THE COURTROOM DEPUTY:  Yes, ma'am, it is.

11   BY MS. TUCCI-JARRAF:

12        Q    Would you please take a look at this document.

13             Do you recognize this document?

14        A    Yes, I do.

15        Q    This was part of the documentation that you provided

16   to Department of Justice yesterday?

17        A    Uh-huh.

18        THE COURT:  What's the number on it?

19        MS. TUCCI-JARRAF:  Defendants' Exhibit No. 7.

20        THE COURT:  We'll admit Defendants' 7.

21        MS. SVOLTO:  Your Honor, at this time, I would like

22   to object to the relevance.  I'm not sure that I understand the

23   relevance of Ms. Tucci-Jarraf's questioning on Mr. Beane's

24   intake process and how it is relevant to anything involving her

25   case.

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1      THE COURT:  Let's -- I'll admit the document, but

2  I'll allow you to object to particular questions.

3      MS. TUCCI-JARRAF:  Thank you.

4      (Defendants' Exhibit 7 admitted into evidence.)

5  BY MS. TUCCI-JARRAF:

6      Q    Okay.  This is the next one.  And take a look at this

7  one, please.  If I go too fast, let me know.

8          Do you recognize that document?

9      A    I do.

10     Q    Is this part of the documents that you handed to DOJ

11 yesterday?

12     A    Yes.

13     Q    These are the documents that are in the file for

14 Randall Keith Beane in your custody?

15     A    Yes.

16     Q    And that is marked as Defendants' Exhibit 8.  This

17 would be Defendants' Exhibit 9.

18          Excuse me.  Let me adjust it.  Okay.  There we go.

19          MS. DAVIDSON:  Your Honor, to be clear, we don't

20 object to the foundation of any of these documents.  It's

21 simply that we may object to the relevance.  So she doesn't

22 have to go through this with -- we provided these documents.

23          THE COURT:  How many documents are we talking about?

24          MS. TUCCI-JARRAF:  Okay.  I have Exhibit 7 and 8,

25 which you've already admitted.  This is Exhibit 9.  I'll just

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1    show them to you and then I can --

2              THE COURT:  Well, how many?

3              MS. TUCCI-JARRAF:  -- mark them.

4              THE COURT:  There are nine 9?  How many?

5              MS. TUCCI-JARRAF:  This is 9, Exhibit 10, Defendants'

6    Exhibit 10, Defendants' Exhibit 11, Defendants' Exhibit 12,

7    Defendants' Exhibit 32, Defendants' Exhibit 13, Defendants'

8    Exhibit 14, Defendants' Exhibit 15, Defendants' Exhibit 16,

9    Defendants' Exhibit 22, Defendants' Exhibit 23, Defendants'

10   Exhibit 24, Defendants' Exhibit 25, Defendants' Exhibit 27 --

11   excuse me, 26, Defendants' Exhibit 27, Defendants' Exhibit 28,

12   Defendants' Exhibit 29, Defendants' Exhibit 30, and Defendants'

13   Exhibit 31.

14              And I just had a few quick questions on each one

15   regarding the information that was on -- so I --

16              THE COURT:  These are all documents brought by this

17   witness?

18              MS. TUCCI-JARRAF:  Yes.

19              THE COURT:  And all relate to, I guess, the intake

20   process as to Mr. Beane?

21              MS. TUCCI-JARRAF:  Not just the intake process.

22   So -- but there's only a few questions on each one or one

23   question on each one.

24              THE COURT:  That could take a while, given the number

25   of documents you stated.

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1      So the general objection I'm hearing is that how are

2  they relevant to the count of the indictment as to you with

3  respect to conspiracy to commit money laundering?

4      How would you respond to that?

5      MS. TUCCI-JARRAF:  My response is that throughout my

6  testimony, throughout my case in chief, testimony was provided,

7  evidence was provided that my intent was not to commit a crime,

8  but to stop a crime.

9      And there was also testimony regarding collusion

10  between Tennessee law enforcement all the way up to the Federal

11  Reserve Bank, which we were able to establish a trail as far as

12  who they spoke to.

13      And it goes to my intent to stop a crime, and that's

14  why I was involved in the events in July.  So it goes to

15  credibility and weight, which was attacked yesterday by --

16  throughout the trial by Ms. Davidson.

17      THE COURT:  Go ahead.

18      MS. TUCCI-JARRAF:  Thank you.

19      THE COURT:  You said a question or two on each one.

20      MS. TUCCI-JARRAF:  Uh-huh.

21      THE COURT:  Go ahead.

22      (Defendants' Exhibits 8 through 16 and 22 through 32

23  admitted into evidence.)

24  BY MS. TUCCI-JARRAF:

25      Q    I'm sorry, can you tell me your last name again,

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1    Officer?

2        A    Wilshire.

3        Q    Wilshire?

4        A    Uh-huh.

5        Q    Thank you.  Officer Wilshire, on Exhibit --

6    Defendants' Exhibit No. 7, could you please read at what date

7    and time this document shows received?

8        A    July 12th, 2017, 2:13 a.m.  02:13, that would be

9    also -- that would be Nashville time, so this uses Central

10   Time.

11       Q    And who was the requesting agency?

12       A    ORI is Knox County Sheriff's Office.

13       Q    Okay.  And what is a message key?

14       A    It's a detained wanted person.  It's what it says.

15       Q    Could you please read the message key?

16       A    The message key says, "Detained Wanted Person -

17   Caution."

18       Q    Excuse me.  After "Message Key" and the letters

19   "QWA"?

20       A    Oh, "Query Wanted -- Wanted All, Searches All NCIC

21   Persons Files Without Limitations."

22       Q    Thank you.

23       A    And it's got a warning.

24       Q    Oh, sorry.  Thank you.  And this is just how it is,

25   the NCIC, on July 12 at 2:13?

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1        A    The totality, can you rephrase your question, please?

2        Q    Was this the full -- was this the full NCIC that you

3   got at that time during that request?

4        A    Whoever ran this at this time, that is the response

5   that was received from NCIC, yes.

6        Q    Thank you.  And on Exhibit -- Defendants' Exhibit 8,

7   it's the same date and time, but this was in the file that you

8   produced, the records from the file that you produced for

9   Randall Keith Beane.  It says for ID?

10       A    It's a photocopy.  Our identification officers

11  received a photocopy so they could work off of it.

12       Q    So kind of a working copy then?

13       A    Yes.

14       Q    Thank you.  This is Defendants' Exhibit 9.

15            What is this document, Officer Wilshire?

16       A    This is a response from the FBI where the

17  fingerprints were actually copied and faxed off to FBI.  They

18  were needing a response sooner than our AFIS system could

19  return it.  So to make sure we didn't pause anything more than

20  we needed to, they sent it to the FBI directly.

21            And they're good enough to actually do a manual

22  search for us, it will actually put it into their database,

23  search fingerprints, and give us a response of who we have.

24       Q    So this is a response?

25       A    This is a response.

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1    Q    And what is -- can you read at the top, is that the

2  fax receipt date and time?

3    A    Yes.

4    Q    And from who?

5    A    From CJIS.  That's from FBI, from CJIS.  That's their

6  division that does criminal justice, does fingerprinting.

7    Q    Okay.  So the official name is FBI, CJIS Enterprise.

8    A    That's going to be a fax stamp.  I'm not sure.

9  That's probably going to be the way they probably have their

10  fax stamp showing who it's coming from, to let you know who

11  it's coming from.

12    Q    Okay.  Can you please read the date and time it was

13  received?

14    A    July 12th, 2017, 02:31.

15    Q    Thank you.  Defendants' Exhibit No. 10.  This is --

16  can you please tell us what this is?

17    A    This is an arrest report.

18    Q    An arrest report.  Who fills these out?

19    A    Whoever is probably going to do a charge on someone.

20  So this actually gets sent to the judicial commissioner, and it

21  has a narrative on the back that would tell the judicial

22  commissioner what narrative and what the person is going to

23  swear to as far as the warrant goes.  It's also a record we're

24  detaining someone and placing someone in custody for a certain

25  charge.

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1    Q    Okay.  Could you please, on this particular one,

2    could you please read the arrest time?

3    A    05:30.

4    Q    And the arrest date?

5    A    The arrest date is July 12th, 2017.

6    Q    And then this particular section -- section was

7    "Arresting Location."  Could you please identify that, what it

8    says?

9    A    The location says Maloneyville Road, 5001

10   Maloneyville Road.

11   Q    And the arresting officer?

12   A    It's Leah Spoone.

13   Q    Leah Spoone.  Okay.  Is that her signature and date

14   over there?

15   A    I'm not familiar with her signature, so I couldn't

16   attest to her signature, ma'am.

17   Q    Okay.  Do --

18   A    That does appear to be the name Spoone.

19   Q    Okay.  Is there normally someone that has to write on

20   this particular document?

21   A    Do they have to write on it?

22   Q    Next to their typed name?

23   A    It's good practice, any time you put your name on any

24   document, put your initials or marking on it, yes.

25   Q    What is on the line below the handwritten Spoone and

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1  the date, what is that -- what is that?

2      A    It would appear to be a time, I would guess, to 0615.

3  That's formatted such as a time.  I can't completely, a hundred

4  percent tell you, but that appears to be a time.

5      Q    Okay.  Thank you.

6           Defendants' Exhibit No. 11.  Sorry.  Let me just --

7  okay.

8           What is this document?

9      A    That's a screenshot of a current charges screen.

10     Q    From the -- is this on a website?

11     A    This is on the jail management system or Justice

12 Information Management System.

13     Q    So this is an internal -- the public don't have

14 access to this particular screen?

15     A    Not to that screen, no.

16     Q    Okay.

17     A    But it's common.  It's public information that's gave

18 to our website, actually, so it's public information.

19     Q    Okay.  And what is the date on that one?

20     A    Date of the report or the date -- which date?

21 There's two dates on there.

22     Q    Okay.  So the -- the date of the report?

23     A    7/13/2017, 01:49.

24     Q    That's 1:49 a.m.?

25     A    Yes.

UNITED STATES DISTRICT COURT

1    Q    Does -- do you -- do your systems mark things in

2   military time?

3    A    Yes.

4    Q    Thank you.  And when -- excuse me.  Going back to

5   that particular one, what are these typically issued for then,

6   this report, just as a record or --

7    A    It's just a record showing what the current charges

8   are at the time.

9    Q    So it's not delivered to anyone, it's just for your

10   internal working --

11    A    Correct.

12    Q    Thank you.  And this particular document?

13    A    That's a warrant summary screen.  It's on the same

14   system.

15    Q    Okay.  And that would be -- when was that issued?

16    A    7/13/2017.  It's not issued.  It's just a print-off

17   date.

18    Q    Is that similar to the last document we had, it's an

19   internal document for working?

20    A    Yes.

21    Q    And this one here particularly shows -- on the date

22   of July 13th, 2017, is when this particular document was

23   produced.  Is that correct?

24    A    That's correct.

25    Q    Okay.  And it shows two warrants at that point,

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1   doesn't it?

2        A    That's correct.

3        Q    Okay.  So on -- why do you use the at symbol?

4        A    It's nomenclature for the system that we use locally

5   for our warrants that has an at sign in it.  Not sure why.

6   It's just nomenclature that's used.

7        Q    So on this particular date at 7/13/2017, there was

8   one warrant identified as 1202373?

9        A    Correct.

10       Q    That was issue date 7/13/2017?

11       A    Correct.

12       Q    And the second warrant was Warrant No. 1202006.  Is

13  that correct?

14       A    Correct.

15       Q    And that issue date for that one is 7/12/2017?

16       A    Correct.

17       Q    Okay.  What does the status "I" mean?

18       A    The "I" means issued.

19       Q    And what does the status "S" mean?

20       A    Served.

21       Q    Served.  And over here in column listed as

22  "Received" --

23       A    Uh-huh.

24       Q    -- this would mean that the warrant was issued, but

25  not received.  Is that correct?

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1    A    "Received" means it was received by the courts at

2    that time.  If it's not issued, if it's not served yet, it

3    can't be received by the courts.  Once the other ones show as

4    served, it will show as being received.

5    Q    Okay.  So when it says received and the "no" is

6    there, it means it hasn't been received by the court?

7    A    It's usually when we get it in our records division,

8    whenever our agency has it.  So if you swear out a warrant on

9    someone, it's not going to be received by anyone.  It's still

10   going to be in the commissioner's office, sitting there, if it

11   makes any sense to you.

12       But once it goes into actually usage, it's either

13   placed into a file for outstanding warrants or it's actually

14   used and it's received into the system, if that makes sense.

15   Q    Okay.  Thank you.

16   A    Uh-huh.

17   Q    Just to refresh our memories, this is Government's

18   Exhibit 173.  The second page, sorry.  Government's

19   Exhibit 173.

20       And I believe this is for Warrant No. 1202373.  Is

21   that correct?

22   A    Yes, that is Warrant 1202373.

23   Q    Okay.  And that's signed by Magistrate Chris Rowe.

24   Correct?

25   A    That's correct.

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1    Q    And Sara Andersen is listed as the affiant?

2    A    Uh-huh.

3    Q    Correct?

4    A    Correct.

5    Q    Okay.  And it says, "See attached."  Correct?

6    A    Uh-huh.

7    Q    And was there anything attached to that?

8    A    No.  Not sure why "attached" was used.  They sign

9    these for the commissioner in front of them.  I'm not sure what

10   "see attached" even meant.  I'm not sure what that meant.

11   Q    Okay.  Does the affiant usually sign these --

12   A    Yes.

13   Q    -- prior to the magistrate?

14   A    Uh-huh.

15   Q    Does the affiant always sign prior to the magistrate?

16   A    Yes.

17   Q    And you stated that the affiant is usually in front

18   of the judge personally, physically?

19   A    Don't have to be physically.  They can actually do it

20   in front of a Skype, they can do it in front of the camera.  We

21   have ways of signing electronically.  You can go in front of

22   the commissioner, you can do it electronically.  We do

23   sometimes even fax the warrant signature to them.

24   Q    I'm going to now show you Defendants' Exhibit 32.

25   This is Page 1 of 32.

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1          And does this -- this is Warrant No. 1202373.

2    Correct?

3          A    Uh-huh.

4          Q    And who puts "Copy" across the warrant?

5          A    The system does that.  That's just a copy of the

6    warrant.  That's off the system to show you a copy of what the

7    warrant looked like.

8          Q    Thank you.  And this is Page 2 of Exhibit 32.  And,

9    again, this is for Warrant 1202373.  Correct?

10         A    Yes.

11         Q    Okay.  And there is a signature here for Chris Rowe,

12   Magistrate.  Correct?

13         A    Yeah.

14         Q    And there's no signature for Sara Andersen, Affiant.

15   Correct?

16         A    Because that's a copy.  That means it was not an

17   electronic signature.  She either did a copy -- she either sent

18   a faxed copy to him that went on file with the courts or she

19   was in front of him personally.  It doesn't copy if it's not

20   electronic signature.

21         Q    I'm going to show you Defendants' Exhibit 13.

22              And this is for Warrant 1202373.  That's for 1202373.

23   Correct?

24         A    Are you asking for -- yes, it is.

25         Q    Thank you.  Sorry.

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1          And on here, there's some very faint -- a faint

2    marking there.  That's the original?

3        A    Yes.

4        Q    This would be the one that Sara Andersen signed?

5        A    It does have a signature on it.

6        Q    Okay.  And from your explanation, they would sit in

7    front of a Skype, not necessarily face to face, when you

8    described it, they would just sign the original, this would be

9    an example of an original with the affiant signature?

10       A    Can you repeat the question?  Because I told you

11   three ways it could happen.  So I'm not sure which one this one

12   did, but there is a signature attached.

13       Q    Okay.  Thank you.

14       A    Yes.

15       Q    I'm going to show you Defendants' Exhibit 16.  This

16   is another arrest report?

17       A    Yes.

18       Q    Okay.  And the arrest time is 23:10.  Correct?

19       A    Yes.

20       Q    On July 13th?

21       A    Uh-huh.

22       Q    Okay.  For Randall Beane?

23       A    That's correct.

24       Q    Okay.  And the arresting location is again

25   Maloneyville?

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1        A      Uh-huh.

2        Q      The detention.  And this one is -- the arresting

3   officer is Sara Andersen.  Correct?

4        A      Yes.

5        Q      And these are issued prior to the arrest warrant

6   being signed off?

7        A      Correct.

8        Q      Thank you.  Okay.  Defendants' Exhibit 15.  There's

9   the 15.

10              This is another Current Charges Report, which you

11   explained to us is an internal document that you have on your

12   systems.  Is that correct?

13       A      That is correct.

14       Q      Okay.  And at the top underneath Page 1, there's a

15   handwritten signature there or a handwritten name there?

16       A      Yes.

17       Q      Is that Andersen?

18       A      Yes.

19       Q      Or excuse me, S. Andersen?

20       A      It appears to be so, uh-huh.

21       Q      Okay.  And, again, it shows two warrants, Warrant

22   1202006 with a star next to it.  Correct?

23       A      Correct.

24       Q      Okay.  And it also lists another Warrant 1202373.

25   Correct?

UNITED STATES DISTRICT COURT

1    A    That is correct.

2    Q    Okay.  And it has a booking date next to each

3  warrant.  This one shows July 12th for the booking date of

4  warrant ending in 2006.  Correct?

5    A    Correct.

6    Q    With a serve date of July 12th?

7    A    Uh-huh.

8    Q    And for the other warrant ending in 2373, it shows

9  booking date of 7/13/2017.  Correct?

10    A    Correct.

11    Q    And it shows served date July 13th, 2017.  Correct?

12    A    That's correct.

13    Q    Okay.  And then below that, is the star with "Per

14  Magistrate Rowe, will ROR."  Correct?

15    A    Correct.

16    Q    Okay.  And ROR?

17    A    Means release on recognizance.

18    Q    And it shows underneath that, "Has emailed DA with

19  circumstances to have this instrument cancelled."  Correct?

20    A    That's correct.

21    Q    Okay.  And the actual date of this report was on

22  July 13th, 2017.  Correct?

23    A    Correct.

24    Q    At 23:41 hours?

25    A    That's correct.

UNITED STATES DISTRICT COURT

1    Q    Thank you.  Okay.  Defendants' Exhibit 14.

2         Officer Wilshire, what is this document?

3    A    That's a release issued from the courts.

4    Q    This was issued on July 13th, 2017.  Correct?

5    A    Yes.

6    Q    At 23:46 hours.  Correct?

7    A    Yes.

8    Q    And this would be general sessions court.  Correct?

9    A    That's correct.

10   Q    And Mike Hammond, Clerk, who is that?

11   A    Mike Hammond is the elected clerk of the courts for

12   Knox County.

13   Q    Of the court of sessions?

14   A    Uh-huh.  Well, criminal and -- he's the court clerk.

15   He's the actual elected clerk for all the clerk's criminal and

16   general sessions.

17   Q    Okay.  Thank you.  And below, it looks like there's

18   some boxes here, some data that isn't showing.  Do you know

19   if --

20   A    There's never any boxes there.  That form never has

21   anything but what's at the top of it.  I'm not sure if that's

22   a -- what that is.

23   Q    Okay.  Thank you.  I'm now showing you Defendants'

24   Exhibit 24.  This is an NCIC.  Correct?

25   A    This is an NCIC response to a hit, yes.

1    Q    This was received on July 12th, 2017.  Correct?

2    A    Yes.

3    Q    And it was at 4:00 a.m. -- or excuse me, 4:47 a.m.

4  Correct?

5    A    Correct.

6    Q    Okay.  And below that, we have another message key?

7    A    That would be Central Time.

8    Q    Central Time.  Thank you.

9         From the detention facility again.  Correct?

10   A    Yes.

11   Q    Okay.  And the search was for all NCIC persons files

12 without limitations.  Correct?

13   A    Correct.

14   Q    And it shows an ORI with SC0270000.  Correct?

15   A    That's correct.

16   Q    Name, Randall Beane?

17   A    Uh-huh.

18   Q    And as you stated, the ORI acts like a --

19   A    It's a locater code for whatever agency.  Each agency

20 has its own ORI.  And it's usually based on the state, then the

21 code is usually a digit after, is the state or is the county

22 number for the county that it belongs to.

23   Q    Okay.  And below that, there's another listed person.

24 What is this ORI, it's -- excuse me, this ORI is for

25 California.  Correct?  CA --

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1    A    Correct.

2    Q    -- 0300097?

3    A    Uh-huh.

4    Q    And it's for a Torres, a Miguel Torres, Miguel

5    Gonzales Torres.  Correct?

6    A    Correct.

7    Q    Who's listed as -- or excuse me, the offense is

8    listed as dangerous drugs right here?

9    A    Uh-huh.

10   Q    In the county of -- in Orange County.  Correct?

11   A    Uh-huh.

12   Q    And below it, there's a warning for that individual,

13   NCIC gang group and member.  Correct?

14   A    Correct.

15   Q    Okay.  And then below that, you have ORI for

16   NC0760004.  This is for North Carolina.  Correct?

17   A    Correct.

18   Q    Okay.  With the name Randall Keith Beane?

19   A    Uh-huh.

20   Q    And under here, it says, "GNG," what does that stand

21   for?

22   A    It would be a gang indication.

23   Q    And it says "None Known" for Randall Keith Beane.

24   Correct?

25   A    Uh-huh.

UNITED STATES DISTRICT COURT

1    Q    Okay.  Exhibit 25, Defendants' Exhibit 25.

2         Officer Wilshire, this is again from the NCIC data

3    system.  Correct?

4    A    That's correct.

5    Q    Okay.  And this was received on July 12th, 2017?

6    A    Uh-huh.

7    Q    At 5:08 a.m.  Correct?

8    A    That's correct.  Central Time.

9    Q    Okay.  And this is essentially in the database,

10   you're able to find what agency, the agency's contact

11   information.  Correct?

12   A    Rephrase your question.  This is not the purpose, to

13   find agency contact information.  This is not what this

14   document --

15   Q    It says, "Hit Confirmation Response."

16   A    Yes.  That's what it is.

17   Q    For "The Record Below:  Is Confirmed"?

18   A    Yep.

19   Q    And under there, it says, "Confirming Agency:  Jasper

20   County Sheriff's Office"?

21   A    Correct.

22   Q    Okay.  With a phone number?

23   A    Yes.

24   Q    And a fax?

25   A    Correct.

                UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1    Q    Officer Wilshire, which -- there's a Knox County

2  Sheriff's here, an office here, a jailing facility here,

3  correct, close to the -- close to this courthouse?

4    A    We have three facilities, uh-huh.

5    Q    Okay.  And the detention facility, how far away is

6  that?

7    A    Fifteen minutes possibly.

8    Q    Okay.  So it's -- it's not within the downtown area?

9    A    No.

10    Q    Which location do you work at?

11    A    At that one, detention facility, Roger D. Wilson.

12          MS. TUCCI-JARRAF:  Okay.  Thank you.  I have no

13  further questions.

14          THE COURT:  Thank you.

15          Any cross-examination, Mr. Beane?

16          MR. BEANE:  Yes.

17          MS. TUCCI-JARRAF:  Oh, I'm sorry.

18                    **CROSS-EXAMINATION**

19  BY MR. BEANE:

20    Q    Mr. Wilshire, were you present during the arrest?

21    A    No, I was not.

22    Q    Were you present at any time during the paperwork

23  process to observe whether or not any documents were actually

24  presented to me to sign?

25    A    I was not present when you came in, no.

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1    Q    Is it common practice in Knox County to -- when

2  someone is arrested without a warrant to hold them until you

3  find a warrant?

4    A    Till you find a warrant -- rephrase that, please.

5    Q    Is it common practice in Knox County to hold someone

6  when they're arrested without a warrant till you find a

7  warrant?

8    A    No.  If there's no charge, it wouldn't be common to

9  hold someone with a charge.  In this case, there was an

10  outstanding warrant in another agency that was confirmed by

11  NCIC, that someone was wanted.  So an FFJ warrant, or fugitive

12  from justice warrant, had to be done, completed.

13    Q    Are you aware I was arrested on the 11th?

14    A    Yes.

15    Q    So I was held for a day without a warrant?

16    A    You were held until they found out who you were and

17  identified you and found the warrant that was needed to be

18  done.

19    Q    Are you aware I was found out who I was at nine

20  o'clock on the 11th?

21    A    Not aware of that, no.

22    Q    These arrest records, what -- what exhibit numbers --

23  I didn't write that down.

24         MS. DAVIDSON:  It's a defendants' exhibit.

25         THE COURT:  I believe he's asking -- you're wanting

UNITED STATES DISTRICT COURT

Terry Wilshire - Cross-Examination

1  to use those that Ms. Tucci-Jarraf introduced?

2          MR. BEANE:  Yes.

3          THE COURT:  There you go.

4  BY MR. BEANE:

5      Q    Okay.  This is the one for 7/12 at 5:30 a.m.  Where

6  is this information obtained as far as date of birth and Social

7  Security number?

8      A    It's either obtained by interview with the suspect or

9  after determination of who someone is, you can get it from a

10  database as well.  You can get it from NCIC, you can get it

11  from driver's license's information, different sources like

12  that.

13     Q    Would you do me a favor and read that Social Security

14  number on there.  Can you see that?

15     A    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.

16     Q    And on this one?

17     A    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.

18     Q    All right.  You said the Social Security number is

19  234, correct, starts with 234?

20          Do you see that Social Security number right there?

21     A    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.

22     Q    Say that again.

23     A    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.

24          MR. BEANE:  Thank you.  No further questions.

25          THE COURT:  Thank you.

UNITED STATES DISTRICT COURT

1    Any redirect?

2    MS. SVOLTO:  Yes, Your Honor.

3    **REDIRECT EXAMINATION**

4    BY MS. SVOLTO:

5    Q    Captain Wilshire, so when an inmate comes into the

6    facility or an arrestee comes into the facility, where is that

7    facility located in this case?

8    A    It's 5001 Maloneyville Road.

9    Q    So the documents that identify Maloneyville Road, is

10   that because that's where Mr. Beane first arrived at the

11   facility?

12   A    That's correct.

13   Q    All right.  And so when someone comes in and doesn't

14   identify their -- their name or their information, does it take

15   some time to find out exactly who they are?

16   A    Yes.

17   Q    Okay.  So in this case, we've looked at the

18   documents, and was that the case here that the defendant did

19   not answer any questions about his identity?

20   A    Based on what I'm seeing with the file information,

21   the way things are documented, yes.

22   Q    And so to confirm his identity, what did you do, if

23   anything?

24   A    Fingerprinted.

25   Q    And did the fingerprinting lead to any results?

UNITED STATES DISTRICT COURT

Terry Wilshire - Redirect Examination

1      A     Yes.

2      Q     And so you were able to identify that the defendant

3  was Randall Keith Beane?

4      A     Yes.

5      Q     All right.  That's based on your review of the

6  records you provided?

7      A     Yes.

8      Q     All right.  Once you found out his identity, what's

9  the next step?

10      A     Next step is to find out what the person is wanted

11  for, run NCIC checks, whatever it may be.  A lot of times it

12  will come back and actually say "wanted" on the fingerprint

13  responses.  We'll run an NCIC with that.  The FBI number that

14  comes back with the fingerprints is a good way of doing it.

15  From that, you'll find out if there's any wants for the person.

16      Q     Okay.  And, again, you talked about the NCIC report.

17  And that is a report that's based on any arrests or known

18  warrants out for an individual?

19      A     NCIC holds criminal histories.  It holds -- any time

20  someone is arrested anywhere in the United States, they hold

21  onto fingerprints at the CJIS level so you can search against

22  the database for any prior arrest.  And also, they also have an

23  entry for agencies to enter in wanted instruments, like old

24  outstanding warrants and so forth.  It's also a place for

25  missing persons, wanted vehicles, whatever may aid the law

UNITED STATES DISTRICT COURT

Terry Wilshire - Redirect Examination

1    enforcement.

2         Q    And how is information compiled into NCIC?  Is it by

3    a fingerprint, is it by name, is it by all of those factors?

4         A    Arrest records are entered in by fingerprint only.

5    That's the only way they're entered in, by fingerprints.  Other

6    entries are entered, such as outstanding warrants are entered

7    by, like, someone at an agency that has access to the system

8    and authorized to enter.

9         Q    I'd like to show you what has been admitted into

10   evidence as Defendants' Exhibit 24.

11        A    Yes.

12        Q    Okay.  Look at that last paragraph there.  Actually,

13   let's look at the last two paragraphs.  It does identify in the

14   paragraph starting "MKE" at the top of your screen there?

15        A    Yes.

16        Q    All right.  It does have the name of a -- looks like

17   a Miguel Gonzales Torres?

18        A    That's correct.

19        Q    And how come this is on here?  Can you explain that?

20        A    When you enter a name or a -- any demographics in the

21   NCIC, it's going to give you every response on anything that's

22   close.  To narrow down, you can do different entries.  You can

23   do just by FBI number, you can do just by name and date of

24   birth.  Whatever you have at the time is what you enter in, and

25   it's going to give you a response based on whatever it matches.

UNITED STATES DISTRICT COURT

Terry Wilshire - Redirect Examination

1    So if you had someone, you entered, for example, a

2  date of birth, and the same date of birth matched someone who

3  was wanted, it would give you a response back for that person,

4  even though it's not the person.

5    You have to read these and read who they are and what

6  they're wanted for.  And, of course, the big thing, the

7  giveaway is the FBI number.  Once you have fingerprints, you're

8  going to get an FBI number that matches or doesn't match the

9  person.

10    Q    And so when you run the report based on, say, date of

11  birth, anyone with that date birth, this information will come

12  up through NCIC?

13    A    Uh-huh.

14    Q    And then you do some further searches to narrow it

15  down?

16    A    You can.

17    Q    And then you try to identify and make sure that there

18  is an individual whose identifiers all match?

19    A    Correct.

20    Q    And did you do that -- or did the detention facility

21  do that here?

22    A    My staff appears they did that such thing.

23    Q    All right.  And so the top line there, "MKE/Criminal

24  Gang Member," what does that mean?

25    A    It's just a warning that's -- it cautions someone

UNITED STATES DISTRICT COURT

1   that's either on the road when you pull someone over or if you

2   come in contact with someone, that they're a possible gang

3   member.

4       Q    And that goes to -- is that individual specific?

5       A    Yes.

6       Q    All right.  And then there does appear to be

7   another -- some abbreviations there.  Can you explain that

8   line, what it means?

9       A    The one that says "GNG"?

10      Q    Yes.

11      A    GNG is -- it means it's gang, and it's trying to

12  indicate which gang.  I don't know what the nomenclature is.

13  I'm not familiar with that one, the SV CZ group, whatever that

14  would be, I'm not familiar with that.

15      Q    That's the name of the -- if he's gang affiliation?

16      A    Right.

17      Q    Okay.  All right.  Thank you.

18           So I do have another question, I think it's Defense

19  Exhibit 13, but let me double-check.  It's actually Defendants'

20  Exhibit 15, please.

21           And now you said this was an internal document, if I

22  recall?

23      A    Yes, it's a -- it's a screen printout of a report

24  that we look at to see what our inmates are in jail for at the

25  time.

UNITED STATES DISTRICT COURT

Terry Wilshire - Redirect Examination

1    Q    All right.  And so that indicates the fugitive from

2  justice felony?

3    A    Yes.

4    Q    All right.  And there is the two, and I believe you

5  explained in your testimony that one was corrected.  Correct?

6    A    That's correct.

7    Q    All right.  Then there's some handwriting --

8    A    Replaced.  If not corrected, it was replaced.

9  Replaced by a new one, because it had a typo on the other one,

10  the top one.

11    Q    So it was replaced with the second warrant that's

12  listed there?

13    A    Correct.

14    Q    All right.  And the handwriting down here, that you

15  read out on cross, what does that signify here, do you know?

16    A    Well, once we found the typo, the -- my staff member

17  actually had called Mr. Rowe, the magistrate on duty, and

18  explained to him what happened, and said, "We need to do a new

19  warrant based on the typo."

20         He agreed to do it.

21         And there's no magistrate -- or no district attorney

22  that was available at the time or anyone in the courts to get

23  that one taken care of, so he agreed to ROR it temporarily

24  until he could get it in front of the courts.

25         And then what he did is, he sent it to the courts to

UNITED STATES DISTRICT COURT

Terry Wilshire - Redirect Examination

1  be dismissed.  So the second one would be the one that's the

2  corrected one and actually on file.  At the time, both showed,

3  though, till we could get the release.  And that's what that

4  release document was we looked at earlier.

5      Q    Okay.  So that was as a result of needing to replace

6  that original fugitive from justice warrant?

7      A    That is correct.

8      Q    Okay.  All right.  I think -- bear with me a second,

9  please, as I look for this document.

10         All right.  I'd like to show you Government's

11  Exhibit -- I'm sorry, Defendants' Exhibit 25.

12         All right.  It shows some remarks there at the bottom

13  of that document.

14         And, again, first, let me ask you what this document

15  is?

16     A    It's a hit confirmation response from the agency

17  after requesting a locate for an outstanding hit.

18     Q    And so what do the remarks indicate?

19     A    It's from the agency and the remarks state that the

20  "Sheriff's Office Will Extradite, Please Place Hold."

21     Q    And is that the sheriff's office in the location

22  where the original warrant is issued?

23     A    Jasper County Sheriff's Office.

24     Q    That's Jasper County, South Carolina.  Correct?

25     A    Yes.

UNITED STATES DISTRICT COURT

Terry Wilshire - Redirect Examination

1    Q    And so does that indicate that some -- I guess

2  some -- looking into whether or not they would -- the sheriff's

3  office there would extradite, that was done here?

4    A    This is our confirming document to let us know that

5  they -- there is an outstanding warrant, which is the OCA

6  number at the top that indicates the warrant number.  The NIC

7  number is the entry that the agency placed on this person, I

8  believe, back in 2015, and that is the indication stating that

9  they will extradite.

10          We have to have those elements to the warrant -- for

11  a fugitive from justice warrant and able to take the warrant

12  out.

13    Q    Okay.  Thank you.

14          Could we see Government's Exhibit 165.

15          And is that the warrant you were just discussing?

16    A    That is a copy of the warrant that we obtained from

17  them that was on file, yes.

18    Q    And if you could zoom in to the date there at the

19  bottom.

20          And would that have been the date that the warrant

21  was issued?

22    A    That would indicate the date the warrant was issued,

23  yes.

24    Q    And that's -- what date is that?

25    A    April 17th, 2015.

UNITED STATES DISTRICT COURT

1          MS. SVOLTO:  I don't have anything else.  Thank you.

2          THE COURT:  Thank you.  Any recross based on the

3    redirect, Ms. Tucci-Jarraf?

4          MS. TUCCI-JARRAF:  Yes, a few questions.

5                    **RECROSS-EXAMINATION**

6    BY MS. TUCCI-JARRAF:

7      Q    Without prejudice, I have a few more questions for

8    you based on the redirect.

9          On Defendants' Exhibit 25, this was the locate

10   request that you -- that had been done on the NCIC database.

11   Correct?

12     A    This is a hit confirmation response from -- asking

13   the agency if they would extradite or not.

14     Q    Okay.  And the initial NCIC, that search that you did

15   on July 12th was approximately at 2:31 a.m.  Correct?

16     A    I don't have that in front of me, so I'm not sure if

17   that's the date it was sent or not.

18     Q    Okay.  Let me grab that.  Defendants' Exhibit 7, this

19   was the initial one that you had stated was done at -- excuse

20   me, not -- 2:13 a.m.  Correct?

21     A    That is the hit response.  That's a hit saying that

22   the -- it's outstanding and it's wanted.  It's not what we send

23   to the agency asking if they will extradite.

24     Q    Correct.  I was just talking about the time stamp

25   on --

                    UNITED STATES DISTRICT COURT

Terry Wilshire - Recross-Examination

1    A    Yes.  The time stamp does say 2:13.

2    Q    Okay.

3    A    Central Time.

4    Q    So approximately less than three hours later, this

5    one says 5:08 a.m. for this particular locate.  Correct?

6    A    Correct.

7    Q    Just give me one moment and I'll find the -- here we

8    go.  And the South Carolina bench warrant, which was

9    Exhibit 165, Government's Exhibit 165, you stated you received

10   that from South Carolina, Jasper County Sheriff's?

11   A    It appears that way, yes.

12   Q    David, could you please pull up Exhibit 165, please.

13        Okay.  On Government's Exhibit 165, we have -- please

14   take a look at this one.

15        There's no fax -- fax data that it was received by

16   fax at all.  Correct?

17   A    It doesn't appear to have a time stamp, no.

18        MS. TUCCI-JARRAF:  Okay.  Request I please just have

19   screens for --

20        THE COURTROOM DEPUTY:  Yes, ma'am.

21        MS. TUCCI-JARRAF:  Thank you.

22   BY MS. TUCCI-JARRAF:

23   Q    Okay.  This is the South Carolina warrant that was --

24   excuse me, this document, do you recognize it?

25   A    It appears to be the same document.

UNITED STATES DISTRICT COURT

 1     Q     Okay.  And this is the one you provided to the DOJ

 2 yesterday --

 3     A     Yes.

 4     Q     -- from the file?  Okay.  I move to admit Defendants'

 5 Exhibit 33.

 6          THE COURT:  So admitted.

 7          MS. TUCCI-JARRAF:  Thank you.

 8     (Defendants' Exhibit 33 admitted into evidence.)

 9 BY MS. TUCCI-JARRAF:

10     Q     Okay.  And on -- I'm going to turn this sideways.  So

11 this is the bench warrant from South Carolina.  Can you please

12 tell me -- or can you please confirm for me, this was from

13 July, the fax heading which was received, July 12th, 2017.

14 Correct?

15     A     Correct.

16     Q     At 4:13 a.m.?

17     A     Correct.

18     Q     From JC Communications.  Correct?

19     A     Uh-huh.

20     Q     That would be Jasper County Communications?

21     A     That would appear to be.  I'm not -- I can't confirm

22 that, but that's what it would appear to be, since it's Jasper

23 County on the warrant.

24     Q     Okay.  This would be the faxed copy that you received

25 from South Carolina.  Correct?

UNITED STATES DISTRICT COURT

Terry Wilshire - Recross-Examination

1    A    That would be the faxed copy we received.

2    Q    Okay.  Thank you.  And I just have a couple of

3  follow-up questions regarding the NCIC database.  You had

4  stated during your redirect that only those who were authorized

5  to enter data could enter the data, correct, into the NCIC

6  database?

7    A    Correct.  Correct.

8    Q    Okay.  So they would be the only ones that would be

9  able to enter data, edit data, or cancel data.  Correct?

10    A    That's correct.

11    Q    Are you authorized to enter the data?

12    A    No, I'm not.  I'm a query only.

13    Q    Is anyone at Knoxville Sheriff's Office authorized to

14  enter the NCIC database?

15    A    For our warrants only, for our area, from Knox

16  County.  We couldn't enter for any other agency.

17    Q    So it's your understanding that every law enforcement

18  agency is only able to enter data for their particular area

19  that they have jurisdiction over.  Correct?

20    A    Absolutely.  Because it's based on the ORI that you

21  ask about and they ask about as well.  That's actually an

22  indicator for the agency's area and code that they're

23  responsible for.  So if it's entered, it's only entered by

24  their ORI.  I can't enter anything for South Carolina, and

25  South Carolina can't enter anything for me.

UNITED STATES DISTRICT COURT

1    Q    Okay.  Thank you for clarifying that.

2    A    You're welcome.

3         MS. TUCCI-JARRAF:  I don't have any further questions

4    for you, Officer Wilshire.  Thank you.

5         THE COURT:  Thank you.

6         Mr. Beane, any further recross?

7         MR. BEANE:  No further questions.

8         THE COURT:  Thank you.  This witness may be excused.

9         Thank you again for coming back today and yesterday

10   as well.

11        Government may call its next rebuttal witness.

12        MS. DAVIDSON:  We call Ms. Rachel Hall.

13   WHEREUPON,

14                          **RACHEL HALL,**

15   was called as a witness and, after having been first duly

16   sworn, testified as follows:

17                     **DIRECT EXAMINATION**

18        THE COURTROOM DEPUTY:  Have a seat, please.  Scoot as

19   close as you can.  Please state and spell your name for the

20   record.

21        THE WITNESS:  My name is Rachel Hall.  R-a-c-h-e-l.

22   Last name is Hall, H-a-l-l.

23   BY MS. SVOLTO:

24   Q    Good morning, Ms. Hall.

25   A    Good morning.

                   UNITED STATES DISTRICT COURT

Rachel Hall - Direct Examination

1    Q    Can you tell us where you work?

2    A    I work for Advantage Innovations.  It's here in

3  Knoxville.

4    Q    How long have you worked there?

5    A    I think about five years.

6    Q    What kind of work do you do for them?

7    A    I am a financial manager of the accounts.

8    Q    And were you working there in July of 2017?

9    A    Yes, ma'am, I was.

10    Q    And are you familiar with a Randall Beane?

11    A    Yes, I am.

12    Q    And did he also work at Advantage Innovations?

13    A    Yes, he did.

14    Q    All right.  And in July of 2017, was Mr. Beane still

15  working at Advantage Innovations?

16    A    I believe, yes, he was.  Yes, he was.

17    Q    All right.  And do you recall anything unusual in

18  July of 2017 occurring?

19    A    In reference to --

20    Q    In reference to Mr. Beane?

21    A    Yes.  Mr. Beane gave me a check.

22    Q    I'd like to show you, defense and the witness only,

23  Government Exhibit 172.

24       Do you recognize that?

25    A    Yes, I do.

UNITED STATES DISTRICT COURT

Rachel Hall - Direct Examination

1    Q    And that's this right here?

2    A    Uh-huh.  Yes.

3         MS. SVOLTO:  All right.  I'd like to move this into

4    evidence, please.

5         THE COURT:  So admitted.

6      (Government's Exhibit 172 admitted into evidence.)

7    BY MS. SVOLTO:

8    Q    If you could publish it to the jury.  And is this the

9    check that you received?

10   A    Yes, it is.

11   Q    All right.  And so did Mr. Beane give you this check?

12   A    Yes.  He gave it to me personally.

13   Q    And could we look at the date there, the date line,

14   if you could highlight that, David.

15        And was that around the time that he gave this to

16   you?

17   A    Yes.

18   Q    All right.  And for how much, this check?

19   A    For $50,000.

20   Q    Was that unusual to you?

21   A    Very much so.

22   Q    Why was that unusual?

23   A    I've never been given a large amount of money like

24   that before.

25   Q    And I see in the signature line, could you read that

UNITED STATES DISTRICT COURT

Rachel Hall - Direct Examination

1    out for us?

2         A    Where it says his name or where it says "Gratitude"?

3         Q    "Gratitude."

4         A    Yes, ma'am.

5         Q    And so did he explain why he was giving you this

6    check?

7         A    Yes, he did.  There was a time where he wasn't doing

8    so well, and he met my late husband and received help from my

9    late husband.  And he was doing this in gratitude for that

10   help.

11        Q    Was that financial help?

12        A    Yes.

13        Q    So were you surprised to see a $50,000 check from

14   Mr. Beane?

15        A    Yes, I was.

16        Q    And I see that you had -- you provided this original.

17   Correct?

18        A    Correct.

19        Q    You did not cash it?

20        A    No, ma'am, I did not.

21        Q    All right.  Did Mr. Beane tell you where he got the

22   money for this check?

23        A    He told me it was a settlement from a case.

24             MS. SVOLTO:  Okay.  I have no other questions.  Thank

25   you.

UNITED STATES DISTRICT COURT

Rachel Hall - Cross-Examination

1      THE COURT:  Thank you.

2      Any cross-examination by either defendant?

3      MS. TUCCI-JARRAF:  Not by me.

4      THE COURT:  Any cross-examination, Mr. Beane?

5                    **CROSS-EXAMINATION**

6  BY MR. BEANE:

7      Q    Good morning, Rachel.

8      A    Good morning.

9      Q    I guess I'm a little in shock.  Anyway, could you

10  explain the situation to me coming to Tennessee to meet your

11  husband and how that involved him helping me?

12      MS. SVOLTO:  I'm going to object to that being

13  outside the scope of direct.

14      MR. BEANE:  She said that I met her husband when I

15  came to Tennessee.

16      THE COURT:  I'll overrule objection.  There was some

17  reference to some assistance by or with her husband.  So go

18  ahead.

19  BY MR. BEANE:

20      Q    Could you explain how I met your husband and how I

21  came to know him and come to Tennessee?

22      A    I'm not certain of the particulars of how you came to

23  Tennessee, just that you did.  Jason was involved -- my late

24  husband was Jason.  Jason was involved in helping with a

25  project and you were asked to help also.

UNITED STATES DISTRICT COURT

Rachel Hall - Cross-Examination

1    Q    Is that it?

2    A    From my understanding, yes.

3    Q    Do you remember anything of the particulars where

4    this project was?

5    A    Yes.  It was in Sweetwater, Tennessee.

6    Q    And what was the project for?

7    A    They -- an individual had a large property that she

8    was wanting to have used for veteran rehabilitation and help.

9    Q    So we were in the project of helping others.  Is that

10   what you collect from that?

11   A    You were attempting to, yes.

12   Q    Yeah.  And so when Jason passed, what happened at

13   that point, do you remember?

14   A    With the project or --

15   Q    When Jason passed, what happened with everything,

16   because of his death?

17        MS. SVOLTO:  Your Honor, I'm going to object to

18   relevance what her -- what happened after her husband died.

19        THE COURT:  I think -- I'll sustain the objection.

20   The question is kind of broad, what happened with everything,

21   so ...

22   BY MR. BEANE:

23   Q    Okay.  When Jason passed, was anyone able to get into

24   his computers?

25   A    No.

UNITED STATES DISTRICT COURT

1    Q    And so was there a lot of information stored on his

2  computers containing the project that we were involved in?

3    A    I'm assuming, yes, I'm not sure.

4    Q    And have you been able to get into his computer

5  since?

6    A    No, and I have not tried.

7    Q    So that pretty much stopped our project at that

8  point.  Correct?

9    A    Correct.  Or Jason's involvement, because he was

10  dead.  I have no idea what is happening with the project at

11  this time.  I have no desire to be a part of it.

12    Q    When I handed you the check, my explanation to you

13  was that I was in deep gratitude for your husband and I

14  apologized for his death.  Do you remember me making that

15  comment to you?

16    A    Yes.

17    Q    Your husband -- how generous was your husband to me

18  financially, do you remember?

19    A    Particular amounts, no.  No.  But he was -- he was

20  caring.  He was a good man.

21    MR. BEANE:  I can't think of any further questions at

22  this point.

23    THE COURT:  All right.  Thank you.

24    Any redirect?

25    MS. SVOLTO:  No, thank you, Your Honor.

UNITED STATES DISTRICT COURT

Rachel Hall - Cross-Examination

1          THE COURT:  All right.  Thank you, Ms. Hall.  You may

2    be excused.

3          THE WITNESS:  Thank you.

4          THE COURT:  Any further rebuttal testimony by the

5    government?

6          MS. DAVIDSON:  No, Your Honor.  At this time, the

7    United States rests.

8          THE COURT:  The government rests on its entire case?

9          MS. DAVIDSON:  Yes, Your Honor.

10          THE COURT:  Any rebuttal testimony offered by either

11    of the defendants?

12          Ms. Tucci-Jarraf?

13          MS. TUCCI-JARRAF:  Yes, I will.  I would like to use

14    the restroom, if we could, before we move on.

15          THE COURT:  How many witnesses -- additional

16    witnesses do you have?

17          MS. TUCCI-JARRAF:  Approximately two.  Two.

18          THE COURT:  Short or --

19          MS. TUCCI-JARRAF:  One is very short.  And the other

20    one, I don't expect to go over 25 minutes, tops, probably about

21    15 to 20 minutes, I would say.

22          MS. DAVIDSON:  Your Honor, I would only point out

23    that all of our rebuttal testimony went solely to Counts 1

24    through 6.

25          THE COURT:  Just keep in mind if there is any

UNITED STATES DISTRICT COURT

Rachel Hall - Cross-Examination

1    rebuttal testimony offered by the defendants would necessarily

2    need to relate to the rebuttal proof offered by the government.

3              Mr. Beane, do you have any rebuttal witnesses to

4    present?

5              MR. BEANE:  No, I do not.

6              THE COURT:  We'll take a recess until 10:30.

7         (Jury out at 10:19 a.m.)

8              THE COURTROOM DEPUTY:  This honorable court shall

9    stand in recess until 10:30.

10        (Recess from 10:20 a.m. to 10:32 a.m.)

11             THE COURTROOM DEPUTY:  This honorable court is again

12   in session.

13             THE COURT:  Thank you.

14             Ms. Tucci-Jarraf, who do you wish to present as

15   rebuttal testimony?

16             MS. TUCCI-JARRAF:  Yes.  At this time, I call Parker

17   Still.

18             MS. DAVIDSON:  Your Honor, we object.  This is not

19   proper rebuttal.  She has not served the proper paperwork to

20   call Parker Still.  She hasn't gone through the Touhy Regs.

21             THE COURT:  Hasn't gone through what?

22             MS. DAVIDSON:  Through the Touhy Regs.  In order to

23   call a federal agent as a witness, you are supposed to file

24   certain documents with the civil division and with FBI.

25             MS. TUCCI-JARRAF:  I wasn't aware of that.  He has

UNITED STATES DISTRICT COURT

Parker Still - Direct Examination

1    been in this courtroom the entire time.  He testified.  I'm

2    calling him just as rebuttal witness to clarify regarding the

3    NCIC.  That's all.

4            THE COURT:  Given that he's in effect the

5    government's designated representative and he's been -- he is

6    here in the courtroom, we'll allow him to be called at this

7    time for that purpose.

8            MS. TUCCI-JARRAF:  Thank you.

9            THE COURT:  All right.  If you'll come on up, sir.

10           Bring our jury in.

11       (Jury in at 10:33 a.m.)

12           THE COURT:  Thank you.  Everyone may be seated.

13           This witness has also previously been sworn in.

14           So, Ms. Tucci-Jarraf, rebuttal testimony at this

15   time?

16           MS. TUCCI-JARRAF:  Thank you.

17   WHEREUPON,

18                          **PARKER STILL,**

19   was called as a witness and, after having been first duly

20   sworn, testified as follows:

21                       **DIRECT EXAMINATION**

22   BY MS. TUCCI-JARRAF:

23       Q    Good morning, Agent.

24       A    Good morning.

25       Q    Agent Still, I just had a couple questions for you

UNITED STATES DISTRICT COURT

Parker Still - Direct Examination

1    regarding the NCIC exhibits, and I'll read them off to you and

2    then just ask you a few questions.

3         Okay.  To begin with, on Defendants' Exhibit 7 and

4    you had stated that your office had a warrant -- or had

5    information of a warrant in South Carolina.  Correct?

6    A    Yes, ma'am.  That's -- that was the information that

7    was provided to me, yes, ma'am.

8    Q    And that would be on July 10th?

9    A    I believe it was July 11th, the morning of July 11th,

10   yes, ma'am.

11   Q    The morning of July 11th.  And did you do an NCIC

12   search to be able to confirm that -- or excuse me, are you

13   aware if your office had done an NCIC search to confirm that?

14   A    The way that it normally would be done, yes, ma'am,

15   would be -- the office would do -- they have the ability there

16   to do an NCIC check, yes, ma'am.

17   Q    Do you have the ability to do an NCIC check?

18   A    No, ma'am.  The only ability I have would be to

19   contact what we call upstairs, which is kind of our control

20   room or radio room, if you will.  And I could say, you know,

21   "Can I get an NCIC check on this individual or that

22   individual," uh-huh, yes, ma'am.

23   Q    Okay.  So those that are upstairs, they're the ones

24   that have the authorization to enter into the NCIC?

25   A    I don't know about enter into the NCIC, all I know is

UNITED STATES DISTRICT COURT

Parker Still - Direct Examination

1    they're the ones who we call to get a check done, yes, ma'am.

2         Q    Okay.  And then Exhibit 165, please, David.  Okay.

3              This is Government's Exhibit 165, Agent Still.  And

4    this is the South Carolina -- excuse me, yeah, South Carolina

5    warrant.  Correct?

6         A    Yes, ma'am.  That's the South Carolina warrant.

7         Q    Okay.  And can you please tell me approximately when

8    you recall seeing this warrant?

9         A    I believe this warrant was e-mailed to me on -- by

10   Jasper County on either the 11th or the 12th of July.  I

11   believe that's the first time I actually saw the -- this

12   warrant, this actual one you're speaking of, a physical copy.

13        Q    Okay.  A physical copy.  And did you send that copy

14   or that fax of that South Carolina warrant over to Knox County

15   sheriffs?

16        A    No, ma'am.  I believe -- I believe the one that I had

17   was an e-mail -- I believe they e-mailed it to me.

18        Q    They e-mailed it?

19        A    Yes, ma'am.

20        Q    Okay.  And to the best of your knowledge, has anyone

21   in the FBI gone in and entered information regarding Mr. Beane

22   in the NCIC?

23        A    No, ma'am, not to my knowledge.  Again, though, I

24   don't know who enters NCIC.  I would want to clarify too.  If I

25   remember right, from our file, I had two copies, one was this

UNITED STATES DISTRICT COURT

Parker Still - Cross-Examination

1   e-mail of the warrant, and then I think they also faxed me a

2   copy later on, maybe in August.

3        Q    In August?

4        A    Yes, ma'am.

5        Q    Okay.  So then to the best of your knowledge,

6   approximately July 12th or July 13th was the first time that

7   you had ever seen that South Carolina warrant?

8        A    It could have been the afternoon of the 11th.  There

9   was an e-mail from them, yes, ma'am.  An e-mail from them

10  either July 11th to July 12th, to the best of my knowledge.

11       Q    Okay.  Did you provide the Department of Justice,

12  Ms. Davidson, with a copy of that e-mail?

13       A    I think so, yes, ma'am.

14            MS. TUCCI-JARRAF:  Thank you, Officer Still -- excuse

15  me, Agent Still.  I have no further questions.

16            THE WITNESS:  Thank you.

17            THE COURT:  Thank you.

18            Any cross-examination by the government?

19            MS. DAVIDSON:  I'll just ask a few follow-up

20  questions.

21                        **CROSS-EXAMINATION**

22  BY MS. DAVIDSON:

23       Q    On the morning of the 11th, did you personally

24  confirm that there was a warrant for Mr. Beane's arrest?

25       A    Our office would have, ma'am.  Ms. Davidson, I didn't

UNITED STATES DISTRICT COURT

Parker Still - Cross-Examination

1   personally confirm it, but our office, that would have been the

2   normal course.

3       Q    You were told by your office.

4            Is there any doubt in your mind that there was a

5   warrant in South Carolina for Mr. Beane's arrest?

6       A    No, ma'am.  There's no doubt.

7       Q    Was Mr. Beane indicted in this case?

8       A    Yes, ma'am.

9       Q    And was there another arrest warrant issued by this

10  court?

11      A    Yes, ma'am, a federal arrest warrant.

12           MS. DAVIDSON:  Thank you, Your Honor.  That's all I

13  have.

14           THE COURT:  Thank you.

15           Mr. Beane, any questions?

16                       **CROSS-EXAMINATION**

17  BY MR. BEANE:

18      Q    Mr. Still, do you remember the date on the federal

19  arrest warrant?

20      A    Was it approximately July 19th, Mr. Beane?

21           I'm sorry, if you put it in front of me, I'd see it.

22  I don't recall the exact date.

23           MR. BEANE:  Excuse me just a minute.

24           MS. TUCCI-JARRAF:  Excuse me, Deputy, is there any

25  other exhibits that are up there, by any chance?

UNITED STATES DISTRICT COURT

Parker Still - Cross-Examination

1          THE COURTROOM DEPUTY:  No.  Which one are you looking

2     for?

3          MS. TUCCI-JARRAF:  I found it.

4     BY MR. BEANE:

5     Q    You are right.  It was the 11th -- I mean, the

6     19th -- why would it take so many days between the 11th and the

7     19th to come up with this warrant from the FBI?

8     A    Well, Mr. Beane, there was a grand jury date in

9     between.

10         So just to explain the Exhibit 165, like I was shown,

11    that was the e-mailed copy of the warrant that was sent to me.

12    That was the one from South Carolina.

13    Q    The alleged warrant?

14    A    Your words, sir.  And then the -- this -- there would

15    have been a grand jury date in between, so I would have gone in

16    front of the grand jury.  The grand jury would have issued what

17    we call a true bill, an indictment, and that's when we would

18    have had it served out there at the jail.

19         MR. BEANE:  I have no further questions at this time.

20         THE COURT:  Thank you.

21         Let's go back to, I guess, Ms. Tucci-Jarraf, since

22    you called this witness, any redirect?

23         Ms. Tucci-Jarraf, any redirect?

24         MS. TUCCI-JARRAF:  Yes, I just have one quick

25    question.

UNITED STATES DISTRICT COURT

**REDIRECT EXAMINATION**

1

BY MS. TUCCI-JARRAF:

2

3      Q     Agent Still?

4      A     Yes, ma'am.

5      Q     This is Defendants' Exhibit 26.  Is this the detainer

6  that you were speaking of from the 19th?

7      A     Yes, ma'am.  I'm not -- I don't -- other than in this

8  case, I don't recall -- and I may have seen the detainer, but

9  it doesn't look like I was the one who served it.

10     Q     I believe this is -- would this be a part of it as

11  well?

12     A     Yes, ma'am.  That appears to be part of just kind of

13  a standard detainer language there.

14     Q     Okay.  And do you know who this particular officer

15  is, Harnett?

16     A     Mr. Harnett, I do, yes, ma'am.  He's -- as identified

17  there, he's a task force officer.

18     Q     Was he at the scene on July 11th?

19     A     At the arrest scene, I think Officer Harnett did

20  arrive at the scene.  Yes, ma'am, the way I remember it, he was

21  there.  He was a little late getting there, so he wouldn't have

22  been an eye witness to the events that we've discussed in this

23  case, but he was at the scene is what I recall.

24           MS. TUCCI-JARRAF:  Thank you.  No further questions.

25           THE COURT:  Thank you.

UNITED STATES DISTRICT COURT

1        Any further questions from the -- well, let me go --

2   I usually go in reverse order.

3        Any further questions, Mr. Beane, in response to that

4   question?  Thank you.

5        Any further questions from the government?

6                    **RECROSS-EXAMINATION**

7   BY MS. DAVIDSON:

8        Q    Just to make it clear, what's a detainer?

9        A    A detainer is simply -- just basically lets another

10  agency know there's a federal warrant and not to release that

11  individual, because that would just -- I mean, that would

12  create extra work and a risk to public safety, someone who

13  we've got a federal indictment for to be released.  So we're

14  just simply notifying that agency that there's a federal

15  warrant out there.

16       Q    Okay.  And specifically with Mr. Beane, we had tons

17  of testimony that he was being held on the South Carolina

18  warrant in -- by the Knox County Jail.  Why did you send a

19  detainer to the Knox County Jail?

20       A    Simply because that's where he was located.

21       Q    So he was held in state custody, and you were

22  notifying them that before they released him, he needed to be

23  transferred to federal custody?

24       A    Yes, ma'am.

25                 MS. DAVIDSON:  Okay.  That's all I have.

                    UNITED STATES DISTRICT COURT

Parker Still - Recross-Examination

1        THE COURT:  All right.  Thank you, Agent Still.  You

2   can return to your seat.

3        THE WITNESS:  Thank you, Your Honor.

4        THE COURT:  Any other rebuttal witnesses,

5   Ms. Tucci-Jarraf?

6        MS. TUCCI-JARRAF:  No.

7        THE COURT:  Do you rest on your entire case?

8        MS. TUCCI-JARRAF:  I rest on the entirety of my case,

9   yes.

10       THE COURT:  Thank you.

11       Mr. Beane, I think I asked you this, any rebuttal

12  witnesses to present?

13       MR. BEANE:  No.

14       THE COURT:  Do you rest on your entire case?

15       MR. BEANE:  I rest on my entire case.

16       THE COURT:  Ladies and gentlemen, that concludes the

17  presentation of the evidence in this case.  I have to discuss a

18  few matters with Counsel.  I think we'll be able to start the

19  closing arguments before lunch, but I need to ask you -- I need

20  to excuse you back to the jury room, and if it's -- I don't

21  think it will take long, but if it does, we'll let you know and

22  we'll adjust the schedule.

23       You now have heard all the evidence.  You have not

24  heard the closing arguments or my legal instructions, so you

25  should continue not to discuss the case among yourselves until

UNITED STATES DISTRICT COURT

1    we get through closing arguments and my legal instructions.

2    And at that time, you would begin your deliberations.  So keep

3    that in mind.

4              So the jury is excused.

5         (Jury out at 10:47 a.m.)

6              THE COURT:  Ms. Tucci-Jarraf, do you have a

7    defendant's theory to submit?  Everybody can be seated.  Thank

8    you.

9              MS. TUCCI-JARRAF:  Yes.

10             THE COURT:  If you'll hand that to my law clerk or,

11   Mr. Lloyd, he'll come down and get it so we can review it.

12             MS. TUCCI-JARRAF:  We're just going to change one

13   word.  Thank you.  Two words.

14             THE COURT:  All right.  Next, now that all the

15   evidence is ended, do the defendants wish to renew their Rule

16   29 motions?

17             MR. LLOYD:  Your Honor, before -- if I might address

18   the Court on behalf of Ms. Tucci-Jarraf, I believe that she

19   would like to move to reopen the evidence for the purpose of

20   making a proffer of the UCC-1 financing statements that were

21   earlier filed on the docket as an exhibit to a pretrial motion.

22   And I better pass it to her, because she understands better

23   than I do what she wants in that regard.

24             MS. TUCCI-JARRAF:  In the motion in limine, which was

25   done by the prosecutor, she had objected to any mention of the

UNITED STATES DISTRICT COURT

UCCs and the relevance of them.  However, in -- throughout the entirety of this case management, she objected only to -- as to the usage of them as far as the elements of the lack of authority and jurisdiction that had been presented.

I've consistently gone in to have them entered into the -- into evidence not regarding lack of jurisdiction or authority, but as proof of title, ownership, origin of funds, history of funds regarding the money that Mr. Beane had used, which was why I actually intended to come into the case.

That was my intent, not to hide money, but to come in, because I knew, had personal knowledge of the fact that the title and the ownership and the origin of funds and history of funds were there.

So that's why I would like to proffer that -- have the UCCs put into the record as evidence.  It goes to the -- it goes to my intent personally on -- for No. 7, Count No. 7 or Charge No. 7 regarding that I had no intent to hide anything, because there was legal and lawful documentation that has been registered inside the uniform commercial registry for the property -- United States property goods and property, which was exhibit -- Defendants' Exhibit No. 3.

So it goes to the credibility and weight of my own testimony as well as in the cite, the factualized trust, which was Exhibit -- the Prosecutor's Exhibit 155A, she entered in the factualized trust.  And inside that factualized trust after

1    every single UCC that was listed inside of there, it states

2    afterwards restated and incorporated as if set forth in full.

3            So lawfully and legally, they've already been entered

4    into the record, but the jury is not getting an opportunity to

5    actually see those documents and to weigh the testimony.  It

6    shows the time and the effort as well as the lawful and legal

7    registration of the -- what was secured, which includes the

8    property of Mr. Beane, as well as everyone else, as well as the

9    steps that were taken in order to secure that, and that it is

10   actually registered in an official registry of the United

11   States.

12           So it has nothing to do with authority and

13   jurisdiction regarding this Court or them, but it has to do

14   with title, ownership, and private property, and my intent and

15   the work and the personal knowledge I have regarding the fact

16   that they are secure.  But it actually lists and identifies

17   what is secure.

18           THE COURT:  All right.

19           MS. TUCCI-JARRAF:  Thank you.

20           THE COURT:  Thank you.

21           What's the government's response to that request by

22   this defendant?

23           MS. SVOLTO:  Your Honor, we don't object to the

24   extent that Ms. Tucci-Jarraf wants to proffer them.  But we

25   would like to note that the documents, which are roughly 400

                    UNITED STATES DISTRICT COURT

pages, are misleading. That was the purpose of our motion in limine. I would note that we do agree that the primary objective of our motion in limine was to exclude them on the grounds of them being misleading and irrelevant.

I don't believe that those documents purport to say what Ms. Tucci-Jarraf is proffering them to say, but that's been an issue here. And if Ms. Tucci-Jarraf is allowed to insinuate that the documents say something they don't actually say, and the jury can see it, then we don't object, we don't object to them being proffered into evidence.

But, you know, we do strongly object that they are misleading, and they don't purport to say what Ms. Tucci-Jarraf says. So if she proffers them, then I suggest she proffer them under oath. Thank you.

THE COURT: Well, let me make sure I understand the government's position. I mean, she is asking that the UCC documents, previously excluded by the Court, be allowed to be admitted into evidence. And I understand you're saying you don't think they should, but -- you know, are you objecting or not? I guess I want to make sure I understand the government's position.

MS. SVOLTO: Right. The bottom line with the UCC documents is to say that the Court doesn't have jurisdiction, so they are misleading to that extent.

But if we -- if the Court is asking do we object to

them being offered into evidence at this time, the answer is

no.  We do not object.

THE COURT:  Just a moment.  So let's make sure we're

clear.  Are these marked as exhibits?  Let's get the documents

before us, what you're proffering.

MS. TUCCI-JARRAF:  If I could have some time to -- I

do have them.  I do have them, if I could just --

THE COURT:  Are they right there?

MS. TUCCI-JARRAF:  Yes, but they're all mixed up from

when they got objected to and sustained.  I just have to put

them back together, but I do have them.

THE COURT:  Let's do this.  Let me go ahead and --

Mr. Lloyd?

MR. LLOYD:  Your Honor, I believe that the documents,

which are desired to be proffered into evidence, exist already

as an exhibit or collection of exhibits attached to either a

motion previously filed or a response to a motion in limine

previously filed, and that is probably the best source of what

Ms. Tucci-Jarraf wishes to offer.

THE COURT:  All right.  So you're asking that they be

admitted.

You're not objecting?  "You" being the government.

MS. DAVIDSON:  Your Honor, the problem -- I'm sorry

for us double teaming.

But, Your Honor, the problem with these documents are

UNITED STATES DISTRICT COURT

```
 1    that there's no possible way that she can say that they prove
 2    there's a secret fund which we're all entitled to without
 3    arguing that the country is bankrupt and she foreclosed upon
 4    it.  There's just simply no way.  I mean, she's been arguing
 5    and alluding to these UCC documents.  And there is no UCC
 6    registry.  She's been alluding --
 7              THE COURT:  Not to cut you off, I assume that's going
 8    to be part of her closing arguments.
 9              MS. DAVIDSON:  I assume so too, but how --
10              THE COURT:   You'll have a chance to rebut that.  I'm
11    just going back to basics.  So is the government -- I've heard
12    the government is not objecting to introduction of these
13    documents.  I'll probably want to take a look at them.  You're
14    just asking they be introduced into evidence.  If the Court --
15              MS. TUCCI-JARRAF:  That's correct.
16              THE COURT:  If the Court grants that, I don't know
17    that we'd need more testimony in any regard.  There has been
18    testimony as to those documents.
19              MS. DAVIDSON:  True.
20              THE COURT:  I think even during one of your
21    cross-examinations, they were even referenced.  I mean, you may
22    have -- "you" being the government may have them handy, but I
23    guess we need to look at the -- we'll look at the court record.
24              My only -- I don't know -- I understand that there
25    was argument -- I mean, the Court excluded them, not
```

UNITED STATES DISTRICT COURT

1   exclusively, but one of the primary reasons was to preclude any

2   argument about the Court's jurisdiction.

3           I have not gone back and looked at the documents to

4   see if within those documents themselves they reference --

5           MS. TUCCI-JARRAF:  They do not.  They reference the

6   title and ownership, identify the property --

7           THE COURT:  You understand if I let them in, you

8   still --

9           MS. TUCCI-JARRAF:  I would never --

10          THE COURT:  -- you still could not, you know, address

11  those types of arguments that have been excluded.

12          MS. TUCCI-JARRAF:  That's not my intention.  I have a

13  solution.

14          MS. DAVIDSON:  To -- Your Honor, also that the United

15  States is foreclosed upon.

16          THE COURT:  All right.  Okay.  Then the Court,

17  subject to -- I think, Ms. Tucci-Jarraf, I think it's incumbent

18  upon -- I know, Mr. Lloyd, your suggestion is to go back to the

19  motions previously filed.  But I think it's incumbent upon, so

20  there's no confusion or mistake, to let Ms. Tucci-Jarraf

21  provide the actual documents that she wants introduced.

22          Given the request, given the lack of objection, given

23  that there has been reference to the UCC documents throughout

24  the trial, while the Court believes there could be some

25  confusion by admitting them under Rule 403, but, again, given

UNITED STATES DISTRICT COURT

1       the lack of objection, and given what the Court stated, that

2       even if admitted, the motion in limine ruling is still valid in

3       terms of what the -- what the defendants can argue on the basis

4       of those document, otherwise the Court will admit the

5       documents, subject to Ms. Tucci-Jarraf providing them, the

6       actual documents she wants admitted and the Court's review.

7               So with that ruling having been done, I think we can

8       now look at the Rule 29 motions.

9               Do the defendants wish to renew their Rule 29

10      motions?

11              MS. TUCCI-JARRAF:  Yes, I do at this time without

12      prejudice.

13              THE COURT:  The Court obviously upon renewal would

14      look at all the evidence that's been presented, but -- and,

15      Mr. Beane, you wish to renew yours as well at the close of all

16      the evidence?

17              MR. BEANE:  Yes.  Yes.

18              THE COURT:  Is there any additional -- other than

19      urging the Court to consider all the evidence presented, is

20      there any additional argument that needs to be made on those

21      motions?

22              MS. TUCCI-JARRAF:  No, there's not.  I'm restating

23      the one that was made at halftime.  Thank you.

24              MR. BEANE:  No additional argument.  Restating as

25      well.

UNITED STATES DISTRICT COURT

1           THE COURT: Let me go ahead and address the Rule 29

2    motion.

3           The Court does have before it the defendants' motions

4    for judgments of acquittal under Federal Rules of Criminal

5    Procedure 29.  The Court heard argument from the parties on

6    these motions at the close of the government's case in chief on

7    January 26th.  The Court at that time deferred ruling until the

8    defendants renewed their motion at the close of all the

9    evidence, which both defendants have now done.

10          Going back to the previous arguments, first,

11   Defendant Tucci-Jarraf incorporated and reasserted the

12   arguments she raised in two documents she filed with the Court

13   the day the trial began, docket entries 101 and 102.

14          These documents dispute this Court's legal authority

15   over Ms. Tucci-Jarraf and purport to order the dismissal of the

16   indictment.

17          In addition, with regard to Count 7, Ms. Tucci-Jarraf

18   argued that the government has failed to provide sufficient

19   evidence and an agreement between her and her codefendant,

20   Randall Beane, to commit the federal offense of money

21   laundering.

22          Finally, she argued that the government has provided

23   insufficient evidence of her criminal intent with respect to

24   Count 7.

25          Second, Defendant Beane argued that there is

UNITED STATES DISTRICT COURT

insufficient evidence to submit Counts 1 through 7 against him
to the jury, specifically with regard to Counts 1 through 5,
charging wire fraud, and Count 6, charging bank fraud.
Mr. Beane asserted that the government has provided
insufficient evidence of the requisite mental states for these
offenses.  Mr. Beane also adopted the positions advanced by
Ms. Tucci-Jarraf in docket entries 101 and 102.

        The government responded, among other things, that it
has provided sufficient evidence to submit all charges against
both defendants to the jury.  As to Ms. Tucci-Jarraf, the
government argued that the circumstantial evidence it had
offered proved an agreement between the defendants to attempt
to launder the proceeds of Mr. Beane's wire and bank fraud.

        Among other things, the government pointed to
evidence it claimed showed Ms. Tucci-Jarraf had falsely claimed
to be Mr. Beane's attorney to convince Buddy Gregg Motor Homes,
Whitney Bank, and USAA, and others that the funds at issue were
legitimate.  The government also noted that Ms. Tucci-Jarraf
provided the factualized trust documents that appeared to
legitimize Mr. Beane's transactions.

        Next, as to Mr. Beane, the government argued, among
other things, that it had provided more than sufficient
circumstantial evidence of his deceitful intent with respect to
the wire and bank fraud counts, and the government pointed to
multiple items of testimony and evidence in this record that it

UNITED STATES DISTRICT COURT

submits, taken together, show Mr. Beane's intent to defraud USAA and others.

As to the applicable standard for the Court's consideration of these motions, Rule 29 provides that after the government closes its evidence, the Court on the defendants' motion must enter a judgment of acquittal for any offense for which the evidence is insufficient to sustain a conviction. Rule 29 permits the Court to reserve decision on such a motion until before or after the jury returns a verdict.

For purposes of Rule 29 consideration, evidence is sufficient to sustain a conviction if, after viewing the evidence in the light most favorable to the prosecution and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, any rational trier of fact could find that the government has proved the elements of the crime beyond a reasonable doubt.

In other words, this Court for purposes of assessing a Rule 29 motion does not function as the jury would in this case, as you will hear in the legal instructions that will be given to the jury. Again, and instead, the Court must, in assessing the Rule 29, motions view the evidence in the light most favorable to the prosecution and give the government the benefit of all inferences that could reasonably be drawn from the testimony.

Here, in viewing the evidence in the light most

UNITED STATES DISTRICT COURT

favorable to the government, as it must, and after giving the

government the benefit of all inferences that could reasonably

be drawn from the trial testimony, as it must, the Court finds

that a rational trier of fact could determine beyond a

reasonable doubt that the government has proved all the charges

against both defendants.

As to Ms. Tucci-Jarraf, the Court first notes that it

has previously rejected her theories that this Court lacks

subject matter jurisdiction and that the United States

Attorney's Office lacks authority to bring charges against her.

Furthermore, the Court finds that in viewing the

evidence, both at the close of the government's case in chief

as well as in viewing the evidence at the close of the trial,

that is, all the evidence presented at this trial, and, again,

viewing that evidence in the light most favorable to the

prosecution, the Court finds that the evidence is sufficient to

prove the existence of an agreement between the defendants to

commit money laundering.

While there is no evidence of an explicit written or

oral agreement between the defendants to commit such a crime,

the record does contain examples of Ms. Tucci-Jarraf presenting

herself as Mr. Beane's lawyer in e-mail and telephone

conversations with Buddy Gregg Motor Homes, Whitney Bank, Ted

Russell Ford and others in an effort to legitimize transactions

at issue.

UNITED STATES DISTRICT COURT

1          There's also evidence that Ms. Tucci-Jarraf drafted

2     the many documents submitted to the parties involved in these

3     transactions on Mr. Beane's behalf.  And, in fact, the

4     government submitted, among other things, into evidence audio

5     recordings and e-mail chains in which Ms. Tucci-Jarraf, again,

6     when viewing that in evidence the light most favorable to the

7     government, appears to act on Mr. Beane's behalf to attempt to

8     finalize several transactions, using the funds obtained from

9     USAA.

10          The Court also notes with respect to evidence of

11     intent, that the mental state required for Count 7 is that the

12     defendants knowingly and voluntarily agreed to commit one or

13     more of the object offenses.

14          Again, based on the factual circumstances just

15     discussed, the Court finds the record, when viewed in a light

16     most favorable to the prosecution, contains sufficient evidence

17     to permit a rational juror to find that the defendants

18     exhibited such a mental state.

19          And, therefore, the Court will deny

20     Ms. Tucci-Jarraf's Rule 29 motion, but, again, with respect to

21     that motion being made at the close of the government's case in

22     chief as well as that motion being renewed at the close of all

23     the evidence.

24          Next, as to Counts 1 through 6, as to Mr. Beane, the

25     Court has already rejected any argument derived from docket

UNITED STATES DISTRICT COURT

 1    entries 101 and 102.

 2          With respect to Mr. Beane's arguments concerning a

 3    lack of evidence of mens rea, both wire fraud and bank fraud,

 4    the Court notes do require proof of an intent to defraud or

 5    deceive.  And here, again, when viewing the evidence in light

 6    most favorable to the government, the Court finds sufficient

 7    evidence of intent, although some evidence elicited by the

 8    defendant suggests that Mr. Beane believed the money he took

 9    was his own.

10          The government has offered contrary evidence.  That

11    information as to the falsity of this belief was readily

12    available to Mr. Beane, thus, a rational juror could find that

13    Mr. Beane either intended to deceive or was deliberately

14    ignorant as to the significance of his actions and otherwise

15    did not have a good faith belief as to the origins or ownership

16    of the money he took.

17          Furthermore, the Court does note the government has

18    offered evidence, again, when viewed in the light most

19    favorable to the government, that shows the defendant,

20    Mr. Beane, devised a scheme based on the purchase of jumbo

21    certificates of deposit on his own, and that he elected to

22    attempt to purchase CDs worth a very large amount of money.

23          And, moreover, the evidence of Mr. Beane's actions

24    after the initial purchase of the CDs could be taken by

25    rational jurors showing an intent to profit from a fraudulent

                    UNITED STATES DISTRICT COURT

scheme.  This and the other circumstances surrounding the

transactions at issue would rationally permit an inference of

fraudulent or deceitful intent on the part of the defendant,

Mr. Beane.

Accordingly, the Court concludes that the government

has presented sufficient evidence for the jury to return a

verdict of guilty as to all counts in the indictment against

both defendants.  The Court therefore denies both the

defendants' Rule 29 motions, both when assessing the motion at

the conclusion of the government's case in chief as well as

assessing the renewed motions at the conclusion of all the

proof in this case.

All right.  Unless there's anything else to take up,

we'll take a short recess.

We'll allow you, Ms. Tucci-Jarraf, to double-check

the document -- the UCC documents that the Court is allowing

you to introduce into evidence.

Ms. Davidson, anything further?

MS. DAVIDSON:  Yes, Your Honor.  Just -- I would like

to see which documents before she -- and I still don't --

THE COURT:  That's what we're going to do at the

short break.  Y'all need to look at the documents.

MS. DAVIDSON:  Yeah.  I --

THE COURT:  Go ahead.

MS. DAVIDSON:  You know, I wasn't allowed to

UNITED STATES DISTRICT COURT

cross-examine her on these documents because they were

excluded, and so there has been no cross on these documents.

And so she's going to get -- be able to get up there and argue

whatever she wants to that they say that they say, which is

completely inappropriate.

THE COURT:  Are you asking to be able to cross her?

MS. DAVIDSON:  I really don't want to reopen the

proof, but the way --

THE COURT:  Let's start -- let's start with the

documents.  Take a short break, look -- let's make sure we have

the documents in order, and then I'll come back in and see if

we need to reassess the Court's ruling.

MS. DAVIDSON:  Okay.  Great.  Thanks.

THE COURT:  Thank you.

THE COURTROOM DEPUTY:  All rise.

(Recess from 11:09 a.m. to 11:22 a.m.)

THE COURTROOM DEPUTY:  All rise.

THE COURT:  Ms. Tucci-Jarraf, do you have the

assembled documents?

MS. TUCCI-JARRAF:  We've worked it out with Julie as

well as with Mr. Lloyd.  I'm going to let him handle it.

THE COURT:  Go ahead, Mr. Lloyd.  What's the

documents?

MR. LLOYD:  I'm sorry, Your Honor?

THE COURT:  What is the document number for these

UNITED STATES DISTRICT COURT

1    documents that Ms. Tucci-Jarraf has asked to be introduced?

2              MR. LLOYD:  It was 25, Your Honor.

3              THE COURT:  Defendants' Exhibit 25.

4              MR. LLOYD:  No, Your Honor.  It's the docket entry

5    that it's attached to is item 25 on the docket of this case.

6    It would be as an Exhibit 34.

7              THE COURT:  I mean, I'm just -- physically, where are

8    these documents?

9              MR. LLOYD:  Someone who assists Ms. Tucci-Jarraf is,

10   to my understanding, dealing with the clerk in the clerk's

11   office.

12             THE COURT:  She doesn't have the documents herself

13   right now?

14             MR. LLOYD:  No.  They're having to be copied, Your

15   Honor.

16             MS. TUCCI-JARRAF:  I have the documents in here, but

17   they're all mixed up.  And so to make it shorter and to make it

18   quick and efficient, we just went down to get the Document 25

19   that has all the UCCs in order.

20             THE COURT:  Any objection to going ahead -- going

21   ahead with closing argument while we -- while those documents

22   are assembled?  I don't hear any.

23             MS. DAVIDSON:  Your Honor --

24             THE COURT:  Everybody can be seated in the audience.

25             MS. DAVIDSON:  Your Honor, we did request that -- we

                     UNITED STATES DISTRICT COURT

object to these being admitted without cross-examination.
Ms. Tucci-Jarraf -- I was not allowed to cross-examine her on
these UCC documents.  And nowhere in here --

THE COURT:  I don't recall any questions where there
was objections.

MS. DAVIDSON:  There were actually.

THE COURT:  About the UCC documents?

MS. DAVIDSON:  Yes.  I -- Francis objected for her
and -- during that time, just when I was reading some of the
UCC documents and this Court's order regarding those documents,
that they were frivolous and devoid of any legal merit, and he
objected, and you sustained it and said to not ask anything
about the UCC documents.  So I did not cross-examine her on the
UCC documents.

And, Your Honor, there is no -- I just don't see how
these are admitted without the jurisdiction argument, because,
basically, these are all purporting to foreclose upon the
United States, and -- which is why we all have this secret
account.  It's the people's money, because the United States is
no longer there.  And I'm just restating what, you know, my
brief review of these documents seem to be.  Your Honor, we've
been opposing -- objecting --

THE COURT:  I mean, you've got a packet there.  Maybe
that is the actual documents.  Maybe we can just use those.

MS. DAVIDSON:  I'm not sure.  And I haven't even

UNITED STATES DISTRICT COURT

1  hardly reviewed them all.  But I went through them.  There's a

2  lot of non-intelligible pages, copies of nothing in here.  And

3  these were attached to Mr. Beane's motion, Government's

4  Exhibit -- I'm sorry, on the record, Document 19.

5          And there is lots of talk about -- I mean, just my

6  brief review of it, they keep talking about that the government

7  is no more and that the people have foreclosed upon it, and

8  that's what all these documents say.

9          So I just don't see any possible way that these can

10  be admitted without addressing the jurisdictional argument.

11  And if she -- I would like to see -- I would like her to show

12  me where exactly does it say there's a secret trust without

13  mentioning the United States being foreclosed upon and this

14  Court having no jurisdiction.  I don't think she can show me

15  that.

16          THE COURT:  Mr. Lloyd.

17          MR. LLOYD:  Your Honor, thank you.

18          I recall now due to opposing counsel having reminded

19  me of the nature of my objection to her question.  The question

20  sought to elicit testimony that there had been a previous

21  ruling in this case, two judicial rulings, one by Your Honor

22  after having received the report and recommendation of the

23  magistrate judge that the application to dismiss for want of

24  jurisdiction was denied, which, of course, would no more be for

25  the jury to know than for the jury to decide any issue of

UNITED STATES DISTRICT COURT

1  jurisdiction, which is solely the province of the judiciary and

2  remains.

3          THE COURT:  All right.  Thank you.  I'm ready to

4  rule.

5          After the close of the evidence, Defendant

6  Tucci-Jarraf moved to reopen the proof to offer a number of

7  Uniform Commercial Code documents that have not been into

8  evidence, but have been referenced at various points during

9  this trial, both with respect to some of the trust documents

10  that have been discussed as well as during cross-examination.

11  And although they have been referenced in direct and

12  cross-examination throughout portions of the trial until now,

13  none of the parties actually offered to admit them into

14  evidence.

15          Also, the Court does note the reference to the

16  Court's motion in limine in this case that may have made some

17  reference to those documents, but that ruling on the motion in

18  limine did not pertain to the documents themselves.  Instead,

19  they precluded defendants from making certain arguments in this

20  case, that being whether the Court had subject matter

21  jurisdiction, whether the United States government has

22  defaulted, has been foreclosed, or is otherwise legally

23  impaired, and whether the government has the legal authority to

24  bring a prosecution of the defendants for the charged offenses.

25          Initially, before our break, the government stated it

UNITED STATES DISTRICT COURT

did not object to these documents.  I'm now interpreting their

position as objecting to the documents.

The Court is going to overrule the objection and

allow the documents into evidence.  The documents are being

admitted into evidence, but the -- I hasten to add to the

defendants that the ruling related to the motion in limine

still applies with the -- and cannot be offered or argued with

respect to those aspects.

With respect to the government's request to further

reopen the proof to allow cross-examination of these documents,

the Court is going to deny that request.  The Court thinks

there's been sufficient testimony and evidence related to the

documents already, and so the Court is going to deny that

request as well.

And absent objection, I think we can go into closing

arguments and make sure the documents are admitted as, I

guess -- what did you say, Defendants' Exhibit 34?

Ms. Davidson, do you need time to look at these

documents before closing arguments?

MS. DAVIDSON:  Your Honor, I assume we're going to

break for lunch after my opening close so that I would have

time for my rebuttal.

Your Honor, I am struck with the irony of this, that

they're not allowed to argue that there's no jurisdiction, but

the reason these documents are so ridiculous is because they

UNITED STATES DISTRICT COURT

```
 1    say the United States is foreclosed upon.

 2              And so how do I address that?

 3              THE COURT:  Well, if you feel like you need to go

 4    into that after -- depending on the defendants' closing

 5    arguments, bring that to my attention.

 6              MS. DAVIDSON:  Thank you, Your Honor.

 7              THE COURT:  All right.  As with any motion in limine

 8    or order of the Court on a motion in limine, it's subject to

 9    being revisited depending on the proof and the argument.

10              MS. DAVIDSON:  Thank you, Your Honor.

11              THE COURT:  Ready to go?

12              MS. DAVIDSON:  I am.

13              THE COURT:  All right.  Let's bring in our jury.

14              Just as a reminder, the government has 50 minutes.

15    Ms. Davidson has requested up to 35 minutes --

16              MS. DAVIDSON:  Yes, Your Honor.

17              THE COURT:  -- for opening, and the defendants have

18    up to 50 minutes or 25 minutes apiece.

19              Hold on just a second.

20              MR. McGRATH:  I'm sorry, Judge.  It was up to 25

21    apiece, I thought was the suggested structure, if you will.

22    The defendants have spoken, and they were okay with 15 and 35,

23    pending the Court's approval.

24              THE COURT:  Well, I said -- I think what I said was

25    Mr. Beane could borrow from Ms. Tucci-Jarraf, because he has
```

1   more counts against him, is what I had said.  So are you going

2   first, Mr. Beane?

3           MR. BEANE:  Yes.

4           THE COURT:  And you only want to take 15 minutes?

5           MR. BEANE:  Yes.

6           THE COURT:  Well, we'll give you up to 30 minutes,

7   Ms. Tucci-Jarraf.

8           Mr. Beane, you can have up to 25 -- up to 20 minutes

9   for the 50 minutes combined.

10          MR. McGRATH:  Thank you, Judge.

11          THE COURT:  Now, we'll bring in our jury.

12      (Jury in at 11:32 a.m.)

13          THE COURT:  Thank you.  Everyone may be seated.  Let

14  me mention briefly to the jury, while you were patiently

15  awaiting, there was a request to reopen the proof to allow into

16  evidence one additional document or set of documents, which the

17  Court has allowed as Defendants' Exhibit 34, which is a

18  compilation of what I'll refer to as UCC documents that have

19  been referenced during portions of the trial.  Just wanted to

20  make the jury aware of that additional piece of evidence, that

21  the Court has allowed into evidence in this case.

22      (Defendants' Exhibit 34 admitted into evidence.)

23      (Whereupon, Government's closing argument and Defendant

24  Randall Keith Beane's closing argument were had and reported

25  but not herein transcribed.)

UNITED STATES DISTRICT COURT

1           THE COURT:  All right.  Thank you, Mr. Beane.

2           I think what we'll do is we'll go ahead and take a

3   lunch recess and then come back with the defendant,

4   Ms. Tucci-Jarraf's closing argument and the government's

5   rebuttal closing argument, and the Court's instructions, and

6   then you'll have the case probably mid afternoon.  So let's go

7   ahead and break until 1:30.

8           And just keep in mind, you know, we're in the middle

9   of closing arguments, so to the extent you eat lunch together,

10  please refrain in any way from deliberating about the case.

11  You need to wait until the remainder of closing arguments and

12  the Court's legal instructions.  At that time, you will be free

13  to deliberate.

14          So we'll stand in recess until 1:30.

15      (Jury out at 12:22 p.m.)

16          THE COURT:  Please sit down for a moment.  That's

17  fine.

18          Courtroom deputy has informed me she has downloaded

19  or produced the document -- the actual UCC documents, which

20  were attachment to Document 25 in the record, which is what --

21  the Court's understanding through Mr. Lloyd and

22  Ms. Tucci-Jarraf, is what they wanted entered into evidence.

23  Just verify that before you leave here over the lunch break.

24          Ms. Tucci-Jarraf is that what you have there?

25          MS. TUCCI-JARRAF:  Yeah.  This is what we have from

                    UNITED STATES DISTRICT COURT

1  Document 25, we only included 10 through 309.  We took off the

2  top parts because it was the indictment and the arrest warrant.

3  So this was the actual filings.  We have a hard copy for --

4              THE COURT:  Show that to Ms. Davidson.

5              MS. DAVIDSON:  I'm not sure that the pleadings

6  themselves is an appropriate --

7              MS. TUCCI-JARRAF:  It's not in there.  This is just a

8  notice of filing and then the --

9              MS. DAVIDSON:  Oh, notice of filing.

10             MS. TUCCI-JARRAF:  -- so that they know.

11             THE COURT:  Just spend the next five minutes

12 verifying all that so that it's ready to go back to the jury

13 when the closing arguments and instructions are done.

14             The Court does have the theories submitted by

15 Mr. Beane and Ms. Tucci-Jarraf.  They do comply with the

16 applicable standards for theories, so the Court will give

17 those -- by the defendants.

18             Anything else?

19             MS. DAVIDSON:  No, Your Honor.

20             THE COURT:  If not, we'll come back with up to 30

21 minutes and then the remainder of Ms. Davidson's time.  Up to

22 30 minutes for Ms. Tucci-Jarraf's closing arguments and --

23             MS. DAVIDSON:  I think I have 15, but I probably

24 won't take it all.

25             THE COURT:  You have at least 15.  You didn't use all

                     UNITED STATES DISTRICT COURT

```
 1    your opening.

 2              Anything else, Mr. Lloyd?

 3              MR. LLOYD:  Yes, Your Honor.  Ms. Tucci-Jarraf asked

 4    whether in our statement of the defense theories "unlawful

 5    activity" can be substituted for "money laundering"?  Is that

 6    correct?

 7              MS. TUCCI-JARRAF:  Uh-huh.

 8              THE COURT:  Do you have that, the original

 9    handwritten?

10              THE CLERK:  Final two words?

11              MR. LLOYD:  The change would be from "money

12    laundering" to "unlawful activity."

13              THE CLERK:  Right.  The final two words.

14              THE COURT:  Let me see it.

15              All right.  Anything else?  If not, we'll see

16    everybody back here in just about an hour.  Be ready to go at

17    exactly 1:30.

18         (Recess from 12:25 p.m. to 1:35 p.m.)

19              THE COURT:  Let me see Counsel and the parties here

20    at side conference.

21         (Bench conference begins.)

22              THE COURT:  All right.  Let me direct this to

23    Ms. Tucci-Jarraf.

24              MS. TUCCI-JARRAF:  Yes.

25              THE COURT:  The juror questionnaires, we talked about
```

UNITED STATES DISTRICT COURT

1  yesterday --

2          MS. TUCCI-JARRAF:  Yes.

3          THE COURT:  -- and I instructed you to return them by

4  today.  Actually, they were supposed to be returned at the

5  onset of trial.  What's the status?

6          MS. TUCCI-JARRAF:  I spoke to Julie.  When I got

7  them, I wasn't aware that I had to return them, but I hid them,

8  just to make sure if someone did come in the house, they

9  wouldn't look through them, because there's multiple people

10 that live in the house.  I hid them.  I just cannot remember

11 where I hid them at the moment.  And I was prepping my work

12 last night -- or this morning from 12:30 till 6:00, looking for

13 those, as well as trying to prep my cross and my closing.

14         As soon as I get home, I'm meeting with PO Walker,

15 and I'm going to be looking just for those.  I don't have

16 anything else to prep so that I would be able to locate them.

17 And I told Julie, if you want me on the record or however you

18 want, that they will come back to you guys without anyone

19 seeing them -- I haven't even looked at them.  I just opened

20 them.

21         THE COURT:  Let me just -- to the extent there's any

22 confusion or issue, the Court instructs, and I guess more to

23 the point, orders you to have those returned and reminds you of

24 your obligation not to -- to ensure that they not be reproduced

25 or disseminated in any fashion.

                UNITED STATES DISTRICT COURT

1          MS. TUCCI-JARRAF:  Absolutely.

2          THE COURT:  All right.  Thank you.

3          MS. TUCCI-JARRAF:  Thank you.

4      (Bench conference concluded.)

5          THE COURT:  All right.  We're ready to continue with

6  closing arguments.  We'll bring the jury in.

7      (Jury in at 1:37 p.m.)

8      (Whereupon, Defendant Heather Ann Tucci Jarraf's closing

9  argument, Government's rebuttal closing argument, and jury

10  charge were had and reported but not herein transcribed.)

11      (Jury out at 3:08 p.m.)

12          THE COURT:  All right.  Excuse me just a moment.

13  Everyone may be seated.

14          All right.  Let me ask counsel for the government,

15  any objections or further comments to the charge as given?

16          MS. DAVIDSON:  No, Your Honor.

17          THE COURT:  Ms. Tucci-Jarraf, any further objection

18  or comments in the charge as given?

19          MS. TUCCI-JARRAF:  No comments.

20          THE COURT:  Mr. Beane, any further objection or

21  comments to the charge as given?

22          MR. BEANE:  No.

23          THE COURT:  All right.  Then unless there's anything

24  further then, we will stand down pending either a verdict or a

25  question by the jury.  If they don't reach a verdict by the

UNITED STATES DISTRICT COURT

conclusion of the day, I will call them back in and give them

some overnight instructions. But we'll otherwise stand in

recess until we hear from the jury.

Ms. Norwood had to step out, but I think she would

ask, so I'll ask on her behalf, we won't keep the courtroom

open during the jury deliberating process. The jury does not

come back in here, but because of everything that's going on,

we'll ask everyone to leave the courtroom.

I think if she doesn't have contact information of

counsel or the parties, if you'll leave that with the court

reporter -- I think she already has them -- but just make sure

she can contact you, and we'd obviously give sufficient time to

get back here. But getting back here means 10 or 15 minutes

sufficient time, not hours.

So with that in mind, again, Ms. Tucci-Jarraf or

Mr. Beane, if you have any questions in that regard, talk to

Mr. Lloyd or Mr. McGrath who are experienced in that regard.

But otherwise, the -- we'll stand down and the

courtroom will be closed pending a question or verdict by the

jury.

Thank you, everyone.

(Recess from 3:10 p.m. to 4:38 p.m.)

THE COURTROOM DEPUTY: All rise.

THE COURT: All right. The Court is informed that

the jury wishes to break for the day and resume deliberations

UNITED STATES DISTRICT COURT

1       in the morning, so I'll bring them in and give them

2       instructions, one of which, so everyone will know, is that you

3       will hear me tell them this, we won't reconvene court in the

4       morning.  We'll just instruct -- I'll give them instructions

5       about resuming their deliberations in the jury room, but I'll

6       talk about that with y'all as well after I dismiss the jury.

7               So let's bring the jury in.

8           (Jury in at 4:39 p.m.)

9               THE COURT:  Thank you.  Everyone may be seated.

10              Again, good afternoon.  Welcome back to the members

11      of the jury.  The Court is informed that the jury would like to

12      seize their deliberations for the day and come back in the

13      morning to resume deliberations, I think, from the nodding

14      heads, that's what everybody wants to do and that's certainly

15      fine.

16              Before I dismiss you today, let me give you a few

17      instructions.  One is the one I give you every day, while you

18      are now -- you've heard all the evidence, you've heard the

19      arguments and instructions, and you have actually begun your

20      deliberations, you should basically -- we are now seizing

21      deliberations for the day.  So until you resume deliberations

22      until tomorrow, there should be no further discussion among

23      yourselves about the case or deliberations in any fashion.

24              And then my other instruction still applies in terms

25      of not talking about the case with anyone or allowing anyone to

UNITED STATES DISTRICT COURT

talk with you about the case, not reading anything about the

case, not doing any independent research and so on and so

forth.

Just keep those instructions in mind. Now, tomorrow

morning, we will not reconvene court at 9:00 a.m. I assume

that's the time you would generally like to resume your

deliberations. So what we'll do is, you'll just gather in the

jury room, deliberation room at 9:00 a.m.

In that regard, you know, obviously, you'll come in

two at a time, three at a time, four at a time till you get to

12. Until all 12 of you are there, you should not begin your

deliberations.

For example, if it's 9:00 a.m. and ten of you are

there, the ten of you don't discuss anything. So in other

words, don't -- seize your deliberations now and don't be --

don't resume them until at or around 9:00 a.m. tomorrow when

all 12 of you are back in the jury room and your foreperson

directs you to resume your deliberations.

So any questions about those instructions?

All right. So we'll plan to see you at some point

tomorrow, but otherwise you-all will see each other tomorrow

morning, which would be Thursday, February 1. We're down to

February.

I would say, and I'll -- if I don't forget to say at

the end of the case, obviously, we've been here a few more days

UNITED STATES DISTRICT COURT

beyond what the Court estimated, and I certainly appreciate

everyone's not only cooperation but patience and attention

throughout the multiday periods we've been here, including

tomorrow.

With that being said, everyone have a good evening,

and the jury is dismissed for the day.

(Jury out at 4:42 p.m.)

THE COURT: All right. Everybody be seated just a

moment. One more matter the Court wants to address.

First of all, before I do that, as I was stating, and

counsel is aware of this, but the parties may not have been

aware, that when the jury comes back to continue deliberations,

we don't open court. We just allow them to gather in the jury

deliberation room.

So we will not open court at 9:00 a.m. But just like

this afternoon, if and when we receive a verdict or question

from the jury, Ms. Norwood will contact you in the same fashion

she did today.

The matter I wanted to address has to deal with the

jury questionnaires that we talked about briefly at the -- I

guess before we -- or right after lunch today.

And the Court, as it discussed then, previously

instructed the defendant, Ms. Tucci-Jarraf, to return her

copies of the jury list and questionnaire. That's been done on

several previous occasions, including directing that they be

UNITED STATES DISTRICT COURT

1    returned at the latest by the start of trial this morning.

2    That was not done.

3            And Ms. Tucci-Jarraf, at our sidebar conference,

4    informed the Court that she does not currently remember where

5    she placed these documents in the home where she is residing

6    with several other people, but that she plans, now that the

7    daily trial preparation is over, to locate them tonight and

8    return them.

9            The Court wants to remind you, Ms. Tucci-Jarraf, that

10   Paragraph -- I believe it's Paragraph II(i) of the pretrial

11   order in this case provides as follows, quote, following jury

12   selection, counsel and any other person provided the jury list

13   must return to the clerk the jury list and any copies made from

14   the jury list or destroy them, closed quote.

15           Local Rule 83.12 of this Court contains the exact

16   same instruction, and these rules are consistent with the

17   privacy policies promulgated by the Judicial Conference of the

18   United States.

19           The Court is also informed that both the

20   government -- counsel for the government and Mr. Beane, as an

21   individual in this case, complied with the instructions in the

22   pretrial order and returned their copies of the questionnaires

23   immediately after jury selection.

24           Therefore, so that there's no question or confusion,

25   the Court is at this time ordering the defendant,

UNITED STATES DISTRICT COURT

Ms. Tucci-Jarraf, to return your copy of the jury list and questionnaire by 9:00 a.m. tomorrow, February 1. You should deliver these documents to the clerk's office counter in a sealed envelope with the words, quote, Judge Varlan's Courtroom Deputy, closed quote, written on the outside of the envelope.

I'll also remind you, since you're the only one who's not returned the jury questionnaire, that the watermark included on these documents prohibits you or anyone else from copying, reproducing, or otherwise distributing these documents, or the information they contain without the Court's permission.

So I want to be clear as to what the Court is ordering, again, ordering that this particular defendant return her copy of the jury list and questionnaire by 9:00 a.m. tomorrow, February 1, and deliver those documents to the clerk's office counter in a sealed envelope with the words "Judge Varlan's Courtroom Deputy" written on the outside of the envelope.

Mr. Lloyd, I know you're standby counsel in this case, the Court is going to direct you to work with the defendant, Ms. Tucci-Jarraf, as necessary, to make sure she not only understands this order, which should be self-explanatory, but to help ensure compliance with the order of this court.

MR. LLOYD: Yes, Your Honor.

THE COURT: With that being ordered and that being

UNITED STATES DISTRICT COURT

1    said, I will adjourn, again, as stated, pending a decision or

2    question by the jury tomorrow.  Thank you.

3              THE COURTROOM DEPUTY:  All rise.  This honorable

4    court shall stand in recess.

5         (Proceedings recessed at 4:46 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                         UNITED STATES DISTRICT COURT

1              **CERTIFICATE OF REPORTER**

2      STATE OF TENNESSEE

3      COUNTY OF KNOX

4              I, Rebekah M. Lockwood, RPR, CRR, do hereby certify

5      that I was authorized to and did stenographically report the

6      foregoing proceedings; and that the foregoing pages constitute

7      a true and complete computer-aided transcription of my original

8      stenographic notes to the best of my knowledge, skill, and

9      ability.

10         I further certify that I am not a relative, employee,

11     attorney, or counsel of any of the parties, nor am I a relative

12     or employee of any of the parties' attorneys or counsel

13     connected with the action, nor am I financially interested in

14     the action.

15         IN WITNESS WHEREOF, I have hereunto set my hand at

16     Knoxville, Knox County, Tennessee this 22nd day of April, 2018.

17

18

19

20     _____
       REBEKAH M. LOCKWOOD, RPR, CRR
21     Official Court Reporter
       United States District Court
22     Eastern District of Tennessee

23

24

25