IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

_____
                                )
UNITED STATES OF AMERICA,        )
                                )
          Plaintiff,             )
                                )
vs.                              )   Case No.:  3:17-CR-82
                                )
RANDALL KEITH BEANE AND          )
HEATHER ANN TUCCI-JARRAF,         )
                                )
          Defendants.            )
_____)

**JURY VOIR DIRE,**
**JURY INSTRUCTIONS,**
**GOVERNMENT'S OPENING STATEMENT**

**EXCERPT OF JURY TRIAL PROCEEDINGS**
**BEFORE THE HONORABLE THOMAS A. VARLAN**

**January 23, 2018**
**9:47 a.m. to 2:02 p.m.**

**APPEARANCES:**

**FOR THE PLAINTIFF:**          CYNTHIA F. DAVIDSON, ESQUIRE
                                ANNE-MARIE SVOLTO, ESQUIRE
                                Assistant United States Attorney
                                United States Department of Justice
                                Office of the United States Attorney
                                800 Market Street
                                Suite 211
                                Knoxville, Tennessee 37902

**FOR THE DEFENDANT:**          RANDALL KEITH BEANE, PRO SE
**RANDALL BEANE**                Blount County Detention Center
                                920 East Lamar Alexander Parkway
                                Maryville, Tennessee 37904

**FOR THE DEFENDANT:**          STEPHEN G. McGRATH, ESQUIRE
(As Elbow Counsel)              9111 Cross Park Drive
                                Suite D-200
                                Knoxville, Tennessee 37923

**REPORTED BY:**
Rebekah M. Lockwood, RPR, CRR
Official Court Reporter
(865) 210-6698
P.O. Box 1823

**APPEARANCES (CONTINUED):**

| | |
|---|---|
| **FOR THE DEFENDANT:** | HEATHER ANN TUCCI-JARRAF, PRO SE |
| **HEATHER ANN** | 105 Orchard Lane |
| **TUCCI-JARRAF** | Oak Ridge, Tennessee 37830 |

| | |
|---|---|
| **FOR THE DEFENDANT:** | FRANCIS LLOYD, ESQUIRE |
| (As Elbow Counsel) | 9111 Cross Park Drive |
| | Suite D-200 |
| | Knoxville, Tennessee 37923 |

## INDEX

| | PAGE |
|---|---|
| Jury Voir Dire | 3 |
| Jury Impaneled | 83 |
| Jury Instructions | 91 |
| Opening Statement by Ms. Svolto | 99 |

**REPORTED BY:**
Rebekah M. Lockwood, RPR, CRR
Official Court Reporter
(865) 210-6698
P.O. Box 1823
Knoxville, Tennessee 37901

1    (Excerpt of proceedings.)

2    (Prospective Jurors in at 9:45 a.m.)

3         THE COURT:  If the middle section gets filled up,

4    there's some seats, open benches on the far side of the

5    courtroom as well.

6         All right.  I think now we have all of our

7    prospective jurors in the courtroom, and I want to thank you

8    preliminarily for offering yourselves for jury service this

9    morning.  I'll explain more about your duties and roles as

10   prospective jurors, but before we do that, I now need, although

11   you've now -- you're now comfortably seated, those of you who

12   have arrived for prospective jury service in this case, I need

13   all of y'all to stand and raise your right hand to be sworn in

14   as prospective jurors in this case.

15   (Prospective jurors duly sworn.)

16        THE COURTROOM DEPUTY:  Thank you.

17        THE COURT:  All right.  Thank you.  You may be

18   seated.

19        Next, our courtroom deputy is going to call up 34 of

20   you in our what's now the expanded jury box for -- to undergo

21   initial questioning as prospective jurors in this case.  We're

22   going to refer to you by your juror numbers, as is the custom

23   in this court -- in this courtroom.

24        So as you hear your number called, if you'll follow

25   the instructions of our court security officer, but we're going

UNITED STATES DISTRICT COURT

Jury Voir Dire

1  to start with the temporary seats in front will be the first

2  row and going back rows one through four.  And then after the

3  34 are up here, I'll explain it a little bit more how we're

4  going to go about jury selection this morning.

5              THE COURTROOM DEPUTY:  Juror 3, Juror No. 169,

6  one-six-nine, 36, 158, 144, 184, 163, 222, 37, 167, 150, 126,

7  114, 148, 124, 130, 35, 129, 104.

8              THE COURT:  What's that number again, Julie?

9              THE COURTROOM DEPUTY:  104.

10             THE COURT:  Thank you.

11             THE COURTROOM DEPUTY:  118, 151, 161, 108, 149, 135,

12  137, 143, 32, 152, 131, 146, 28.

13             THE COURT:  Thank you.  I think we're getting all of

14  our jurors who were not initially called up back in the middle

15  section so that you can see me, the Court, while I'm asking

16  questions.  And I would say this to those prospective jurors

17  still in the audience, as I ask -- my initial questions are

18  going to be directed to those in our expanded jury box, but --

19  and I know you'll do this anyway -- but just listen to the

20  questions that the Court is asking, because if you need to be

21  called up, not at the beginning, but midstream, the Court

22  dismisses a juror and calls you up, I may not go back and ask

23  all the questions that I've asked today, and I might catch you

24  up in a little more rapid fashion.  So if you have any

25  particular responses to questions that the Court asks, just

UNITED STATES DISTRICT COURT

Jury Voir Dire

1    keep that in mind in case you're called up as a prospective

2    juror.

3            Let me begin, just with a brief introduction.  We're

4    gathered here today to hear a criminal case, which is commenced

5    by the United States, which I may refer to as the prosecution

6    or the government, against the defendants in this case,

7    Mr. Randall Keith Beane and Ms. Heather Ann Tucci-Jarraf.

8            Now, you should understand that the indictment

9    against these defendants is simply a set of charges, and that

10   it is not in any sense evidence of the allegations that it

11   contains.  The defendants have both pleaded not guilty to the

12   indictment, and the government therefore has the burden of

13   proving each of the essential elements of the indictment beyond

14   a reasonable doubt.  The purpose of this trial is to determine

15   whether the government has met this burden.

16           There are three basic rules about a criminal case,

17   which you must keep in mind.

18           First, the defendants are presumed innocent unless

19   and until proven guilty.  Again, the indictment against the

20   defendants by the government is only an accusation, nothing

21   more.  It is not proof of guilt or anything else.  The

22   defendants therefore start out with a clean slate.

23           Second, the burden of proof is on the government

24   throughout the entire case.  The defendants have no burden to

25   prove their innocence or to present any evidence or to testify.

UNITED STATES DISTRICT COURT

 1    Since the defendants have the right to remain silent, the law

 2    prohibits you from considering that either or both defendants

 3    may not have testified in arriving at your verdict.

 4         And, third, the government must prove the defendants'

 5    guilt beyond a reasonable doubt.

 6         I'll give you further instructions on this point

 7    later, but bear in mind that in this respect a criminal case is

 8    different from a civil case.

 9         Now, the purpose of this stage of the proceedings,

10    sometimes referred to more formally as the voir dire process,

11    but the jury questioning process, is ultimately to pick a fair

12    and impartial jury, a jury of 14 individuals, 12 primary jurors

13    and two alternates to hear this case.

14         It's also designed to enable the Court to determine

15    whether any prospective jurors should be excused for cause.

16    For example, you know something about this case, you know the

17    individuals involved in some fashion, or there's some other

18    reason that you, for purposes of this case, could not function

19    in a fair and impartial manner, or you may have an

20    irreconcilable scheduling conflict, which we'll also address

21    momentarily.

22         The purpose of this process is also to enable the

23    parties, the government and the two defendants, to exercise

24    their individual judgment with respect to what are called

25    peremptory challenges, that is, challenges for which no reason

UNITED STATES DISTRICT COURT

 1  need be given.  Each side has a certain number of peremptory

 2  challenges.  In addition, each side can challenge for cause, by

 3  which I mean each side can ask a juror be excused for a

 4  specific reason.

 5          If you are excused by the Court or by either side

 6  through this process, I hasten to add, please don't feel

 7  offended or feel your honesty or integrity is being questioned.

 8  It certainly is not.  This is simply the process that our

 9  Federal Rules of Criminal Procedure provide for us to pick a

10  jury in a criminal case.

11          Now, in this case, the Court, as allowed by the

12  Federal Rules of Criminal Procedure, is going to conduct all

13  the voir dire or jury questioning itself, but the Court has

14  given the parties the opportunity to submit proposed questions

15  to the Court.  So the Court has taken those submissions as well

16  as the questions normally asked by the Court and the Court will

17  be conducting all of the jury questioning in this case.

18          I also want to add on the front end, if you wish to

19  give an answer to any question in a more private fashion, as

20  opposed to in open court as we are here, then you may do so

21  only in my presence, the presence of the parties, and the court

22  reporter.

23          For example, and this doesn't often happen, but

24  sometimes it does, if an answer involves a matter you consider

25  private or personal or involves an opinion you feel is so

UNITED STATES DISTRICT COURT

Jury Voir Dire

1    strong that it might disqualify you as a juror, then you may

2    answer the question in that more private fashion as I've just

3    described.  And if that's the case, just get my attention when

4    a question is asked.

5         We're going to use a microphone when we -- if there

6    are individual answers to questions, we're going to pass a

7    microphone among you, so that way, everyone, particularly the

8    Court and the parties, can hear your answers.

9         But let me begin with -- by giving you an overview of

10   what this case is about.  I'm going to do that by summarizing

11   the indictment, again, hastening to add that the indictment is

12   not in any way at all any evidence of guilt.  Again, it's just

13   a -- the charge brought by the government.

14        But I'm going to summarize the indictment by telling

15   you that in this case, the indictment contains seven counts,

16   which I'll, again, summarize in more detail momentarily.

17        Counts 1 through 5 only apply to the defendant,

18   Randall Keith Beane, and charge wire fraud in violation of 18

19   United States Code Section 1343.  Count 6 also applies only to

20   the defendant, Mr. Beane, and charges bank fraud in violation

21   of 18 United States Code Section 1344.  Finally, Count 7 of the

22   indictment applies to both the defendant, Mr. Beane, and the

23   defendant, Ms. Heather Ann Tucci-Jarraf, and charges conspiracy

24   to commit money laundering in violation of 18 United States

25   Code Section 1956(h).

UNITED STATES DISTRICT COURT

Jury Voir Dire

1          Now, to summarize in a little more detail, Counts 1

2     through 5 of the indictment charge that in or about July 2017,

3     the defendant, Randall Keith Beane, initiated a scheme to

4     obtain funds that did not belong to him by exploiting the

5     online banking options of the United Services Automobile

6     Association or USAA.  The indictment also alleges that as part

7     of this scheme, the defendant, Mr. Beane, purchased jumbo

8     certificates of deposit with funds that did not belong to him,

9     using both fictional bank accounts and real routing numbers

10    that did not belong to him, and in doing so, transmitted

11    signals and sounds by wire communication in interstate

12    commerce.

13          Count 6 of the indictment charges from on or about

14    July 5 to July 11, 2017, the Defendant Beane devised a scheme

15    to defraud financial institutions and to obtain money and other

16    property of financial institutions by means of false and

17    fraudulent pretenses, representations, and promises.  This

18    scheme allegedly consisted of the Defendant Beane purchasing

19    certificates of deposit with money that did not belong to him,

20    altering financial instruments without permission or authority,

21    and liquidating the certificates of deposit to obtain money and

22    property fraudulently and for his own benefit.

23          Finally, Count 7 of the indictment charges that in or

24    about July 2017, the defendants, Randall Keith Beane and

25    Heather Ann Tucci-Jarraf, entered into a conspiracy to commit

UNITED STATES DISTRICT COURT

Jury Voir Dire

 1   the following crimes against the United States:

 2           First, knowingly conducting financial transactions

 3   affecting interstate commerce that involve the proceeds of wire

 4   fraud and bank fraud, intending to promote that unlawful

 5   activity.

 6           Second, knowingly conducting financial transactions

 7   affecting interstate commerce that involve the proceeds of wire

 8   fraud and bank fraud, knowing these transactions were designed

 9   to conceal the nature of the proceeds of that unlawful

10   activity.

11           And, third, knowingly engaging in monetary

12   transactions involving a financial institution and affecting

13   interstate commerce where the property involved had a value

14   greater than $10,000 and was derived from wire fraud and bank

15   fraud.

16           Now, again, keeping in mind that these are only

17   allegations and are not proof of the allegations themselves,

18   but having heard that overview of the indictment, does anyone

19   believe they know anything about this case, either through

20   personal knowledge via something you've heard or read or by

21   discussing it with someone else?

22           Any prior knowledge, at least to your knowledge,

23   based on just what I've told you so far about this case?

24           Yes, Juror 151.  We'll pass the microphone there.

25           PROSPECTIVE JUROR 151:  I was just reading, like, the

UNITED STATES DISTRICT COURT

Jury Voir Dire

```
 1    upcoming cases just to see what I possibly would be involved
 2    with, and I did see this one.
 3              THE COURT:  So you read something in the newspaper
 4    that might have been reported about --
 5              PROSPECTIVE JUROR 151:  Yeah, there's a lot of
 6    articles online.
 7              THE COURT:  Again, it's not necessarily unusual for
 8    someone to have read or have some knowledge of the case,
 9    newspaper articles.
10              The real question is, can you put aside whatever you
11    may have read or heard about this case beforehand -- and this
12    is a question I'll ask in a little more detail later, but can
13    you put aside what you may have heard or read about the case
14    and, if selected as a juror in this case, decide the case
15    solely on the evidence that's presented during the course of
16    this trial?
17              PROSPECTIVE JUROR 151:  Yeah, I think I can.
18              THE COURT:  Okay.  Any hesitation in that regard?
19              PROSPECTIVE JUROR 151:  No.
20              THE COURT:  Okay.  Thank you.
21              Anybody else believe they may have read or heard
22    something about this case in any fashion?
23              All right.  The trial of this case, the parties have
24    anticipated, is to last up to four days.  That would take us
25    through this week.  But, you know, sometimes things happen in
```

UNITED STATES DISTRICT COURT

1   the trial, and sometimes I have to interrupt the trial to

2   handle other matters unrelated to this case and we have to take

3   longer breaks than usual.

4        So with the four days in mind, but also looking -- go

5   ahead and think into the beginning of next week, at least the

6   first day of next week, if not the second day, I don't think

7   we'll go that far, but just the rest of this week and the

8   beginning of next week.

9        You know, obviously, you're here, you've been

10  summoned here, but, you know, certainly, I want you to

11  understand, and I know you appreciate that jury service is not

12  only a responsibility, but a right and a privilege afforded in

13  this country and the right to a jury afforded to those alleged

14  to have undertaken criminal activity.  And I know sometimes

15  there are conflicts, and we'll address those, but hopefully we

16  can work around those, too, if someone may have a conflict.

17       But does anyone believe, given that proposed trial

18  schedule, from a work standpoint, a family standpoint, a

19  schooling standpoint, or any other standpoint the Court may

20  have overlooked, does anybody have any problems potentially

21  with sitting over the next -- the rest of this week and

22  potentially in the beginning of next week?

23       Let me first see a show of hands.  Just one.  All

24  right.  Juror 144.

25       PROSPECTIVE JUROR 144:  I have a scheduled business

UNITED STATES DISTRICT COURT

1    trip that I'm supposed to be leaving town on Thursday.

2              THE COURT:  Okay.  And that's prescheduled and --

3              PROSPECTIVE JUROR 144:  Yes, sir.

4              THE COURT:  -- paid for, so on and so forth?  Then

5    we'll dismiss you for purposes of this case.  The Court does

6    have several scheduled trials on its calendar for the first

7    quarter of this year, so we'll bring you back for one of those.

8    Juror 144 is excused.

9              Is there anybody else?

10             Yes, Juror No. 32.

11             PROSPECTIVE JUROR 32:  Hi.  I own and operate a small

12   bakery, and I'm a big part of the production, and I just don't

13   think I could leave it up to the rest of my staff to do what

14   has to be done.

15             THE COURT:  Is it a small business with --

16             PROSPECTIVE JUROR 32:  It is.

17             THE COURT:  -- with limited staff?

18             PROSPECTIVE JUROR 32:  Yes.

19             THE COURT:  Do you think if we had another trial

20   that's only going to last one or two days, you could do that?

21             PROSPECTIVE JUROR 32:  Perhaps, yes.

22             THE COURT:  Why don't we save you for that then.  You

23   may be excused.

24             PROSPECTIVE JUROR 32:  Thank you.

25             THE COURT:  Anybody else need to talk about any

                    UNITED STATES DISTRICT COURT

1  scheduling conflicts?

2          All right.  Certainly, I appreciate everyone's

3  potential willingness to serve over the next four or five days

4  or so.

5          Let me go ahead then and call up -- and the first

6  juror -- the next juror called up will sit on the front row and

7  the second juror called up will sit on the back row.

8          THE COURTROOM DEPUTY:  Juror 34, Juror 132.

9          THE COURT:  Let me -- hold onto the microphone.  Let

10  me just go ahead while Juror 132 is getting seated, let me ask

11  Juror 34 and 132, start with scheduling, any scheduling

12  difficulties you need to bring to the Court's attention in

13  terms of potential service in this case?

14          Yes, Juror 34?

15          PROSPECTIVE JUROR 34:  I also have a business

16  conference that I'm going to Thursday through Monday that's

17  already been planned and scheduled.

18          THE COURT:  All right.  Then we'll save you for one

19  of the other upcoming trials.

20          Juror 132, any scheduling difficulties?

21          All right.  Shaking her head no.

22          Any prior knowledge of this case, as far as you know?

23          PROSPECTIVE JUROR 132:  No, sir.

24          THE COURT:  All right.  Thank you.  Juror 34, you're

25  excused, and we'll call up an additional juror.

UNITED STATES DISTRICT COURT

1          THE COURTROOM DEPUTY:  107.

2          THE COURT:  Good afternoon, Juror 107.  Any

3   scheduling difficulties?

4          PROSPECTIVE JUROR 107:  No, sir.

5          THE COURT:  Thank you.  Any prior knowledge of this

6   case?

7          PROSPECTIVE JUROR 107:  No, sir.

8          THE COURT:  All right.  Thank you.

9          Returning to the jury panel as a whole, somewhat as a

10  corollary to what I've been asking about scheduling, is there

11  any member of the panel who has any special disability or

12  problem that would make it difficult or impossible for you to

13  serve as a member of the jury?

14          For example, you know, sometimes people have

15  difficulty sitting for long periods of time.  We usually --

16  it's a little unstructured this morning, but, typically, we'll

17  start trial at nine o'clock, take a mid-morning break, lunch

18  break, mid-afternoon break, and finish 5:00 to 5:30.

19          But does anybody have any issues in terms of making

20  it difficult or impossible for you to serve?

21          Yes, Juror 222?

22          PROSPECTIVE JUROR 222:  May I come up in private,

23  please?

24          THE COURT:  Yes, you may.

25          Anybody else have any -- while she's coming up -- you

UNITED STATES DISTRICT COURT

1    can just make your way, ma'am.  Make your way around here to

2    the corner.

3              PROSPECTIVE JUROR 222:  Yes, sir.

4              THE COURT:  Anybody else have any issues in that

5    regard?

6              All right.  I'm going to talk to Juror 222

7    separately.

8         (Bench conference begins.)

9              PROSPECTIVE JUROR 222:  I have a thyroid condition,

10   and I do not feel that I am eligible to be a juror because of

11   this condition and because of the side effects of

12   [unintelligible].

13             THE COURT:  All right.  Is that something that has to

14   be -- they're monitoring by medication.

15             PROSPECTIVE JUROR 222:  I'm going to a specialist at

16   the end of March.  There's the soonest they could get me in.

17   That way -- an endocrinologist to see if they can get things

18   elevated.  But it's causing side effects, and I don't feel that

19   I should be --

20             THE COURT:  And the side effects you're pointing to

21   are tiredness, fatigue, difficulty concentrating, among

22   other --

23             PROSPECTIVE JUROR 222:  Right.

24             THE COURT:  We'll go ahead and excuse you.

25             PROSPECTIVE JUROR 222:  Okay.

UNITED STATES DISTRICT COURT

1          THE COURT:  If you're called again for jury service,

2   you can let the jury administrator know where you are in that

3   regard.

4          PROSPECTIVE JUROR 222:  Okay.  All right.  Thank you

5   very much.

6      (Bench conference concluded.)

7          THE COURT:  The Court has excused Juror 222.  We'll

8   call up an additional juror at this time.

9          THE COURTROOM DEPUTY:  31.

10         THE COURT:  Thank you, Juror 31.  Good morning.  Any

11  scheduling difficulties or any other difficulties in terms of

12  prospectively serving in this case?

13         PROSPECTIVE JUROR 31:  No, sir.

14         THE COURT:  Any difficulties with the schedule as

15  outlined by the Court?

16         PROSPECTIVE JUROR 31:  No.

17         THE COURT:  All right.  Thank you very much.

18         Have I missed anybody about scheduling difficulties

19  or issues regarding service?

20         All right.  Thank you.

21         Now, I'm going to introduce the parties and counsel

22  in this case in just a moment.

23         But before I do that, I want to inform you that the

24  defendants in this case, Mr. Beane and Ms. Tucci-Jarraf have

25  chosen to represent themselves, which is their constitutional

UNITED STATES DISTRICT COURT

Jury Voir Dire

1    right under our United States Constitution.  They have been

2    informed that the law does not allow me to assist them or to

3    relax the rules of evidence and procedure that apply to the

4    trial of this case.

5            Further, the fact that the defendants in this

6    criminal trial have chosen to represent themselves must not

7    enter into your deliberations if you are selected as a juror.

8            So let me ask you, would the fact that the defendants

9    are representing themselves cause anyone on the panel to be

10   less than fair and impartial as a juror to either side in this

11   case?

12           Thank you.

13           The Court has also -- and I'll make these

14   introductions as well -- since the defendants have exercised

15   their right to represent themselves, the Court has also

16   appointed the defendants standby or what's sometimes referred

17   to as elbow counsel.

18           The role of standby counsel is to provide the

19   defendants with whatever assistance they may seek throughout

20   the trial.  It is up to the defendants to determine how, if at

21   all, they wish to use the guidance or skills of their standby

22   or elbow counsel in this case.

23           Will the fact that the defendants have been appointed

24   elbow counsel cause anyone on the panel to be less than fair

25   and impartial as a juror to either side in this case?

UNITED STATES DISTRICT COURT

1        And you understand -- and, again, it's up to the

2  defendants, but they may present their case in their entirety,

3  they may utilize elbow counsel in some fashion to assist them,

4  or they may otherwise consult with elbow counsel.

5        Does everyone understand that?  And that would not

6  enter into your deliberations in any way as well?

7        All right.  Thank you.

8        All right.  Let me begin, I'm going to make the

9  introductions, but I am going to ask counsel for the government

10 to introduce those who are with them.

11       But the counsel for the government today is

12 Ms. Cynthia Davidson.  If you'll stand and Ms. Anne-Marie

13 Svolto.

14       And, Ms. Davidson, if you'll introduce those who are

15 with you.

16       MS. DAVIDSON:  Yes, Your Honor.

17       Seated at counsel table is the representative from

18 the FBI, Mr. Parker Still.  He's a special agent with the FBI.

19 And behind him is Jimmy -- or James Durand, special agent with

20 the FBI.  And then Shannon Green, she is a paralegal in our

21 office, and she's assisting me today with jury selection.  And

22 Ms. Jeanette Sorey, and she's a paralegal in our office, and

23 she'll be assisting me with the trial itself.

24       And, Your Honor, I do know one of the jurors.

25       THE COURT:  Okay.  Thank you.  Could you tell me the

UNITED STATES DISTRICT COURT

1    Juror number.

2          MS. DAVIDSON:  Yes, it's XXXXXXXXXXXXXXXXX.  We've

3    known each other for about 19 years.  I haven't seen her in ten

4    or so years, but I would consider us friends.

5          THE COURT:  Well, and that was going to be my next

6    question after I do the introductions.  Let me just hold off

7    and introduce everybody, and then I'll address that.

8          Moving around the room, one of the defendants in this

9    case is Ms. Heather Ann Tucci-Jarraf.

10         Ms. Tucci-Jarraf, if you'll just stand briefly, so

11   you can be recognized.  Thank you.

12         And her elbow or standby counsel is Mr. Francis

13   Lloyd.

14         And then the other individual defendant in this case

15   is Mr. Randall Keith Beane.

16         And his elbow or standby counsel is Mr. Stephen

17   McGrath.

18         Now, my follow-up question is going to be, does

19   anyone know any of the individuals who have been introduced?

20         Juror 184, it sounds like you have a friendship

21   relationship with Ms. Davidson.  Is that correct?

22         PROSPECTIVE JUROR 184:  Yes.

23         THE COURT:  And given that description, you may be

24   able to otherwise be fair and impartial, but given what she

25   said, I think it would be appropriate to dismiss you as a juror

UNITED STATES DISTRICT COURT

1  for purposes of this case and save you for either a civil case

2  or criminal case in which she's not involved.  So Juror 184 is

3  excused.

4         PROSPECTIVE JUROR 184:  Okay.  Thank you.

5         THE COURT:  Let's go ahead and call up another juror,

6  and then I'll ask the rest of the questions.

7         THE COURTROOM DEPUTY:  145.

8         THE COURT:  Good morning, Juror 145.  I'm going to

9  back up a little bit.  Going back to our scheduling, any

10  scheduling difficulties or any other difficulties in serving as

11  a juror in this case serving the next four to six days?

12         PROSPECTIVE JUROR 145:  No, sir.

13         THE COURT:  All right.  Thank you.  Any previous

14  knowledge of this case based on the Court's description?

15         PROSPECTIVE JUROR 145:  No.

16         THE COURT:  Now, to the panel as a whole, you've seen

17  the introductions of those who will be involved in this case,

18  either as parties or counsel for the parties or representatives

19  of the parties, besides the one juror that we've already

20  addressed, does anyone else know any of the lawyers or parties

21  in this case or related to them in any fashion or had any

22  business dealings with them in the past?

23         Thank you.

24         Now, to the panel as a whole, have you ever served

25  previously as a juror in a criminal or civil case or as a

UNITED STATES DISTRICT COURT

Jury Voir Dire

1    member of a grand jury, either the federal or state court?

2            Previous jury experience, let me just see a show of

3    hands initially.

4            Got a few.  Why don't we just start on row one here,

5    Juror 31.  What I'm basically going to ask you, ultimately,

6    what I want to find out if there's anything about that previous

7    jury experience that would make it difficult or impossible for

8    you to function fairly and impartially in this case, but I also

9    want to, for purposes of allowing the parties to exercise their

10   peremptory challenges, I wanted to ask you about that previous

11   jury experience in terms of where it was, when it was, civil or

12   criminal case, and so on.

13           So Juror 31.

14           PROSPECTIVE JUROR 31:  It was probably about 30 years

15   ago in Morristown.  It was just a -- it was a criminal case.

16           THE COURT:  And do you recall what type of criminal

17   case?

18           PROSPECTIVE JUROR 31:  It was just a hit-and-run type

19   thing.

20           THE COURT:  And did it -- did you deliberate as a

21   juror --

22           PROSPECTIVE JUROR 31:  Yes.

23           THE COURT:  -- and reach a verdict?  And what -- do

24   you recall what the verdict was?

25           PROSPECTIVE JUROR 31:  It was guilty.

UNITED STATES DISTRICT COURT

 1          THE COURT:  Anything about that experience some time

 2  ago that would cause -- give you any inhibitions about serving

 3  in this case?

 4          PROSPECTIVE JUROR 31:  No, sir.

 5          THE COURT:  Was that in state court, I assume?

 6          PROSPECTIVE JUROR 31:  Yes, I think so.

 7          THE COURT:  Thank you.

 8          Anybody else on the first row?  I think there are

 9  hands on the second row, going back.

10          Juror No. 150, just relate to us your previous jury

11  experience.

12          PROSPECTIVE JUROR 150:  Yes, sir.  I served in Loudon

13  County, I guess it was October or September of last year, and

14  it was a criminal case.

15          THE COURT:  What type of case?

16          PROSPECTIVE JUROR 150:  It was a first-degree murder.

17          THE COURT:  And did the case go to jury

18  deliberations?

19          PROSPECTIVE JUROR 150:  Yes, sir.

20          THE COURT:  And what was the verdict?

21          PROSPECTIVE JUROR 150:  Guilty.

22          THE COURT:  Is there anything about that experience

23  that would make it difficult for you to be a fair and impartial

24  juror in this case?

25          PROSPECTIVE JUROR 150:  No, sir.

                    UNITED STATES DISTRICT COURT

Jury Voir Dire

1          THE COURT:  Thank you.  Anybody else on the second

2   row raise their hand?

3          Yes, pass the microphone down to Juror 124.

4          PROSPECTIVE JUROR 124:  I have been summonsed -- this

5   is my fourth summons.  I've never actually served on, but I was

6   questioned and went before to be picked.

7          THE COURT:  Okay.  So it was -- do you -- was that in

8   state court or federal court?

9          PROSPECTIVE JUROR 124:  State and federal -- no

10  federal, just state.

11         THE COURT:  Do you recall if it was civil or criminal

12  cases?

13         PROSPECTIVE JUROR 124:  Yes.  Both.

14         THE COURT:  Both.  So, basically, you underwent

15  questioning, as you're doing here today, but ultimately weren't

16  picked for whatever reason?

17         PROSPECTIVE JUROR 124:  Correct.

18         THE COURT:  Okay.  Thank you.  Anything about that

19  experience itself, even though you never served as a juror in

20  an actual trial, anything about your experience as a

21  prospective juror that would interfere in any way with

22  functioning as a fair and impartial juror in this case?

23         PROSPECTIVE JUROR 124:  No.

24         THE COURT:  Thank you.  Go back to the third row, who

25  raised their hand?

UNITED STATES DISTRICT COURT

Jury Voir Dire

1          We'll start with Juror No. 129.

2          PROSPECTIVE JUROR 129:  It was probably three to four

3   years ago.  It was in Claiborne County.  And I was on it twice,

4   two different cases, and they were both guilty.

5          THE COURT:  Both criminal cases?

6          PROSPECTIVE JUROR 129:  Yeah.

7          THE COURT:  Do you recall what type of criminal

8   cases?

9          PROSPECTIVE JUROR 129:  One was the -- was over

10  marijuana, and the other was -- was kind of like a domestic

11  kidnapping thing.

12         THE COURT:  Nothing related to the allegations in

13  this case?

14         PROSPECTIVE JUROR 129:  No.

15         THE COURT:  All right.  Anything about that

16  experience that would -- that you believe would make it

17  difficult for you to function as a fair and impartial juror in

18  this case?

19         PROSPECTIVE JUROR 129:  No.

20         THE COURT:  Okay.  Thank you.

21         Anybody else on what I'm referring to as row three?

22         How about the last row?  Did we see any hands there?

23         Thank you.  Juror 132.

24         PROSPECTIVE JUROR 132:  I served in Knox County

25  probably 13 or 14 years ago, and the defendant was an attorney.

UNITED STATES DISTRICT COURT

1    And the plaintiff was accusing him of not representing her, and
2    she had had some damages for not being represented, and I think
3    we found him not guilty.  It's been a while ago.

4              THE COURT:  So let me ask, do you recall if it was a
5    civil case or criminal?

6              PROSPECTIVE JUROR 132:  Civil.

7              THE COURT:  Civil.

8              PROSPECTIVE JUROR 132:  Civil, yes.

9              THE COURT:  So you found for the defendant --

10             PROSPECTIVE JUROR 132:  Yes.

11             THE COURT:  -- against the plaintiff?  Okay.  And
12   anything about that experience that would inhibit your ability
13   to serve impartially today?

14             PROSPECTIVE JUROR 132:  No, sir.

15             THE COURT:  All right.  Thank you.  Any -- have I
16   missed anybody with previous jury experience in any fashion?

17             Thank you.

18             All right.  My next question, and, again, if anyone
19   wants to answer this question in a more private fashion, as you
20   saw me do with the one juror earlier, just let me know, but
21   this case, we typically ask and during jury questioning in a
22   criminal case, the question is, has any member of the panel at
23   any time been involved in a criminal matter in any federal or
24   state court which concerned yourself, any member of your
25   family, or a close friend, either as a defendant, a witness, a

UNITED STATES DISTRICT COURT

1    victim, or in any other fashion?

2              In other words, direct experience yourselves, family

3    member, or close friends of which you may have been aware with

4    with the criminal justice system in the state or federal

5    courts?

6              I see one hand on the back row and one on the front.

7    See a couple hands.  We'll start with Juror 145.

8              PROSPECTIVE JUROR 145:  Can I come up?

9              THE COURT:  Yes.  Let me -- before you come up, let

10   me just see -- who else raised their hand?

11             Juror 161, do you mind answering with the microphone?

12             PROSPECTIVE JUROR 161:  My son was here for a DUI.

13   We went through --

14             THE COURT:  State court somewhere?

15             PROSPECTIVE JUROR 161:  It was here in Knox.

16             THE COURT:  Oh, here.

17             PROSPECTIVE JUROR 161:  Uh-huh.  It was, I guess, the

18   city.

19             THE COURT:  Okay.  And did you assist him, and did

20   it -- was there a trial or just a --

21             PROSPECTIVE JUROR 161:  No.

22             THE COURT:  -- plea agreement of some sort?

23             PROSPECTIVE JUROR 161:  Yeah.  It's just they showed

24   up, and, you know, we showed up a couple times, and then they

25   finally presented and made their decision, and that was it.  It

UNITED STATES DISTRICT COURT

1   wasn't a trial.

2              THE COURT:  From an assistance standpoint, were you

3   involved in discussions with --

4              PROSPECTIVE JUROR 161:  Uh-uh, no.

5              THE COURT:  -- prosecutors or anyone else or --

6              PROSPECTIVE JUROR 161:  No.

7              THE COURT:  Okay.  And do you -- do you feel that --

8   kind of a broad question.  Do you feel your son was treated

9   fairly by the criminal justice system?

10             PROSPECTIVE JUROR 161:  Uh-huh.

11             THE COURT:  And based on his experience or your

12  involvement with him during that experience, would that

13  interfere in any way with your ability to be fair and impartial

14  to both sides in this case?

15             PROSPECTIVE JUROR 161:  No.

16             THE COURT:  Okay.  Thank you.

17             I think there was a hand on the back row.  Want to

18  come up here too.  Okay.

19             Anybody else involved with the criminal justice

20  system?

21             Let's go back this way and keep track.  I know Juror

22  145 would like to have a side conference and Juror No. 146

23  would.  So let me see.  Juror 118.  And then who else?  Juror

24  137.

25             PROSPECTIVE JUROR 137:  I was -- I went to court once

UNITED STATES DISTRICT COURT

1    for a DUI back 20 years ago.

2              THE COURT:  Do you recall what court that was?

3              PROSPECTIVE JUROR 137:  It was in Pinellas County,

4    Florida.

5              THE COURT:  Okay.  And was there some sort of plea

6    arrangement as a result of that?

7              PROSPECTIVE JUROR 137:  No.  It was -- I was in the

8    wrong, and I knew it, so I just pleaded guilty and took my

9    lumps.

10             THE COURT:  There was no trial or anything?

11             PROSPECTIVE JUROR 137:  No.  No.  No.  Not a trial.

12             THE COURT:  And again, you heard me ask, do you feel

13   like you were treated fairly by the criminal justice system in

14   that case?

15             PROSPECTIVE JUROR 137:  I'd say so, yeah.

16             THE COURT:  All right.  Given that limited

17   involvement with the criminal justice system some years ago,

18   would that interfere in any way with your ability to be fair

19   and impartial to both the government and defendants in this

20   case?

21             PROSPECTIVE JUROR 137:  Oh, yes, sir.

22             THE COURT:  It would not interfere?

23             PROSPECTIVE JUROR 137:  Oh, no, it would not.

24             THE COURT:  All right.  Let me see, any other hands

25   that -- Juror, is it 124?  We'll pass the microphone down here

UNITED STATES DISTRICT COURT

1    to the second row.

2              PROSPECTIVE JUROR 124:  It was a domestic assault

3    charge where I was -- had to come in and testify what happened.

4              THE COURT:  And if you don't mind me asking, did you

5    testify as a victim or as a witness?

6              PROSPECTIVE JUROR 124:  As a victim.

7              THE COURT:  Do you recall what court that was in?

8              PROSPECTIVE JUROR 124:  It was in Knox County Court.

9              THE COURT:  And was it during a trial that you

10   testified?

11             PROSPECTIVE JUROR 124:  No.  It was just a -- they

12   did it before litigation.

13             THE COURT:  And was it -- did -- what was the result?

14             PROSPECTIVE JUROR 124:  He was -- he was found

15   guilty.

16             THE COURT:  Okay.  And that was your only

17   involvement?

18             PROSPECTIVE JUROR 124:  Yes.

19             THE COURT:  Did you feel that you were treated

20   fairly, in this case as a victim, by the criminal justice

21   system?

22             PROSPECTIVE JUROR 124:  Oh, absolutely, I felt very

23   fair.

24             THE COURT:  And given that exposure to the criminal

25   justice system, in essence, do you think -- would you be able

UNITED STATES DISTRICT COURT

1  to set that aside and judge this case based solely on the

2  evidence presented in this case and function as a fair and

3  impartial juror to both sides?

4          PROSPECTIVE JUROR 124:  Absolutely.

5          THE COURT:  All right.  Thank you.

6          All right.  Besides Juror 145, 146, and 118, have I

7  missed anybody else?

8          All right.  Let's start with Juror 145, if you'll

9  come up here.  And we'll allow the parties and counsel for the

10 parties to come up as well.

11     (Bench conference begins.)

12         THE COURT:  Mr. Lloyd, you can get right here.

13         All right.  So this is Juror 145, and, again, I

14 allowed the parties or counsel for parties to come up, too, so

15 they can hear these questions to see if there's any follow-up,

16 so if you can go ahead and relate.

17         PROSPECTIVE JUROR 145:  Okay.  I've been involved

18 with a couple of criminal cases a few years back for theft.

19 One was in Knox County and one in Anderson County where I was

20 the defendant, and then once in Knox County with an aggravated

21 assault case where I was the victim.

22         THE COURT:  Okay.  So let's maybe separate those out.

23 In the cases where you were the defendant, you were charged

24 with theft in those two counties?

25         PROSPECTIVE JUROR 145:  Uh-huh.

UNITED STATES DISTRICT COURT

1    THE COURT:  And did -- answer yes or no so she can --

2    PROSPECTIVE JUROR 145:  Oh, yes, I was.

3    THE COURT:  And did the case go to trial or was it --

4  what happened?

5    PROSPECTIVE JUROR 145:  No.  I pled to both of them.

6  Maybe the first one I kind of didn't agree with, but I was just

7  young and did what my attorney told me to do.

8    THE COURT:  Okay.  About how long ago were those?

9    PROSPECTIVE JUROR 145:  The one -- the first one

10  maybe eight years ago.  The other one maybe three years.

11    THE COURT:  Okay.  Do you feel like you were treated

12  fairly by the criminal justice system in those two cases?

13    PROSPECTIVE JUROR 145:  Maybe not the first.

14    THE COURT:  Not the first one.  Which county was

15  that?

16    PROSPECTIVE JUROR 145:  Anderson.

17    THE COURT:  And just kind of why do you say that?

18    PROSPECTIVE JUROR 145:  I just feel like I didn't,

19  like, fully understand everything that was going on.

20    THE COURT:  Okay.

21    PROSPECTIVE JUROR 145:  And maybe I just did

22  something stupid.

23    THE COURT:  And in the second case, how do you feel

24  you were treated?

25    PROSPECTIVE JUROR 145:  It was fine.

UNITED STATES DISTRICT COURT

1          THE COURT:  Okay.  All right.  And -- all right.

2    Let's now go over to the -- you said you were also involved as

3    a victim in a case.  Tell me about that.

4          PROSPECTIVE JUROR 145:  I appeared for -- to be a

5    witness, and they -- I talked to a special prosecutor, and she

6    never contacted me again.  I never heard anything about it.

7          THE COURT:  So what kind of case were you a witness

8    in?

9          PROSPECTIVE JUROR 145:  It was like where an

10   ex-boyfriend of mine had assaulted me when I -- pretty badly.

11   And he went to jail, obviously, but I don't think he stayed

12   there very long.

13         THE COURT:  So he was charged --

14         PROSPECTIVE JUROR 145:  Yes.

15         THE COURT:  -- with an assault in some fashion

16   against you?

17         PROSPECTIVE JUROR 145:  Uh-huh.

18         THE COURT:  And then you spoke with someone with the

19   state?

20         PROSPECTIVE JUROR 145:  She was from Nashville, I

21   believe.

22         THE COURT:  From a victim standpoint?

23         PROSPECTIVE JUROR 145:  Uh-huh.

24         THE COURT:  But you were never called to testify?

25         PROSPECTIVE JUROR 145:  Uh-uh.

UNITED STATES DISTRICT COURT

1          THE COURT:  Do you know if that case went to trial?

2          PROSPECTIVE JUROR 145:  I do not.

3          THE COURT:  But you know he -- the individual

4     received some sentence through some means, either pleading

5     guilty or --

6          PROSPECTIVE JUROR 145:  I have no idea.

7          THE COURT:  You say -- I think you said he went to

8     jail for some short period of time?

9          PROSPECTIVE JUROR 145:  He was in there for, I want

10    to say, ten months or so.  And I just -- I knew he got out

11    because his father told me.

12         THE COURT:  How do you feel like you were treated in

13    that -- as a victim in that case?

14         PROSPECTIVE JUROR 145:  I probably would have liked

15    to have known what was going on, you know, more from like the

16    court's standpoint of things.  But it's kind of like I showed

17    up and then I just never heard anything else.

18         THE COURT:  All right.  Now, with that background in

19    mind, and you heard the allegations in this case, do you --

20    does your involvement in those cases, either as a defendant or

21    as a victim, do they give you any pause to function as a fair

22    and impartial juror in this case?

23         PROSPECTIVE JUROR 145:  Kind of.  I feel like I

24    wouldn't want to -- I wouldn't want to test it out, you know.

25         THE COURT:  What do you mean by that?

UNITED STATES DISTRICT COURT

1    PROSPECTIVE JUROR 145:  I mean, I wouldn't want to

2    like -- I wouldn't want to say no and then later on, you

3    know --

4    THE COURT:  Does it -- how does it give you some

5    pause or inhibition just hearing the evidence in this case?

6    PROSPECTIVE JUROR 145:  Made me feel like I've been

7    on kind of both sides of it maybe.

8    THE COURT:  So you think it would -- it would cause

9    you to struggle --

10    PROSPECTIVE JUROR 145:  Yeah.

11    THE COURT:  -- to be fair and impartial to both sides

12    in this case?  Is that what you're saying?

13    PROSPECTIVE JUROR 145:  I do.

14    THE COURT:  Okay.  Why don't you go ahead and have a

15    seat for a moment.

16    PROSPECTIVE JUROR 145:  Okay.

17    (Bench conference concluded.)

18    THE COURT:  Juror 146.

19    THE COURTROOM DEPUTY:  146.

20    (Bench conference begins.)

21    THE COURT:  Morning.

22    PROSPECTIVE JUROR 146:  Good morning.  I don't know

23    if this even --

24    THE COURT:  Mr. Lloyd, do you want to come up so you

25    can hear this?

UNITED STATES DISTRICT COURT

 1          MR. LLOYD:  Yes, Your Honor.

 2          PROSPECTIVE JUROR 146:  I had a brother that several

 3  years ago was involved with prescription fraud.

 4          THE COURT:  Prescription medication?

 5          PROSPECTIVE JUROR 146:  Yeah.  And he did serve a

 6  prison sentence.

 7          THE COURT:  So he was charged with -- in some fashion

 8  related to --

 9          PROSPECTIVE JUROR 146:  Yeah, yeah.

10          THE COURT:  -- illegal use or distribution --

11          PROSPECTIVE JUROR 146:  I wasn't in the -- I mean, I

12  went to some of his court things.

13          THE COURT:  Appearances?

14          PROSPECTIVE JUROR 146:  And I did write letters to

15  try to have him released.

16          THE COURT:  Okay.

17          PROSPECTIVE JUROR 146:  He served two and a half

18  years, I think, of his eight-year sentence.

19          THE COURT:  Do you recall what court he was charged

20  in?

21          PROSPECTIVE JUROR 146:  It was in Nashville, but I

22  don't know.

23          THE COURT:  A court in Nashville?  Probably Davidson

24  County?

25          PROSPECTIVE JUROR 146:  Yeah, I think Davidson

UNITED STATES DISTRICT COURT

1  County, I believe, but --

2          THE COURT:  Do you know if he went to trial or if he

3  pled guilty?  You may not know.

4          PROSPECTIVE JUROR 146:  I don't know.  Because

5  every -- the time I did go, the time or two that I did go, they

6  ended up -- like, it wasn't heard that day.

7          THE COURT:  Got continued or something?

8          PROSPECTIVE JUROR 146:  Yeah.  It was like dismissed

9  or -- I mean, canceled to another day or something of that

10 nature.

11         THE COURT:  So you never testified --

12         PROSPECTIVE JUROR 146:  No, I never testified.

13         THE COURT:  -- at trial?

14         PROSPECTIVE JUROR 146:  I don't really even know any

15 of the details.  I just know he had to serve time.

16         THE COURT:  This was your brother?

17         PROSPECTIVE JUROR 146:  Yeah.

18         THE COURT:  And then at some point --

19         PROSPECTIVE JUROR 146:  This was back in like 2007.

20         THE COURT:  -- you wrote letters either asking for

21 lenient sentencing or to be relieved?

22         PROSPECTIVE JUROR 146:  For him to have -- what is

23 it, put on parole or whatever?

24         THE COURT:  Put on parole?

25         PROSPECTIVE JUROR 146:  Yeah.

UNITED STATES DISTRICT COURT

1          THE COURT:  Okay.  All right.

2          PROSPECTIVE JUROR 146:  And I knew, you know, that

3    was -- but I don't even know if that's what you're referring

4    to.

5          THE COURT:  Well, no, that's good.  That follows up

6    with my question.  So let me ask you, do you feel -- first of

7    all, do you feel your brother -- is it your brother, you said?

8          PROSPECTIVE JUROR 146:  Uh-huh.

9          THE COURT:  Do you feel he was treated fairly by

10   the --

11         PROSPECTIVE JUROR 146:  Oh, yeah.

12         THE COURT:  -- criminal justice system?

13         PROSPECTIVE JUROR 146:  I mean, he -- he was guilty.

14         THE COURT:  And do you feel like -- I guess, you, as

15   an -- as an individual, were treated fairly in terms of

16   whatever your limited involvement was by the process?

17         PROSPECTIVE JUROR 146:  Oh, yes.  Yeah.  Right.

18         THE COURT:  Did your involvement, as a sibling or

19   advocate for your brother, would that give you any inhibitions

20   in terms of being fair and impartial to both sides in this

21   case?

22         PROSPECTIVE JUROR 146:  I have no issues with being

23   fair.

24         THE COURT:  You'd be able to listen --

25         PROSPECTIVE JUROR 146:  Yes.

UNITED STATES DISTRICT COURT

Jury Voir Dire

```
 1              THE COURT:  -- to the evidence in this case --

 2              PROSPECTIVE JUROR 146:  Yes, Uh-huh.

 3              THE COURT:  -- and decide the case based solely on

 4  the evidence you hear in this case?

 5              PROSPECTIVE JUROR 146:  Yeah.

 6              THE COURT:  Okay.  Thank you.  You can go back.

 7          (Bench conference concluded.)

 8              THE COURT:  Juror 118.

 9          (Bench conference begins.)

10              THE COURT:  Good morning.

11              PROSPECTIVE JUROR 118:  I just wanted to let you know

12  I had a DUI about five years ago.

13              THE COURT:  And were you -- what court was that in?

14              PROSPECTIVE JUROR 118:  It was Knox, yeah.

15              THE COURT:  And did you go to trial?

16              PROSPECTIVE JUROR 118:  It was a plea calendar.  No,

17  didn't go to trial.

18              THE COURT:  You pled guilty in some --

19              PROSPECTIVE JUROR 118:  Uh-huh, I did.

20              THE COURT:  And was there -- were you in court much

21  or was there much interaction with the government?

22              PROSPECTIVE JUROR 118:  No, it was pretty simple.

23              THE COURT:  Okay.  And how did you feel you were

24  treated by the criminal justice system?

25              PROSPECTIVE JUROR 118:  I think it was fair.
```

UNITED STATES DISTRICT COURT

1          THE COURT:  Okay.  And would your involvement in that

2    limited circumstance, would that interfere in any way with your

3    ability to function as a fair and impartial juror in this case

4    to both sides?

5          PROSPECTIVE JUROR 118:  No.

6          THE COURT:  Okay.  Thank you.

7          All right.  I'm going to excuse Juror 145 for cause,

8    which was the first individual up here based upon her answers.

9    And I believe juror 146 and 118 are otherwise qualified to

10   continue as prospective jurors.

11         MS. DAVIDSON:  I agree.  Your Honor, at the close of

12   jury selection, I'd like to move to strike something from the

13   record.  I accidentally said XXXXXXXXXX's name.

14         THE COURT:  Okay.

15         MS. DAVIDSON:  I'd like to strike that, because

16   they've been publishing all the transcripts.

17         THE COURT:  Thank you.

18      (Bench conference concluded.)

19         THE COURT:  Thank you, everyone.

20         We're going to excuse Juror 145 and call up another

21   prospective juror.

22         THE COURTROOM DEPUTY:  113.

23         THE COURT:  Good morning.  Hand her the microphone

24   real quick.  Let me just catch you up.  We'll start -- go back

25   to the beginning, start with scheduling.  Any scheduling

UNITED STATES DISTRICT COURT

1    difficulties?

2               PROSPECTIVE JUROR 113:  Yes.  I'm a TA in a special

3    ed classroom.  And it was difficult enough for me to get off

4    today and have a substitute, so...

5               THE COURT:  Okay.  And you've got class, obviously,

6    through rest of this week and next week.

7               PROSPECTIVE JUROR 113:  Yes.  We have eight autistic

8    kids that really thrive on the same person every day.

9               THE COURT:  And so it may be better for you to serve

10   in the summer when you're not in school?

11              PROSPECTIVE JUROR 113:  I also work in the summer

12   also.

13              THE COURT:  Also work in the summer, same job.  Well,

14   we'll play it by ear, but given the expected length of this

15   trial and given your duties this week, we'll excuse you.

16              PROSPECTIVE JUROR 113:  I can do one to two days.

17   That's probably about my length.

18              THE COURT:  Thank you.  We'll excuse Juror 113 and

19   call up an additional prospective juror.

20              THE COURTROOM DEPUTY:  140.

21              THE COURT:  Morning, Juror 140.

22              PROSPECTIVE JUROR 140:  Morning.

23              THE COURT:  Any scheduling or other difficulties you

24   need to bring to the Court's attention?

25              PROSPECTIVE JUROR 140:  Yeah.  I have orthopedic

UNITED STATES DISTRICT COURT

1    surgery scheduled for this Friday.

2              THE COURT:  Sounds like a pretty good excuse.  All

3    right.  We'll excuse you to a future trial.

4              All right.  Let's call up another juror.

5              THE COURTROOM DEPUTY:  136.

6              THE COURT:  Good morning, Juror 136.  Any scheduling

7    issues or other issues --

8              PROSPECTIVE JUROR 136:  No.

9              THE COURT:  -- you need to bring to the Court's

10   attention?

11             Any knowledge of this case or of the individuals who

12   have been introduced?

13             PROSPECTIVE JUROR 136:  Nothing other than what I've

14   heard this morning.

15             THE COURT:  Thank you.  And any -- any -- the last

16   question, any involvement with the criminal justice system?

17             PROSPECTIVE JUROR 136:  No.

18             THE COURT:  Any previous jury experience?

19             PROSPECTIVE JUROR 136:  No.

20             THE COURT:  Thank you.  Now, returning to the panel

21   as a whole, and this may be a -- somewhat a corollary follow-up

22   to what I just asked, but has anyone had any particularly

23   negative experience with the police or law enforcement or the

24   criminal justice system, other than what we may have talked

25   about in response to this last question?  Anything in that

UNITED STATES DISTRICT COURT

1    regard?

2              And do any of you know anyone who's been actually

3    prosecuted in federal court before?

4              Yes, Juror No. 28?

5              PROSPECTIVE JUROR 28:  We -- a previous neighbor of

6    ours was prosecuted in federal court for embezzlement.

7              THE COURT:  And was that in the Eastern District of

8    Tennessee?

9              PROSPECTIVE JUROR 28:  Yes, sir.

10             THE COURT:  Do you know -- were you involved in any

11   way in terms of observing or learning about -- or otherwise

12   following that case?

13             PROSPECTIVE JUROR 28:  Followed the case, lived next

14   door to the people, and minimal involvement, but some calls

15   from the FBI.

16             THE COURT:  Okay.  And there may be witnesses from

17   the FBI who testify in this case.  Would that interfere in any

18   way with your ability to function fairly and impartially?

19             PROSPECTIVE JUROR 28:  No, sir.

20             THE COURT:  Do you recall who the prosecutors were in

21   that case in any fashion?

22             PROSPECTIVE JUROR 28:  Prosecutors?

23             THE COURT:  Yeah.

24             PROSPECTIVE JUROR 28:  The United States government.

25             THE COURT:  I mean, do you know who the -- like I've

UNITED STATES DISTRICT COURT

1    introduced in this case --

2              PROSPECTIVE JUROR:  Oh, the actual attorneys?

3              THE COURT:  -- Ms. Svolto, do you --

4              PROSPECTIVE JUROR 28:  I don't recall, no.

5              THE COURT:  To your knowledge, was it either of these

6    two individuals?

7              PROSPECTIVE JUROR 28:  It was not.

8              THE COURT:  And, again, would that experience with

9    respect to the experience involving your next-door neighbor,

10   would that interfere in any way with your ability to hear the

11   evidence in this case and decide this case based solely on the

12   evidence in this case?

13             PROSPECTIVE JUROR 28:  No, sir.

14             THE COURT:  Okay.  Thank you.  And anybody else?

15             All right.  I kind of asked that question

16   specifically to Juror 28, but let me broaden it to the panel as

17   a whole.

18             If you are selected to sit on this case, will you be

19   able to render a verdict solely on the evidence presented at

20   the trial and in the context of the law as I will give it to

21   you and my instructions, disregarding any other ideas, notions

22   or beliefs about the law that you may have encountered in

23   reaching your verdict.  Does everyone believe they will be able

24   to do so?

25             All right.  And do you have any opinion as to the

UNITED STATES DISTRICT COURT

1  guilt or innocence of the defendant as to the charges contained

2  in the indictment at this time, or have you ever -- have you

3  expressed an opinion as to the guilt or innocence of the

4  defendant?

5          Usually, what I do here is pause for these questions,

6  unless someone gets my attention, then we go on.

7          So, yes, Juror No. 152.

8          And if you do have an opinion in that regard, I don't

9  want you to give it in open court.  Let me just --

10          PROSPECTIVE JUROR 152:  Right, right, right.  I

11 believe you said it had something to do with the USAA insurance

12 company?

13          THE COURT:  Yes.  I'm --

14          PROSPECTIVE JUROR 152:  That is my insurance company.

15          THE COURT:  Okay.  All right.  Hold -- we'll get to

16 that in just a moment, but we'll keep that in mind.

17          PROSPECTIVE JUROR 152:  Okay.

18          THE COURT:  But in terms of any opinion, would that

19 influence your opinion in this case as to guilt or innocence?

20          PROSPECTIVE JUROR 152:  Yes.

21          THE COURT:  Okay.  All right.  Well, then let's go

22 ahead and excuse you for purposes of this case, Juror No. 152.

23          Call up another prospective juror.

24          THE COURTROOM DEPUTY:  110.

25          THE COURT:  Good afternoon, Juror 110.  Any

UNITED STATES DISTRICT COURT

1    scheduling difficulties or other difficulties serving as a

2    juror that you would need to bring to my attention?

3              PROSPECTIVE JUROR 110:  No, sir.

4              THE COURT:  And any previous knowledge of this case

5    or the individuals who have been introduced?

6              PROSPECTIVE JUROR 110:  No, sir.

7              THE COURT:  Any involvement previously as a juror or

8    with the criminal justice system in any regard?

9              PROSPECTIVE JUROR 110:  (Moving head side to side.)

10             THE COURT:  Do you know of any reason that you would

11   be unable to render a verdict solely on the evidence presented

12   at trial in this case?

13             PROSPECTIVE JUROR 110:  No, sir.

14             THE COURT:  All right.  Thank you.  All right.  Going

15   back to the last question I asked, does anyone have -- let me

16   ask it again, do you have an opinion as to the guilt or

17   innocence of the defendants as to the charges contained in the

18   indictment at this time, or have you ever expressed an opinion

19   as to the guilt or innocence of the defendants?

20             Thank you.

21             Has anyone talked to you or communicated with you in

22   any way about this case or contacted you or attempted to

23   contact you about the case?

24             All right.  Next, do you or any member of your

25   immediate family have any dealings with the United States

UNITED STATES DISTRICT COURT

1  government or any of its agencies or with the defendants from

2  which you or they might profit in any way?

3      For example, sometimes someone has their -- works for

4  or owns a company that has a contract with a governmental

5  agency.  Anybody or immediate family have any dealings with the

6  government or the defendants?

7      Yes.  Juror No. 158, get the microphone down to you.

8      PROSPECTIVE JUROR 158:  My office does a lot of

9  contract work with various government agencies.

10     THE COURT:  And what office is that?

11     PROSPECTIVE JUROR 158:  I work at Tennessee Valley

12 Title, so it's mainly real estate dealings, typically with the

13 State, but we have been involved in some federal projects.

14     THE COURT:  Would that fact interfere in any way with

15 your ability to be fair and impartial to both sides?

16     PROSPECTIVE JUROR 158:  No, sir.

17     THE COURT:  All right.  Thank you.  Next -- anybody

18 else?

19     All right.  Next, are any of you employed by the

20 federal government or have a family member or close friend

21 employed by the federal government, including as an assistant

22 United States attorney or a federal law enforcement agent?

23     Just one hand.

24     And I'll broaden that to employment by State

25 government or family member or close friend employed by State

UNITED STATES DISTRICT COURT

government, including as an assistant district attorney or police officer. So employment by you, yourself, family member, close friend with the federal or state government or law enforcement in any capacity.

Got a couple of hands. Let's go ahead and start on the front row with Juror 136.

PROSPECTIVE JUROR 136: I have a brother that is a police officer in Morgan County and a brother-in-law that is a detective in Franklin.

THE COURT: Okay. And do you understand there may be in this case, it sounds like, perhaps federal law enforcement testimony?

PROSPECTIVE JUROR 136: Yes.

THE COURT: And the fact that you have individuals in your family who are involved, it sounds like, with State governmental law enforcement agencies, would you be able to put that aside and, again, hear the evidence in this case and assess the credibility of any law enforcement agency who may testify just as you would any other witness in this case?

PROSPECTIVE JUROR 136: Yes.

THE COURT: And the fact that you have individuals in your family who are employed in law enforcement, would that interfere in any way with your ability to be fair and impartial to both sides in this case?

PROSPECTIVE JUROR 136: No.

UNITED STATES DISTRICT COURT

Jury Voir Dire

1          THE COURT:  Thank you.  Anybody else in the front

2     row?

3          Juror 37.

4          PROSPECTIVE JUROR 37:  Yeah.  My stepmother served --

5     or my stepmother retired out of IRS CID.  We're not close.  I

6     haven't seen her in like 20 years.

7          THE COURT:  Was retired as what?

8          PROSPECTIVE JUROR 37:  IRS CID, criminal

9     investigations.

10          THE COURT:  Did you have any occasion to talk with

11     her about cases she was involved with?

12          PROSPECTIVE JUROR 37:  No.  He married her after I

13     moved to Tennessee.

14          THE COURT:  So I take it what the answer to this

15     might be, but let me ask it, would that relationship or her

16     involvement in -- or her employment in that regard, would that

17     interfere in any way with your ability to be fair and impartial

18     to both sides?

19          PROSPECTIVE JUROR 37:  No, sir.

20          THE COURT:  Juror 167, did you raise your hand?

21          PROSPECTIVE JUROR 167:  (Moving head side to side.)

22          THE COURT:  Okay.  Thank you.

23          Go to the second row.  Do we have any?

24          Oh, one more in the front row.  I think we're down

25     all the way to the end, Juror 3.  Yes, sir?

UNITED STATES DISTRICT COURT

Jury Voir Dire

1    PROSPECTIVE JUROR 3:  Yes.  I have a -- I have a

2    brother-in-law and also multiple friends that are in law

3    enforcement in the state of Florida, and I also do have a

4    cousin that is with the FBI in Puerto Rico, sir.

5    THE COURT:  Okay.  And you've heard me ask the

6    questions to other jurors, but would that fact or those facts

7    interfere in any way with your ability to function fair and

8    impartial in this case?

9    PROSPECTIVE JUROR 3:  No, sir.

10    THE COURT:  If someone from the FBI or any other law

11    enforcement agency were to testify, would you be able to put

12    aside those relationships you've described and assess that

13    individual's credibility just like you would any other witness

14    who may testify in this case?

15    PROSPECTIVE JUROR 3:  Yes, sir.

16    THE COURT:  And would you, again, otherwise be able

17    to function fairly and impartially to both sides in this case?

18    PROSPECTIVE JUROR 3:  Yes, sir.

19    THE COURT:  Okay.  Thank you.

20    Now, let's go to the second row.  Did we have

21    anybody, basically yourselves, family member, close friends

22    employed by the federal, state government, or otherwise in law

23    enforcement?

24    Nobody on the second row.  We'll go to the third row.

25    Juror 161.

UNITED STATES DISTRICT COURT

 1          PROSPECTIVE JUROR 161:  My husband is retired

 2  military, but he is now currently employed with the Airport

 3  Authority.  And we do have several close friends, one that does

 4  work in local law enforcement and a few that are in the FBI.

 5          THE COURT:  Again, let me ask the same questions I've

 6  been asking, would the fact -- would those relationships or

 7  those facts inhibit in any way your ability to function as a

 8  fair and impartial juror to both sides in this case?

 9          PROSPECTIVE JUROR 161:  No.

10          THE COURT:  And would you have any inhibitions at all

11  in assessing the credibility of law enforcement witnesses just

12  as you would any other witness who may testify in this case?

13          PROSPECTIVE JUROR 161:  No.

14          THE COURT:  Thank you.  Anybody else on row three?

15          If not, we'll go back to row four.

16          I know I see Juror 146.  Go ahead and start with

17  Juror 146.

18          PROSPECTIVE JUROR 146:  I don't know if this matters,

19  but I worked in -- at a bank and then a credit union for like

20  12 years.

21          THE COURT:  And I'll probably ask that specifically

22  as to financial institutions.

23          PROSPECTIVE JUROR 146:  Okay.

24          THE COURT:  You used to be, you no longer?

25          PROSPECTIVE JUROR 146:  No longer.

UNITED STATES DISTRICT COURT

1         THE COURT:  What bank was that?

2         PROSPECTIVE JUROR 146:  I've worked at AmSouth, which

3    is no longer.  I worked at Highlands Union, and I worked at TVA

4    Credit Union.

5         THE COURT:  Would the fact you worked for a financial

6    institution, and, obviously, there are financial institutions

7    involved in this case in some fashion, would that interfere in

8    any way with your ability to function fairly and impartially?

9         PROSPECTIVE JUROR 146:  No.

10        THE COURT:  All right.  Now, somebody else with

11   respect to law enforcement or employment by the federal or

12   state government?

13        Juror No. 132, is that right?  No.  I missed --

14   what's your number?

15        PROSPECTIVE JUROR 110:  110.

16        THE COURT:  Juror No. 110.  Go ahead.

17        PROSPECTIVE JUROR 110:  My mother is employed with

18   the State, and she works as an assistant to the Attorney

19   General in Union County, and my uncle is also a constable in

20   Union County.

21        THE COURT:  Would the fact -- would those facts

22   interfere in any way with your ability to function fairly and

23   impartially?

24        PROSPECTIVE JUROR 110:  No, sir.

25        THE COURT:  And would you be able to assess the

UNITED STATES DISTRICT COURT

1  testimony of any law enforcement witnesses who may testify in

2  this case the same as you would any other witnesses?

3          PROSPECTIVE JUROR 110:  Yes, sir.

4          THE COURT:  And would you be able to put aside any

5  conversations you may have had with those individuals about

6  cases they're involved with and otherwise decide this case

7  based solely on the evidence presented during the course of

8  this trial?

9          PROSPECTIVE JUROR 110:  Yes, sir.

10          THE COURT:  All right.  Anybody else?

11          Next, to the panel as a whole, have you ever had or

12  do you now have or do you presently anticipate having any case

13  against or any dispute with or claim against the United States

14  government or the defendants?

15          Any lawsuits, claims, now or anticipated in the

16  future?

17          Do you know of any reason why you may be prejudiced

18  for or against the government or for or against either of the

19  defendants because of the nature of the charges or otherwise?

20          All right.  Thank you.

21          Is there anyone on the panel who thinks that the

22  United States government should not regulate fraudulent conduct

23  that causes wire communications in interstate commerce?

24          Anyone who believes that is not a proper role of the

25  United States government?

UNITED STATES DISTRICT COURT

1          Is there anyone on the panel who thinks that Congress

2   should not criminalize fraudulent conduct directed at banks

3   insured by the Federal Deposit Insurance Company or FDIC?

4          Anyone who does not believe that is a proper role for

5   the United States Congress?

6          All right.  Next -- this may go back to one of the

7   jurors earlier -- is there anyone on the panel who is a member

8   of or who banks at USAA Federal Savings Bank?

9          Okay.  Got several.  Let's -- where is our

10  microphone?  Just pass that in front of you to Juror 161.

11         Let me expand that, either USAA Federal Savings Bank

12  or Whitney Bank.

13         So go ahead, Juror 161.

14         PROSPECTIVE JUROR 161:  My father was prior military,

15  so I grew up with them having insurance, and that's who our

16  insurance is.  And we do do banking through them.

17         THE COURT:  So that's one of the entities that's

18  probably going to be mentioned in this case.

19         PROSPECTIVE JUROR 161:  Uh-huh.

20         THE COURT:  And the government may be alleging that

21  some of the allegations as to the defendants relate to that

22  particular bank.

23         Would that cause you any difficulties in stepping

24  back and being fair and impartial to both sides in this case,

25  particularly the defendants?

UNITED STATES DISTRICT COURT

Jury Voir Dire

1        PROSPECTIVE JUROR 161:  No.

2        THE COURT:  All right.  Can you put aside the fact

3   that either yourself or your family members may have utilized

4   that bank for insurance or banking purposes, and, again, decide

5   this case based solely on the evidence presented at the trial?

6        PROSPECTIVE JUROR 161:  Yes.

7        THE COURT:  Okay.  Thank you.

8        Anybody else, I think to your left, did somebody

9   raise their hand?  Pass the microphone down to Juror No. 149.

10       No, I'm sorry, Juror No. 35.  I think the microphone

11  is right behind you.

12       PROSPECTIVE JUROR 35:  Yes.  I bank with USAA, and I

13  have insurance with them as well.

14       THE COURT:  Again, would that impact at all your

15  ability, knowing that some of the allegations in the complaint

16  or this case relate to involvement with activities directed at

17  USAA Federal Savings Bank, would that interfere with your

18  ability to function fairly and impartially?

19       PROSPECTIVE JUROR 35:  No, sir.

20       THE COURT:  Would you be able to put aside any

21  banking association you may individually have with that bank

22  and decide this case based solely on the evidence presented at

23  the trial?

24       PROSPECTIVE JUROR 35:  Yes.

25       THE COURT:  Thank you.  Anybody else?

UNITED STATES DISTRICT COURT

1          Juror No. 124.

2          PROSPECTIVE JUROR 124:  My daughter was bit by a dog,

3     and the insurance company that's handling the claim on that is

4     USAA.

5          THE COURT:  Is that currently?

6          PROSPECTIVE JUROR 124:  Yes.

7          THE COURT:  You have a claim against the dog's owner

8     insured by --

9          PROSPECTIVE JUROR 124:  Yes.

10          THE COURT:  All right.  Would that impact in any way

11     your decision-making process?

12          PROSPECTIVE JUROR 124:  No.  It's a civil process.

13          THE COURT:  All right.  Again, would you be able to

14     decide this case based solely on the evidence presented at the

15     trial?

16          PROSPECTIVE JUROR 124:  Yes.

17          THE COURT:  Thank you.  Anybody else on row two?

18          How about the first row?  Got a couple hands on the

19     first row.

20          Go down to Juror 169.

21          PROSPECTIVE JUROR 169:  Same thing, USAA, you know,

22     no, it shouldn't affect me.

23          THE COURT:  Okay.  You currently bank with them?

24          PROSPECTIVE JUROR 169:  Yes.

25          THE COURT:  All right.  But that won't have any

UNITED STATES DISTRICT COURT

1   impact on your decision-making?

2             PROSPECTIVE JUROR 169:  No, sir.

3             THE COURT:  In this case?  Thank you.  Pass the

4   microphone to your left.  I think we had another hand.

5             Juror 136.

6             PROSPECTIVE JUROR 136:  We currently bank, have our

7   mortgage and insurance through them.

8             THE COURT:  Through USAA?

9             PROSPECTIVE JUROR 136:  Yes.

10            THE COURT:  And would that impact in any fashion your

11  decision-making process --

12            PROSPECTIVE JUROR 136:  No.

13            THE COURT:  -- in this case?  Okay.  Thank you.

14            Anybody else?

15            Again, same question as to Whitney Bank.  I don't

16  think we had any hands as to Whitney Bank, but I'll ask that

17  again.

18            All right.  Now, have you or any close family member

19  ever worked in the banking industry itself, directly worked in

20  the banking industry?

21            We've got several hands.  We'll start with Juror 136.

22  Tell us about that.

23            PROSPECTIVE JUROR 136:  Yes.  I worked for ORNL

24  Credit Union for five years in their accounting department.

25            THE COURT:  You did or you do?

                        UNITED STATES DISTRICT COURT

 1          PROSPECTIVE JUROR 136:  I did.

 2          THE COURT:  You no longer work there?

 3          PROSPECTIVE JUROR 136:  No.

 4          THE COURT:  Would that impact your --

 5          PROSPECTIVE JUROR 136:  No.

 6          THE COURT:  And some of you who worked in the banking

 7  industry obviously have some knowledge of aspects of -- at

 8  least within the sphere of your own job responsibilities how

 9  that works.  But my question, as we go through this, and just

10  so -- for purposes of everyone knowing what that involvement

11  is, obviously, my question is, can you put aside any

12  particularized knowledge you may have, and, again, decide this

13  case based solely on the evidence you hear within the four

14  corners of this courtroom?

15          PROSPECTIVE JUROR 136:  Yes.

16          THE COURT:  Next was Juror 107.

17          PROSPECTIVE JUROR 107:  I worked as part-time teller

18  when I was in college, so it's 50-something years ago.

19          THE COURT:  And would that interfere in any way --

20          PROSPECTIVE JUROR 107:  No.

21          THE COURT:  -- with your ability to hear -- based --

22  to decide this case based on the evidence you hear?

23          PROSPECTIVE JUROR 107:  Would not enter -- influence

24  me at all.

25          THE COURT:  Thank you.

UNITED STATES DISTRICT COURT

1          Anybody else on the front row?

2          Juror 158?

3          PROSPECTIVE JUROR 158:  My husband was employed

4    through two different financial institutions for about the last

5    five years.

6          THE COURT:  Okay.  What were the -- basically the

7    jobs he did?

8          PROSPECTIVE JUROR 158:  He was a banker.

9          THE COURT:  Would that impact at all your

10   decision-making process in this case?

11         PROSPECTIVE JUROR 158:  No, sir.

12         THE COURT:  Thank you.  Pass -- unless there there's

13   someone to your right on the front row, we'll go back to your

14   left, Juror 167.

15         PROSPECTIVE JUROR 167:  My dad was a banker for most

16   of my childhood.  He worked for First American.  I don't think

17   it will affect my decision-making.

18         THE COURT:  Okay.  Thank you.  Anybody on row two?

19         Juror No. 130.

20         PROSPECTIVE JUROR 130:  My sister used to work for

21   Bank of America about seven years ago.

22         THE COURT:  Do you recall what role or capacity?

23         PROSPECTIVE JUROR 130:  Teller.

24         THE COURT:  All right.  That would not have any

25   influence on your decision-making process in this case?

UNITED STATES DISTRICT COURT

1          PROSPECTIVE JUROR 130:  No, sir.

2          THE COURT:  All right.  Thank you.

3          Juror No. 124.

4          PROSPECTIVE JUROR 124:  My brother-in-law is the

5   president of Clayton Banks, and my best friend is a teller with

6   BB&T.  Would not affect me either way.

7          THE COURT:  That's something you discuss with them in

8   terms of what they do?

9          PROSPECTIVE JUROR 124:  Never.

10         THE COURT:  All right.  Thank you.  Anybody else on

11  row two?

12         Let's go back, anybody on row three?

13         Right behind you, Juror 151.

14         PROSPECTIVE JUROR 151:  I was a loan officer for

15  Wells Fargo for about 15 years.

16         THE COURT:  Okay.  And how long ago?  When was --

17         PROSPECTIVE JUROR 151:  About --

18         THE COURT:  When were you no longer?

19         PROSPECTIVE JUROR 151:  15 -- let's see, I quit in

20  2002, I think.

21         THE COURT:  Okay.  And you were a loan officer, you

22  said?

23         PROSPECTIVE JUROR 151:  Yes, sir.

24         THE COURT:  And would that impact at all your

25  decision-making process in this case?

                    UNITED STATES DISTRICT COURT

1          PROSPECTIVE JUROR 151:  No.

2          THE COURT:  Put aside any knowledge you may --

3    related to that job and decide this case based solely on the

4    evidence you hear during this trial?

5          PROSPECTIVE JUROR 151:  Yes, sir.

6          THE COURT:  Okay.  Thank you.  And to your left was

7    Juror 161.

8          PROSPECTIVE JUROR 161:  Many, many years ago, I was a

9    loan officer at Grissom Air Force Base and Credit Union.  I

10   also worked at banking in Kokomo, Indiana and -- as a teller,

11   and then here in First Tennessee Bank, I was also -- worked

12   there.  But that was almost 20 years ago since I've been in it.

13   We currently bank at a credit union, but...

14         THE COURT:  What was your job at First Tennessee

15   here?

16         PROSPECTIVE JUROR 161:  First Tennessee, I was just

17   banking teller at that time.  I did have -- when I worked for

18   the Blount County government as a chief deputy clerk, I did

19   have some duties that involved doing financial -- representing

20   the financial aspects with First Tennessee.  But that was about

21   25 years ago.

22         THE COURT:  And, again, you've heard me ask this

23   question, would your previous employment in some fashion with

24   the banking industry, would you be able to put that aside and

25   decide this case based solely on the evidence presented during

UNITED STATES DISTRICT COURT

1   the course of this trial?

2          PROSPECTIVE JUROR 161:  Yes.

3          THE COURT:  Thank you.  Anybody else on row three?

4          How about row four?

5          Okay.  Pass the microphone back to Juror 28.

6          PROSPECTIVE JUROR 28:  My sister was a -- excuse me,

7   my sister was a loan officer of a bank -- for a bank in

8   Illinois.  It was probably 30 years ago.

9          THE COURT:  That wouldn't impact your decision-making

10  process.

11         PROSPECTIVE JUROR 28:  No.

12         THE COURT:  Thank you.  Anybody we missed?

13         All right.  Now I'm going to a different category.

14  Anyone have any training in accounting or the law?

15         Couple hands.  Looks like they're all limited to the

16  front row.  Pass the microphone down to the front row.

17         Training or experience in accounting or legal?

18         PROSPECTIVE JUROR:  I've worked in accounting, and I

19  have my master's of finance.

20         THE COURT:  Okay.  And are you currently working in

21  accounting field?

22         PROSPECTIVE JUROR:  I currently oversee the

23  accounting department at my business.

24         THE COURT:  Okay.  And just generally, day-to-day,

25  what -- kind of give me the one-sentence description of what

UNITED STATES DISTRICT COURT

1    you do.

2              PROSPECTIVE JUROR:  Of what I do?  I'm the director

3    of finance, so I oversee the finance, accounting, and

4    purchasing department of a distribution company.  I don't see

5    that being a problem.

6              THE COURT:  That wouldn't -- you -- even with that

7    accounting background, you would be able to decide this --

8    listen to the evidence in this case, independently of any

9    background you may have, and decide the case based only on the

10   evidence you hear during the course of this trial?

11             PROSPECTIVE JUROR:  I believe so, yes.

12             THE COURT:  Thank you.

13             Anybody else in the front row?  Juror 136.

14             PROSPECTIVE JUROR 136:  I've worked in the accounting

15   for about seven years and currently do AP processing.

16             THE COURT:  When you worked with the accounting firm,

17   what was your -- what were your responsibilities?

18             PROSPECTIVE JUROR 136:  Mainly just processing vendor

19   payments.

20             THE COURT:  Would that past or current work, would

21   that --

22             PROSPECTIVE JUROR 136:  No.

23             THE COURT:  -- impact at all your decision making

24   process in this case?

25             PROSPECTIVE JUROR 136:  No.

UNITED STATES DISTRICT COURT

Jury Voir Dire

 1          THE COURT:  Somebody else?  Juror -- excuse me, juror

 2  158?

 3          PROSPECTIVE JUROR 158:  I'm an attorney primarily

 4  within real estate.  We do represent some lenders within the

 5  real estate realm.

 6          THE COURT:  Okay.  Your legal training or background,

 7  would that impact your decision-making process in this case?

 8          PROSPECTIVE JUROR 158:  No, sir.

 9          THE COURT:  You'd be able to decide this case based

10  solely on the evidence presented during the course of the

11  trial?

12          PROSPECTIVE JUROR 158:  Yes, sir.

13          THE COURT:  And be fair and impartial to both sides?

14          PROSPECTIVE JUROR 158:  Yes, sir.

15          THE COURT:  Anybody else?

16          All right.  Next, and we may get some hands on this

17  too, does anyone have any specialized knowledge or training in

18  computer programming?

19          Just one hand so far.  Hand it back to Juror 37.

20          PROSPECTIVE JUROR 37:  I'm technical support for

21  Apple.

22          THE COURT:  Okay.  And that would certainly count as

23  specialized knowledge or training in computer programming.

24          And there may be some aspects of -- you know,

25  technical aspects of computer programming and the like in this

UNITED STATES DISTRICT COURT

1  case.  Can you kind of put aside your own specialized knowledge

2  and listen --

3          PROSPECTIVE JUROR 37:  Yes, sir.

4          THE COURT:  -- only to the evidence presented during

5  the course of this trial?

6          PROSPECTIVE JUROR 37:  Yes, Your Honor.

7          THE COURT:  And do you -- let me go ahead and as a

8  follow-up, when you say specialized training, is that -- or in

9  terms of your role with Apple, is that like you go to a

10  particular businesses or you provide tech --

11          PROSPECTIVE JUROR 37:  No, sir.  I'm a home adviser.

12  I do tech support via social media.

13          THE COURT:  Okay.  Thank you.  And, again, would that

14  background and training affect your ability to be fair and

15  impartial toward either side?

16          PROSPECTIVE JUROR 37:  No, sir.

17          THE COURT:  All right.  Next, is there anyone on the

18  panel, and this may have already been encompassed by earlier

19  questions, but given the nature of the allegations in this

20  case, let me ask it to be clear, is there anyone on the panel

21  who has been or who has had a family member or close personal

22  friend who has been a victim of a financial crime or scheme?

23          All right.  Nobody?  All right.  One hand maybe.

24  Juror 3.  Pass the microphone down.

25          PROSPECTIVE JUROR 3:  Right now my family is going

```
 1    through with Western Union a lawsuit that is going on right
 2    now.  I don't know if that makes a factor -- so, yeah.
 3                THE COURT:  Okay.  That's related to generally --
 4                PROSPECTIVE JUROR 3:  Yeah.  It was a -- something
 5    done on Craigslist, and we lost a large amount of money that
 6    we're trying to -- and they -- the U.S. government is trying to
 7    get those funds back to us.
 8                THE COURT:  Okay.  Would that current ongoing
 9    litigation, based upon the knowledge of this case as the
10    Court's described, would that impact your ability to be fair
11    and impartial to both sides in this case in any way?
12                PROSPECTIVE JUROR 3:  No, sir.
13                THE COURT:  Okay.  Anybody else?
14                All right.  Next, who on the panel is familiar with
15    Internet social media websites, like Facebook, MySpace,
16    LinkedIn, or YouTube?
17                My question then, does everyone understand that
18    websites like these provide opportunities to upload audio and
19    video files to the Internet without verification or fact
20    checking by others?  Does everybody understand that?
21                Does anyone on the panel tend to believe everything
22    you read, see, or hear on the Internet?
23                And does anyone on the panel maintain a blog?
24                Do any of you have any feelings or philosophical
25    beliefs about the Internet that would prevent you from deciding
```

UNITED STATES DISTRICT COURT

1    this case based solely on the law and the evidence?

2            Thank you.

3            All right.  Next, and again, this may have been

4    encompassed by other questions I've asked you, have any of you,

5    family members, or close friends had any difficult or

6    unpleasant experiences with any agency of the federal

7    government, including the FBI or the United States Attorney's

8    Office, other than what we may have described in terms of cases

9    you've been involved in?

10           Does any one of you, for whatever reason, have any

11   strong personal feelings for or against the federal government?

12           Have any of you or your family members been involved

13   in any proceeding with a federal or state governmental agency

14   that has not been resolved to your satisfaction?

15           This is somewhat corollary to what I've asked you

16   before, any of you, your family members, or close friends, to

17   your knowledge, hold any beliefs, convictions, or prejudices

18   against the laws of the United States generally, such as you

19   could not sit as a fair and impartial juror in this case?

20           Another way of asking that, would you be able to

21   listen to the legal instructions the Court gives you during the

22   course of the trial, and particularly at the close of the

23   trial, and decide the case, again, based on the facts as you

24   decide them and the law as the Court gives to you?

25           Would everybody be able to do that?

UNITED STATES DISTRICT COURT

1        All right.  Some of the evidence in this case may

2    include audio recordings of conversations, according to what

3    the parties have told me.  And some of the conversations that

4    were recorded may be more audible than others.

5        Does anyone expect tapes, such as these, to feature

6    what may be considered high quality or studio quality sound?

7        Would anyone expect intercepted and recorded

8    conversations to be perfectly clear with the speakers using

9    good diction and grammar before you would even consider

10   recordings as evidence?

11       Does anyone have any concerns about your own ability

12   to listen and hear -- listen to and hear audiotapes that may be

13   introduced as evidence in this case?

14       All right.  One of the elements the government must

15   prove beyond a reasonable doubt in every criminal case is a

16   defendant's intent.  The Court will later instruct you on what

17   the law requires in terms of proving the defendant's intent in

18   this case.

19       Do any of you believe you would be unable to assess

20   another person's intent?

21       In other words, since we cannot read a person's mind

22   to determine what his or her intent was at a given time, intent

23   in criminal cases is often proved by the defendants' actions

24   and the inferences that may be drawn from the circumstances

25   surrounding those actions.

UNITED STATES DISTRICT COURT

1          Do any of you believe you would be incapable of

2     seeking to infer another person's intent from the person's

3     actions and the surrounding circumstances?

4          One of the potential witnesses in this case is an

5     individual employed by the United States Federal Reserve

6     system.

7          Would any of you have any prejudice or bias for or

8     against a witness employed by the Federal Reserve such that you

9     could not fairly and impartially consider this witness'

10    testimony?

11         Again, would you be able to assess that witness'

12    testimony and credibility just like you would any other witness

13    in this case?

14         Thank you.

15         And do any of you hold any philosophical, religious,

16    or spiritual beliefs that would prevent you from sitting in

17    judgment of another person in this criminal case?

18         All right.  Having heard the questions put to you by

19    the Court, does any other reason suggest itself to you as to

20    why you could not sit on this jury and render a fair verdict

21    based on the evidence presented to you and in the context of

22    the Court's instructions to you on the law?

23         Anyone believe they would not be able to do so?

24         And, again, let me ask this question a different way,

25    but I'm going to ask it again, because it's an important

UNITED STATES DISTRICT COURT

1    question, if you're selected to sit on this case, will you be

2    able to render a verdict solely on the evidence presented at

3    the trial and in the context of the laws I'll give to you and

4    my instructions, disregarding any other ideas, notions, or

5    beliefs about the law that you may have encountered in reaching

6    your verdict?

7              Does everyone believe they will be able to do so?

8              All right.  Thank you.  That concludes the Court's

9    questioning.  I think that's sufficient, so I'm going to

10   conclude the voir dire with those questions.

11             MS. DAVIDSON:  Your Honor, may we have a sidebar?

12             THE COURT:  Yes.

13        (Bench conference begins.)

14             MS. DAVIDSON:  I'm sorry, but I did have two

15   follow-up questions.

16             THE COURT:  What were those?

17             MS. DAVIDSON:  For Juror No. 151, I would like to

18   know what websites she read about this case on.

19             And with Juror No. 28, I would like to know if she

20   felt like her neighbor was treated fair in that prosecution?

21             THE COURT:  Okay.  Is that it?

22             MS. DAVIDSON:  That's it.

23             THE COURT:  All right.  Ms. Tucci-Jarraf, did you

24   have any follow-up questions you wanted to suggest to the Court

25   based upon the Court's questions?

UNITED STATES DISTRICT COURT

1          MS. TUCCI-JARRAF:  I'm just going to make the

2    standing due declaration again issued in writing to the court

3    clerk.

4          THE COURT:  Mr. Beane, do you have any additional

5    questions you want to ask?

6          MR. BEANE:  No.

7          THE COURT:  Thank you.

8          MR. LLOYD:  Your Honor.

9          THE COURT:  Wait a second, Ms. Davidson.

10         MR. LLOYD:  I will have one motion as to one juror.

11         THE COURT:  For cause?

12         MR. LLOYD:  Yes, sir.

13         THE COURT:  What is that?  Go ahead and make it now.

14         MS. DAVIDSON:  I didn't bring my --

15         MR. LLOYD:  Juror 132 in spot 28 on the back row,

16   answered on her --

17         THE COURT:  I've got 32.  Let's just make sure.

18   Maybe I wrote it down wrong.

19         Julie, can you come up here a second?  Seat 28, is it

20   32 or 132?

21         THE COURTROOM DEPUTY:  132.  That's what I have.

22         THE COURT:  Juror 132.

23         MR. LLOYD:  Thank you, Your Honor.  She answered in

24   the questionnaire that she's never been involved in civil

25   litigation, but I sued her once.

UNITED STATES DISTRICT COURT

1          THE COURT: Maybe she's forgotten about that. Want

2    me to ask her about that?

3          MR. LLOYD: I would rather she be struck. She wasn't

4    happy about it. It was a collection matter for the Episcopal

5    school, and her husband had received service and not bothered

6    to tell her till I started garnishment, so I'm afraid if you

7    ask her much about it, it would embarrass her.

8          THE COURT: All right. Okay. Question is, if I

9    strike her, do we need to bring somebody up again in case you

10   exercise all your peremptory challenges?

11         MS. DAVIDSON: I think we will.

12         THE COURT: All right. Any objection based on what

13   Mr. Lloyd said?

14         MS. DAVIDSON: No.

15         THE COURT: All right. Any other for cause

16   challenges?

17         MR. LLOYD: No, Your Honor, not on my part.

18         THE COURT: Thank you. Mr. McGrath or Mr. Beane?

19         MR. McGRATH: No, sir.

20      (Bench conference concluded.)

21         THE COURT: All right. Couple follow-up questions.

22         But, Juror 132, based on some responses, we're going

23   to let you go for purposes of this case and maybe bring you

24   back for a future case.

25         So we do need to call up an additional prospective

UNITED STATES DISTRICT COURT

1    juror at this time.

2                THE COURTROOM DEPUTY:  122.

3                THE COURT:  Morning, Juror 122.  I'm not going to ask

4    you an hour and a half of individual questions, I promise.  But

5    let me, based on all the questions you heard the Court asking

6    those in the jury box that you now joined, is there anything

7    you need to bring to the Court's attention that might impact

8    your ability to function as a fair and impartial juror?

9                PROSPECTIVE JUROR 122:  I can be fair and impartial.

10               THE COURT:  Any scheduling or other difficulties

11   sitting for the next four to six days?

12               PROSPECTIVE JUROR 122:  No, Your Honor.

13               THE COURT:  Any previous involvement with the

14   criminal justice system?

15               PROSPECTIVE JUROR 122:  No, sir.

16               THE COURT:  Okay.  And what about specialized

17   training or experience in accounting, the law, or computer

18   programming?

19               PROSPECTIVE JUROR 122:  No, sir.

20               THE COURT:  And if you're selected to sit on this

21   case, would you be able to render a verdict solely on the

22   evidence presented at the trial and in the context of the

23   instructions as the Court would give you and your other jury

24   members?

25               PROSPECTIVE JUROR 122:  Yes, sir.

                    UNITED STATES DISTRICT COURT

Jury Voir Dire

1        THE COURT:  And no previous knowledge of this case or

2   of any of the individuals involved?

3        PROSPECTIVE JUROR 122:  No, sir.

4        THE COURT:  Okay.  Thank you.  Give me just a moment.

5        Juror 151, did you indicate earlier you had read

6   something about this case?

7        PROSPECTIVE JUROR 151:  Yeah.

8        THE COURT:  All right.  If you'd pass the microphone,

9   whoever has the microphone.

10       Again, I don't know what you read, because you said

11  you'd be able to put that aside and decide this case based

12  solely on the evidence.  Correct?

13       PROSPECTIVE JUROR 151:  Yes, sir.

14       THE COURT:  All right.  But let me just ask you, to

15  the extent you read something about this case, I think you

16  mentioned some websites, do you recall where you might have

17  read something about the case?

18       PROSPECTIVE JUROR 151:  If you just Google their

19  names, there's all kinds of articles that come up, anything

20  that's ever been --

21       THE COURT:  Okay.  So you don't recall specifically

22  if it was a newspaper website --

23       PROSPECTIVE JUROR 151:  No.

24       THE COURT:  -- or radio or television station

25  website?

UNITED STATES DISTRICT COURT

 1          PROSPECTIVE JUROR 151:  No.

 2          THE COURT:  Okay.  All right.  Do you recall how

 3  extensive your reading was, like...

 4          PROSPECTIVE JUROR 151:  I know quite a bit about

 5  it --

 6          THE COURT:  Okay.

 7          PROSPECTIVE JUROR 151:  -- if that's what you want to

 8  know.

 9          THE COURT:  All right.

10          Do you recall for about how long you may have -- you

11  know, I mean, was it an afternoon, was it 20 minutes of reading

12  some things about the case?

13          PROSPECTIVE JUROR 151:  Oh, no, no, no.  10, 15

14  minutes maybe.

15          THE COURT:  Okay.  And about how long ago was that?

16          PROSPECTIVE JUROR 151:  How long ago?

17          THE COURT:  Yeah.

18          PROSPECTIVE JUROR 151:  When I got my order to appear

19  today.  I started looking through, like, all the cases that are

20  coming up and what they're about.

21          THE COURT:  All right.  And so, again, I'll ask you,

22  could you put aside -- could you just put out of your mind that

23  10 or 15 minutes of the articles you may have read and not

24  consider that at all and, instead, decide this case based

25  solely on the evidence you're going to hear over the next four

UNITED STATES DISTRICT COURT

1  to six days?

2          PROSPECTIVE JUROR 151:  I think it would be pretty

3  interesting to hear, both sides of it, honestly.

4          THE COURT:  Okay.  Well, maybe I didn't -- it's just

5  important -- and, again --

6          PROSPECTIVE JUROR 151:  I know.  It's important for

7  me to have an unbiased opinion.

8          THE COURT:  And it's just as important for the

9  jurors -- whoever is selected as jurors in this case to decide

10 this case only on what you hear from this witness stand, any

11 stipulations the parties agreed to, and any documents, or other

12 evidence that the Court admits into --

13         PROSPECTIVE JUROR 151:  I think I could have an

14 unbiased opinion.

15         THE COURT:  We have fine reporters in the community,

16 excellent reporters, but there may be things in a website

17 article that don't even come into evidence into trial or they

18 may not pertain to the trial itself.  So that's why I guess I'm

19 honing in, just making sure, one, you understand your

20 obligation as a juror to decide the case based solely on the

21 evidence you present at trial, and, two, more importantly, that

22 you'll be able to -- or as importantly, that you'd be able to

23 put out of your mind and put aside anything you may have

24 briefly read about this case before coming to court today?

25         PROSPECTIVE JUROR 151:  Yes, I think I can, sir.

UNITED STATES DISTRICT COURT

Jury Voir Dire

1          THE COURT:  Okay.  All right.  And then, let's see,

2     Juror 28, pass the microphone back there.

3          I just want to follow up on, while the microphone is

4     being passed back, you mentioned the next-door neighbor who was

5     involved in -- with the criminal justice system in the federal

6     courts.

7          And I may have asked this or I may not, I don't

8     recall, but at least from your perspective or talking with your

9     neighbor or anything else, do you feel that your neighbor was

10    treated fairly by the criminal justice system and those

11    involved in the criminal justice system?

12          PROSPECTIVE JUROR 28:  Yes.

13          THE COURT:  And, again, would you be able to set

14    aside that particular involvement and decide this case based

15    solely on the evidence presented during the course of this

16    trial?

17          PROSPECTIVE JUROR 28:  Yes, sir.

18          THE COURT:  Okay.  All right.  What we're going to do

19    now is go through the peremptory challenge process.  And I'm

20    going to have -- obviously, the Court has asked a lot of

21    questions, so I'm going to give government representatives and

22    counsel and the defendants and their standby counsel the

23    opportunity to take a few minutes before they submit their

24    peremptory challenges.

25          It would be best if you stayed in your seats during

UNITED STATES DISTRICT COURT

1    this process, as you can imagine, because they're looking at

2    their charts and everything, so if you don't mind that, take

3    about ten minutes.  In the meantime, we're going to turn on

4    some muffled sound.

5            I don't mind if you all stand up and stretch, engage

6    in small talk with your seat neighbors unrelated to what's gone

7    on in court so far, unrelated to this case in any fashion, just

8    kind of stand back and sit back and relax for the next ten

9    minutes or so.

10           MR. LLOYD:  Your Honor, may we approach?

11           THE COURT:  Yeah.

12           They want to approach.

13       (Bench conference begins.)

14           THE COURT:  All right.  Who wanted to ask to come up?

15           Mr. Lloyd?

16           MR. LLOYD:  Yes, Your Honor.

17           With respect to Juror 151, the one who's Googled --

18           THE COURT:  Want her to be dismissed for cause?

19           MR. LLOYD:  Yes, Your Honor, because she -- she

20   indicated that she wanted to hear their side and, of course,

21   she's not --

22           THE COURT:  I'll grant the motion to dismiss.

23           MS. DAVIDSON:  I don't object.

24           THE COURT:  Okay.  Anybody else?  All right.

25       (Bench conference concluded.)

UNITED STATES DISTRICT COURT

1    THE COURT:  All right.  I do need everybody to sit

2 back down for a moment.

3    Before we do that, Mr. Lloyd --

4    THE REPORTER:  I can't hear you.

5    THE COURT:  Julie, you need to turn off the sound.

6    THE COURTROOM DEPUTY:  Oh, I'm sorry.

7    THE COURT:  After further discussions, Juror 151, I

8 think given what we've been talking about, I think we need to

9 save you for another case.

10    PROSPECTIVE JUROR 151:  Yay.

11    THE COURT:  So we're going to let you go.  Which does

12 mean we're going to have to call up another prospective juror.

13    THE COURTROOM DEPUTY:  30.

14    THE COURT:  Good morning, Juror 30.

15    PROSPECTIVE JUROR 30:  Good morning.

16    THE COURT:  Thank you for waiting patiently.  Any

17 scheduling or other difficulties with serving as a juror over

18 the next four to six days?

19    PROSPECTIVE JUROR 30:  No.

20    THE COURT:  And you heard a lot of questions the

21 Court's asked while you've been sitting patiently in the

22 audience.  Is there any particular question, particularly as it

23 may relate to any difficulties with your functioning as a fair

24 and impartial juror in this case that you need to bring to the

25 Court's attention based on all the questions I've been asking?

UNITED STATES DISTRICT COURT

Jury Voir Dire

1          PROSPECTIVE JUROR 30:  My husband is an executive

2   vice president at a bank, Southern Bank of Tennessee out of

3   Nashville.  He does operations and security.

4          THE COURT:  And would that -- thank you for bringing

5   that to my attention.  And tell me again what his title is.

6          PROSPECTIVE JUROR 30:  Executive vice president of

7   operations and security.

8          THE COURT:  Do you mind me asking the name, which

9   bank it is?

10          PROSPECTIVE JUROR 30:  Southern Bank of Tennessee out

11   of Nashville.

12          THE COURT:  No involvement, as far as you know, with

13   the banks that I've identified?

14          PROSPECTIVE JUROR 30:  No, sir.

15          THE COURT:  Would that employment or position as

16   occupied by your husband, would that interfere in any way with

17   your ability to function fairly and impartially in this case?

18          PROSPECTIVE JUROR 30:  No, sir.

19          THE COURT:  And would you be able to put aside any

20   discussions you may have had with your husband or anyone else

21   about the banking industry and decide this case based solely on

22   the evidence as presented during the course of this trial?

23          PROSPECTIVE JUROR 30:  Yes, sir.

24          THE COURT:  Other than that, other than your

25   husband's involvement or employment with the banking industry,

UNITED STATES DISTRICT COURT

1  any particular involvement in or specialized knowledge in

2  accounting, the law, or computer programming or banking?

3          PROSPECTIVE JUROR 30:  No, sir.

4          THE COURT:  Any previous involvement with the

5  criminal justice system by yourself, family member, or close

6  personal friend?

7          PROSPECTIVE JUROR 30:  No, sir.

8          THE COURT:  And do you know -- do you know of any

9  reason why you would have strong personal feelings for or

10  against the federal government or for or against the defendants

11  in this case?

12          PROSPECTIVE JUROR 30:  No, sir.

13          THE COURT:  Okay.  We're ready then.

14          Now, everyone can relax for about ten minutes or so.

15      (Recess from 11:27 a.m. to 11:56 a.m.)

16          THE COURT:  Okay.  I believe we're now ready.  If

17  everybody could have a seat.  I'm going to excuse you by row,

18  but I'm going to ask you to -- if I excuse you, to sit in the

19  audience for a few moments just to make sure I don't make any

20  mistakes.

21          As I noted, the parties have submitted peremptory

22  challenges, but we also have either because of -- for a variety

23  of reasons, in addition to those peremptory challenges, we

24  ended up with excess jurors.

25          Again, I appreciate in advance everyone's willingness

UNITED STATES DISTRICT COURT

 1  to serve.  But let me do this, I'm going to start with the

 2  front row, I'm going to excuse Juror 31, Juror 136, Juror 107,

 3  Juror 158, Juror 169, and Juror 3.

 4          On the second row, I'm going to excuse Juror 124 and

 5  Juror 150.

 6          On the third row, we're going to excuse Juror 149,

 7  Juror 108, Juror 30, and Juror 129.

 8          And then on the fourth row, I'm going to excuse

 9  Juror 28, Juror 146, Juror 110, Juror 122, Juror 143, Juror

10  137, and Juror 135.

11          I hope that leaves us with 14.  We'll double-check.

12  I did not -- there you go.  13, I messed up.  I missed one.  Is

13  that 13?

14          THE COURTROOM DEPUTY:  Yes.

15          THE COURT:  Hold on a second.  I'm going to have to

16  call one of you back, so don't go anywhere.

17          All right.  Juror 135, where are you?  In the far

18  back row.  I did not mean to excuse you.  If you can come back

19  up.  Thank you.  You don't have to go all the way back across,

20  you can sit next to Juror --

21          PROSPECTIVE JUROR 135:  Hey, I'm this far.

22          THE COURT:  All right.  Now, that should leave us

23  with 14 jurors, if everybody wants to count with me.

24          All right.  This will be our jury to hear the case.

25  The Court took into consideration the parties' peremptory

UNITED STATES DISTRICT COURT

1    challenges or utilized the parties' peremptory challenges as

2    well as excess jurors that were not needed beyond that.  So

3    this will be the jury of 14 to be sworn in to hear the case.  I

4    would ask if you all stand at this time to be given your oath

5    as jurors specific to this case.

6              THE COURTROOM DEPUTY:  If you'll raise your right

7    hand, please.

8         (Jury was duly sworn.)

9              THE COURTROOM DEPUTY:  Thank you.

10             THE COURT:  Thank you.  You may be seated.  Just a

11   moment, what we're going to do is take a lunch break.  I

12   usually go longer the first time to allow you all to be

13   oriented to the jury room.  And when you come back in, you'll

14   be in the primary seats and closer together.  And Ms. Norwood

15   and our court security officer will explain that to you during

16   the break.

17             But we're going to break until 1:30.  Let me remind

18   you, you have been selected to serve as jurors in the case.  So

19   from this point forward, and I'm going to give you some greater

20   preliminary instructions when we come back.

21             But just remind you, from this point forward, not to

22   talk about the case among yourselves or with anyone associated

23   with the case or anyone not associated with the case.  And I'll

24   ask you to keep an open mind as you hear the opening statements

25   and the evidence in this case, and ultimately the closing

UNITED STATES DISTRICT COURT

 1   arguments, and the Court's legal instructions, all of which

 2   I'll discuss with you shortly after lunch.

 3           Just primarily want to caution you not to do any

 4   research about the case or talk with anyone about the case or

 5   among yourselves about the case.

 6           So from this point forward, you'll enter and exit to

 7   my right through this door over here.

 8           For those in the audience, who either underwent jury

 9   questioning or waited patiently on the benches and were not

10   called up for potential jury service, I want to thank you for

11   your -- your responsible behavior in showing up this morning

12   and being subject to service in this case.

13           As I mentioned, this Court, I believe other judges in

14   this district have several other trials scheduled over the

15   coming months, so we look forward to having some of you back in

16   the courtroom again, offering yourselves for potential jury

17   service.

18           That being said, we're going to let our jury exit

19   first.  Again, from now on, you'll enter and exit through this

20   door and get oriented to the jury room and take lunch.  And

21   everyone else can quietly, the other prospective jurors can

22   quietly excuse themselves as well.

23           THE COURTROOM DEPUTY:  All rise, please.

24       (Jury out at 12:02 p.m.)

25           THE COURT:  All right.  Everyone may be seated just a

                    UNITED STATES DISTRICT COURT

 1   moment.  As you heard me say, we'll recess until 1:30.  The
 2   Court will give some further preliminary instructions and then
 3   we'll go into opening statements.  Remind everyone from our
 4   discussions last week that the government will go first.
 5            Again, if you desire to make opening statements, the
 6   government will go first, and remind -- I have up to 40
 7   minutes.  We left this open last week, and I'll ask you now,
 8   I'll ask the individual defendants, do you have an order that
 9   you want me to call upon you for giving opening statements,
10   Ms. Tucci-Jarraf or Mr. Beane?
11            The government will go first and then I will turn to
12   one of the defendants for opening statements or Mr. Lloyd,
13   either one.
14            Go ahead, Ms. Tucci-Jarraf.
15            MS. TUCCI-JARRAF:  Thank you.
16            Without prejudice and with the filings -- copies are
17   going to be coming in right now of the filing in regards to the
18   earlier oral declaration that I made, the written one is coming
19   in.  So with that notice on the record, just that I have a
20   standing declaration, I'm going to allow the prosecutors to
21   just do as they feel they do here today.
22            I'm going to reserve any kind of opening statement or
23   something to that effect until after they've done and presented
24   their case.
25            THE COURT:  All right.  You do not wish to give an

UNITED STATES DISTRICT COURT

1  opening statement --

2          MS. TUCCI-JARRAF:  Without prejudice.

3          THE COURT:  -- at this stage of the case?  You

4  reserve opening statement, if any, to the close of the

5  government's case?

6          MS. TUCCI-JARRAF:  Without prejudice, yes.

7          THE COURT:  All right.  And, Mr. Beane, do you wish

8  to give an opening statement at the onset of the case?

9          MR. BEANE:  I'd like to join in Ms. Tucci-Jarraf's

10 position and --

11         THE COURT:  All right.  You also want to reserve

12 opening statement --

13         MR. BEANE:  Yes, sir.

14         THE COURT:  -- any opening statement you may wish to

15 give until the close of the government's case or the

16 introduction of your case?

17         MR. BEANE:  Yes.

18         THE COURT:  That's your right as individual

19 defendants.

20         So, Ms. Davidson, I'll mention that -- I'll go ahead

21 and mention that to the jury when I talk about the trial

22 process, that the defendants have reserved any opening

23 statement until the onset of their cases.

24         So, Ms. Davidson, I believe we gave you up to 40

25 minutes for opening statement.

                    UNITED STATES DISTRICT COURT

1    MS. DAVIDSON:  Yes, Your Honor.  Ms. Svolto informs

2    me she would only like 30.

3         And, Your Honor, at this time, I'd like to move to

4    strike a statement that I made during voir dire.  I

5    inadvertently said the name of Juror 184.  And I'd like the

6    Court to strike that from the record and have it not published

7    when the record is published.

8         THE COURT:  All right.  Consistent with the Court's

9    practice of referring to jurors in both criminal and civil

10   cases only by their juror number, the Court will grant that

11   motion and have the name referenced stricken from the record.

12        All right.  Unless there's anything else to bring up,

13   we'll see everybody back here promptly at 1:30.

14        THE COURTROOM DEPUTY:  All rise.  This honorable

15   court shall stand in recess until 1:30.

16      (Recess from 12:05 p.m. to 1:34 p.m.)

17        THE COURTROOM DEPUTY:  All rise.

18        THE COURT:  Thank you.  Everyone may be seated.

19   Before we bring in the jury, I don't recall that we discussed

20   at the final pretrial conference the invocation of the rule of

21   sequestration.

22        MS. TUCCI-JARRAF:  Could you repeat that?

23        THE COURT:  I don't know -- well, the rule of

24   sequestration basically requires witnesses or potential

25   witnesses to be sequestered, in other words, not to be in the

UNITED STATES DISTRICT COURT

1    courtroom during the course of trial, other than the parties or
2    party representatives.
3            So I guess unless there's objections otherwise, the
4    Court is going to go ahead and invoke the rule of
5    sequestration.
6            MS. DAVIDSON:  Your Honor, I do have a motion,
7    pursuant to that.  Federal Rule of Evidence 615 allows in
8    certain circumstances for -- specifically (c), for an expert
9    witness who does not testify about the facts of the case, but
10   rather gives an opinion based upon the testimony of others.
11   And our forensic account, Zach Scrima, I can't -- I'm so bad
12   with names, Zach Scrima.  Is that how you say it?
13           THE COURT:  Scrima?
14           MS. DAVIDSON:  Yes.  He is -- we move that he be
15   allowed to sit in the audience.
16           THE COURT:  So the Court is going to invoke the rule
17   of sequestration.  Rule 615 of the Federal Rules of Evidence
18   provides that the exclusion does not apply to the parties, an
19   officer, or employee of the party who's designated as the
20   party's representative.  Now, you have designated --
21           MS. DAVIDSON:  Yes, we have designated as Mr. Parker
22   Still, and he's testifying first, and then all of the other
23   agents are not testifying.
24           THE COURT:  Okay.  So they wouldn't be subject to the
25   rules, so --

UNITED STATES DISTRICT COURT

Jury Voir Dire

1          MS. DAVIDSON:  Yes, Your Honor.  So, basically, the

2    Court will -- does allow a representative of a party, who in

3    this case is Mr. Parker of the FBI, is the government's

4    representative, as stated by Ms. Davidson, so he would not be

5    subject to the rule of sequestration.

6          The government has further requested that their

7    expert witness, Mr. Zach Scrima -- can you spell that?

8          Yes, Your Honor.  It's S-c-r-e-m-a.

9          THE COURT:  Mr. Zach Scrima be authorized --

10         MS. DAVIDSON:  That's -- I'm having a hard time.  My

11   label is wrong.  It's I.  S-c-r-i.

12         THE COURT:  Mr. Scrima be allowed to remain or not be

13   subject to the rule of exclusion under Rule 615(c), which

14   provides a person whose presence a party shows to be essential

15   to presenting the party's claim or defense.

16         Is there any objection from the defendants to

17   Mr. Scrima being not subject to the rule of exclusion?

18         Ms. Tucci-Jarraf?

19         MS. TUCCI-JARRAF:  Yes, thank you.  I would just like

20   to put for note of the record in response to what you've just

21   asked is the standing declarations that were filed today on

22   1/23.

23         THE COURT:  All right.  Besides --

24         MS. TUCCI-JARRAF:  That were handwritten and filed in

25   response to that.  I believe everyone should be transparent and

UNITED STATES DISTRICT COURT

1    present, so I have nothing further to say.

2              THE COURT:  Nothing further besides what's filed?

3              MS. TUCCI-JARRAF:  I do ask for a clarification,

4    though.  Excuse me.  Is this for -- will this standard be set

5    for every single witness or just for --

6              THE COURT:  Just talking about Mr. Scrima now.

7              MS. TUCCI-JARRAF:  Just Mr. Scrima.  Uh-huh.

8              THE COURT:  Mr. Beane, do you have any response or

9    objection to --

10             MR. BEANE:  No.

11             THE COURT:  -- the government's request?

12             All right.  Then the Court -- first of all, the Court

13   will invoke the rule of sequestration.  That means that -- and

14   this applies to all the parties, both the government as well as

15   the individual defendants, so make sure you hear what I have to

16   say.  This means that witnesses who are not parties or

17   representatives of parties or also Mr. Scrima, who is not being

18   excluded under Rule 615(c), but otherwise any witnesses in this

19   case must not be present from this point forward in the

20   courtroom.

21             That is, you would need to wait in a witness waiting

22   room or somewhere outside the physical courtroom until you're

23   called as a witness in this trial.  You must stay out of the

24   courtroom until having testified and being excluded and must

25   not discuss the case with other witnesses until the case is

UNITED STATES DISTRICT COURT

1  concluded or make any attempt the find out what another witness

2  may have said on the witness stand during the trial of this

3  case.

4         So any witnesses who would be subject to that rule

5  and who have not otherwise been allowed to remain in the

6  courtroom per previous order of the Court would need to be

7  excluded at this time.

8         So with that being said, we'll bring in our jury and

9  the Court will have further preliminary instructions and then

10  opening statement of the government, and then we'll go into the

11  evidence testimony at this point.

12         Again, Ms. Svolto, you're giving the opening

13  statements?

14         MS. SVOLTO:  Yes, Your Honor.

15         (Jury in at 1:40 p.m.)

16         THE COURT:  Thank you.  Everyone may be seated.  And,

17  members of the jury, thank you, and welcome back to the

18  courtroom.  And now that you've been sworn as jurors in this

19  case, I want to give you some preliminary instructions to

20  assist you in your participation in this trial.

21         It will be your duty to find from the evidence what

22  the facts are.  You, and you alone, will be the judges of the

23  facts.  You will then have to apply those facts to the law as

24  the Court will give it to you.  You must follow that law

25  whether you agree with it or not.

UNITED STATES DISTRICT COURT

Jury Instructions

1       Let me also say that nothing the Court may say or do

2   during the course of this trial is intended to indicate or

3   should be taken by you as indicating what your verdict should

4   be.

5       The evidence from which you will find the facts will

6   consist of the testimony of witnesses, documents, and other

7   things received into the record as exhibits, and any facts the

8   parties agree to or stipulate to, or that the Court may

9   instruct you to find.

10      The parties may sometimes present objections to some

11  of the testimony or other evidence.  It is the duty of a lawyer

12  or a party to object to evidence that he or she believes may

13  not be properly offered, and you should not be prejudiced in

14  any way against the party who makes an objection.

15      At times, I may sustain objections or direct you to

16  disregard certain testimony or exhibits.  You must not consider

17  any evidence to which an objection has been sustained or which

18  I've instructed you to disregard.  You must base your decision

19  only on the evidence in this case and my instructions about the

20  law.

21      And let me remind you in that regard what is not

22  evidence during the course of the trial.  The statements and

23  arguments of the attorneys or the parties in the context of

24  representing themselves are not evidence.  The questions and

25  objections of the attorneys or the parties representing

UNITED STATES DISTRICT COURT

1  themselves are not evidence.  Any testimony I instruct you to

2  disregard is not evidence, and anything you see or hear when

3  Court is not in session, even if what you see or hear is done

4  or said by one of the parties or by one of the witnesses, is

5  not evidence.

6           Evidence itself may be direct or circumstantial.

7           Direct evidence is testimony by a witness about what

8  that witness personally saw or heard or did.

9           Circumstantial evidence is indirect evidence, that

10  is, it is proof of one or more facts from which one may find

11  another fact by inference.

12           You are to consider both direct and circumstantial

13  evidence.  The law permits you to give equal weight to both,

14  but it is for you to decide how much weight to give any

15  evidence.

16           It will be up to you to decide which witnesses to

17  believe, which witnesses not to believe, and how much of any

18  witness's testimony to accept or reject.  I'll give you some

19  guidelines for determining the credibility of witnesses at the

20  end of the case.

21           Now, the trial will proceed in the following order:

22           First, the parties will have the opportunity to make

23  opening statements.  The government may make an opening

24  statement at the beginning of the case, after which the

25  defendants may each make an opening statement or may defer

UNITED STATES DISTRICT COURT

1  making an opening statement until the close of the government's

2  case.

3          The Court has been informed in this instance that the

4  defendants desire to not make an opening statement at the

5  beginning of the case, but instead to make an opening

6  statement, if any, at the close of the government's case.

7          Again, none of the parties are obligated to make an

8  opening statement.  The opening statements of the parties are

9  not evidence and simply serve as an introduction to the

10  evidence or what the parties anticipate the evidence in this

11  case will show.

12          Second, the government will then put on its case

13  against the defendants respectively and introduce evidence in

14  support of the charges contained in the indictment.

15          Third, after the government has presented its

16  evidence, each of the defendants may choose to present

17  evidence, but neither of them is obligated to do so.  The

18  burden is always on the government to prove each and every

19  element of the offense charged beyond a reasonable doubt.

20          The law never imposes on a defendant in any criminal

21  case the burden of calling any witnesses or introducing any

22  evidence.  The defendants do not have to prove their innocence;

23  rather, the government has the burden of proving the defendants

24  are guilty.

25          Fourth, at the conclusion of the evidence, each party

UNITED STATES DISTRICT COURT

Jury Instructions

1  will have the opportunity to present oral argument in support

2  of their respective cases.  What is said in closing argument is

3  also not evidence, just as what is said in opening statements

4  is not evidence.

5          The closing arguments are designed to present to you

6  the contentions of the parties as to what they believe the

7  evidence has shown and what inferences may be drawn from the

8  evidence.

9          The government will give its closing argument first,

10  then the defendants will each have an opportunity to make an

11  argument, after which the government has the right to make a

12  final closing argument.

13          Then, I will instruct you on the applicable law, and

14  you will then retire to consider your verdict.  I remind you

15  that your verdict must be unanimous and that your deliberations

16  will be secret.

17          Under the federal system of criminal procedure, you

18  are not to concern yourself in any way with the sentence the

19  defendants might receive if you should find either or both of

20  them guilty.  Your function is solely to decide whether the

21  defendants are guilty or not guilty of the charges against

22  them.  If, and only if, you find either or both of the

23  defendants guilty of the charges, then it becomes the duty of

24  the Court to pronounce sentence.

25          During the course of the trial, just a few comments

UNITED STATES DISTRICT COURT

Jury Instructions

1  about your conduct as jurors, since we will be -- since we will

2  be here over a multiday period.  During the course of the

3  trial, you should not talk with any witnesses or with the

4  defendants or with any of the lawyers in the case.

5        During the trial, you should not talk about the trial

6  with anyone else, your family, your friends or the people you

7  work with.  You should also not discuss the case among

8  yourselves until I've instructed you on the law and you've gone

9  to the jury room to deliberate at the end of the trial.

10       It is important that you wait until all the evidence

11  is received and you've heard my instructions on the rules of

12  law before you begin to deliberate among yourselves.  You

13  should keep an open mind until the close of the case.

14       You should not attempt to gather any information on

15  your own or engage in any outside reading on the case, and you

16  should not make any other type of investigation.

17       In short, do not in any way try to learn about the

18  case outside the courtroom.  You as jurors must decide the case

19  based solely on the evidence presented here within the four

20  walls of the courtroom.  This means during the trial you must

21  not conduct any independent research about this case, the

22  matters in the case, or the individuals, or any companies

23  involved in the case.

24       In other words, you should not consult dictionaries

25  or reference materials, search the Internet, websites, blogs,

UNITED STATES DISTRICT COURT

1   or use any other electronic tools to obtain information about

2   this case, or to help you decide the case.  Again, please do

3   not try to find out information from any source outside the

4   confines of this courtroom.

5           Until you retire to deliberate, you may not discuss

6   the case with anyone, even your fellow jurors.  After you

7   retire to deliberate, you may begin discussing the case with

8   your fellow jurors, but you cannot discuss the case with anyone

9   else until you've returned a verdict and the case is at an end.

10          I know many of you use cell phones, iPhones, Android

11  devices, the Internet, and other tools of technology.  You also

12  must not talk to anyone about this case or use these tools to

13  communicate electronically with anyone about the case.  This,

14  again, includes your family and friends.

15          You may not communicate with anyone about the case on

16  your cell phone, through e-mail, iPhone, Android device, text

17  messaging, or Twitter, through any blog or website, through any

18  Internet chat room, or by way of any other social networking

19  website, including Facebook, MySpace, LinkedIn, and YouTube.

20          Now, if you wish, you may take notes during the

21  course of this trial.  You've been distributed notepads, as I

22  see as you've come back in the courtroom.

23          A couple of mentions about the notes.  First of all,

24  I ask you not to take notes during the opening statements or

25  closing arguments, because as you just heard me say, opening

UNITED STATES DISTRICT COURT

Jury Instructions

1    statements and closing arguments are not evidence.  So I ask

2    you to restrict your note-taking to the evidentiary portion of

3    the trial, that is, when the witnesses begin testifying.

4            Also, if you do take notes, leave them in the jury

5    room at night and they'll be secure.  Remember your notes are

6    for your own personal use.

7            Also, you must not read about this case during the

8    course of the trial in the newspapers or watch or listen to

9    television, radio, or Internet reports about the progress of

10   this case.

11           Again, your decision must be made solely on the

12   evidence presented at this trial.  That is why we restrict any

13   outside reading to the extent there would be any reports about

14   the case.

15           Obviously, a juror who violates these restrictions

16   jeopardizes the fairness of these proceedings and a mistrial

17   could result, which would require the entire trial process to

18   start over.

19           Now, the final note, if at any time during the

20   trial -- I've outlined the general break schedule, but if any

21   time during the trial you have personal needs that need to be

22   addressed, or you feel like we need a break outside when the

23   Court calls for a break, then just get my attention or the

24   attention of our court security officer, and we'll certainly

25   accommodate those needs.  Again, your comfort is important to

UNITED STATES DISTRICT COURT

Opening Statement by Ms. Svolto

1   us, and we want to accommodate you in any way we can.

2            So thank you for your attention, and we'll now begin

3   the trial with opening statement from the government by

4   Ms. Svolto.

5            MS. SVOLTO:  Good afternoon.

6            Again, my name is Annie Svolto.  And together with

7   Cindy Davidson, I represent the people of the United States.

8            We're here today because Randall Beane robbed a bank,

9   and Heather Ann Tucci-Jarraf helped him hide the money.

10           Now, Beane didn't go into the bank, guns blazing, to

11  physically take the cash.  No, Beane, as he says, found a

12  simpler way to rob the bank.

13           Instead of an elaborate heist, Beane, through the use

14  of just his fingertips, took money from USAA Bank to purchase

15  over $30 million of jumbo CDs using a fake routing number --

16  excuse me, using a fake bank account number and an actual

17  routing number in order to trick the system into -- trick the

18  system into putting $31 million towards the purchase of a CD.

19           Once he had the money from the CDs into his account,

20  Heather Ann Tucci-Jarraf helped him hide it.  Now, she didn't

21  hide it under a mattress or bury it somewhere.  Instead, she

22  helped him launder the money through the purchase of assets.

23           So in this case, instead of laundering the money in

24  some elaborate scheme, instead, Heather Ann Tucci-Jarraf

25  pretended to be Beane's lawyer, and helped him purchase here a

UNITED STATES DISTRICT COURT

1   luxurious motor home worth over half a million dollars and

2   expensive vehicles.

3           And she did that by making misrepresentations about

4   the banking system, making misrepresentations about the

5   validity and source of the funds, all so Beane's purchases

6   would be honored.

7           And we think the proof will show in the summer of

8   2017, Beane was desperate.  Despite a really good paying job,

9   Beane had maxed out his credit cards.  He owed money on four

10  late auto loans.  He was bouncing checks.

11          And on July 3rd, 2017, Beane asked his bank, the

12  United Services Automobile Association, for the ability to

13  defer payment on his loans.  He asked the bank to avoid paying

14  his loans for a little bit.  He needed help.

15          The bank declined his request.  And so that very

16  night, Beane put into play a scheme to defraud the banks out of

17  millions of dollars, or at least what he would hope would be

18  millions of dollars.  And the scheme worked a lot like bouncing

19  a check, the online version of bouncing a check.

20          First, to make the online purchases, Beane had to

21  create an account to make the purchases or to pay his bills.

22  See, Beane didn't want to use his hard-earned money to pay

23  bills and make expensive purchases.  He wanted to trick the

24  system.

25          And so he created an account in order to pay those

UNITED STATES DISTRICT COURT

Opening Statement by Ms. Svolto

1    bills through his USAA account, and he set up an account using

2    a fake bank account number and the routing number to the

3    Federal Reserve Bank.  The routing number is supposed to be

4    unique to a bank account at that bank.

5           So the bank account number that Beane used, that

6    Social Security number, that was supposed to be a Federal

7    Reserve account number.  But, of course, it is not a Federal

8    Reserve account number, because, as you'll learn, Beane didn't

9    have an account at the Federal Reserve.  In fact, no one has an

10   account at the Federal Reserve.  That's not what the Federal

11   Reserve is.

12          So Beane used a fake account number, which was his

13   Social Security number, and the actual routing number of the

14   Federal Reserve Bank.  And he sent a transmission to pay off

15   his debt.  Those credit cards that were maxed out, those four

16   auto loans, he tried to pay them, and it worked.  It worked

17   because although the Internet is almost instantaneous, he took

18   advantage of a member -- service member-oriented bank and

19   online banking mechanisms and fortuitous timing.

20          And so what happened is, he does these transactions

21   late at night.  And so that wire transmission, using the actual

22   Federal Reserve routing number makes it appear that there's a

23   credit for that amount when he goes to purchase -- or excuse

24   me, pay his bills.  So the bills get paid.  In fact, he

25   overpays his credit cards twice.  And USAA Bank, they refund

UNITED STATES DISTRICT COURT

Opening Statement by Ms. Svolto

1   that money.

2           USAA Bank, you'll learn, is a military service member

3   bank.  They are only an online bank, so they have services that

4   are available that are fairly unique to USAA and designed to

5   help those who are in military service positions, maybe far

6   away from family, to conduct transactions in an easier, faster

7   way.

8           Beane benefited from that.  Beane benefited from the

9   fact that he did these transactions late at night.  So once

10  those credit card transactions went through -- excuse me, the

11  transactions went through, the wire was sent, his credit cards

12  appeared to be paid, because USAA honored that wire

13  transaction.  And his car loans were paid off, because USAA

14  honored that wire transaction.

15          Now, Beane doesn't stop there.  Beane creates, adds a

16  new account.  Beane adds Trust2 to his USAA account, another

17  bank account with which to make purchases or pay bills.  The

18  Trust2 account includes the actual number to the Federal

19  Reserve Bank and another fake bank account.  It is very close

20  to Beane's actual Social Security number, only this time one

21  number is different.

22          So this time, Trust2, he uses the Federal Reserve

23  routing number and the second fake bank account number, a bank

24  account number very close to his Social Security number, but

25  one digit off.  And then Beane uses the same method to

UNITED STATES DISTRICT COURT

1    purchase, instead of paying off those credit card debts, he

2    purchases 30 jumbo certificates of deposit, totaling

3    $31 million.

4           And he doesn't stop there.  Beane then has the

5    certificates of deposits very quickly liquidated.  In other

6    words, he liquidates those certificates of deposit the very

7    next morning.  The transactions are occurring late in the

8    evening.  The very next morning, he cashes those certificates

9    of deposits by having those certificates of deposits that he

10   purchased through USAA with the Federal Reserve routing number

11   and that second almost Social Security number account.

12          And then he cashes them in.  He cashes them in by

13   having those certificates of deposits liquidated and the cash

14   go into his actual USAA bank account.  So now he's transformed

15   the certificates of deposits into cash in his bank account, or

16   at least that's what it looks like online.  And, again, USAA

17   honored the transaction.  They gave him the credit for those.

18          And Beane doesn't stop there.  The very next day, he

19   makes purchases.  Beane knows this money can be recalled.  So

20   he has to get rid of it.  He has to launder it.  It has to go

21   somewhere.  So Beane takes the money and he buys an $86,000 car

22   at Ted Russell Ford on-site, sticker price.  He gives a check.

23          He then goes to Buddy Gregg in Farragut to buy a

24   $500,000 motor home.  The purchase of the motor home, Buddy

25   Gregg asked for a wire transfer for that amount of cash.  And

                    UNITED STATES DISTRICT COURT

Opening Statement by Ms. Svolto

1  so at this point, Buddy Gregg has the money that's in his USAA

2  bank account wired to Buddy Gregg's bank, that's Whitney Bank.

3       So he wires the money to Whitney Bank to purchase the

4  motor home.  The amount of the wire is $493,000 and change.

5  And that wire goes through.

6       And then USAA realizes what's going on.  They start

7  closing in.  And this is when Heather Ann Tucci-Jarraf gets

8  involved.  Tucci-Jarraf helps Beane make sure that that money

9  doesn't get recalled.  She represents herself as Beane's

10 attorney.  You'll learn that she's not a licensed attorney.

11 She represents herself as an expert at the highest levels of

12 finance.

13      She tells the folks at Buddy Gregg that there's

14 something going on at USAA, some dirty dealing, and she tells

15 them that the -- she makes representations in phone calls and

16 e-mails that the funds are valid funds, that the transfer of

17 funds to Buddy Gregg from Beane's USAA account is valid.  And

18 she does that repeatedly.

19      She also suggests that Beane place his motor home not

20 in his actual name, but in the name of a trust.  And you'll

21 hear testimony about trust documents that were provided to both

22 Ted Russell Ford and Buddy Gregg.  You'll learn that the Ted

23 Russell Ford transaction ends up getting unwound because he had

24 tried to pay by check.

25      But the Whitney -- the Buddy Gregg transaction, that

UNITED STATES DISTRICT COURT

Opening Statement by Ms. Svolto

1  moves forward.  And at this point, it moves forward with the

2  help of Tucci-Jarraf, who gets involved and makes sure Beane's

3  purchases are honored.

4          So the transactions, the wire transaction to Buddy

5  Gregg is not recalled.  Beane doesn't stop there.  At this

6  point, Beane wants to take immediate possession of the motor

7  home.  He seeks to have it registered in the trust name.  And

8  while USAA is closing in on what exactly happened and getting

9  the FBI involved, Beane's found inside that motor home, and he

10  is poised to take off and go.

11          And that's when Beane is finally stopped.  After

12  $31 million of jumbo CDs are purchased with a bogus bank

13  account, after he tries to purchase expensive cars and a fancy

14  motor home, that's when Beane is stopped.

15          And all of this, because of a combination of greed,

16  desperation, and a criminal sense of entitlement.  You'll learn

17  that the transactions at play here, the use of an actual

18  routing number, the use of a fake bank account number, you'll

19  learn all about how that affected the transactions here, how

20  they went through, how the timing of Beane's transactions, how

21  the quickness with which he gets rid of the jumbo CDs and

22  liquidates them, how that all played in to him trying to drive

23  away with a $500,000 motor home, all with money he never had,

24  never earned, never deposited, and never owned.

25          And we're going to ask you to listen to the witnesses

UNITED STATES DISTRICT COURT

1  in this case.  We're going to ask you to look at all the

2  documents and review it and ask you to use your common sense.

3  And when you're done using your common sense and reviewing all

4  the evidence and the testimony in this case, we're going to ask

5  you to return a verdict.  And we're going to ask you to return

6  a verdict of guilty on all counts.

7           Thank you.

8       (Excerpt of proceedings concluded.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1                    **CERTIFICATE OF REPORTER**

2   STATE OF TENNESSEE

3   COUNTY OF KNOX

4          I, Rebekah M. Lockwood, RPR, CRR, do hereby certify

5   that I was authorized to and did stenographically report the

6   foregoing excerpt of proceedings; and that the foregoing pages

7   constitute a true and complete computer-aided transcription of

8   my original stenographic notes to the best of my knowledge,

9   skill, and ability.

10      I further certify that I am not a relative, employee,

11  attorney, or counsel of any of the parties, nor am I a relative

12  or employee of any of the parties' attorneys or counsel

13  connected with the action, nor am I financially interested in

14  the action.

15      IN WITNESS WHEREOF, I have hereunto set my hand at

16  Knoxville, Knox County, Tennessee this 17th day of May, 2018.

17

18

19

20  _____
        REBEKAH M. LOCKWOOD, RPR, CRR
21      Official Court Reporter
        United States District Court
22      Eastern District of Tennessee

23

24

25