IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

```
_____
                               )
UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,            )
                                )
vs.                             )   Case No.:  3:17-CR-82
                                )
RANDALL KEITH BEANE AND         )
HEATHER ANN TUCCI-JARRAF,        )
                                )
          Defendants.           )
_____)
```

**CLOSING ARGUMENTS AND JURY CHARGE**

**EXCERPT OF JURY TRIAL PROCEEDINGS**
**BEFORE THE HONORABLE THOMAS A. VARLAN**

**January 31, 2018**
**11:33 a.m. to 3:08 p.m.**

**APPEARANCES:**

**FOR THE PLAINTIFF:**          CYNTHIA F. DAVIDSON, ESQUIRE
                                ANNE-MARIE SVOLTO, ESQUIRE
                                Assistant United States Attorney
                                United States Department of Justice
                                Office of the United States Attorney
                                800 Market Street
                                Suite 211
                                Knoxville, Tennessee 37902

**FOR THE DEFENDANT:**          RANDALL KEITH BEANE, PRO SE
**RANDALL BEANE**               Blount County Detention Center
                                920 East Lamar Alexander Parkway
                                Maryville, Tennessee 37904

**FOR THE DEFENDANT:**          STEPHEN G. McGRATH, ESQUIRE
(As Elbow Counsel)              9111 Cross Park Drive
                                Suite D-200
                                Knoxville, Tennessee 37923

**REPORTED BY:**
Rebekah M. Lockwood, RPR, CRR
Official Court Reporter
(865) 210-6698
P.O. Box 1823

**APPEARANCES (CONTINUED):**

| | |
|---|---|
| **FOR THE DEFENDANT:** | HEATHER ANN TUCCI-JARRAF, PRO SE |
| **HEATHER ANN** | 105 Orchard Lane |
| **TUCCI-JARRAF** | Oak Ridge, Tennessee 37830 |
| | |
| **FOR THE DEFENDANT:** | FRANCIS LLOYD, ESQUIRE |
| (As Elbow Counsel) | 9111 Cross Park Drive |
| | Suite D-200 |
| | Knoxville, Tennessee 37923 |

## INDEX

| | PAGE |
|---|---|
| Closing Argument by Ms. Davidson | 3 |
| Closing Argument by Mr. Beane | 21 |
| Closing Argument by Ms. Tucci-Jarraf | 33 |
| Rebuttal Closing Argument by Ms. Davidson | 50 |
| Jury Charge | 53 |

**REPORTED BY:**

Rebekah M. Lockwood, RPR, CRR
Official Court Reporter
(865) 210-6698
P.O. Box 1823

Closing Argument - Ms. Davidson

1        (Excerpt of proceedings.)

2        (In the presence of the jury.)

3              THE COURT:  Now we are ready for closing arguments.

4   As I stated several days ago, closing arguments, like opening

5   statements, are not proof, but they are the opportunity for the

6   parties to present to you what they believe the evidence has

7   shown and how you should treat that evidence in this case.

8              Again, the government can go first.  May not get it

9   all done before lunch, but the government will go first with an

10  opening closing argument, then I believe Mr. Beane is going to

11  go next, present his closing argument, followed by

12  Ms. Tucci-Jarraf, and then after that, the government will have

13  the opportunity for a final rebuttal closing argument.

14             Ms. Davidson, you may proceed with closing argument

15  on behalf of the government.

16             MS. DAVIDSON:  Thank you, Your Honor.

17             Ladies and gentlemen of the jury, I'm going to tell

18  you a little bit about the law and also my argument.  But what

19  I say about the law is -- I'm sorry, my PowerPoint is not up.

20  Thank you.

21             What I say about the law is just you are to take what

22  I say with a grain of salt.  I think that I've got it all

23  right, but the judge will give you the definition of the law in

24  this jury charge, and you are to follow what the judge says.

25             Okay.  So this indictment is a seven-count indictment

UNITED STATES DISTRICT COURT

4

Closing Argument - Ms. Davidson

1  against the Defendant Randall Beane and Ms. Heather Ann

2  Tucci-Jarraf.  Count 1 through 6 charges the Defendant Randall

3  Beane with wire and bank fraud.  Count 7 charges both the

4  Defendant Beane and Defendant Heather Ann Tucci-Jarraf with

5  conspiracy to commit money laundering.

6         Okay.  Let me just briefly go through the wire fraud

7  elements.  The defendant devised or intended to devise a scheme

8  to defraud in order to obtain money.  The scheme included a

9  material misrepresentation or concealment of a material fact.

10  The defendant had the intent to defraud, and the defendant

11  caused or caused others to use wire communications in the

12  interstate commerce in furtherance of the scheme.  That was all

13  the phone and Internet testimony y'all heard throughout the

14  week.

15         So first of all, it's undisputed that Beane was in

16  Knoxville during this relevant time period.  All of the

17  transactions started in Knoxville.

18         And Beane during his testimony admitted that he had

19  devised a scheme to get money.  He put the routing number of

20  the Federal Reserve and the account number, his Social Security

21  number with one off for the CDs, and his actual Social Security

22  number for paying all his debts, and a different Federal

23  Reserve routing number.  And then he cashed those CDs.

24         Okay.  Let's look at Count 1.  It references the

25  first CD, July 5th, 2017, and it's CD No. 4 -- ending in 4613

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Davidson

1    purchased at 10:32 p.m. Eastern Standard Time.  This was done

2    on the Internet from Knoxville, Tennessee to USAA Bank at San

3    Antonio, Texas.

4            And let me talk a little bit about the "on or about."

5    You'll notice when you get the indictment, the indictment on

6    Count 1 charges July 6th.  The Court will explain to you that

7    "on or about" means at or near.  And because it was in the

8    middle of the night, the indictment reads July 6th.  But

9    July 5th is close enough.

10           Count 2 references him cashing that CD, 4613, on the

11   morning of July 6th, 2017.  And then he puts the money in his

12   checking account, and this was done by a phone call from

13   Knoxville, Tennessee to San Antonio, Texas.

14           And we didn't play that call for you, but remember

15   the second call references that he made the call earlier that

16   morning.  He did it in the morning of July 6th.

17           Count 3 is the purchase of the CD ending in 4623 the

18   night of July 5th, 2017 at 10:55 Eastern Standard Time.  That

19   was done from the Internet, Knoxville, Tennessee to San

20   Antonio, Texas.

21           Count 4, he cashes that CD, 4623, on July 6th, puts

22   the money in his checking account ending in 4 -- 3062, and that

23   was done by a phone call, which y'all heard testimony was a

24   wire, from Knoxville, Tennessee to USAA call center in San

25   Antonio, Texas.

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Davidson

1          Count 5 is the July 7th, 2017 Fedwire of $493,110.68.

2     And that's a call from Knoxville, Tennessee to San Antonio,

3     Texas, causing the wire from San Antonio, Texas to New Orleans,

4     Louisiana via the Federal Reserve in New York via New Jersey

5     and Texas.

6          Okay.  And let's talk a little bit about the bank

7     fraud element, which is Count 6.  It's basically the same as

8     the elements of wire fraud, except the proof needs to be that

9     he took the bank -- money from a bank, financial institution,

10    and that the financial institution was FDIC insured.

11         And you heard testimony of that.  Ms. Monica

12    Alcala -- Alcala -- I've never been able to pronounce her

13    name -- she testified that USAA Bank was FDIC insured at all

14    times.

15         So the real question that we're all here today about

16    is the intent.  The only decision is Randall Beane's intent for

17    these Counts 1 through 6.

18         And let's discuss his intent.  He had a motive for

19    this crime.  He was living well above his means.  He had a

20    great job, making $144,000 a year, and he was still bouncing

21    checks.  He had bad credit.  You heard testimony that he had to

22    get a secured credit card initially from USAA, because his

23    credit was bad.

24         He himself testified that when he paid off all his

25    debts, he paid off the four bank loans from USAA, two credit

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Davidson

1    cards from USAA, and he also said that he had another 12 to 14

2    credit cards.  You heard about his four cars.  He can't pay his

3    loans.  He called -- he testified he was unable to work because

4    he had been in jail for a while, and he needed the cash.

5         Okay.  And let's revisit the call that he made the

6    day of July 3rd, 2017.

7         Is it plugged in?  Is the sound on?

8         THE COURTROOM DEPUTY:  You have your PowerPoint on,

9    so I don't -- you have your PowerPoint on.

10        MS. DAVIDSON:  Your Honor, a minute for technical

11   issues.  I love the computer.  Well, they've heard the

12   exhibits.  Can we play from the laptop, I guess?

13        THE COURT:  Whatever you want to do.

14        MS. DAVIDSON:  Your Honor, they've heard these

15   exhibits, it's -- I'm just refreshing their memory.

16        THE COURT:  Right.  Whatever you want to do.  Want to

17   play it from the laptop or reference it?

18        MS. DAVIDSON:  We'll play from the laptop, if that's

19   okay, we were talking about Randall Beane's motive was the last

20   one.

21        Okay.  And this request on the 7/3 to defer loans, if

22   you can't hear it, it's Government's Exhibit 81.

23      (Audio played in open court; not reported.)

24        MS. DAVIDSON:  Okay.  Later in that same call, he

25   asked -- he learns that he can't defer his loans, and he asks

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Davidson

1    for payment insurance, because he's been in jail.

2        (Audio played in open court; not reported.)

3        MS. DAVIDSON:  Okay.  So Beane needs money.  If you

4    look at the authorization log, that shows you when all of these

5    calls are and all of his transactions.  I think it's a very

6    interesting piece of exhibit.

7        So he calls on July 3rd earlier in the day, sometime

8    in the afternoon.  He sees the Harvey Dent YouTube video and

9    immediately starts paying off his debt.  And so when he sees

10   this video, it says something about ACH transactions, use your

11   secret account to pay off your debt.  He doesn't do any

12   research.  He knows that he didn't earn and work for this

13   money.  He didn't inherit it.

14       No other Internet research on this.  He's a computer

15   programmer from the military, but he's never heard of

16   Snopes.com or Wikipedia.  And he doesn't check the Federal

17   Reserve website to see whether or not this fanciful tale is

18   even remotely possible.  No, he goes and pays off his debts.

19       The evidence shows that he made these calls in the

20   afternoon, and then he added the account at 5:55 Eastern

21   Standard Time using the Federal Reserve routing number and

22   account number, his actual Social Security.  He adds the name

23   "Trust."

24       He double pays his two credit cards.  He pays off

25   four loans, pays his insurance, and then you heard from his

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Davidson

1  testimony that he paid a whole bunch of other credit cards.

2         If you look at the authorization log, and it's

3  Government's Exhibit 79, you can see when he did everything

4  based on this exhibit.

5         The telephone calls were -- in Government's

6  Exhibit 81 were in the afternoon.  There's lots of activity

7  that night on the 3rd.  And his last log-in is at 2:00 a.m. in

8  the morning, Eastern Standard Time on the morning of July 4th.

9         Look at his Facebook post from July 3rd, "I just paid

10  off all my debts on my trust account."  Look at the time,

11  8:07 p.m. Eastern Standard Time.  He just added that trust

12  account at around six.  So he spent two hours paying off all of

13  his debts.  Hallelujah, got a secret account.

14         And then he said -- he lied on the stand, you heard

15  him.  He said I did all the transactions on July 5th, all the

16  USAA documents are wrong, and I listed all those exhibits for

17  you, 44, 45, 46, 48, 49, 50, on and on.  All those exhibits are

18  wrong.  And the Facebook post is wrong, because you know

19  Facebook can go in there and change the dates.

20         And then how do you know that he knew what he was

21  doing?  He pays these off going all the way through the

22  2:00 a.m. in the morning on the 4th.  He can't call USAA on the

23  4th.  It's a federal holiday.

24         So first thing in the morning, he calls on the 5th

25  seeking his free and clear titles.  Why?  Because he knows that

UNITED STATES DISTRICT COURT

1  the bank has no recourse against him if he has those titles.

2  He's got the cars, free and clear.

3          And listen to this call.  He lies.  And the Court

4  will tell you that lying is an absolute bar from the good faith

5  defense.  He lies and said he paid these loans off a week or

6  two.  You'll first hear Carol.  She'll talk and she'll say,

7  Mr. Beane paid these loans off a week or two.

8          Why would he say that?  Because he knows if he said,

9  "I just paid it off yesterday, and I'm looking for these

10  titles, free and clear," that would raise suspicion.  So he

11  lies.  This is the first lie we can see immediately, and it's

12  on July 5th, 2017.

13      (Audio played in open court; not reported.)

14          MS. DAVIDSON:  Where did she get that information, a

15  week or two ago?  She got it from the defendant.  That

16  absolutely goes to his intent.  He knew that the bank was

17  likely going to try to claw that money back, and he wants those

18  titles as quick as he can get.

19          And all of his actions were done super quick, which

20  you heard from our expert testimony is indicative of ACH fraud.

21  That's the way you make it happen, because there's this two-day

22  float, and he knew it.

23          Then paying off his debt is not enough.  On July 5th,

24  starting at 10:32 p.m. Eastern Standard Time, he purchases 29

25  CDs totaling over $28 million.  The total, I think, 32 CDs over

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Davidson

 1   a two-day -- two-, three-day period for $31 million.  And he

 2   uses the Social Security number with the -- the digit one digit

 3   off.  He doesn't even use his own Social Security number for

 4   these transactions.  He uses somebody else's Social Security

 5   number.  And then he uses a different Federal Reserve account.

 6   He testified that he Googled the Federal Reserve to get this

 7   second account.

 8          So does Beane actually believe he's entitled to more

 9   than $31 million based on this secret account that we all have?

10   He had to be aware that there was a high probability that this

11   was not true.  Why does he -- why does it only work with ACH

12   transactions?  Why can you only get your secret account if you

13   are paying debts with an ACH or buying CDs with an ACH?

14          Why does he move so quick on everything?  The only

15   reason this worked is because he cashes those CDs super quick,

16   first thing in the morning.  He buys his last one in the middle

17   of the night and wakes up bright and early and cashes those

18   CDs.

19          You heard his testimony.  He said, well, I didn't

20   really know I could cash the CDs.  He tried to get a line of

21   credit.  Same thing.  He tried to get the money out of that

22   bank before they could take it back.

23          And why did he spend it so fast?  He knows he didn't

24   earn and work for this money.  There's just some mystery secret

25   account out there that's got $31 million with his name on it.

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Davidson

1    This just defies common sense.

2            Let's look at his actions on July 6th.  He calls and

3    cashes out two CDs, two separate calls, the first one -- the

4    call at 7:56 a.m. Eastern Standard Time.  As you remember from

5    the last one, he purchased his last CD at 12:39.  So he barely

6    slept.  Then the second call at 8:02, third call at 9:43,

7    fourth call at 9:58, fifth call at 7:17 p.m.

8            And he also transfers the money between different

9    accounts in his -- in his USAA Banking network and -- which you

10   heard from our expert is indicative of trying to money launder,

11   trying to confuse the bank with all of these transfers.

12           And then he goes out that morning and buys his first

13   home, his $500,000 first home.  And what else does he do on the

14   6th?  He calls, Government Exhibit 85, he increases his debit

15   limit card to a hundred thousand dollars.  He tries to make

16   sure that -- he puts down a $10,000 debit deposit at Buddy

17   Gregg.  So the morning of -- he's very busy the morning of

18   July 6th.

19           (Audio played in open court; not reported.)

20           MS. DAVIDSON:  Okay.  What else does he do on the

21   6th?  He gives his friend Rachel Hall a $50,000 check on

22   July 6th, Government's Exhibit 172, for his gratitude.  He's

23   very thankful for all her help.  And he lies.  He tells her,

24   because everybody would say, "Hey, where did you come into all

25   this money?"  He didn't say, "You know, we all have a secret

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Davidson

1    account; all you have to do is put in your Federal Reserve, and
2    you can go get it too."  He doesn't share that with her.  He
3    lies and says, "It comes from my court settlement."  You know
4    why?  Because he knows it's not true.
5         Okay.  July 7th, 2017, he knows he's been caught on
6    this day.
7         (Audio played in open court; not reported.)
8         MS. DAVIDSON:  Okay.  During this call, he knows that
9    his accounts are frozen.  He can't get into them.  He can't
10   sign anything.  He thinks he needs a signature card initially.
11   But he gets on that call and he talks to Steven Dyer.  And
12   Steven Dyer tells him all CDs have a zero balance.  Steven Dyer
13   mentions the ACH returns -- ACH returns.  Steven Dyer asked for
14   his trust bank, and he doesn't tell.  "I don't remember.  It's
15   in the" -- but, you know, and he put two different Federal
16   Reserve routing numbers in there.  He actually even Googled the
17   Federal Reserve, and he testified to that.
18        No way he doesn't know that his alleged secret
19   account is at the Federal Reserve.  But he doesn't tell,
20   because he knows it will raise red flags, and he knows it's not
21   really true.  He knows this is fraud.
22        And also on July 7th, two other vehicle loan
23   representatives -- and you heard those calls -- call him and
24   say, "You know, your check -- or your ACH transaction to pay
25   for your vehicles bounced.  Are you going to take care of

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Davidson

 1  this?" They're looking for those titles, because they'd

 2  already sent them. And USAA has no recourse because the

 3  defendant has the titles.

 4       And so if Beane doesn't know by July 7th that it's

 5  not his money, Beane is deliberately ignoring the truth.

 6  Deliberately ignoring the truth. Because he has been told that

 7  those balances have zero. CDs have zero. And, you know, he

 8  talked about being shocked. He was like oh, wow, wow,

 9  shocking. If you just found out your $31 million that was

10  100 percent yours, you'd be freaking out.

11       And then, let's talk about -- he talks -- he can't

12  remember the originating bank. He even uses it. You'll hear

13  originating bank throughout. Both of the defendants use it.

14       The Harvey Dent video clearly says Federal Reserve.

15  We've heard testimony to that. All these fake trust documents

16  clearly say Federal Reserve. And he 100 percent knows that it

17  will raise red flags. And further on that call -- what

18  happened? Okay. Further on that call...

19       (Audio played in open court; not reported.)

20       MS. DAVIDSON: He says, "I can't be without money."

21  We already know that, because he engaged in this elaborate

22  fraud scheme so that he could get this money, because he was

23  hurting a little bit.

24       Okay. Look at the Ted Russell Ford transactions.

25  This 100 percent shows intent. No negotiations because he

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Davidson

 1   knows it's not his money.  It's easy to give away $50,000

 2   checks when it's not yours.

 3            It's clear from Dwayne Griffith's testimony that he

 4   goes in two separate times to ask for this MCO, the birth

 5   record of a car or something, that is basically like a title.

 6   Because he knows that if he has that title, Ted Russell, USAA,

 7   nobody has any recourse.

 8            And on July 8th, after he's already found out that

 9   the -- that his bank account is frozen, he says he's going to

10   do a Fedwire, because it worked on the RV, 100 percent, he's

11   going in there.  Why, if it's a real secret account, why is he

12   canceling his check that he wrote?

13            On the 8th, he knew that he didn't have any money.

14   He was still trying to get away with the asset.

15            Okay.  And listen to the -- the July 10th conference

16   call where they're all on -- Government's Exhibit 94.  I --

17   this is one of the most important pieces of evidence with

18   regard to both of the defendants.  He lies during that.  He

19   says that he has no idea why USAA Bank wants the money back.

20   He says it right on there, no idea.

21            And the Court will tell you that a lie completely

22   blocks the good faith defense.  And I've already pointed out

23   for you many lies by the defendant, Mr. Beane.

24            And then he tries to get away on July 7th.  He

25   refuses to open the door.  This definitely shows intent.  He

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Davidson

1   knew what he was doing was wrong.  He refuses to open the door.

2   He resists arrest.  He lies about these warrants.  We've had a

3   day of testimony about completely irrelevant warrants.  Is

4   there any doubt that there was a warrant for his arrest?

5        And this is evidence of intent, 100 percent,

6   resisting arrest, refusing to open the door, trying to get

7   away, being in a running vehicle, that shows that he knew what

8   he was doing was wrong and he was trying to get away with it.

9        Look at his booking picture.  He's not injured.  He

10  had a scratch on his head.

11       Okay.  So that meets all the elements of wire fraud,

12  all the elements of bank fraud.  And so the evidence proves

13  that the defendant, Randall Beane, is guilty of Counts 1

14  through 6.

15       And how do we know this?  Listen to the defendant's

16  own words.  He tells you in a jail call that he's guilty.

17       (Audio played in open court; not reported.)

18       MS. DAVIDSON:  There's simpler way, fellas, all you

19  have to do is these ACH transactions.

20       Okay.  Let's move on to Count 7, the conspiracy to

21  commit money laundering.  We've already showed that the money

22  involved was the proceeds of bank and wire fraud.  And this is

23  the account that applies to Ms. Heather Ann Tucci-Jarraf and

24  Mr. Beane.

25       And it basically says that the defendants agreed to

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Davidson

1    commit money laundering to either promote the wire or bank

2    fraud, so to make the wire and bank fraud continue on, to hide

3    the source of the fraud, which is the primary -- most of our

4    evidence goes to this, where they were trying to put the money

5    in assets, the RV and the truck, or that it also involved a

6    banking transaction over $10,000.

7         So and these can be found and/or. You can find the

8    defendants guilty, that they agreed to either any of these

9    three or all of them.

10        Okay. And so we know for a fact, based on both of

11   the defendants' testimony, that they agree to start working

12   together at least by July 7th. Beane tells Buddy Gregg that

13   his attorney has told him to put the truck registration in a

14   factualized trust. He says his lawyer told him to do it, and

15   they both testified that they consulted on July 5th while Beane

16   was purchasing these CDs.

17        They know 100 percent that he -- Ms. Tucci-Jarraf

18   knows that it's bank fraud, from the beginning. She posts on

19   July 4th, "All on!!! You're going faster than my fingers can

20   type, and...I love it!!!! Pay Your Bills Using Your Secret

21   Account."

22        This is her post.

23        And then the next, she knew it from the beginning,

24   and Beane on his Facebook post says -- Steve asked, "Is this

25   related to what Heather Ann Tucci-Jarraf posted?"

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Davidson

1       And Beane says, "Yes."

2       And then she later posts all the routing numbers for

3  the Federal Reserve on her own Facebook page, and that's into

4  evidence.  She's -- if y'all are wondering where the routing

5  number is, here's more, here it is.  This is the -- and she

6  said she doesn't know what an ACH transaction is, but she is an

7  expert in banking, trade, finance, and collections, and

8  everything else, but she doesn't know what an ACH transaction

9  is.  That's mind boggling.

10      And she actively engaged in the money laundering.  On

11 July 7th, she tells Beane -- she tells Buddy Gregg that the --

12 she's an attorney, and that the RV needs to be put in a trust

13 and makes them create new paperwork.

14      July 8th, she tells Ted Russell Ford that the

15 transaction is going to be via Fedwire.

16      On July 10th, 2017, she calls Buddy Gregg,

17 Government's Exhibit 94, which she records it herself, and she

18 presents the bogus paperwork to Whitney Bank on the 11th.

19      Listen -- and I keep talking about 94, Government's

20 Exhibit 94.  She tells -- they're calling USAA Bank here,

21 because Buddy Gregg is trying to figure out what's going on,

22 why is USAA recalling the loan?  They called, and you will hear

23 from exhibit, if you listen again, that they have basically

24 tried once, and the phone is ringing now, and this is

25 Ms. Heather Ann Tucci-Jarraf.

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Davidson

1         (Audio played in open court; not reported.)

2         MS. DAVIDSON:  Okay.  It's hung up.  They hung up

3  with USAA Bank because Ms. Heather Ann Tucci-Jarraf instructed

4  them to, and she's his attorney.

5         And listen to this next clip.

6         (Audio played in open court; not reported.)

7         MS. DAVIDSON:  She knows what she's talking about.

8  She knows that a Fedwire is exactly like cash, and once that

9  Beane has the collateral, USAA does -- has no recourse.  She

10 knows that, and she tells everybody on the phone call.  She

11 tells everybody.  She's trying to get him out the door in that

12 RV.

13        And then listen to this next clip.

14        (Audio played in open court; not reported.)

15        MS. DAVIDSON:  She knows -- she knows that this is

16 ACH transaction fraud, and she never uses the word Federal

17 Reserve.  She always calls it the originating bank, because she

18 knows that saying Federal Reserve would raise red flags.

19        And listen to this next clip.

20        (Audio played in open court; not reported.)

21        MS. DAVIDSON:  So she tells Buddy Gregg, you've got

22 the cash, he's got possession of the RV, and I'm opening up an

23 investigation.  So she's 100 percent assisting.  She made an

24 agreement.  He wants to get the RV out the door.  She's helping

25 him.  Together, the two of them are committing the money

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Davidson

1    laundering.

2           And then she references, and she knows -- she knows

3    that this money came from the Fed Reserve.  She 100 percent

4    knows this money comes from the Fed Reserve.  Every document

5    that she's filed, the originating, these factualized trusts,

6    you know, she sat here and told you about how we all have a

7    secret account at the Federal Reserve.  But during that call,

8    she always says originating bank.

9           She said, "We're trying to figure out what's going on

10   here."  Why does she leap to they want to know where the

11   collateral is.  Because she knows, she knows what's going on

12   here, and she's actively assisting him to get that RV out the

13   door.

14          Okay.  Let's look in her letter to Ms. Lauren

15   Palmisano -- and everybody knows I can't say names.  But she

16   cites the Federal Reserve website, which basically says that

17   you can't reverse a Fedwire.  So she's gone to the Fed Reserve

18   website, done some research to support her position that, hey,

19   you've got to let him go with that RV, because the Federal

20   Reserve website says you should.

21          But also on that Federal Reserve website is

22   information such as this, which does the Federal Reserve

23   maintain accounts for individuals?  Can individuals use these

24   accounts to pay bills and get money?  No.  This is a fraud.

25   It's right here.  Information such as this is all over the

UNITED STATES DISTRICT COURT

Closing Argument - Mr. Beane

1  Federal Reserve website. But she didn't want to see that. She

2  intentionally disregarded the truth.

3          So, ladies and gentlemen of the jury, I think the

4  evidence has shown, and I submit that the evidence has shown

5  that both of the defendants are guilty of this conspiracy to

6  commit money laundering, and we ask that you return a guilty

7  verdict on all counts, 1 through 7, against both defendants.

8          Thank you.

9          THE COURT:  Thank you, Ms. Davidson.

10          Mr. Beane, closing argument?

11          MR. McGRATH:  One minute, Your Honor.

12          THE COURT:  That's fine.

13          MR. BEANE:  I found that over the years when I had

14  something pressing to discuss or talk about, to go to bed, and

15  at some point I would wake up in the middle of the night and

16  something would come to me, and I would immediately grab a pen

17  and piece of paper and write it down.  And that's what happened

18  with this closing argument.  On Saturday night, I went to bed

19  and woke up about 3:30 in the morning, and I wrote down my

20  closing arguments.

21          So I apologize for reading.  But this is from my

22  heart.  This is how I feel about this case and what's going on

23  here.  So I just wanted to let you know that I'm going to be

24  reading.  I'll look up occasionally to make eye contact.

25          I've heard a lot of testimony and I've seen a lot of

UNITED STATES DISTRICT COURT

Closing Argument - Mr. Beane

1  redundant evidence from the government proving the fact that I

2  purchased CDs from USAA, and I do not dispute that fact.  I

3  even admit it to be true.  I've also heard from the government

4  that Ms. Tucci-Jarraf and myself had devised a scheme to commit

5  fraud upon various financial institutions.  I, however, beg to

6  differ with that argument.

7       This case proves beyond a shadow of a doubt that

8  these Federal Reserve accounts do indeed exist and that these

9  accounts do belong to us, but not as individuals, as we were

10  warned by the Federal Reserve website so proudly claiming, but

11  as original depositories, as admitted by Mr. O'Malley.

12       The verbiage cannot be disputed, and the proof is in

13  this fact that the government has not allowed these documents

14  to be submitted as evidence or to be referenced by name.  These

15  documents cannot be disputed by any financial institution on

16  this planet, as we have seen proven in this case by the one

17  institution who did receive these documents and closed their

18  case, admitting they were legitimate.

19       Many of the witnesses have testified to this jury

20  that they have relied on word of mouth from other employees in

21  their respective institutions that the Federal Reserve accounts

22  do not exist, and then fail to produce documentation from the

23  Federal Reserve to back those testimonies.

24       I, however, relied on documentation to justify and

25  verify my decision to lay claim on these accounts, and that

UNITED STATES DISTRICT COURT

Closing Argument - Mr. Beane

1    they are indeed very real.  Documents that the Federal Reserve

2    and the government have unrebutted.  As a matter of fact, they

3    are so factually real that they aren't even allowed as evidence

4    to be disputed or disproven.

5           MS. DAVIDSON:  Your Honor, I do not normally object

6    in closing, but as the Court has ruled, and the United States

7    has not objected, all of these documents have been made as

8    defense exhibits.  We removed all objections.  These documents

9    will be in front of the jury.

10          MR. BEANE:  This was done during the recess right

11   before, and I just told you I wrote this Saturday night, so

12   that's --

13          MS. DAVIDSON:  I understand.

14          THE COURT:  Again, closing arguments are not

15   evidence, and the jury has all the evidence before it.

16          Go ahead, Mr. Beane.

17          MR. BEANE:  Should you choose to find me guilty of

18   any of the seven counts of the alleged indictment, you have in

19   essence found an innocent man guilty and allowed a morally

20   corrupt and bankrupt government and collusion with a corrupt

21   financial institution, which has been proven through the

22   mortgage crisis, the Libor scandal, the bank bailouts, and many

23   more instances to be true.  You will allow the real bank

24   robbers to get away, once again, with financial murder.

25          I have been accused of being a fraud in this case,

UNITED STATES DISTRICT COURT

Closing Argument - Mr. Beane

1    when in actuality felt it was my duty as an informed American

2    and sincere living man to expose the real bank robbers in a

3    huge undeniable scheme that has been in play for over 100

4    years.

5            If you recall, there were no objections to any

6    evidence or testimony submitted by the government on behalf of

7    the alleged defendants.

8            The purpose in doing so was to see exactly how low

9    the government was willing to go in a continuous scheme to hide

10   the truth from the people and perpetuate a system of slavery.

11   That has been the covert intention from the inception of the

12   plan.

13           It's time we the people stand up for what is right

14   and demand full transparency and accountability of those who

15   have enslaved us.  And by taking that stand, we can begin to

16   break down the illusion of dominance that has been enforced for

17   much too long.

18           Your choice in allowing me my freedom will sweep

19   across this planet in a tsunami of compassion, and allow me to

20   continue to prove that these accounts do indeed exist when the

21   correct verbiage is used to prove it.

22           Imagine a world where we can provide for one another

23   as we desire to.  Imagine a world without poverty or lack of

24   any kind.  Imagine a world of abundance, not for a few to

25   control over others with, but true abundance for all.

UNITED STATES DISTRICT COURT

Closing Argument - Mr. Beane

1          Regardless of any testimony heard, these accounts are

2   very real.  As president, John F. Kennedy said before he was

3   murdered by this same corrupt government in his effort to

4   expose this financial scheme, and I quote, there is a great

5   danger in the way facts can be spun or strung together to give

6   credibility to what is otherwise a wild-eyed conspiracy theory.

7   It is our responsibility to look at everything with a skeptical

8   eye, and to also be aware that many will try to twist reality

9   to serve their own agenda or reinforce their view, end quote.

10          President Kennedy was speaking to us about the

11  financial oligarchs in our country who's tyrannical rule and

12  their weapons of math destructions have come to an end.  In a

13  true David and Goliath story of old, it's time to defeat the

14  giant.

15          There's a book that was written about the Federal

16  Reserve that exposes the deep corruption from its very

17  inception, entitled, "Creature from the Jekyll Island."

18          In this book, we learned that the Federal Reserve was

19  created in secrecy back in the year 1913 at a private meeting

20  off the coast of Georgia in a place called Jekyll Island.  We

21  also learned that Congress voted on the creation of the Federal

22  Reserve during the Christmas holidays while most of the

23  Congressmen were home with their families.

24          The Federal Reserve is no more part of the federal

25  government than Federal Express is, as is proven by the fact

UNITED STATES DISTRICT COURT

Closing Argument - Mr. Beane

1    that the institution has never been audited.  We've heard many

2    claim to try, but still with no success.

3            The creation of this private banking system was done

4    in secrecy to take over the currency system and control over

5    the people.  It was stated by one of the creators of this

6    devious plan that he who controls the money controls the laws.

7    And I agree that that plan has indeed been played out to its

8    full intent.

9            It is time for us to wake up and see the reality of

10   who we are and where we are.  As a scripture says in Ephesians

11   Chapter 6 and Verse 12, "For we wrestle not against flesh and

12   blood but against principalities, against powers, against the

13   rulers of darkness of this world, and against spiritual

14   wickedness in high places."

15           Please take a stand with me in exposing the evil that

16   has undermined and camouflaged itself with the authority over

17   all.

18           And in an effort to keep me quiet about all this over

19   the past few years, I have been kidnapped by agents working

20   under the guise of law on several occasions.  And each time,

21   they assault me and charge me with fictitious crimes and even

22   detained me illegally.  I have been warned that if I don't shut

23   my mouth, I will eventually disappear and no one will ever find

24   me.

25           This case, in my view, is simply a grand scheme to

UNITED STATES DISTRICT COURT

Closing Argument - Mr. Beane

 1    put me away and make me disappear.  You, as the jury, hold the

 2    power to stop this corruption and expose it for what it really

 3    is.  Let's make this case transparent to the public for all to

 4    see the real criminals exposed and dealt with accordingly.

 5            I have chosen not to call witnesses to the stand or

 6    even submit vast amounts of evidence proving my innocence.

 7    Instead, I have chosen to speak my truth from my heart.  For

 8    all a man really has is his word.

 9            I would hope that as human beings, we haven't

10    completely lost this war that has been waged against us for far

11    too long, and that you truly feel in your heart that the time

12    is now for us, as we the people, to take a stand and make our

13    voices heard, because in the big picture, they can shut up one,

14    but they can't shut up the one people when we make our voices

15    heard together.

16            I told you in my opening statement about the picture

17    being portrayed in this courtroom and how that picture was at

18    best a pixilated picture in which a lot of data is missing,

19    incomplete, and even manipulated.

20            Please understand that without the documents that

21    prove the legitimacy of these accounts to Whitney Bank, never

22    being presented to USAA Bank, and finally the Federal Reserve

23    Bank, the data has most definitely been manipulated to hide the

24    truth.

25            It is important to see that in the scheme to further

UNITED STATES DISTRICT COURT

Closing Argument - Mr. Beane

 1   hide the truth, that the real criminals chose to stop me,

 2   whatever means necessary, which included kidnapping me in an

 3   effort to get to USAA Bank headquarters in San Antonio, Texas

 4   to resolve this matter with all the proper documentation in

 5   person, and to put to rest, once and for all, the fraud that

 6   has robbed every single soul on this planet for over 100 years.

 7           If there is anything you can learn from this trial to

 8   help you better understand the big picture more clearly, then

 9   wipe away all the evidence and testimony, and allow the light

10   to reveal what is truly happening here.

11           Paper money doesn't have value.  Digital numbers can

12   be and very often are manipulated on screens to make us believe

13   that they have value.  But when it comes -- when it comes down

14   to the end and the dust has settled, the only real value there

15   is, are you and I.  This is the truth that needs to be

16   understood.  The truth has been hidden for generations upon

17   generations.  It's time to claim our value.

18           Thank you.

19           THE COURT:  All right.  Thank you, Mr. Beane.

20           I think what we'll do is we'll go ahead and take a

21   lunch recess and then come back with the defendant,

22   Ms. Tucci-Jarraf's closing argument and the government's

23   rebuttal closing argument, and the Court's instructions, and

24   then you'll have the case probably mid afternoon.  So let's go

25   ahead and break until 1:30.

UNITED STATES DISTRICT COURT

Closing Argument - Mr. Beane

1   And just keep in mind, you know, we're in the middle

2   of closing arguments, so to the extent you eat lunch together,

3   please refrain in any way from deliberating about the case.

4   You need to wait until the remainder of closing arguments and

5   the Court's legal instructions.  At that time, you will be free

6   to deliberate.

7   So we'll stand in recess until 1:30.

8   (Jury out at 12:22 p.m.)

9   THE COURT:  Please sit down for a moment.  That's

10  fine.

11  Courtroom deputy has informed me she has downloaded

12  or produced the document -- the actual UCC documents, which

13  were attachment to Document 25 in the record, which is what --

14  the Court's understanding through Mr. Lloyd and

15  Ms. Tucci-Jarraf, is what they wanted entered into evidence.

16  Just verify that before you leave here over the lunch break.

17  Ms. Tucci-Jarraf is that what you have there?

18  MS. TUCCI-JARRAF:  Yeah.  This is what we have from

19  Document 25, we only included 10 through 309.  We took off the

20  top parts because it was the indictment and the arrest warrant.

21  So this was the actual filings.  We have a hard copy for --

22  THE COURT:  Show that to Ms. Davidson.

23  MS. DAVIDSON:  I'm not sure that the pleadings

24  themselves is an appropriate --

25  MS. TUCCI-JARRAF:  It's not in there.  This is just a

UNITED STATES DISTRICT COURT

1    notice of filing and then the --

2              MS. DAVIDSON:  Oh, notice of filing.

3              MS. TUCCI-JARRAF:  -- so that they know.

4              THE COURT:  Just spend the next five minutes

5    verifying all that so that it's ready to go back to the jury

6    when the closing arguments and instructions are done.

7              The Court does have the theories submitted by

8    Mr. Beane and Ms. Tucci-Jarraf.  They do comply with the

9    applicable standards for theories, so the Court will give

10   those -- by the defendants.

11             Anything else?

12             MS. DAVIDSON:  No, Your Honor.

13             THE COURT:  If not, we'll come back with up to 30

14   minutes and then the remainder of Ms. Davidson's time.  Up to

15   30 minutes for Ms. Tucci-Jarraf's closing arguments and --

16             MS. DAVIDSON:  I think I have 15, but I probably

17   won't take it all.

18             THE COURT:  You have at least 15.  You didn't use all

19   your opening.

20             Anything else, Mr. Lloyd?

21             MR. LLOYD:  Yes, Your Honor.  Ms. Tucci-Jarraf asked

22   whether in our statement of the defense theories "unlawful

23   activity" can be substituted for "money laundering"?  Is that

24   correct?

25             MS. TUCCI-JARRAF:  Uh-huh.

UNITED STATES DISTRICT COURT

Closing Argument - Mr. Beane

1          THE COURT:  Do you have that, the original

2    handwritten?

3          THE CLERK:  Final two words?

4          MR. LLOYD:  The change would be from "money

5    laundering" to "unlawful activity."

6          THE CLERK:  Right.  The final two words.

7          THE COURT:  Let me see it.

8          All right.  Anything else?  If not, we'll see

9    everybody back here in just about an hour.  Be ready to go at

10   exactly 1:30.

11      (Recess from 12:25 p.m. to 1:35 p.m.)

12         THE COURT:  Let me see Counsel and the parties here

13   at side conference.

14      (Bench conference begins.)

15         THE COURT:  All right.  Let me direct this to

16   Ms. Tucci-Jarraf.

17         MS. TUCCI-JARRAF:  Yes.

18         THE COURT:  The juror questionnaires, we talked about

19   yesterday --

20         MS. TUCCI-JARRAF:  Yes.

21         THE COURT:  -- and I instructed you to return them by

22   today.  Actually, they were supposed to be returned at the

23   onset of trial.  What's the status?

24         MS. TUCCI-JARRAF:  I spoke to Julie.  When I got

25   them, I wasn't aware that I had to return them, but I hid them,

UNITED STATES DISTRICT COURT

Closing Argument - Mr. Beane

1  just to make sure if someone did come in the house, they

2  wouldn't look through them, because there's multiple people

3  that live in the house.  I hid them.  I just cannot remember

4  where I hid them at the moment.  And I was prepping my work

5  last night -- or this morning from 12:30 till 6:00, looking for

6  those, as well as trying to prep my cross and my closing.

7          As soon as I get home, I'm meeting with PO Walker,

8  and I'm going to be looking just for those.  I don't have

9  anything else to prep so that I would be able to locate them.

10 And I told Julie, if you want me on the record or however you

11 want, that they will come back to you guys without anyone

12 seeing them -- I haven't even looked at them.  I just opened

13 them.

14          THE COURT:  Let me just -- to the extent there's any

15 confusion or issue, the Court instructs, and I guess more to

16 the point, orders you to have those returned and reminds you of

17 your obligation not to -- to ensure that they not be reproduced

18 or disseminated in any fashion.

19          MS. TUCCI-JARRAF:  Absolutely.

20          THE COURT:  All right.  Thank you.

21          MS. TUCCI-JARRAF:  Thank you.

22      (Bench conference concluded.)

23          THE COURT:  All right.  We're ready to continue with

24 closing arguments.  We'll bring the jury in.

25      (Jury in at 1:37 p.m.)

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Tucci-Jarraf

1          THE COURT:  Thank you.  Everyone may be seated.

2    We're ready to continue with closing arguments.

3          Ms. Tucci-Jarraf, closing argument on your behalf?

4          MS. TUCCI-JARRAF:  Thank you.  Without prejudice, I

5    will proceed.

6          Good afternoon.  We're finally at the end, cases all

7    closed, evidence is all in, at least the evidence that was

8    presented.

9          I have worked and committed my life, my funds, even

10   my own family life to stopping unlawful activities, crimes

11   against the people in America and the people all around the

12   world.  It's something I'm very passionate about because it's

13   personal to me.  It's personal to my children's lives as they

14   grow up in this world, that they have a place that's safe,

15   secure where they can prosper.

16         I've also committed my life and all my being to

17   stopping the people who use our governments to commit these

18   crimes.  And I've worked very hard with many people around the

19   world, but especially within our own government and our own

20   systems to make sure those systems do not afford those who

21   would hurt the American people, my family, you as individuals.

22         Every single individual has a right to live for life,

23   prosperity, and to not have crimes committed against them.

24   You've heard my background.  You've heard evidence -- excuse

25   me, you've heard testimony and you've seen evidence of my

Closing Argument - Ms. Tucci-Jarraf

1  background, especially involving bank, trade, and finance.

2         The paradigm report lays out a lot of the work that I

3  did.  And most of the work that I've done over the last 20

4  years, along with many others who were in these -- who are and

5  were in these systems, our government, our branches of

6  government, our departments of government, our agencies of

7  government were involved in this cleanup.

8         I had my part, but there were so many who were very

9  experienced in not just the crimes that were being committed

10  but the crimes that were committed being hidden.

11         Their expertise, their knowledge, their experience

12  was crucial to me understanding exactly what was going on and

13  working with them to find a solution to be able to fix things,

14  always with the consideration that the general public in

15  America as well as worldwide didn't know these crimes were

16  being committed against them.

17         Twenty years of my life has resulted in this.  These

18  are those UCC filings which are stated in the factualized

19  trust.  And the factualized trust is something that has been

20  worked on diligently by everyone from every industry, because

21  it's all interconnected.

22         It is that big picture, which during openings you

23  heard is pixilated, not every piece is visible.  That's what I

24  was here to explain to you all and to present evidence and

25  testimony on, was to give those pieces that were missing.

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Tucci-Jarraf

1        And during testimony, you heard that a lot of that is

2   becoming visible.  Since October of 2017, you have a lot of

3   examples, you have a lot of instances that are occurring where

4   there is fraud and corruption and collusion in our very own

5   systems by our very own officials and employees that are

6   supposed to be serving the interests of the American people.

7        I came here to be able to tell you and to provide

8   evidence and testimony that, yes, that has to be cleaned up,

9   but also the actors behind those using our government and our

10  systems to commit these crimes against us, that was the part

11  that hasn't been seen.

12       That is the part that I have personal knowledge of

13  and experience with and have worked very hard with so many good

14  employees and agents and officials within our systems, our

15  departments, our agencies, and our branches.

16       Now, it is upon -- it is the burden of the U.S.

17  attorneys of the government to prove the elements that I

18  conspired to commit a crime.  Those elements are that, number

19  one, I knew that transactions that Mr. Beane was doing involved

20  proceeds from wire fraud and bank fraud.  That's the first

21  thing.

22       Secondly would be that I had an intent to promote

23  those unlawful activities.

24       Third is that I knew the transactions for the RV

25  sale, the purchase was designed to conceal proceeds of fraud.

UNITED STATES DISTRICT COURT

1    And, four, the property was over 10,000, so the wire

2  transfer, the RV was over 10,000, and was derived from proceeds

3  of wire fraud and bank fraud, and they have to prove that

4  beyond a reasonable doubt.

5    So as you're going to consider all this, the question

6  a lot of the time is, what is beyond a reasonable doubt?  It

7  means proof which is so convincing that you would rely on it

8  and act on it in making the most important decisions in your

9  own life.

10    During the trial, you saw evidence from the

11  government regarding USAA Bank and certain records and

12  transactions that happened online.  A lot of it -- a lot of the

13  evidence and testimony -- excuse me, a lot of evidence that was

14  presented by the government, there's volumes and volumes of

15  different documents.  Nowhere was there a document from the

16  Federal Reserve or a written communication saying that it was

17  fraud or declaration stating that from the Federal Reserve

18  stating that Mr. Beane did not have a TreasuryDirect deposit

19  account.

20    That's one thing in banking and law is words are used

21  a lot to dance around, preying on the ignorance or the hoped

22  ignorance of the people that they don't know what's going on,

23  they don't know how things work.  The banking system itself has

24  been so veiled and there have been so many actions against

25  banks, and they've been too big to fail.  So they never go to

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Tucci-Jarraf

1  trials, or when they do, it's kept very quiet.

2        But the inner workings of banking typically are never

3  revealed.  During this trial, we also heard evidence from the

4  FBI and how they proceeded forward in investigating and/or

5  apprehending.  See, the first thing in my work that I do is we

6  stop the action, especially if it's imminent, we go in to stop

7  the action, so that we can then investigate what's going on.

8  However, in my own personal part of that work, compassion is a

9  big part and information is crucial, data is crucial.

10        In this particular instance, we had it where not all

11 the data was gotten before there was actually action.  There

12 was data gotten from one side but not from the other.

13        We heard that there was actions involved with

14 armament to approach Mr. Beane, but there was no armament to

15 approach USAA or anyone else, because it's presumed that banks

16 do not do anything unlawful in this particular instance.  That

17 what they said was how it was.

18        There was no conspiring on my part.  I'd never

19 conspired with Mr. Beane.  Mr. Beane never conspired with me to

20 commit any unlawful crimes.

21        In my experience, the general public does not know

22 what banking truly is, how it truly works.  It leaves you

23 susceptible, leaves us all susceptible to taking statements as

24 completely trustworthy, because we don't have access to that

25 data.

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Tucci-Jarraf

1    Nobody has been inside the Federal Reserve to audit
2    it, to look at the transactions or the records or the assets
3    that are there, the master accounts, not the general public
4    anyways.  I've worked for over 20 years to go in and take back
5    things that have been stolen, that have been specifically
6    sitting and facilitated within the Federal Reserve, which is a
7    private bank.  Most of the public thinks it's a public bank --
8    or excuse me, a central bank, part of the United States
9    government, and it's not.

10    And then to go into anything else as far as its
11    transactions and how it works is mind numbing, and it takes a
12    very long time.  You have been able to see and hear testimony
13    and evidence of some of those things that have been kept quiet.

14    Now, in my work that I do to help clean up and work
15    with those inside of government agencies, departments, and
16    branches to clean up the mess that the financial system has
17    caused, and you've heard Mr. O'Malley's testimony that -- to
18    shut down a hundred percent fraud would shut down the system.
19    I don't agree.

20    My whole work -- my whole life has been committed to
21    other solutions that let commerce go on, life go on without a
22    hitch, but without fraud, without crimes being committed.

23    And that's why it's -- all of this was about, was
24    securing each individual, all their property, and this part
25    here has been about identifying agents that were within sight

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Tucci-Jarraf

1  of our government who were being misled themselves and not

2  given the whole picture by the Federal Reserve.

3          I've had many years of experience with actions that

4  the Federal Reserve has taken in order to keep their

5  transactions and their operations from the public.  I know the

6  methods, I know the lengths, and I know the scope that they go

7  to.

8          In this particular instance, in July, there was a lot

9  of people that were at risk.  And I ended up putting myself by

10  choice at risk to be able to go in and make sure everyone

11  stayed as safe and possible.

12          So did I know the transactions involved proceeds from

13  fraud, wire fraud, or bank fraud?  No.  That's why I was doing

14  my own investigations regarding the ACH, along with those in

15  the universal cleanup, talking with the bankers, talking with

16  the intel agencies to figure out what was going on.

17          I don't use ACH.  The type of banking that I work in

18  is high level involving transactions from one million to a

19  hundred billion.  You can't use ACH for that.  You use wire,

20  Fedwires.

21          So I wanted to make sure what was going on with the

22  ACH.  I had not heard in the universal cleanup or from the

23  bankers and the intelligence agencies that I was working with

24  that ACH was going to be used to be able to return the value

25  when it was time.

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Tucci-Jarraf

1       In June of 2017, that was the first time the

2  factualized trust was even put on paper.  Now, there are --

3  have been decades of people studying all of this, about the

4  Federal Reserve, about corruption and Congress being used to

5  bring the Federal Reserve entity in as a central bank, as a

6  facilitating or an instrumentality of the United States.

7  They've been studying this for decades.

8       I'm aware of it because it was part of what I had to

9  study and work with those people that were involved in things

10 like the Bernard scandals, the savings and loans scandals, and

11 figure out what had happened, what solution had been

12 implemented and why didn't it last, why is banking still a

13 problem.  So, yes, I'm aware of all that.

14      Cestui Que Trust, you heard Mr. Beane talk about

15 Cestui Que Trust.  For me and my research and the experience

16 that I've had, as well as those experiences from those that I

17 work with, from the DOJ, the federal judges to the bankers

18 themselves, to intelligence agencies and government officials,

19 Cestui Que Trust to me was a fraud to begin with.  It's how we

20 got into the mess in the first place.

21      It's understandable how Mr. Beane went in and just

22 from his knowledge with Cestui Que Trust that he talked about

23 everyone had -- that I have experienced, that I have reviewed,

24 and that I have researched always puts it with a Cestui Que

25 Trust, but it isn't correct.

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Tucci-Jarraf

1          So I did not know those transactions involved

2     proceeds of wire fraud or bank fraud.  It was possible that

3     they were using ACH or connecting the ACH up for these

4     transactions.  It wasn't until this trial that I heard ACH with

5     the two-day proceeds, because they're in the Harvey Dent video,

6     which was not presented as evidence but spoken about and

7     crossed about.

8          I've watched that video.  I know time was their

9     two-day delay with the settlement.  That's what we call it.

10    Credits are not money.  Credits are credits.  That's it.  Until

11    they are delivered and received and confirmed, there is no

12    money.  Most people don't know that.  That's why we sat here

13    and talked about that and the ACH system.

14         But that, I wouldn't have been able to say until

15    after sitting here listening to testimony from USAA Bank and

16    seeing the -- the actual documentation that they finally

17    presented from the Federal Reserve, saying that it was ACH

18    credits, which was a large part of my cross regarding ACH

19    system.

20         So while trying to figure out whether these were

21    actually connected to TreasuryDirect deposit accounts, not

22    TreasuryDirect accounts, which in this video it refers to

23    TreasuryDirect accounts, which are a completely different

24    thing -- and you even heard Ms. Davidson, she's never even

25    watched the video, and stated that there was this two-day

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Tucci-Jarraf

1   settlement period.  There wasn't.  And I testified that I
2   didn't recall that part in it; however, if we were to watch the
3   video, we could see that.  But it wasn't.

4          So as far as whether I knew the transactions
5   regarding the RV and the sale and purchase was designed to
6   conceal proceeds of fraud, no.  I still hadn't determined
7   whether there was -- whether the proceeds were from Randall or
8   if they were what we determined here in trial.  ACH was
9   actually for credits.  Okay.

10         It's very distressing to see people get themselves
11  into trouble unwittingly, not knowing all of this, and to have
12  the Federal Reserve sit down and try to mislead by not giving
13  all the information, every single piece of data.  However, I've
14  worked with them and with U.S. Treasury and all the departments
15  and branches to go and clean this up very quietly for over 20
16  years.

17         And here we are in this situation where at least
18  300,000 that I know of, 300,000 people were put at risk and
19  continue today to even still try this process.  It's going to
20  take awareness.  It's going to take awareness of the problem
21  and the change necessary, the actions necessary to make change.

22         If I was trying to help Mr. Beane hide money, use
23  stolen proceeds to buy an RV, first off, that's not hiding it.
24  Secondly, I wouldn't have laid a paper trail with my name on
25  everything or made a video and made sure that it was out.  I

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Tucci-Jarraf

1   did make a video.  I videoed myself.  I didn't record anybody

2   else on the other end of it.  It was only afterwards that I

3   found out that there was another recording, which was great,

4   because then you guys got to hear what the other side was

5   saying.

6        I prefer all the data, everything being transparent

7   so everyone can see it.  I trust in the tools of discernment of

8   everyone, especially in these moments when everything is being

9   cleaned up and things that people thought would never have

10  existed, never have been done are now being made visible, that

11  those things were done, crimes of corruption, collusion, and

12  worse against the people of America and humanity in general all

13  over the world.

14       I trust in everyone's ability to look at the evidence

15  and the testimony, not just here in court and what was

16  presented to you, but in life.  These are choice points.

17       All of this that you've heard about during this

18  trial, it affects everyone's life.  Money is a part of

19  everything, and apparently so are credits.  The banking system

20  affects everything we do.  It's involved in every aspect of

21  life.

22       So I wouldn't have made sure there was a paper trail

23  or a video trail if I had intended to go in and hide illegally

24  gained proceeds.  And I especially wouldn't have put them into

25  an RV that's 45 feet long and takes up a lot of gas and can be

UNITED STATES DISTRICT COURT

1   found anywhere with a GPS locator.

2           The other element that has to be shown was the

3   property was over 10,000.  Obviously, we're talking about

4   millions of dollars in this particular case, the wire, the bank

5   wire, the Fedwire, was just under 500,000.  So, obviously, that

6   part, but it also in that element has to be derived from wire

7   fraud and bank fraud.

8           Again, the paperwork shows transactions were done.

9   It shows the travel, but there was no evidence on paper from

10  the wire room, from the Fed Reserve over to them stating that

11  it was fraud.  You saw that it was returned, yes.

12          So my biggest concern and the reason why I wanted to

13  get involved in the first place was because I have personal

14  experience with the methods and the topics of the Federal

15  Reserve, and I had already been working on cleaning up foreign

16  agents and foreign actors, and at the time of this incident was

17  working steadily with everyone across the globe to stop a

18  threat, which was done by the same actors that we are -- that I

19  am saying and that I have testified are responsible for not

20  just the cause of this action, but for many other crimes

21  against the people of America as well as humanity in general.

22          Randy had no idea -- no idea at all of who the actors

23  were behind them -- behind this scheme.  In fact, nobody knows

24  who gave the order for that video of Harvey Dent to come out,

25  at least in this courtroom.  I don't.

1    But I do know from experience what kind of effects

2 something like that can have, especially when people don't know

3 the Federal Reserve is involved.  And if they do know the

4 Federal Reserve is involved, they don't know their actions,

5 they don't know their methods.  They don't know the secrets

6 that are hiding, and I'm not talking about accounts at this

7 point.  I'm talking about commandeered value.  I'm talking

8 about fraud.  I'm talking about other crimes that this

9 institution, I know in my own personal experience, has been

10 involved with.

11    I'm also aware and have a lot of experience over the

12 years with how they use our law enforcement, our judicial, our

13 legislative branches in order to keep everyone safe.

14    With Randy, it was to keep that one particularly

15 physically safe until things could get resolved.  With Whitney

16 Bank, it was to make sure they had at least in banking, if you

17 go to use funds, you have to have an origin of funds.  Where

18 did they originate from?  You have to have a history of funds.

19 Once they're originated, where do they travel?  How did you get

20 them?

21    And then, of course, title, ownership to those funds,

22 those -- that's what's required in banking.  And the anti-money

23 laundering laws helped to enforce that to make sure there's

24 transparency, at least amongst bankers.

25    Now, if someone like Mr. Beane, this -- my biggest

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Tucci-Jarraf

1  concern was if someone like Mr. Beane could go in and actually

2  utilize their TreasuryDirect deposit accounts, because at that

3  point, I didn't know if he was accessing TreasuryDirect deposit

4  accounts or what was going on, which is why I had put up a

5  post -- that's how we communicate fast and quick. And the code

6  name for the universal cleanup in this particular phase is "all

7  on."

8         I had people working from all over the world.

9  Because it's not -- TreasuryDirect deposit accounts is the term

10  here in the U.S., but there are international equivalents. So

11  we had people working all around the world to figure out what

12  was going on, whether it was intelligence agents, whether it

13  was bankers, government officials, everyday people who have

14  been involved in the universal cleanup for years.

15         So never did I promote any process. I was trying to

16  figure out what the process was by using our teams that are

17  very experienced in banking, and especially with the Federal

18  Reserve, and especially with the securing of individuals and

19  their property.

20         This is not light stuff. This is not very public

21  stuff, and definitely have I never expressed to anyone how to

22  utilize any of the things that we have gone in, the tools that

23  we had implemented to be able to secure, to take back and

24  secure.

25         That's what I was working quietly with the different

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Tucci-Jarraf

1  people in -- specifically in the United States in our branches

2  and departments and agencies to figure out how to get the

3  solution up without having to reveal a lot of this stuff that

4  went on in the abuse of using our governments to commit these

5  crimes, using agencies as a whole, but using the people that

6  are in those offices and employment of those departments and

7  agencies.

8          I discussed with you in testimony -- I gave testimony

9  that there's been a lot of cleanup. There's been a lot of

10  firings, there's been a lot of resignings within Congress,

11  within corporations, multinational CEOs resigning, bankers

12  resigning. A lot, if not most of that is due to all of the

13  cleanup work, not just the actual securing, but a lot of

14  cleanup work done by a lot of good people for decades. I've

15  only been involved for 20 years. There are people that have

16  been there for 40, 50 years, some more.

17          For me, it doesn't matter whether transactions

18  started on the third or the fourth. The point is, the value,

19  the money is Randall's or not or any individual's or not. To

20  me, it matters not as far as the dates. That's the part that I

21  know. That is the part that I personally have been involved in

22  securing within our systems.

23          Now, another part of this is, you know, with the FBI,

24  when I saw what happened on the 11th with Randall, you know,

25  first on the 3rd or on the 4th, excuse me, to the best of my

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Tucci-Jarraf

1    recollection and my testimony, Randall had already started with

2    these accounts --

3              THE COURTROOM DEPUTY:  Five.

4              MS. TUCCI-JARRAF:  -- trust -- thank you -- trust

5    accounts.  I didn't provide him or the public with the actual

6    factualized trust on paper until January -- or excuse me

7    July 7th.  There could be no conspiracy.

8              Many of the transactions, if not most of them, were

9    already done prior to me even putting that out.  It was not a

10   tool that was completely ready with proper approvals and

11   authorizations to go in and make it public.  Are those

12   protections there?  Yes, since 2013, the beginning of 2013.

13             And, in fact, each individual and each -- all of the

14   value, U.S. government -- assets of the U.S. government have

15   all been protected since July 25th, 2012.

16             When the FBI got involved, and it was so rough, I

17   talked to Randy, and I said, "Just give them the phone.  I will

18   talk with them."

19             I've been working with agencies such as the FBI and

20   the FBI included.  It's not a problem.  The highest levels know

21   exactly what's going on.  They have access to this information.

22   I've worked with some of them.

23             So the events of that day just spiraled out of

24   control on all parts.  However, the Knox office for the FBI

25   wasn't given all the information, not by the Federal Reserve.

UNITED STATES DISTRICT COURT

Closing Argument - Ms. Tucci-Jarraf

1  In fact, the Federal Reserve uses agencies -- excuse me,

2  departments like that to handle things.

3       You can't handle things if you don't have all the

4  information.  And people are predisposed to take a position

5  that someone has done a wrong without taking all the evidence.

6  That is part of the cleanup, making sure that day do, making

7  sure that before any physical action is taken or the American

8  people harmed, that the data is taken, and not extreme measures

9  to go in and try to stop something, when it could have easily

10 been stopped.

11      Which you saw USAA had frozen his accounts.  There's

12 no way he could use them.  So it was stopped.  So why?  A lot

13 of that has to do with the environment, the policies, and most

14 of those, in my experience and my knowledge come from the

15 Federal Reserve Bank down through the agencies through their

16 agents at the highest levels.

17      I never intended to promote any activity that was

18 unlawful.  Every action, every piece of evidence that was

19 entered and all my testimony, I'd been consistent in stating

20 and living my life, stopping illegal activity, unlawful

21 activities.  I risk myself and my family.  I knew what the

22 consequences might be if evidence and testimony couldn't be

23 presented.

24      THE COURTROOM DEPUTY:  Two.

25      MS. TUCCI-JARRAF:  I also had to rely on the

UNITED STATES DISTRICT COURT

Rebuttal Closing Argument - Ms. Davidson

1    discernment and your ability to discern and be diligent through

2    that evidence.  Inside these filings, you'll see everything,

3    all the laws, all the -- everything that we went through to be

4    able to secure, and we secured it, took it back and secured it,

5    the same way that it was taken, a reversal.

6           I ask that you do a diligent review of all the

7    evidence and all the testimony, as if it was a matter in your

8    lives.  And I believe after careful review of that, that there

9    will be reasonable doubt.  And I ask that you return a verdict

10   of not guilty.

11          Thank you.

12          THE COURT:  Thank you, Ms. Tucci-Jarraf.

13          Now, we'll have final rebuttal closing argument by

14   the government.

15          MS. DAVIDSON:  Thank you, Your Honor.

16          Lies and greed.  That is what this case is about.

17   It's not about some grand conspiracy.  Oh, and let's not

18   forget, trying to get away with the money.  That's what this

19   case is about.  And a desire also to be Internet famous and

20   self-importance all rolled into one.

21          Look at Beane's life.  Besides putting the routing

22   number and the account number on -- to access the money that

23   wasn't his, he doesn't even use his own Social Security number

24   to buy the 32 CDs.  So he's accessing someone else's secret

25   account.  How does he explain that?  He doesn't even use his

UNITED STATES DISTRICT COURT

1    own Social Security number.  Lies.

2         He -- he pays -- he lied when he said he paid off his

3    cars a week or two ago.  He can't remember the name of the bank

4    where his trust account is.  He has no idea that the ACH

5    transactions are reversed, no idea why USAA is trying to recall

6    the money.  He lies on the stand, says there was no warrant.

7    We all know that.  That's a red herring.

8         And so much of the testimony put on by the defendants

9    is a red herring.  There's a vast conspiracy.  They're trying

10   to stop all crimes.  What are the crimes, the crimes that

11   Mr. Beane got himself way too far into his own debt?  Is that

12   the crimes they're trying to stamp out?  I submit to you that

13   that's the crimes they're trying to submit out.

14        Beane, another lie, never heard of Wikipedia, even

15   though I'm an expert in computer programming.  He lied about

16   the extent of his injures.  The FBI didn't identify themselves.

17   He lied about that.  But then later it came out that they had

18   business cards of the FBI.  That all the transactions were done

19   on July 5th.  Never truly believed that the money was his.

20        Again, there are no good faith defense to this.  No

21   good face -- faith.  Nothing but lies.

22        And let's talk about Heather Ann Tucci-Jarraf's lies.

23   There are just too many to mention, too many to mention.  She

24   said she's an expert in banking, finance, trade, and

25   collections, and everything else.  She knows all about Fedwire,

UNITED STATES DISTRICT COURT

Rebuttal Closing Argument - Ms. Davidson

1   but I don't know anything about ACH transactions.

2           You can't have it both ways.  You can't be an expert

3   in banking, which as she's gone on and testified ad nauseam

4   about how she's an expert at banking, but she doesn't know

5   anything about ACH transactions.  She said she was worried

6   about all her followers and these ACH transactions, but she's

7   the one who shared it on July 4th, and we saw that on her

8   Facebook posting.  She wasn't so worried not to spread the

9   truth of the fraud she was perpetuating.

10          And she says that she meant to get indicted in this

11  case, and that she, you know, that she didn't engage in -- in

12  fraud in her video.  Who would put a video of themselves

13  committing a crime, money laundering, on YouTube, except

14  somebody who is only interested in self-promotion, trying to

15  make herself Internet famous.  You heard her testify that her

16  followers were paying for her to live while she's going through

17  this trial.

18          She's not sharing any truth here.  She doesn't share

19  the truth.  And we -- the government withdrew their objections

20  to these UCC documents.  Review them.  They do not say what she

21  says they say.  There is no support for a secret account.

22  These were all filed at the Register of Deeds in Washington,

23  D.C.  That's where they're filed.  They have a whole bunch of

24  misuses of legal terms and gobbledygook.  That's what these

25  documents have.  Somehow this is supposed to negate their

UNITED STATES DISTRICT COURT

1    intent.

2            She would have you believe that she totally believes

3    this.  And it's -- maybe she's crazy.  But look at Government's

4    Exhibit 94 that shows -- and her conduct in this trial.  She's

5    not crazy.  She knows exactly what she's doing.  She is a con

6    woman.  She's not crazy.  Watch 94, if you don't remember it.

7    She never mentions -- she never shares the truth.  She calls it

8    an originating bank.  We don't know what's going on here.

9            Why doesn't she just say, "You know, guys, y'all just

10   don't understand, we all have a secret account, and Beane has

11   just accessed his, and I think the Fed Reserve is trying to get

12   it back."

13           She doesn't say that.  She is completely sane, and

14   she acts that way on Exhibit 94 and throughout the time of

15   her -- the conduct of this trial.  Neither one of these

16   defendants are crazy.  They don't believe what they're saying,

17   and both defendants are guilty.

18           Thank you, Your Honor.

19           THE COURT:  All right.  Thank you, everyone, for your

20   closing arguments.

21           Members of the jury, now it's time for me to instruct

22   you about the law you must follow in deciding this case.

23           I'll start by explaining your duties and the general

24   rules that apply in every criminal case, and then I'll explain

25   the elements or parts of the crimes that the defendants are

UNITED STATES DISTRICT COURT

1  accused of committing, then I'll explain the defendants'

2  positions, then I'll explain some rules you must use in

3  evaluating particular testimony and evidence.  And, last, I'll

4  explain the rules you must follow during your deliberations in

5  the jury room and the possible verdicts you may return.

6          Please listen very carefully to everything I say.

7          It will take me a while to read through these, but I

8  will remind you that you will have copies of these jury

9  instructions with you in the jury deliberation room.

10         You have two main duties as jurors.

11         The first one is to decide what the facts are from

12  the evidence that you saw and heard here in court.  Deciding

13  what the facts are is your job, not mine, and nothing that I've

14  said or done during this trial was meant to influence your

15  decision about the facts in any way.

16         Your second duty is to take the law that I give you,

17  apply it to the facts, and decide if the government has proved

18  either or both defendants guilty beyond a reasonable doubt.

19         It's my job to instruct you about the law, and you're

20  bound by the oath you took at the beginning of the trial to

21  follow these instructions I give you, even if you personally

22  disagree with them.  This includes the instructions I gave you

23  before and during the trial, as well as these instructions.

24         All the instructions are important, and you should

25  consider them together as a whole.

UNITED STATES DISTRICT COURT

1    The parties may have talked about the law and what

2    constitutes a violation of the law during questioning and

3    arguments.  But if what they said is different from what I say,

4    you must follow what I say.  What I say about the law controls,

5    and it's your duty to take the law that I give you, apply it to

6    the facts, and decide if the government has proved the

7    defendants guilty beyond a reasonable doubt.

8    Perform these duties fairly.  Do not let any bias,

9    sympathy, or prejudice you feel toward one side or the other

10   influence your decision in any way.

11   As you know, the defendants have both pleaded not

12   guilty to the crimes charged against them in the indictment.

13   Again, as you heard me state last week at the beginning of this

14   trial, the indictment is not any evidence at all of guilt.  It

15   is just the formal way the government tells the defendants what

16   crimes they are accused of committing.  It does not even raise

17   any suspicions of guilt.

18   Instead, the defendants start the trial with clean

19   slates with no evidence at all against them, and the law

20   presumes that each defendant is innocent.

21   This presumption of innocence stays with the

22   defendants unless the government presents evidence here in

23   court that overcomes the presumption as to the defendants and

24   convinces you beyond a reasonable doubt that the defendants are

25   guilty.

UNITED STATES DISTRICT COURT

1    This means the defendants have no obligation to

2    present any evidence at all or to prove to you in any way that

3    they are innocent.

4    It is up to the government to prove the defendants

5    are guilty. And this burden stays on the government throughout

6    the entire case. You must find the defendants not guilty

7    unless the government convinces you beyond a reasonable doubt

8    that the defendants are guilty.

9    The government must prove every element of the crimes

10   charged beyond a reasonable doubt.

11   Proof beyond a reasonable doubt does not mean proof

12   beyond all possible doubt. Possible doubts or doubts based

13   purely upon speculation are not reasonable doubts.

14   A reasonable doubt is a doubt based on reason and

15   common sense. It may arise from the evidence, the lack of

16   evidence or the nature of the evidence.

17   Proof beyond a reasonable doubt means proof which is

18   so convincing that you would not hesitate to rely and act on it

19   in making the most important decisions in your own lives.

20   If you are convinced the government has proved either

21   defendant guilty beyond a reasonable doubt with respect to a

22   particular charge, say so by returning a guilty verdict on that

23   charge. If you are not convinced, say so by returning a

24   not-guilty verdict on that charge.

25   You must make your decisions based only on the

UNITED STATES DISTRICT COURT

1   evidence you heard here in court.  Do not let rumors,

2   suspicions, or anything else you may have seen or heard outside

3   of court influence your decision in any way.

4         The evidence in this case includes only what the

5   witnesses said while they were testifying under oath and the

6   exhibits I allowed into evidence.  Nothing else is evidence.

7         The statements and arguments of the lawyers and of

8   the defendants when acting as their own lawyers are not

9   evidence.  Their questions and objections are also not

10  evidence.  Although you must consider a party's questions to

11  understand the answers of a witness, those questions themselves

12  are not evidence.

13        Similarly, what the parties say or said in their

14  opening statements, closing arguments, and at other times,

15  except when testifying on the witness stand, is intended to

16  help you interpret the evidence, but it is not itself evidence.

17        My legal rulings are not evidence, and my comments

18  and questions are not evidence.  During the trial, I may not

19  have let you hear the answers to some of the questions that the

20  parties asked.  I also may have ruled that you could not see

21  some of the exhibits that the parties wanted you to see.  I may

22  have ordered you to disregard things that you saw or heard or

23  struck things from the record.

24        You must completely ignore all these things.  Do not

25  even think about them.  Do not speculate about what a witness

UNITED STATES DISTRICT COURT

1    might have said or what an exhibit might have shown.  These

2    things are not evidence, and you're bound by your oath to not

3    let them influence your decision-making in any way.  Make your

4    decision based only on the evidence as I've defined it here and

5    nothing else.

6         You should use your common sense in weighing the

7    evidence.  Consider it in light of your everyday experience

8    with people and events and give it whatever weight you believe

9    it deserves.  If your experience tells you that certain

10   evidence reasonably leads to a conclusion, you are free to

11   reach that conclusion.

12        Some of you may have heard the terms direct evidence

13   and circumstantial evidence.

14        Direct evidence is simply evidence like the testimony

15   of an eyewitness, which, if you believe it, directly proves a

16   fact.  For example, if a witness testified that he or she saw

17   it raining outside and you believed the witness, that would be

18   direct evidence that it was raining.

19        Circumstantial evidence is simply a chain of

20   circumstances that indirectly proves a fact.  If, for example,

21   someone walked into the courtroom wearing a raincoat covered

22   with drops of water and carrying a wet umbrella, that would be

23   circumstantial evidence from which you could conclude that it

24   was raining.

25        It is your job to decide how much weight to give the

UNITED STATES DISTRICT COURT

1    direct and circumstantial evidence.  The law makes no
2    distinction between the weight that you should give to either
3    one and does not say that one is any better evidence than the
4    other.  You should consider all the evidence, both direct and
5    circumstantial, and give it whatever weight you believe it
6    deserves.

7            Another part of your job as jurors is to decide how
8    credible or believable each witness was.  This is your job, not
9    mine.  It is up to you to decide if a witness' testimony was
10   believable and how much weight you think it deserves.  You are
11   free to believe everything a witness said or only part of it or
12   none of it at all, but you should act reasonably and carefully
13   in making these decisions.

14           Let me suggest some things for you to consider in
15   evaluating each witness' testimony.

16           Ask yourself if the witness was able to clearly see
17   or hear the events.  Sometimes even an honest witness may not
18   have been able to see or hear what was happening and may make a
19   mistake.

20           Ask yourself how good the witness' memory seemed to
21   be.  Did the witness seem able to accurately remember what
22   happened?

23           Ask yourself if there was anything else that may have
24   interfered with the witness' ability to perceive or remember
25   the events.

UNITED STATES DISTRICT COURT

Jury Charge

1          Ask yourself how the witness acted while testifying.

2   Did the witness appear honest or did the witness appear to be

3   lying?

4          Ask yourself if the witness had any relationship to

5   the government or either defendant or anything to gain or lose

6   from the case that might influence the decision -- that might

7   influence the witness' testimony.

8          Ask yourself if the witness had any bias or prejudice

9   or reason for testifying that might cause the witness to lie or

10  slant the testimony in favor of one side or the other.

11         Ask yourself if the witness testified inconsistently

12  while on the witness stand.  Or if the witness said or did

13  something or failed to say or do something at any other time

14  inconsistent with what the witness said while testifying.

15         If you believe the witness was inconsistent, ask

16  yourself if this makes the witness' testimony less believable.

17  Sometimes it may, other times it may not.  Consider whether

18  the -- consider whether the inconsistency was about something

19  important or about some unimportant detail.

20         Ask yourself if it seemed like an innocent mistake or

21  if it seemed deliberate.

22         Ask yourself how believable the witness' testimony

23  was in light of all the other evidence.  Was the witness'

24  testimony supported or contradicted by other evidence you found

25  believable?

UNITED STATES DISTRICT COURT

Jury Charge

1              If you believe a defendant's -- if you believe that a

2   witness' testimony was contradicted by other evidence, remember

3   that people sometimes forget things, and that even two honest

4   people who witness the same event may not describe it exactly

5   the same way.

6              These are only some of the things you may consider in

7   deciding how believable each witness was.  You may also

8   consider other things that you think shed some light on the

9   witness' believability.

10             Use your common sense and everyday experience in

11  dealing with other people, and then decide what testimony you

12  believe and how much weight you think it deserves.

13             One more point about the witnesses.  Sometimes jurors

14  wonder if the number of witnesses who testified makes any

15  difference.  Do not make any decisions based only on the number

16  of witnesses who testified; what is more important is how

17  believable the witnesses were and how much weight you think

18  their testimony deserves.  Concentrate on that, not the

19  numbers.

20             Now, there's one more general subject I want to talk

21  to you about before I begin explaining the elements of the

22  crimes charged.  The parties may have objected to some of the

23  things that were said or done during the trial.  Do not hold it

24  against either side or any side.  The parties have a duty to

25  object whenever they think that something is not permitted by

UNITED STATES DISTRICT COURT

1    the rules of evidence.  Those rules are designed to make sure

2    that all sides receive a fair trial.

3          And do not interpret my rulings on any objections as

4    any indication of how I think the case should be decided.  My

5    rulings were based on the rules of evidence, not on how I may

6    feel about the case.

7          Remember that your decision must be based only on the

8    evidence you saw and heard here in court.

9          That concludes the part of my instructions explaining

10   your duties and the general rules that apply in every criminal

11   case.  In a moment, I'll explain the elements of the crimes the

12   defendants are accused of committing.

13         But before I do that, I want to emphasize that the

14   defendants are only on trial for the particular crimes charged

15   in the indictment.  Your job is limited to deciding whether the

16   government has proved the crimes charged.

17         Also keep in mind that whether anyone else should be

18   prosecuted and convicted for the alleged crimes is not a proper

19   matter for you to consider.  The possible guilt of others is no

20   defense to a criminal charge.

21         Your job is to decide if the government has proved

22   the defendants guilty of the charges against them.  Do not let

23   the possible guilt of others influence your decision in any

24   way.

25         The two defendants in this case have been charged

UNITED STATES DISTRICT COURT

1    with one crime, and then one of the defendants, Mr. Beane, has

2    been charged with six additional crimes.  I'll explain to you

3    in more detail shortly which defendants have been charged with

4    which crimes, but before I do, I want to emphasize several

5    things.

6            First, the number of crimes against a defendant is no

7    evidence of guilt, and this should not influence your decision

8    in any way.  In our system of justice, guilt or innocence is

9    personal and individual.  It is your duty to separately

10   consider the evidence against each defendant on each charge and

11   to return a separate verdict for each one of them.

12           For each charge against each defendant, you must

13   separately decide whether the government has proved or has

14   presented proof beyond a reasonable doubt that the particular

15   defendant is guilty of that particular charge.

16           Your decision on any one defendant or any one charge,

17   whether guilty or not guilty, should not influence your

18   decision as to the other defendant or any other charge.

19           The indictment in this case, as noted, consists of

20   seven counts, which the Court will summarize in more detail

21   momentarily.

22           Counts 1 through 5 apply only to Defendant Randall

23   Keith Beane, and charge wire fraud, in violation of 18 United

24   States Code Section 1343.

25           Count 6 also applies only to Defendant Beane, and

UNITED STATES DISTRICT COURT

Jury Charge

1    charges bank fraud, in violation of 18 United States Code

2    Section 1344.

3            Finally, Count 7 applies to both Defendant Beane and

4    Defendant Heather Ann Tucci-Jarraf, and charges conspiracy to

5    commit money laundering, in violation of 18 United States Code

6    Section 1956(h).

7            Counts 1 through 5 of the indictment charge that in

8    or about July 2017, Defendant Randall Keith Beane initiated a

9    scheme to obtain funds that did not belong to him by exploiting

10   the online banking options of the United States Automobile

11   Association or USAA.

12           The indictment alleges as part of this scheme this

13   defendant purchased jumbo certificates of deposit with funds

14   that did not belong to him, using both fictional bank accounts

15   and real routing numbers that did not belong to him, and in

16   doing so, transmitted signals and sounds by wire communication

17   in interstate commerce.

18           Count 6 of the indictment charges that on or about

19   July 5 to July 11, 2017, this defendant, Mr. Beane, devised a

20   scheme to defraud financial institutions and to obtain money

21   and other property of financial institutions by means of false

22   and fraudulent pretenses, representations, and promises.

23           This scheme allegedly consisted of this defendant

24   purchasing certificates of deposit with money that did not

25   belong to him, altering financial instruments without

UNITED STATES DISTRICT COURT

Jury Charge

```
 1   permission or authority, and liquidating the certificates of
 2   deposit to obtain money and property fraudulently and for his
 3   own benefit.
 4          Count 7 of the indictment charges that in or about
 5   July 2017, the defendants, Randall Keith Beane and Heather Ann
 6   Tucci-Jarraf, entered into a conspiracy to commit the following
 7   federal offenses:
 8          First, knowingly conducting financial transactions
 9   affecting interstate commerce that involved the proceeds of
10   wire fraud and bank fraud, intending to promote that unlawful
11   activity.
12          Second, knowingly conducting financial transactions
13   affecting interstate commerce that involve the proceeds of wire
14   fraud and bank fraud, knowing that these transactions were
15   designed to conceal the nature of the proceeds of that unlawful
16   activity.
17          And, third, knowingly engaging in monetary
18   transactions involving a financial institution and affecting
19   interstate commerce where the property involved had a value
20   greater than $10,000 and was derived from wire fraud and bank
21   fraud.
22          Next, I want to say a word about the definition of
23   the indictment.
24          The indictment charges the crimes at issue happened
25   on or about a specified date or in and about a range of dates.
```

UNITED STATES DISTRICT COURT

Jury Charge

1    The government does not have to prove the crimes happened on

2    that exact date or within that exact range of dates, but the

3    government must prove the crimes happened reasonably close to

4    that date or range of dates.

5          Next, I want to explain something about proving a

6    defendant's state of mind.  Ordinarily, there's no way a

7    defendant's state of mind can be proved directly, because no

8    one can read another's person's mind and tell what that person

9    is thinking.

10         But a defendant's state of mind can be proved

11   indirectly from the surrounding circumstances.  This includes

12   things like what the defendant said, what the defendant did,

13   how the defendant acted, and any other facts or circumstances

14   in evidence that show what was in the defendant's mind.

15         You may also consider the natural and probable

16   results of any contacts that the defendants knowingly did and

17   whether it's reasonable to conclude that a defendant intended

18   those results.  This, of course, is all for you to decide.

19         Although the indictment charges that particular

20   federal statutes were violated by acts connected by the word

21   "and," it is sufficient that the evidence establishes a

22   violation of a statute by any one of the acts charged.  Of

23   course, this must be proved beyond a reasonable doubt.

24         I'll now give you some instructions regarding the

25   definitions of the offenses charged in the indictment, Counts 1

UNITED STATES DISTRICT COURT

through 5 of the indictment charge Defendant Randall Keith
Beane with wire fraud.  For you to find this defendant guilty
of wire fraud, you must find the government has proved each and
every one of the following elements beyond a reasonable doubt:

First, that Defendant Beane devised or intended to
devise a scheme to defraud in order to obtain money, that is
with respect to Counts 1 and 3, he caused funds he did not own
to be transferred via wire to purchase certificates of
deposits.

With respect to Counts 2 and 4, he caused those
certificates of deposits to be closed and the funds to be
transferred via wire to one of his personal accounts at USAA
Bank.

And with respect to Count 5, he caused the sum of
$493,110.68 to be transferred via wire from one of his personal
accounts at USAA Bank to Whitney Bank for the purchase of a
motor home.

Second, that the scheme included a material
misrepresentation or concealment of material fact.

Third, that the Defendant Beane had the intent to
defraud.

And, fourth, that the Defendant Beane used or caused
others to use wire communications in interstate commerce in
furtherance of the scheme.

Now, I'll give you more detailed instructions on some

UNITED STATES DISTRICT COURT

1    of these terms.

2         A "scheme to defraud" includes any plan or course of

3    action by which someone intends to deprive another of money or

4    property by means of false or fraudulent pretenses,

5    representations, or promises.

6         The term "false or fraudulent pretenses,

7    representations, or promises" means any false statements or

8    assertions that concern a material aspect of the matter in

9    question that were either known to be untrue and made or made

10   with reckless indifference to their truth.  They include actual

11   direct false statements as well as half-truths in the knowing

12   concealment of material facts.

13        An act is knowingly done if done voluntarily and

14   intentionally, not because of mistake or some other innocent

15   reason.  In addition, no one can avoid responsibility for a

16   crime by deliberately ignoring the obvious.

17        If you're convinced the defendant deliberately

18   ignored a high probability that the statements or assertions

19   were false or that a certain result would occur, then you may

20   find that he knew those statements or assertions were false or

21   that the result would occur.

22        But to find this, you must be convinced beyond a

23   reasonable doubt that the defendant was aware of a high

24   probability that the statements or assertions were false or

25   that the result would occur and that the defendant deliberately

UNITED STATES DISTRICT COURT

Jury Charge

1    closed his eyes to what was obvious.

2          If the government establishes that the defendant

3    acted with deliberate disregard for the truth, the knowledge

4    requirement would be satisfied, unless the defendant actually

5    believed the statements to be true.  However, carelessness,

6    negligence, or foolishness of his part is not the same as

7    knowledge, and it is not enough to convict.  This, of course,

8    is all for you to decide.

9          A misrepresentation or concealment is material if it

10   has a natural tendency to influence or is capable of

11   influencing the decision of a person of ordinary prudence and

12   comprehension.

13         To act with intent to defraud means to act with

14   intent to deceive or cheat for the purpose of causing financial

15   loss to another or bringing about a financial gain to oneself.

16         To cause wire, radio, or television communications to

17   be used is to do an act with knowledge that the use of the

18   communications will follow in the ordinary course of business

19   or where such use can reasonably be foreseen.

20         The term interstate commerce includes wire, radio, or

21   television communications which cross the state line.

22         It is not necessary that the government prove all of

23   the details alleged concerning the precise nature and purpose

24   of the scheme.  It is also not necessary that the government

25   prove that the material transmitted by a wire, radio, or

UNITED STATES DISTRICT COURT

1    television communications was itself false or fraudulent, that

2    the alleged scheme actually succeeded in defrauding anyone,

3    that the use of the wire, radio, or television communications

4    was intended as a specific or exclusive means of accomplishing

5    the alleged fraud, that someone relied on the misrepresentation

6    or false statement, or that the defendant obtained money or

7    property for his own benefit.

8              If you're convinced the government has proved all the

9    elements as to the charge you are considering, say so by

10   returning a guilty verdict on that charge.

11             If you have a reasonable doubt about any one of the

12   elements as to the charge you are considering, then you must

13   find the Defendant Beane not guilty of that charge.

14             Finally, if you do find the Defendant Beane guilty of

15   any of Counts 1 through 5, you will then be asked to determine

16   whether his conduct in committing that violation affected a

17   financial institution.

18             For purposes of Counts 1 through 5, the term

19   "financial institution" includes the following:  An insured

20   depository institution, a credit union with the accounts

21   insured by the National Credit Union Share Insurance Fund, a

22   Federal Home Loan Bank, or member of the Federal Home Loan Bank

23   System, a system institution of the Farm Credit System, a small

24   business investment company, a depository institution holding

25   company, a Federal Reserve Bank, or a member bank of the

UNITED STATES DISTRICT COURT

Jury Charge

1  Federal Reserve System, an organization operating under

2  Sections 25 or 25A of the Federal Reserve Act, a branch or

3  agency of a foreign bank, a mortgage lending business, or any

4  person or entity that makes in whole or in part a federally

5  related mortgage loan.

6        You'll be provided with a special verdict form for

7  the purpose of making this determination.  If you unanimously

8  find that the government has proved beyond a reasonable doubt

9  that the defendant's conduct constituting a particular offense

10  affected a financial institution, as I've defined that item,

11  then please indicate this finding by checking that line on the

12  special verdict form.

13        On the other hand, if you unanimously find the

14  defendant's conduct constituting a particular offense did not

15  affect a financial institution, then check that line on the

16  special verdict form.

17        Turning now to Count 6 of the indictment, this count

18  charges the defendant, Randall Keith Beane, with bank fraud.

19  There are two different theories of bank fraud the government

20  may attempt to prove.

21        First, you may find the defendant guilty of bank

22  fraud if you find the government has proved each and every one

23  of the following elements beyond a reasonable doubt:

24        First, that the defendant knowingly executed or

25  attempted to execute a scheme to defraud, that is, a scheme to

UNITED STATES DISTRICT COURT

Jury Charge

deceive a financial institution and to deprive it of something
of value.

Second, that the scheme related to a material fact or
included a material misrepresentation or concealment of a
material fact.

Third, that the defendant had the intent to deceive
the financial institution and deprive it of something of value.

Fourth, that the financial institution was federally
insured.

Second, you may alternatively find the defendant
guilty of bank fraud if you find the government has proved each
and every one of the following elements beyond a reasonable
doubt:

First, that the defendant knowingly executed or
attempted to execute a scheme to obtain any of the money,
funds, or property owned by or under the custody and control of
the financial institution by means of false or fraudulent
pretenses, representations, or promises.

Second, that the scheme related to a material fact or
included a material misrepresentation or concealment of a
material fact.

Third, that the defendant had the intent to deceive
or cheat someone for the purpose of either causing a financial
loss to another or bringing about a financial gain to himself
or another person.

UNITED STATES DISTRICT COURT

Jury Charge

 1          Fourth, that the financial institution was federally

 2   insured.

 3          Now, I'll give you more detailed instructions on some

 4   of these terms.

 5          A "scheme" means any deliberate plan of action or

 6   course of conduct.

 7          The term "false or fraudulent pretenses,

 8   representations, or promises" means any false statements or

 9   assertions that concern a material aspect of the manner in

10   question, that were either known to be untrue and made or made

11   with reckless indifference to their truth.  They include actual

12   direct false statements as well as half-truths in the knowing

13   concealment of material facts.

14          The term "misrepresentation or concealment" means any

15   false statements or assertions that concern a material fact of

16   the matter in question that were either known to be untrue and

17   made or made with reckless indifference to their truth.  They

18   include actual direct false statements as well as half-truths

19   in the knowing concealment of material facts.

20          An act is done knowingly if it's done voluntarily and

21   not because of mistake or some other innocent reason.

22          And as I previously explained, if you're convinced

23   beyond a reasonable doubt the defendant deliberately ignored a

24   high probability that the statements or assertions involved in

25   the scheme were false or that a certain result would occur,

UNITED STATES DISTRICT COURT

Jury Charge

1    then you may find that he knew those statements or assertions

2    were false or that the result would occur.

3           A misrepresentation or concealment of fact is

4    material if it has a natural tendency to influence or is

5    capable of influencing the decision of a person of ordinary

6    prudence and comprehension.

7           It is not necessary that the government prove the

8    financial institution suffered financial harm, that the

9    defendant's scheme was intended to or did create a risk of

10   financial loss to the institution, that the false or fraudulent

11   pretenses, representation, or promises were made to a financial

12   institution, that the alleged scheme actually succeeded, or

13   that someone relied on the misrepresentation.

14          If you're convinced the government has proved all

15   these elements for either theory of bank fraud, say so by

16   returning a guilty verdict on this charge.  If you have

17   reasonable doubt about any one of the elements of either or

18   both of these theories of bank fraud, then you must find the

19   Defendant Beane not guilty of this charge.

20          The good faith of Defendant Randall Keith Beane is a

21   complete defense to the charges of wire fraud and bank fraud

22   contained in Counts 1 through 6 of the indictment, because good

23   faith on the part of the defendant is simply inconsistent with

24   an intent to defraud.

25          A person who acts or causes another person to act on

UNITED STATES DISTRICT COURT

Jury Charge

1    a belief or an opinion honestly held is not punishable under

2    these statutes merely because the belief or opinion turns out

3    to be inaccurate, incorrect, or wrong.  An honest mistake in

4    judgment or an honest error in management does not rise to the

5    level of criminal conduct.

6         However, a defendant does not act in good faith if,

7    even though he honestly holds a certain opinion or belief, that

8    defendant also knowingly makes false or fraudulent pretenses,

9    representations, or promises to others.

10        While the term "good faith" has no precise

11   definition, it encompasses, among other things, a belief or

12   opinion honestly held, an absence of malice or ill will, and an

13   intention to avoid taking unfair advantages of another.

14        The burden of proving good faith does not rest with

15   the defendant because the defendant does not have any

16   obligation to prove anything in this case.  It is the

17   government's burden to prove to you beyond a reasonable doubt

18   that the defendant acted with an intent to defraud.

19        If the evidence in this case leaves you with a

20   reasonable doubt as to whether the Defendant Beane acted with

21   an intent to defraud or in good faith, you must acquit the

22   defendant.

23        Now, turning to Count 7 of the indictment, Count 7

24   accuses both Defendant Randall Keith Beane and Defendant

25   Heather Ann Tucci-Jarraf of a conspiracy to commit the crime of

UNITED STATES DISTRICT COURT

Jury Charge

1    money laundering in violation of federal law. It is a crime

2    for two or more persons to conspire or agree to commit a

3    criminal act, even if they never actually achieve their goal.

4         A conspiracy is a kind of criminal partnership. For

5    you to find either of the defendants guilty of the conspiracy

6    charge, the government must prove each of the following two

7    elements beyond a reasonable doubt:

8         First, that two or more persons conspired or agreed

9    to commit the crime of money laundering, and, second, that the

10   defendant knowingly and voluntarily joined the conspiracy.

11        You must be convinced the government has proved all

12   these elements beyond a reasonable doubt in order to find

13   either of the defendants guilty of the conspiracy charge.

14        With regard to the first element, a criminal

15   agreement, the government must prove that two or more persons

16   conspired or agreed to cooperate with each other to commit the

17   crime of money laundering.

18        This is not required proof of any formal agreement,

19   written or spoken, nor does this require proof that everyone

20   involved agreed on all the details, but proof that people

21   simply met together from time to time and talked about common

22   interests or engaged in similar conduct is not enough to

23   establish a criminal agreement. These are things you may

24   consider in deciding whether the government has proved an

25   agreement, but without more, they are not enough.

UNITED STATES DISTRICT COURT

1          What the government must prove is that there was a

2    mutual understanding, either spoken or unspoken, between two or

3    more people to cooperate with each other to commit the crime of

4    money laundering.  This is essential.

5          An agreement can be proved indirectly by facts and

6    circumstances which lead to a conclusion that an agreement

7    existed, but it is up to the government to convince you that

8    such facts and circumstances existed in this particular case.

9          If you are convinced that there was a criminal

10   agreement, then you must decide whether the government has

11   proved that the defendants knowingly and voluntarily joined

12   that agreement.

13         You must consider each defendant separately in this

14   regard.  To convict any defendant, the government must prove

15   that he or she knew the conspiracy's main purpose and

16   voluntarily joined it, continued to help advance or achieve its

17   goals.

18         This does not require proof the defendant knew

19   everything about the conspiracy or everyone else involved or

20   that he or she was a member of it from the very beginning, nor

21   does it require proof the defendant played a major role in the

22   conspiracy, or that his or her connection to it was

23   substantial; a slight roll or connection may be enough.

24         But proof that a defendant simply knew about a

25   conspiracy or is present at times or associated with members of

UNITED STATES DISTRICT COURT

1    the group is not enough, even if the defendant approved of what

2    was happening or did not object to it.

3            Similarly, just because a defendant must have done --

4    just because a defendant may have done something that happened

5    to help a conspiracy does not necessarily make him or her a

6    conspirator.

7            These are all things you may consider in deciding

8    whether the government has proved a defendant joined the

9    conspiracy, but without more, they are not enough.

10           A defendant's knowledge can be proved indirectly by

11   facts and circumstances which lead to a conclusion that he or

12   she knew the conspiracy's main purpose, but it is up to the

13   government to convince you that such facts and circumstances

14   existed in this particular case.

15           The government must prove that the defendants

16   knowingly and voluntarily joined an agreement to commit the

17   federal crime of money laundering.  As I've already stated, it

18   is not necessary for you to find the defendants committed the

19   underlying crime for you to find them guilty of conspiracy.  It

20   is necessary, however, for you to find that the defendants

21   agreed to commit the criminal act of money laundering.

22           Federal law defines several different forms of money

23   laundering.  In this case, Count 7 alleges the defendants

24   conspired to commit one instance of money laundering with

25   intent to promote specified unlawful activity, one instance of

UNITED STATES DISTRICT COURT

1  money laundering knowing the transaction was designed to

2  conceal facts related to proceeds, and one instance of engaging

3  in monetary transactions and property derived from specified

4  unlawful activity.

5        I'll explain the elements of these three different

6  forms of money laundering to you in turn.

7        First, the elements of money laundering with intent

8  to promote specified unlawful activity are as follows:

9        First, that the defendant conducted or attempted to

10  conduct a financial transaction.

11       Second, that the financial transaction involved

12  property that represented the proceeds of wire fraud, in

13  violation of 18 United States Code Section 1343, or bank fraud,

14  in violation of 18 United States Code Section 1344, the

15  elements of which I've previously explained to you with regard

16  to Counts 1 through 6.

17       And, third, that the defendant knew that the property

18  involved in the financial transaction represented the proceeds

19  from some form of unlawful activity.

20       And, fourth, that the defendant had the intent to

21  promote the carrying on of wire fraud or bank fraud.

22       Second, the elements of money laundering knowing the

23  transaction was designed to conceal facts related to proceeds

24  are as follows:

25       First, that the defendant conducted or attempted to

UNITED STATES DISTRICT COURT

1    conduct a financial transaction.

2         Second, that the financial transaction involved

3    property that represented the proceeds of wire fraud or bank

4    fraud.

5         Third, that the defendant knew the property involved

6    in the financial transaction represented the proceeds from some

7    form of unlawful activity.

8         And, fourth, that the defendant knew that the

9    transaction was designed in whole or in part to conceal or

10   disguise the nature, location, source, ownership, or control of

11   the proceeds of wire fraud or bank fraud.

12        Third, the elements of engaging in monetary

13   transactions and property derived from specified unlawful

14   activity are as follows:

15        First, the defendant knowingly engaged in or

16   attempted -- first, the defendant knowingly engaged in or

17   attempted to engage in a monetary transaction.

18        Second, the monetary transaction was in property

19   derived from wire fraud or bank fraud.

20        Third, the property had a value greater than $10,000.

21        Fourth, the defendant knew the transaction was in

22   criminally derived property.

23        Fifth, the monetary transaction took place within the

24   United States or within United States' jurisdiction.

25        Now, I'll give you more detailed instructions on the

UNITED STATES DISTRICT COURT

1    terms that appear and the elements of the three forms of money

2    laundering I just explained to you.

3        The term "financial transaction" means either, one, a

4    transaction which in any way or degree affects interstate or

5    foreign commerce involving either the movement of funds by wire

6    or other means, one or more monetary instruments, or the

7    transfer of title to any real property, vehicle, vessel, or

8    aircraft.

9        Or, two, a transaction involving the use of a

10   financial institution which is engaged in or the activities of

11   which effect interstate or foreign commerce in any way or

12   degree.

13       For purposes of Count 7, the term "financial

14   institution" means any insured bank, commercial bank, or trust

15   company, private banker, agency or branch of a foreign bank in

16   the United States, credit union, thrift institution, registered

17   broker or dealer, broker or dealer in securities or

18   commodities, investment banker or company, currency exchange,

19   issuer, redeemer, or cashier of traveler's checks, checks,

20   money orders, or similar instruments, credit card operator,

21   insurance company, loan or finance company, licensed sender of

22   money or funds, business engaged in vehicle sales, persons

23   involved in real estate closings and settlements, or agency of

24   the United States government, or of a state or local government

25   carrying out a duty or power of one of these businesses.

UNITED STATES DISTRICT COURT

1    The word "conducts" includes initiating, concluding,

2    or participating in initiating or concluding the transaction.

3    The word "proceeds" means any property derived,

4    obtained, or retained, directly or indirectly, through some

5    form of unlawful activity, including the gross receipts of such

6    activity.

7    The phrase "knew that the property involved in a

8    financial transaction represents the proceeds of some form of

9    unlawful activity" means that the defendant knew the property

10   involved in the transaction represented the proceeds of some

11   form, though not necessarily which form of activity that

12   constitutes a felony under state or federal law.

13   The term "monetary transaction" means the deposit,

14   withdrawal, transfer, or exchange in or affecting interstate or

15   foreign commerce of funds or a monetary instrument by, through,

16   or to a financial institution, as the Court has previously

17   defined that term, including any transaction that would

18   constitute a financial transaction, as the Court has previously

19   defined that term.

20   Finally, the term "criminally derived property" means

21   any property constituting or derived from proceeds obtained

22   from a criminal something.

23   To find the defendants here guilty of the conspiracy

24   charge, you must be convinced the government has proved all the

25   elements of the conspiracy to commit money laundering beyond a

UNITED STATES DISTRICT COURT

1    reasonable doubt.

2         And as I just explained to you, the indictment

3    alleges the defendants conspired to commit three separate forms

4    of money laundering.

5         However, the government does not have to prove that

6    the defendants agreed to commit all three forms of money

7    laundering.  The government need only prove an agreement to

8    commit at least one of them for you to return a guilty verdict

9    on the conspiracy charge.  However, as I'll explain in more

10   detail later, you must be in unanimous agreement as to which

11   money laundering offense the defendants agreed to commit to

12   find them guilty of Count 7.

13        Now, some of the people who may have been involved in

14   these events are not on trial.  This does not matter.  There's

15   no requirement that all members of the conspiracy be charged

16   and prosecuted or tried together in one proceeding, nor is

17   there any requirement that the names of the other conspirators

18   be known.

19        An indictment can charge a defendant with a

20   conspiracy involving people whose names are not known, as long

21   as the government can prove that the defendant conspired with

22   one or more of them; whether they are named or not does not

23   matter.

24        Now, that concludes the part of my instructions

25   explaining the elements of the three charged -- of the three

UNITED STATES DISTRICT COURT

1  charged -- excuse me, that concludes the part of my

2  instructions explaining the elements of the charged offenses.

3       Next, I'll explain the defendants' positions.

4       The Defendant Randall Keith Beane says that he did

5  not have the intent to commit wire fraud, he did not know he

6  was committing bank fraud, or had the intent to conspire to

7  commit money laundering.

8       The Defendant Heather Ann Tucci-Jarraf says that

9  there was no agreement between herself and Mr. Beane concerning

10 alleged criminal conduct, therefore -- and that there was

11 therefore no conspiracy.  Ms. Tucci-Jarraf also says that what

12 she has learned and disclosed about the Federal Reserve System

13 and the wealth of individual human beings that the Federal

14 Reserve System holds is the truth.  Ms. Tucci-Jarraf never had

15 any intention to commit unlawful activity.

16      That concludes the part of my instructions explaining

17 the elements of the crimes and the defendants' positions, and

18 next, I'll explain some rules you must use in considering some

19 of the testimony and evidence.

20      You've heard both of the defendants testify in this

21 case.  Earlier I talked to you about the credibility or

22 believability of witnesses, and I suggested some things for you

23 to consider in evaluating each witness' testimony.  You should

24 consider those same things in evaluating the testimony of the

25 defendants.

UNITED STATES DISTRICT COURT

Jury Charge

1          You heard the testimony of Mr. Zacharia Scrima who

2    testified as opinion witness of the government.  You do not

3    have to accept Mr. Scrima's opinion.  In deciding how much

4    weight to give it, you should consider the witness'

5    qualifications and how he reached his conclusions.  Also

6    consider the other factors discussed in these instructions for

7    weighing the credibility of witnesses.

8          Remember that you alone decide how much of a witness'

9    testimony to believe and how much weight it deserves.

10         That concludes the part of my instructions explaining

11   the rules for considering some of the testimony and evidence.

12         Now, let me finish up by explaining some things about

13   your deliberations in the jury room and your possible verdicts.

14         The first thing you should do in the jury room is

15   choose someone to be your foreperson.  This person will help to

16   guide your discussions and will speak for you here in court.

17         Once you start deliberating, do not talk with anyone

18   else except each other about the case.

19         If you have any questions or messages, you must write

20   them down on a piece of paper, sign them, and then give them to

21   the courtroom deputy for transmittal to me.  If you do submit a

22   question, I'd like -- I want to remind you that I will respond

23   as soon as I can; however, I may have to talk to the parties

24   about what you've asked, so it may take me some time to get

25   back to you.  Any questions or messages normally should be sent

UNITED STATES DISTRICT COURT

Jury Charge

1     to me through your foreperson.

2             One more thing about messages, do not ever write down

3     or tell anyone, other than among yourselves, how you stand on

4     your votes.  For example, do not write down or tell anyone your

5     split or whatever your vote happens to be.  That should stay

6     secret until you're finished.

7             Exhibits that were admitted into evidence will be

8     sent to the jury room with you.  This court uses the Jury

9     Evidence Recording System, also known as JERS, J-E-R-S, which

10    is a recently developed system that makes evidence

11    electronically accessible in the jury deliberation room.

12            To the extent possible, the evidence presented during

13    this trial has been captured electronically.  Once it's

14    released to you, you can view the evidence in the deliberation

15    room through the using of a touch screen computer.

16            Any evidence that cannot be captured by JERS will be

17    physically sent into the jury deliberation room as well as any

18    evidence the Court finds should be physically sent into the

19    jury room.

20            If you need assistance with the JERS equipment,

21    please let my courtroom deputy know.

22            Remember you must make your decision based only on

23    the evidence you saw and heard here in court.  During your

24    deliberations, you must not communicate with or provide any

25    information to anyone by any means about this case.

UNITED STATES DISTRICT COURT

Jury Charge

1          You may not use any electronic device or media such

2     as a telephone, cell phone, smartphone, iPhone, Android device,

3     or computer, the Internet, any Internet service, or any text,

4     or instant messaging service, any Internet chat room, blog, or

5     website, such as Facebook, MySpace, LinkedIn, YouTube, or

6     Twitter -- YouTube or Twitter to communicate to anyone any

7     information about this case or to conduct any research about

8     the case until I accept your verdict.

9          In other words, you cannot talk to anyone on the

10    phone, correspond with anyone, or electronically communicate

11    with anyone about this case.  You can only discuss this case in

12    the jury room with your fellow jurors during deliberations.

13          I expect you would inform me -- not that I certain --

14    I don't anticipate any issues in that regard, but I certainly

15    expect you would inform me as soon as possible of any questions

16    or violations of these instructions.

17          You may not use these electronic means to investigate

18    or communicate about the case, because it's important you

19    decide this case based solely on the evidence presented in the

20    courtroom.

21          The information on the Internet or available through

22    social media might be wrong, incomplete, or inaccurate.  You're

23    only permitted to discuss the case with your fellow jurors

24    during deliberations because they have seen and heard the same

25    evidence you have.

UNITED STATES DISTRICT COURT

1          In our federal judicial system, it's important you

2    are not influenced by anything or anyone outside of this

3    courtroom; otherwise, your decision may be based on information

4    known only by you and not your fellow jurors or the parties in

5    this case.  This would unfairly and adversely impact the

6    judicial process.

7          A juror who violates these restrictions jeopardizes

8    the fairness of these proceedings, and a mistrial could result,

9    which would require the entire trial process to start over.

10          Your verdict for each defendant on each count,

11   whether it is guilty or not guilty, must be unanimous.

12          To find the defendants guilty of a particular charge

13   or count, every one of you must agree that the government has

14   overcome the presumption of innocence with evidence that proves

15   their guilt beyond a reasonable doubt.

16          To find the defendants not guilty of a particular

17   charge or count, every one of you must agree that the

18   government has failed to convince you of their guilt beyond a

19   reasonable doubt.

20          Either way, guilty or not guilty, your verdict must

21   be unanimous for each defendant on each count.

22          Furthermore, with respect to the conspiracy charge,

23   as mentioned earlier, you must unanimously agree on which, if

24   any, of the three money laundering offenses discussed earlier

25   that the defendants knowingly and voluntarily agreed to commit.

UNITED STATES DISTRICT COURT

Jury Charge

1          In other words, you must all agree that the

2     defendants entered into a conspiracy to commit one particular

3     form of money laundering to return a verdict -- to return a

4     guilty verdict on Count 7.

5          If, on the other hand, you -- on the other hand, you

6     unanimously agree the defendants conspired to commit a money

7     laundering offense, but disagree as to which offense that was,

8     say so by returning a not-guilty verdict on Count 7 against

9     both defendants.

10          In sum, to return a guilty verdict on Count 7, you

11     must unanimously -- you must unanimously find that the

12     defendants agreed with each other to commit at least one of the

13     three forms of money laundering.

14          Now that all the evidence is in and the arguments are

15     completed, you are free to talk about the case in the jury

16     room.  In fact, it is your duty to talk with each other about

17     the evidence and to make every reasonable effort you can to

18     reach unanimous agreement.  Talk with each other, listen

19     carefully and respectfully to each other's views, and keep an

20     open mind as you listen to what you fellow jurors have to say.

21          Try your best to work out your differences.  Do not

22     hesitate to change your mind if you're convinced that other

23     jurors are right and that your reasonable position was wrong.

24     But do not ever change your mind just because other jurors see

25     things differently, or just to get the case over with.

UNITED STATES DISTRICT COURT

Jury Charge

1        In the end, your vote must be exactly that, your own

2   vote.  It is important for you to reach unanimous agreement,

3   but only if you can do so honestly and in good conscience.

4        No one will be allowed to hear your discussions in

5   the jury room and no record will be made of what you say, so

6   you should also feel free to speak your mind.  Listen carefully

7   to what the other jurors have to say, and then decide for

8   yourself if the government has proved the defendants guilty

9   beyond a reasonable doubt.

10       If you decide the government has proved either or

11  both defendants guilty on any count, then it will be my job to

12  decide what the appropriate punishment should be.  Deciding

13  what the punishment should be is my job, not yours.  It would

14  violate your oaths as jurors to even consider the possible

15  punishment in deciding your verdict.

16       Your job is to look at the evidence and decide if the

17  government has proved the defendants guilty beyond a reasonable

18  doubt.

19       Now, I prepared a special verdict form you should use

20  to record your verdict, and it should be self-explanatory, but

21  if you decide the government has proved a particular charge

22  against a particular defendant beyond a reasonable doubt, say

23  so by having your foreperson mark the appropriate places on the

24  special verdict form.

25       If you decide the government has not proved a

UNITED STATES DISTRICT COURT

1    particular charge against a particular defendant beyond a

2    reasonable doubt, say so by having your foreperson mark the

3    appropriate place on the special verdict form.

4         Also, bear in mind my instructions from earlier

5    concerning your decision whether Defendant Beane's conduct with

6    respect to Counts 1 through 5 affected a financial institution.

7         Your foreperson would then sign the form, put the

8    date on it, and have it returned to me.

9         Remember the defendants are only on trial for the

10   particular crimes charged in the indictment.  Your job is

11   limited to deciding whether the government has proved the

12   crimes charged.

13        Also, remember that whether anyone else should be

14   prosecuted and convicted for these crimes is not a proper

15   matter for you to consider.  The possible guilt of others is no

16   defense to a criminal charge.  Your job is to decide if the

17   government has proved the defendants guilty.  Do not let the

18   possible guilt of others influence your decision in any way.

19        Furthermore, let me repeat something that I said to

20   you earlier, nothing that I have said or done during this trial

21   was meant to influence your decision in any way.

22        You must decide for yourselves if the government has

23   proved the defendants guilty beyond a reasonable doubt.

24        Excuse me, you must decide for yourselves if the

25   government has proved the defendants guilty beyond a reasonable

UNITED STATES DISTRICT COURT

1   doubt.

2           One final note related to juror notes, remember, if

3   you elected to take notes during the trial, your notes should

4   be only used as memory aids.  You should not give your notes

5   greater weight than your independent recollection of the

6   evidence.

7           You should rely upon your own independent

8   recollection of the evidence or lack of evidence, and you

9   should not be unduly influenced by the notes of other jurors.

10  Notes are not entitled to any more weight than the memory or

11  impressions of each juror.  Whether you took notes or not, each

12  of you must form and express your own opinion as to the facts

13  of the case.

14          So that completes my instructions to you as jurors,

15  and in a moment, I'll ask you to retire to the jury room.

16          You may want to take a short break since we've been

17  in here since 1:30.  I'll leave that up to you.  Otherwise, you

18  can proceed with deliberations consistent with these

19  instructions.

20          As I stated last week, we did -- 12 jurors will

21  deliberate and decide this case.  So we had two alternate

22  jurors that was not necessary, at least at this point in time,

23  to move those alternate jurors up.  Our alternates in the

24  case -- it doesn't always work out this way, but it did work

25  out -- our alternates are in the final two seats, Juror 135 and

UNITED STATES DISTRICT COURT

1    131, you are alternate jurors.

2          So at least in this point in time, you will not

3    participate in deliberations, and let me explain what I mean by

4    that.

5          I'm not going to excuse you from this case yet

6    because if even -- while it doesn't often happen, it could

7    happen that even during the course of deliberations, if

8    something happens, a juror becomes ill or something where it is

9    necessary, even at that late stage, to move an alternate juror

10   up into the main or primary juror -- jury.

11         If that were to happen, I would bring the alternate

12   moving up and the remaining jurors back into the courtroom and

13   instruct you to begin your deliberations anew.  So an alternate

14   juror, if you had to join the jury midstream, you wouldn't

15   continue midstream.  We -- the jury would, in effect, begin

16   anew with their deliberations.

17         So for that reason, I'm not discharging you yet, and

18   I'm also going to ask you or instruct you to continue not to

19   talk about the case with anyone or among yourselves.

20         If you want to leave information with the courtroom

21   deputy, she can let you know when the jury has reached a

22   verdict in this case.  But until then, I ask you to continue

23   with all the instructions I've been giving you during the

24   course of this trial.

25         But in the event we don't see you back in here again,

UNITED STATES DISTRICT COURT

Jury Charge

1    I want to thank you for your service in this case.  And I also

2    want to remind you, as I'll remind the remaining jurors at the

3    conclusion of the case, that under the Court's local rules, no

4    party or attorney for the party or representative of the

5    parties may contact jurors without permission of the Court, and

6    no such permission has been granted in this case.

7            So with that being said, I am going to excuse the

8    jury to the jury room.  And, again, we'll give you a chance to

9    get settled and give our alternate jurors, 135 and 131, to

10   collect their belongings, or otherwise, if you have any

11   questions, you can consult with the courtroom deputy about your

12   continued responsibilities as alternate jurors.

13           So the jury is excused.

14       (Jury out at 3:08 p.m.)

15       (Excerpt of proceedings concluded.)

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1       **CERTIFICATE OF REPORTER**

2   STATE OF TENNESSEE

3   COUNTY OF KNOX

4           I, Rebekah M. Lockwood, RPR, CRR, do hereby certify

5   that I was authorized to and did stenographically report the

6   foregoing excerpt of proceedings; and that the foregoing pages

7   constitute a true and complete computer-aided transcription of

8   my original stenographic notes to the best of my knowledge,

9   skill, and ability.

10      I further certify that I am not a relative, employee,

11  attorney, or counsel of any of the parties, nor am I a relative

12  or employee of any of the parties' attorneys or counsel

13  connected with the action, nor am I financially interested in

14  the action.

15      IN WITNESS WHEREOF, I have hereunto set my hand at

16  Knoxville, Knox County, Tennessee this 17th day of May, 2018.

17

18

19

20  _____
                    REBEKAH M. LOCKWOOD, RPR, CRR
21                  Official Court Reporter
                    United States District Court
22                  Eastern District of Tennessee

23

24

25