```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF TENNESSEE
 2                   AT KNOXVILLE, TENNESSEE
   _____)
 3                                )
   UNITED STATES OF AMERICA,      )
 4                                )
            Government,           )
 5                                )
   vs.                            ) Case No. 3:17-cr-82-1
 6                                )
   RANDALL KEITH BEANE,           )
 7                                )
            Defendant.           )
 8  _____)

 9              SENTENCING PROCEEDINGS
        BEFORE THE HONORABLE THOMAS A. VARLAN
10
                Tuesday, July 24th, 2018
11              10:09 a.m. to 10:51 a.m.

12  APPEARANCES:

13          ON BEHALF OF THE GOVERNMENT:

14          CYNTHIA F. DAVIDSON, ESQ.
            ANN-MARIE SVOLTO, ESQ.
15          U.S. DEPARTMENT OF JUSTICE
            OFFICE OF U.S. ATTORNEY
16          800 Market Street
            Suite 211
17          Knoxville, TN 37902

18          ON BEHALF OF THE DEFENDANT HEATHER ANN
            TUCCI-JARRAF: (Appearing Pro Se)
19
            STEPHEN G. MC GRATH, ESQ. (Elbow Counsel)
20          ATTORNEY AT LAW
            9111 Cross Park Drive
21          Building D, Suite 200
            Knoxville, TN 37923
22
   REPORTED BY:
23
   Teresa S. Grandchamp, RMR, CRR
24  P.O. Box 1362
   Knoxville, Tennessee 37901
25  (865) 244-0454
```

1  THE COURTROOM DEPUTY:  All rise.  The

2  United States District Court for the Eastern

3  District of Tennessee is again in session.  The

4  Honorable Thomas A. Varlan, Chief United States

5  District Judge, presiding.

6  Please come to order and be seated.

7  THE COURT:  Thank you.  Good morning,

8  everyone.  Let's call up the next case, please.

9  THE COURTROOM DEPUTY:  Criminal Action

10  3:17-cr-82, United States of America versus Randall

11  Keith Beane.

12  Cynthia Davidson and Anne-Marie Svolto

13  are here on behalf of the government.

14  Is the government present and ready to

15  proceed?

16  MS. DAVIDSON:  Yes, Your Honor.

17  THE COURTROOM DEPUTY:  Mr. Randall Keith

18  Beane representing himself, Stephen McGrath, elbow

19  counsel.

20  Present and ready.

21  THE COURT:  Are we ready to go?

22  THE DEFENDANT:  Yes.

23  THE COURT:  All right.  We are here for

24  imposition of judgment and sentence in this case.

25  What we'll do is:  Although you're representing

1    yourself, Mr. Beane, you're also here as the

2    defendant in this case.  So I'm going to ask you to

3    come up to the podium.  If you'd like to be joined

4    by Mr. McGrath, fine, or you can just come yourself,

5    and we'll begin.

6           MS. DAVIDSON:  Your Honor, we believe that

7    there is an issue of forfeiture that perhaps needs

8    to be taken up before sentencing.

9           THE COURT:  Okay.  What is that?

10          MS. SVOLTO:  Your Honor, if I may handle

11   that.  There is a Motion For Preliminary Order of

12   Forfeiture.

13          THE COURT:  The Court has -- notice of that

14   was filed this morning, I believe, or --

15          MS. SVOLTO:  Yes, it was, Your Honor.

16          THE COURT:  We'll address that first.  Go

17   ahead.

18          THE DEFENDANT:  I have a matter I'd like to

19   take care of first, if that's okay.

20          THE COURT:  We'll, let's start with this,

21   and then we'll take up your matter.

22                All right.  Go ahead.

23          MS. SVOLTO:  Your Honor, we're seeking

24   forfeiture of the 2017 Integra motor home that the

25   defendant purchased with the funds that he had

1    transferred from the certificates of deposit and

2    into his USAA account, and we're asking that the

3    Court enter a Preliminary Order of Forfeiture based

4    on testimony produced at trial and the exhibits that

5    the government introduced and were admitted at trial

6    that showed that, in fact, the Entegra motor home is

7    directly traceable to the funds the defendant

8    obtained through the bank fraud allegations and for

9    the wire fraud.

10:10AM  10           THE COURT:  All right.

11           MS. SVOLTO:  And we would also note that

12    the testimony at trial showed that, in fact, the

13    defendant admitted that he used a bank account

14    number that was his Social Security number in order

15    to obtain certificates of deposit using a routing

16    number to the Federal Reserve Bank alleging that

17    this belonged to some trust.

18                Of course, the jury found that the

19    defendant was guilty, and based on the jury finding

10:11AM  20    and the evidence produced at trial, we believe that

21    the requisite nexus is there that the motor home

22    was, in fact, purchased with fraudulently-obtained

23    proceeds.

24                And we would also note that the motor

25    home formed the basis of the money laundering

conspiracy allegation for which the defendant was
also found guilty by the jury and that the motor
home was purchased with SUA proceeds, proceeds of a
specified unlawful activity, and that because of
that, it should be forfeited to the United States.

I would also just note for the Court
and for the defendant -- I've spoken with elbow
counsel -- that the United States intends to seek
permission from the Attorney General to restore
funds that may be obtained from the defendant
through the sale of the motor home toward the
restitution that may be ordered in this case. So
the intention of the government is to restore the
funds to the victim bank in the case.

And the government also saw that in the
Indictment a money judgment in the amount of
$553,000 and -- actually, $553,749.99, which
constitutes the proceeds the defendant personally
obtained; not necessarily what the victim bank lost
but what the defendant himself obtained.

The testimony produced at trial showed
that the defendant made a number of purchases,
including the motor home. I'd also included a Ford
truck that was returned later. That is not included
in that money judgment calculation.

1    But the defendant also admitted, and

2   it's outlined in the motion the government filed

3   this morning, to making other purchases, including

4   paying off his insurance policy and paying four

5   different consumer loans. All of those leans were

6   backed by the victim bank.

7    So the victim bank received those funds

8   directly. It's not part of the victim bank's

9   restitution award. So we are asking that the

10:13AM 10   defendant be held responsible for a forfeiture money

11   judgment in the amount of $553,749.99.

12    We would ask the Court to reflect on

13   the trial transcripts. I've outlined some of the

14   pertinent quotes and citations there. And the fact

15   that the defendant did admit to making those

16   purchases.

17    There was witnesses from Buddy Gregg

18   Motor Homes who testified that the defendant chose

19   the motor home and wired the funds.

10:13AM 20    And so -- and based on the exhibits

21   outlining the defendant's banking activity, we think

22   it shows directly a wire transfer of just over

23   $493,000, which was for the purchase of that motor

24   home.

25    So we'd ask the Court to rely on that

1    in determining that there is a requisite nexus to

2    forfeit the motor home itself and also that the

3    evidence at trial showed that the defendant

4    personally obtained just over $553,000.

5           THE COURT:  All right.  Now, Mr. Beane, the

6    government has brought the motion for entry of a

7    Preliminary Order of Forfeiture, as you heard

8    outlined today by the United States attorney, as

9    well as set forth in the motion.

10:14AM  10           Would you like to offer any response to

11    the government's motion?  And if you do -- yeah, you

12    can -- you can proceed from the table for purposes

13    of this proceeding.

14           THE DEFENDANT:  I have a standing

15    declaration.  No. 1, With full responsibility,

16    accountability and liability to declare true,

17    accurate and complete, I duly declare the following

18    and that I am conscious and competent to make such

19    declaration, now duly made, issued and entered into

10:15AM  20    this alleged action or actions here and now for all

21    to rely upon.

22           And, No. 2, That the alleged court,

23    Thomas A. Varlan, Cynthia Davidson, and Marie

24    Svolto, Department of Justice, etcetera, do not have

25    the authority or jurisdiction over me to conduct any

proceedings against me as duly declared by standing

declarations, precipes, orders, and notices as set

forth in documents 19, 98, 101, 102, 145, 146, 147,

148, 149, 150, 151, 160, and 215, and all other

documents filed in the above-referenced case

regarding said lack of jurisdiction and authority of

others over me.

And, No. 3, That any proceedings and

statements made, including by elbow counsel,

Stephen G. McGrath, do not waive my declarations,

precipes, orders and notices, nunc pro tunc,

praeterea preterea.

And, No. 4, No. 1 above restated and

all said documents and restated and incorporated by

reference here now as if set forth in full.

And, No. 5, Due and fair notice is

hereby duly given that everyone present, including

but not limited to Thomas A. Varlan, Cynthia

Davidson, Anne-Marie Svolto, and myself are each

being held to act with full responsibility,

accountability, and liability.

And, No. 6, That this alleged action is

and was legally and lawfully ordered dismissed with

prejudice on 22nd of January 2018, and that there is

no authority, jurisdiction or consent to persist

1   with any proceedings of any nature or any kind

2   against me.

3                   No. 7, Duly made and issued, with full

4   due lawful authority, capacity and standing on this

5   24th day of July 2018.

6                   You do not have authority or

7   jurisdiction to ask me any questions or conduct any

8   proceedings here.

9                   Your offer to contract is duly rejected

10:17AM  10   without dishonor for due cause, nunc pro tunc,

11  praetera pretera and ab initio.

12              THE COURT:  Thank you, Mr. Beane.

13                  Is there anything further you would

14  like to say in response to the government's request

15  for or Motion For Entry of Preliminary Order of

16  Forfeiture?

17              THE DEFENDANT:  No.

18              THE COURT:  All right.  Then the Court will

19  address that preliminarily at this point in time.

10:17AM  20                  Before the Court is the government's

21  Motion For Entry of Preliminary Order of Forfeiture,

22  Document 223.

23                  In that motion the government seeks

24  forfeiture of the interest of the defendant in

25  property derived from or traceable to property

1   derived from proceeds of the wire fraud and bank

2   fraud violations and property involved in the

3   commission of a money laundering offense, as set

4   forth in the Indictment and pursuant to 18 United

5   States Code §§ 982(a)(1) and 982(a)(2).

6          Specifically, as set forth in the

7   motion, the United States seeks to forfeit the

8   defendant's interest in the motor home that was the

9   subject or testimony at trial, specifically

10:18AM 10  identified as a 2017 Entegra Cornerstone 45B 45-foot

11  diesel motor home, VIN number listed in the motion.

12          The United States or the government

13  also seeks a personal money judgment in favor of the

14  government and against the defendant for

15  $553,749.99, which the government contends is the

16  amount representing the proceeds the defendant

17  personally obtained as a result of the defendant's

18  criminal violations.

19          First, to the extent -- based on the

10:19AM 20  defendant's statement, to the extent the defendant

21  is applying his arguments regarding the lack of

22  jurisdiction of the Court or the lack of the

23  authority of the Court to enter orders or address

24  matters pertaining to the defendant, to the extent

25  the defendant is raising those arguments as a

response or in opposition to the government's Motion

For Entry of Preliminary Order of Forfeiture, the

Court would note its previous rulings in that regard

and previous findings that the Court does, in fact,

have jurisdiction over the defendant, specifically,

over the federal criminal conviction at issue here

today, and correspondingly has the jurisdiction and

authority to address the government's Motion For

Entry of Preliminary Order of Forfeiture.  And to

the extent that is a defense to the pending motion,

the Court would reject that as a defense.

Furthermore, based on consideration of

the motion itself, taking into consideration the

facts and arguments set forth in the motion, also

particularly taking into consideration the trial

testimony, which the Court considered or listened to

and considered at the trial, and the offense conduct

of this defendant as set forth in the Presentence

Report and as adduced at the trial, the Court would

find it appropriate to grant the government's Motion

For Entry of Preliminary Order of Forfeiture.

The Court has, in fact, previously

entered a Preliminary Order of Forfeiture in this

case as Document No. 224 which does address the

money order and the money judgment -- excuse me --

the motor home and the money judgment, but the Court

would at this time find the order of forfeiture to

be appropriate and grant the government's motion.

All right. Any other preliminary

matters we need to take up before proceeding forward

with the sentencing?

MS. DAVIDSON: No, Your Honor. Thank you.

THE COURT: All right. So, Mr. Beane, what

I'm going to do at this point: For sentencing

purposes, I need to ask you some preliminary

questions. So we will ask you up to the podium,

and -- and we'll swear you in for those purposes.

Then, after those preliminary

questions, just so you'll know how we're going to

proceed, we'll then address the Presentence Report,

and the Court will determine whether there are any

objections to the Presentence Report and the Court

will determine whether to accept the Presentence

Report.

The Court then would typically allow

counsel for the parties or in this case you yourself

representing yourself to address the sentencing

factors that the Court must consider or the Court is

to consider in determining an appropriate sentence

in this case.

1          So typically the counsel for the

2    government would go first and you would have a

3    chance to address, in effect, what you believe the

4    sentence in this case should be based upon the

5    considerations before the Court.

6          And then after we do that, then if you

7    desire, the Court, separate from making any

8    arguments you would like to make regarding an

9    appropriate sentence, the Court would then allow you

10:22AM  10   to allocute or to say anything else you would like

11   to say as a defendant on your own behalf before

12   sentence is imposed.  So that's how the Court plans

13   to proceed.

14          So if you wouldn't mind coming on up to

15   the podium and we'll have the courtroom deputy

16   administer the oath to you.

17          THE COURTROOM DEPUTY:  Raise your right

18   hand.

19          Do you solemnly swear to tell the

10:23AM  20   truth, the whole truth and nothing but the truth?

21          THE DEFENDANT:  I am here as myself,

22   presenting myself as myself, and I do speak true,

23   accurate and complete at all times.

24          THE COURTROOM DEPUTY:  Thank you, sir.

25          THE COURT:  Thank you, Mr. Beane.  I just

1  want to reconfirm or state to you that on

2  February 1, 2018, a jury found you guilty of Counts

3  1 through 5 of the Indictment in this case charging

4  you with wire fraud in violation of 18 United States

5  Code § 1343, Count 6 charging you with bank fraud in

6  violation of 18 United States Code § 1344, and Count

7  7 charging you with conspiracy to commit money

8  laundering in violation of 18 United States Code §

9  1956(h).

10:23AM  10          Do you understand, sir, that the

11  offenses described in Counts 1 through 5 -- those

12  are the wire fraud counts -- do you understand that

13  those offenses require a sentence of up to 20 years'

14  imprisonment, up to three years of supervised

15  release, a fine of $250,000, restitution, and a $100

16  special assessment?  Do you understand that?

17          THE DEFENDANT:  You do not have authority

18  or jurisdiction to ask me that question or to

19  conduct any proceeding here.

10:24AM  20          THE COURT:  All right.  Let me return -- in

21  light of that statement, let me just turn to counsel

22  for the government.

23          Can you confirm in open court and for

24  the defendant that those -- that that is the

25  statutory range of imprisonment for the offenses

1   described in Counts 1 through 5?

2           MS. DAVIDSON:  Yes, Your Honor.  The range

3   of imprisonment as to -- or just as you stated, up

4   to 20 years' imprisonment for each count.  Just as

5   you stated it.

6           Do you want me to go through each

7   count?

8           THE COURT:  I'll start with Counts 1

9   through 5.

10:25AM 10           MS. DAVIDSON:  Okay.  1 through 5?

11           THE COURT:  I just want the government to

12  confirm that statutorily that Counts 1 through 5

13  require a sentence of up to 20 years' imprisonment,

14  up to three years of supervised release, a fine of

15  $250,000, restitution, and a $100 assessment.

16           MS. DAVIDSON:  Yes, Your Honor, that's --

17           THE COURT:  All right.

18           MS. DAVIDSON:  -- my understanding of the

19  statutory construction.

10:25AM 20           THE COURT:  All right.  Thank you.

21           Next, Mr. Beane, do you understand that

22  the offense described in Count 6 -- that's the bank

23  fraud count -- requires a sentence of up to

24  30 years' imprisonment, up to five years' supervised

25  release, a fine of up to one million dollars,

1  restitution, and a $100 special assessment?

2  THE DEFENDANT:  Again, you do not have

3  authority or jurisdiction to ask me that question,

4  nor to conduct any proceeding here.

5  THE COURT:  All right.  Again,

6  Ms. Davidson, if the government could confirm its

7  understanding of the -- if the Court has correctly

8  stated the statutory range of imprisonment as to

9  Count 6.

10  MS. DAVIDSON:  Yes, Your Honor, that is my

11  understanding of the statutory range.

12  THE COURT:  All right.  And then finally,

13  Mr. Beane, do you understand the offense described

14  in Count 7, which is the conspiracy to commit money

15  laundering count, requires a sentence of up to

16  30 years' imprisonment, up to five years' supervised

17  release, a fine of up to one million dollars,

18  restitution, and a $100 special assessment?

19  THE DEFENDANT:  Once again, for the record,

20  you do not have authority or jurisdiction to ask me

21  that question, nor to conduct any proceeding here.

22  THE COURT:  Again, if the government would

23  confirm the Court's understanding of the statutory

24  range of imprisonment as to Count 7.

25  MS. DAVIDSON:  Yes, Your Honor, that is my

1    understanding.

2            THE COURT: All right. Mr. Beane, next I

3    want to look at the Presentence Report. Have you,

4    in fact, received the Presentence Report issued by

5    the United States Probation Office in this case?

6            THE DEFENDANT: Yes.

7            THE COURT: And have you had a chance to

8    review that?

9            THE DEFENDANT: Yes.

10:26AM 10            THE COURT: All right. And do you have any

11    specific objections to the Presentence Report?

12            THE DEFENDANT: No.

13            THE COURT: All right. Ms. Davidson, have

14    you received the Presentence Report in this case?

15            MS. DAVIDSON: Yes, Your Honor.

16            THE COURT: Does the government have any

17    objections?

18            MS. DAVIDSON: No objections, Your Honor.

19            THE COURT: All right. The Court would

10:27AM 20    state while the defendant -- so the record is clear,

21    while the defendant has no specific objections to

22    the Presentence Report, the defendant has made

23    various filings, subsequent to the filing of the

24    Presentence Report, again, which the Court would

25    concur would not be construed as specific objections

1    to the Presentence Report, but, instead, as

2    continued objections to this Court's jurisdiction

3    and/or authority.

4              To the extent those objections apply to

5    the Presentence Report itself as general objections,

6    the Court again would reiterate its previous finding

7    that the Court does, in fact, have jurisdiction over

8    the federal criminal conviction at issue here today.

9    And the Court, in light of the lack of any specific

10   objections to the Presentence Report by either

11   parties, would accept the Presentence Report in this

12   case.

13             All right.  Next we talk about

14   imposition of sentence, and we'll start with the

15   government.

16             Mr. Beane, you can have a seat for just

17   a couple moments.  Thank you, sir.

18             Is there anything the government would

19   like to -- the Court does note the government's

20   filing of a sentencing memorandum, but anything from

21   the government regarding imposition of sentence in

22   this case?

23        MS. DAVIDSON:  Based on our sentencing

24   memorandum, the United States believes that a

25   guideline sentence is appropriate in this case.  It

meets all of the factors of 3553, including general
and specific deterrence and respect for the law.

We would ask that the defendant's
federal sentence be consecutive to his anticipated
state court sentence in Jasper County, South
Carolina.  That was a charge for resisting arrest,
and there is evidence in this case that the
defendant also resisted arrest, and so we ask that
the defendant suffer the consequences of both of
those convictions and that they be consecutive.

Thank you, Your Honor.

THE COURT:  Thank you.

All right.  Mr. Beane, now you can come
back up to the podium, please.

Is there anything that you would like
to say -- I'm going to give you the chance to
allocute, if you would like, in a moment.  But at
this point you're representing yourself.  If there
is anything you'd like to say either in response to
the government's argument regarding imposition of
sentence or anything else you'd like to say on your
own behalf regarding imposition of sentence in this
case.

THE DEFENDANT:  As far as the allegations
of resisting arrest in South Carolina, there is no

proof of anything I was arrested for.  It was simply

a charge of resisting arrest.  There is no charge of

anything else.

As far as this case is concerned, I'd

argue the fact that I resisted arrest just for the

record.

THE COURT:  Okay.  Anything else you'd like

to say about this case or about what the sentence

should be in this case or what factors the Court

should look at regarding the appropriate sentence?

THE DEFENDANT:  Other than the fact that

this Court has no authority or jurisdiction over me

for any proceedings here.

THE COURT:  All right.  Thank you.

Then, finally, before you sit down,

now, as a defendant in a criminal case, even if you

were represented by counsel, the Court would give

you the chance to allocute or say anything you'd

like to say on your own behalf before sentence is

imposed.  So that's what I'm asking you now.  Is

there anything further or anything you'd like to say

on your own behalf to the Court before the Court

imposes sentence?

THE DEFENDANT:  Other than restating the

standing declaration, I have nothing else.

1          THE COURT:  All right.  Thank you.

2               Mr. McGrath, anything as elbow counsel?

3     Would you like to consult with Mr. Beane any further

4     or offer anything further?

5          MR. MC GRATH:  No, we've spoken in the last

6     couple days and I visited him out at the jail.  So

7     we've covered all those matters.  So nothing to add,

8     Your Honor.

9          THE COURT:  All right.  Thank you.  Give me

10:30AM   10    just a moment.

11              All right.  The Court in this case has

12    carefully reviewed the Presentence Report,

13    considered the arguments presented by the parties,

14    as well as the Court's considered the trial

15    testimony in this case, and in a manner intended to

16    comply with the Sixth Circuit's jurisprudence since

17    the Booker case rendered the Sentencing Guidelines

18    advisory and Gall v. United States' requirement that

19    the Court make an individual assessment based on the

10:31AM   20    facts presented and adequately explain the chosen

21    sentence, the Court will explain its reasons for the

22    sentence to be imposed in this case in discussing,

23    among other things, the advisory guideline

24    calculation and the factors discussed in 18 United

25    States Code § 3553 relevant to this case.  Based on

1    those factors and considerations of the guidelines

2    range, the Court will then impose a sentence

3    sufficient, but not greater than necessary, to

4    comply with the purposes discussed in 18 U.S.C. §

5    3553.

6              First, with respect to the guideline

7    calculation, that calculation is set forth in the

8    Presentence Report to which there has not been

9    objection, and as noted in paragraph 70, based on a

10   total offense level of 33 and criminal history

11   category of II, the guideline imprisonment range is

12   151 months to 188 months.

13             With respect next to the 18 United

14   States Code § 3553 factors, first, the nature and

15   circumstances of the offense.  Again, the defendant

16   was found guilty, as the Court has just discussed --

17   has been found guilty by a jury of five counts of

18   wire fraud, one count of bank fraud, and one count

19   of conspiracy to commit money laundering.

20             His specific offense conduct is set

21   forth, as well as that of his co-defendant, is set

22   forth in some detail beginning at paragraph 6 of the

23   Presentence Report, all of which the Court has

24   reviewed.

25             I'm not going to reiterate all of that

offense conduct today, but the Court has reviewed it
in total and would incorporate the offense conduct
as set forth in the Presentence Report as part of
its analysis of the defendant's instant offense
conduct, coupled, again, with the trial testimony
offered in this case.

By way of brief summary, among other
things, on July 5 and July 7, 2017, this defendant
purchased or attempted to purchase approximately 40
certificates of deposit totaling over $38 million
from USAA Bank using his Social Security number as
the account number and routing number to the Federal
Reserve Bank in New York as the funding account.

In fact, during the trial, as noted in
paragraph 15, the defendant did testify that he did,
in fact, purchase the CDs using his Social Security
number.

In that manner, he advised that he
located a video online of an individual representing
himself as Harvey Dent who informs individuals how
to use a trust account and Federal Reserve routing
numbers to pay off debt, and Beane conveyed that he
decided to try this method of paying off his debt.

In fact, it's noted in paragraph 15
that the defendant testified that he kept purchasing

1  CDs from USAA Bank because he, quote, "wanted to

2  know where the end was," close quote.

3          At some point on July 5, 2017,

4  co-defendant -- his co-defendant, Ms. Tucci-Jarraf,

5  was corresponding with this defendant via Skype and

6  had knowledge of this defendant's attempts to

7  purchase CDs using the aforementioned method.

8          On July 6, 2017, this defendant

9  executed a wire transfer of $493,000 -- $493,110.68

10:35AM 10 to Buddy Gregg Motor Homes, LLC for a 45-foot motor

11 home.

12          Trial testimony showed once USAA Bank

13 and Whitney Bank, the bank utilized by Buddy Gregg

14 Motor Homes, LLC, detected potential fraud regarding

15 this defendant's transaction, his accounts were

16 frozen and fraud investigators began an

17 investigation.

18          On July 8, 10 and 11, 2017, this

19 defendant's co-defendant working on his behalf was

10:36AM 20 involved in telephone conversations with this

21 defendant, representatives of Buddy Gregg Motor

22 Homes and Whitney Bank, and made assurances that the

23 transactions were legal and legitimate.

24          She further informed this defendant to

25 place the motor home in the name of a trust account

he had created using his Social Security number and
Federal Reserve routing number.

Paragraph 20 of the Presentence Report also notes this defendant's activities related to purchase of a Ford Super Duty pickup truck for a list price of $80,510.86, or total price of $86,000, and the defendant purchased the vehicle with a written check, and after the fraudulent activity of the defendant was discovered by USAA Bank, the defendant returned that truck to Ted Russell Ford on July 10, 2017.

And then paragraphs 21 through 23 of the Presentence Report set forth in more detail this defendant's activities regarding the subject motor home.

Paragraph 25 notes the total intended loss attributed to defendant Beane is no less than $38,994,967, and paragraph 27 under the victim impact provision of the Presentence Report notes that the amount of restitution for which defendant is responsible is $510,589.02.

Turning next to the history and characteristics of this defendant, the defendant is, I believe, currently 50 years of age. He was born in North Carolina, primarily reared by his mother.

He has one brother and one sister.  He's never been
married, has no children.

Again, he's been a lifelong resident of
North Carolina with the exception of the past
several years where he resided in the Eastern
District of Tennessee.

According to the defendant, he
graduated from high school in 1985, and was in the
United States Air Force from 1998 (sic) to 1993.

Vocationally the defendant states he's
been employed in the car detailing business as a
warehouse manager and with a graphics company.

He reports being in relatively good
health with no known physical limitations, no
history of mental or emotional health treatment, no
substance abuse history, other than rare use of
alcohol and experimentation with marijuana in --
several decades ago in his 20s.

The defendant does have a limited
criminal history.  He's been convicted of offenses
of trespassing, possession of marijuana, no driver's
license, wilful destruction by tenant, driving while
impaired, and driving without a license, all
resulting in a criminal history category of II in
this case.

1    With this background in mind, the Court

2  then considers the need for the sentence imposed to

3  reflect various factors, including, but not limited

4  to, the seriousness of the offense.

5    Again, the Court heard testimony in

6  this case, including by the defendant, as well as

7  others, over a multi-day period.

8    The facts deduced at trial, the

9  evidence deduced at trial, the facts as set forth in

10  the Presentence Report related to this defendant's

11  offense conduct.  Again, as highlighted by

12  particularly the loss attributed to this defendant

13  and the amount of restitution owing all constitutes

14  a serious offense conduct on this defendant's part,

15  in terms of his violations of multiple federal

16  offenses, again, bank fraud, wire fraud, and

17  conspiracy to commit money laundering.

18    The Court considers the need to promote

19  respect for the law and provide just punishment.

20  Again, taking into consideration the level, scope

21  and seriousness of the defendant's offense conduct

22  and also taking into consideration his demonstrated

23  lack of respect for the law, and, again, the need to

24  provide just punishment, given the seriousness of

25  his offense conduct, and also taking into

 1    consideration his somewhat limited criminal -- past

 2    criminal history.

 3            The Court does consider the need for

 4    adequate deterrence.  The Court finds a need for

 5    specific deterrence in this case based on the

 6    defendant's offense conduct.

 7            The Court also considers general

 8    deterrence; that is, fashioning a sentence that

 9    hopefully would act as a general deterrent to others

10:41AM  10    similarly situated to this defendant who may

11    contemplate the undertaking of similar crimes in the

12    future.  And the Court also considers the need to

13    protect the public from further crimes of the

14    defendant.

15            Again, while his previous criminal

16    history is somewhat limited, his current offense

17    conduct is serious, and, again, given his statement

18    regarding his belief in the lack of authority or

19    jurisdiction over him, the Court is concerned and

10:41AM  20    does find the need to protect the public from

21    further crimes of the defendant, given his positions

22    in this case.

23            The Court considers the need to provide

24    the defendant with training, education and medical

25    treatment.  The Court does not find the need for

substance abuse or mental health treatment in this case.

While the defendant is -- from a guideline standpoint is facing a lengthy sentence, the Court does believe the defendant would benefit from additional educational and particularly vocational training opportunities that may be afforded to him by the Bureau of Prisons.

To the extent the Court does or the Presentence Report does discuss any treatment, the Court would note that it is not intending to and is not imposing or lengthening the defendant's prison sentence to enable him to complete a treatment program or otherwise promote rehabilitation.

The Court also notes under § 3553 that the advisory guidelines are intended, in part, to carry out the national policies as articulated by Congress and that sentences be uniform across the country, to the extent possible, and be based on the offender's actual conduct and history, and the Court has previously noted, as the Presentence Report notes, a need to provide restitution in this case.

In light of everything discussed, including the guideline range and the relevant § 3553 factors, and considering the arguments and

positions of the parties, the Court is going to

impose a guideline sentence in this case of 155

months.  For all the reasons discussed, the Court

finds this sentence to be sufficient, but not

greater than necessary, to comply with the purposes

of 18 U.S.C. § 3553.

Pursuant to 18 United States Code §

3553(c)(1), the Court notes that it finds a sentence

within the guidelines range at this range to be

justified based upon the Court's belief that such a

sentence adequately reflects the seriousness of the

instant offenses, provides adequate deterrence, and

protects the public from further crimes being

committed by the defendant.

The Court will also impose a period of

supervised release in this case in total of five

years, and the Court will also impose the special

conditions of supervised release in addition to the

general and mandatory conditions, the special

conditions found in paragraph 80 of the Presentence

Report, to which there has not been specific

objection.  These relate to a special search

condition during a period of supervised release, as

well as in light of the restitution being ordered

and the forfeiture being entered.  Special

conditions related to access to financial

information, credit restrictions, and requirements

regarding payment of financial penalties.  The Court

finding these special conditions of supervised

release to be reasonably related to the several

sentencing factors discussed by the Court to involve

no greater deprivation of liberty than reasonably

necessary for those several sentencing purposes and

to be consistent with pertinent policy statements

issued by the Sentencing Commission.

Finally, with respect to paragraph 53

of the Presentence Report, the pending charge in

Jasper County, South Carolina, Docket No.

2014-GS-2700554, the Court recognizes its

discretion, pursuant to applicable law and

guidelines provisions, to run the sentence in this

case concurrent, partially concurrent or consecutive

to the prior undischarged sentence of imprisonment,

and while the sentence in that case is un- -- the

Court would find it to be unrelated, which might

speak to a consecutive sentence being imposed, there

was testimony about -- at the trial, it was tied

into this trial, if you will, and was the subject of

some testimony, and in light of that, in light of

the length of the sentence imposed in this case, the

1     Court will run the sentence in this case concurrent

2     to any sentence arising from the sentence imposed

3     due to violations in Jasper County, South Carolina.

4           Accordingly and pursuant to the

5     Sentencing Reform Act of 1984, it is the judgment of

6     the Court as to Counts 1 through 7 that the

7     defendant, Randall Keith Beane, is hereby committed

8     to the custody of the Bureau of Prisons for a total

9     term of imprisonment of 155 months.

10:46AM  10      This sentence consists of a term of

11    120 months as to each of Counts 1 through 5 and 155

12    months as to each of Count 6 and 7 to run

13    concurrently.

14          It's further ordered that you shall

15    make restitution in the amount of $510,589.02 to

16    USAA Bank in accordance with 18 United States Code

17    §§ 3663 and 3663(a) or any other statute authorizing

18    restitution.

19          Restitution shall be paid in full

10:46AM  20    immediately.  The government may enforce the full

21    amount of restitution ordered at any time pursuant

22    to Title 18 U.S.C. §§ 3612, 3613 and 3664(m).

23          The U.S. Bureau of Prisons, U.S.

24    Probation Office and the U.S. Attorney's Office

25    shall monitor payment of restitution and reassess

and report to the Court any material change in your

ability to pay.

You shall make restitution payments

from any wages you may earn in prison in accordance

with the Bureau of Prisons Inmate Financial

Responsibility Program. Any portion of restitution

not paid in full at the time of your release from

imprisonment shall become a condition of

supervision.

The Court finds you do not have the

ability to pay interest on the restitution ordered.

Interest is waived.

Upon release from imprisonment, you

shall be placed on supervised release for a total

term of five years, consisting of three years as to

each of Counts 1 through 5 and five years as to each

of Counts 6 and 7 to run concurrently.

While on supervised release, you shall

not commit another federal, state or local crime.

You must not unlawfully possess and must refrain

from use of controlled substances and comply with

the standard conditions adopted by this court in

Local Rule 83.10.

In particular, you must not own,

possess or have access to a firearm, ammunition,

destructive device or other dangerous weapon. You

shall cooperate in the collection of DNA as directed

by the probation officer and, again, comply with the

special conditions as set forth in the Presentence

Report and previously articulated by the Court.

Title 18 United States Code §§ 3565(b)

and 3583(g) require mandatory revocation of

supervised release for possession of a controlled

substance, ammunition or firearm, or for refusal to

comply with drug testing.

Pursuant to Title 18 U.S.C. § 3013, you

shall pay a special assessment fee in the amount of

$700 which shall be due immediately.

The Court finds you do not have the

ability to pay a fine, however, and will waive the

fine in this case.

Pursuant to Rule 32 of the Federal

Rules of Criminal Procedure, the Court advises you

may have the right to appeal the sentence imposed in

this case. The Notice of Appeal must be filed

within 14 days of entry of judgment. If you request

and so desire, the Clerk of Court can prepare and

file the Notice of Appeal for you.

It's further ordered you be remanded to

the custody of the Attorney General pending

designation by the Bureau of Prisons.

Ms. Davidson, does the government have any objection to the sentence just pronounced that has not previously been raised?

MS. DAVIDSON: No, Your Honor, we have no objections, but it's my understanding that the Preliminary Order of Forfeiture must also be announced orally.

THE COURT: All right. The Court has previously entered the Preliminary Order of Forfeiture, but the Court does announce the entry of a Preliminary Order of Forfeiture in accordance with applicable law, specifically the forfeiture of a 2017 Entegra Cornerstone 45B 45-foot diesel motor home, VIN No. 4VZVU1E94HCO82572, topaz in color, with eight wheels, and a money judgment in favor of the United States and against the defendant, Randall Keith Beane, for $553,749.99, representing the minimum amount of proceeds Randall Keith Beane personally obtained directly or indirectly as a result of the criminal violations of 18 United States Code §§ 1343 and 1344.

Anything further from the government?

MS. DAVIDSON: No, Your Honor. Thank you.

THE COURT: All right. Mr. Beane, do you

1   as defendant have any objections to the sentence

2   just pronounced that has not previously been raised?

3        THE DEFENDANT:  Yes, I object to the

4   sentencing.  You have no authority or jurisdiction

5   to sentence me; standing documents 147, 148, 149,

6   150, and 151.

7        THE COURT:  All right.  Other than

8   objections related to the authority and the

9   jurisdiction of the Court, do you have any other

10:50AM  10   objections to the sentence just pronounced not

11   previously raised?

12        THE DEFENDANT:  No.

13        THE COURT:  All right.  Thank you.

14        And the Court has previously addressed

15   defendant's continuing objections to the authority

16   and jurisdiction of the Court and would repeat and

17   reincorporate its oral and written pronouncements in

18   that regard.

19        So anything further we need to take up

10:51AM  20   this morning from either side?  Ms. Davidson?

21        MS. DAVIDSON:  No, Your Honor.

22        THE COURT:  Mr. Beane?

23        THE DEFENDANT:  Yes, I'd like to appeal the

24   sentencing.

25        THE COURT:  All right.  You'd like the

1    Clerk to file a Notice of Appeal for you?

2            THE DEFENDANT:  Yes.

3            THE COURT:  All right.  The Court will

4    direct the Clerk to do so.

5                Anything further, Mr. Beane?

6            THE DEFENDANT:  No.

7            THE COURT:  All right.  Thank you.

8                Anything further from the government?

9            MS. DAVIDSON:  No, Your Honor.

10:51AM 10            THE COURT:  All right.  Then we'll stand in

11   recess.

12               Thank you, everyone, for being here

13   this morning.

14           THE COURTROOM DEPUTY:  All rise.  This

15   honorable court should stand in recess until 1:30.

16                           (Which were all the proceedings

17                            had and herein transcribed.)

18                   *  *  *  *  *  *  *

19

20

21

22

23

24

25

1           C-E-R-T-I-F-I-C-A-T-E

2   STATE OF TENNESSEE

3   COUNTY OF KNOX

4           I, Teresa S. Grandchamp, RMR, CRR, do hereby

5   certify that I reported in machine shorthand the

6   above proceedings; that the foregoing pages were

7   transcribed under my personal supervision and

8   constitute a true and accurate record of the

9   proceedings.

10          I further certify that I am not an attorney

11  or counsel of any of the parties, nor an employee or

12  relative of any attorney or counsel connected with

13  the action, nor financially interested in the

14  action.

15          Transcript completed and signed on Wednesday,

16  August 1, 2018.

17

18

19  _____

    TERESA S. GRANDCHAMP, RMR, CRR
20  Official Court Reporter

21

22

23

24

25