# ARREST WARRANT

## 2014A2720200234

### STATE OF SOUTH CAROLINA

☐ County/ ☒ Municipality of

Ridgeland

| THE STATE | 14-907 |
|---|---|
| against | |

Randal Keith Beane

| Address: | 3283 Grays Hwy |
|---|---|
| | Ridgeland, SC 29936- |
| Phone: | SS |
| Sex: M | Race: | Height: |
| DL | |
| DOB | ORI #: SC0270200 |
| Pro... | Ridgeland Police Department |
| Prosecuting Officer: | Jason Stone - 0048 |

Offense: Resisting / Resisting Arrest; Oppose or resist law enforcement officer serving process or making

| Offense Code: | 0326 |
|---|---|
| Code/Ordinance Sec: | 16-09-0320(A) |

This warrant is **CERTIFIED FOR SERVICE** in the ☐ County/ ☐ Municipality of _____

The accused is to be arrested and brought before me to be dealt with according to the law.

(L.S.)

_____
Signature of Judge

Date: _____

### RETURN

A copy of this arrest warrant was delivered to defendant

RANDAL KEITH BEANE

on 10/13/14

_____
Signature of Law Enforcement Officer

RETURN WARRANT TO:

General Sessions
265 Russell Street
Po Box 248
Ridgeland, SC 299360248

---

STATE OF SOUTH CAROLINA
☐ County/ ☒ Municipality of

**AFFIDAVIT**

*ORIGINAL*

S.C. Attorney General
April 21, 2003
SCCA 518

Ridgeland

Personally appeared before me the affiant **Jason Stone** who being duly sworn deposes and says that defendant **Randal Keith Beane** did within this county and state on or about **10/13/2014** violate the criminal laws of the State of South Carolina (or ordinance of ☐ County/ ☒ Municipality of **Ridgeland** ) in the following particulars:

**DESCRIPTION OF OFFENSE:** Resisting / Resisting Arrest; Oppose or resist law enforcement officer serving process or making arrest

I further state that there is probable cause to believe that the defendant named above did commit the crime set forth and that probable cause is based on the following facts:

That on October 13, 2014 in the city/county of Jasper, Town of Ridgeland, one Randal Keith Beane did knowingly and willfully oppose and/or resist the lawful arrest by a law enforcement officer, or the defendant did knowingly and willfully assault, beat and/or wound a law enforcement officer while resisting arrest. Defendant was stopped by Ridgeland Police for a traffic violation. Defendant refused to provide police with identification information and physically resisted police after being placed under arrest.

_____
Signature of Affiant

STATE OF SOUTH CAROLINA
☐ County/ ☒ Municipality of

Ridgeland

| Affiant's Address | P.O. Box 1119 |
|---|---|
| | Ridgeland, SC 29936- |
| Affiant's Telephone | (843)726-7530 |

### ARREST WARRANT

TO ANY LAW ENFORCEMENT OFFICER OF THIS STATE OR MUNICIPALITY OR ANY CONSTABLE OF THIS COUNTY:

It appearing from the above affidavit that there are reasonable grounds on or about **10/13/2014** defendant **Randal Keith Beane** did violate the criminal laws of the State of South Carolina (or ordinance of ☐ County/ ☒ Municipality of **Ridgeland** ) as set forth below:

**DESCRIPTION OF OFFENSE:** Resisting / Resisting Arrest; Oppose or resist law enforcement officer serving process Arrest

Having probable cause and the above affiant having sworn before me, you are empowered and directed to arrest the said defendant and bring her before me forthwith to be dealt with according to law. A copy of this Arrest Warrant shall be delivered to the defendant at the time or as soon thereafter as is practicable

Sworn to and subscribed before me
on 10/13/2014

(L.S.)

_____
Signature of Issuing Judge

Thomas L. Scoggins

Judge Code: 6563

| Judge's Address | One Town Square |
|---|---|
| | Ridgeland, SC 29936-1119 |
| Judge's Telephone | (843)726-7500 |
| Issuing Court: | ☐ Magistrate ☒ Municipal ☐ Circuit |

TRUE COPY
MARGARET BOSTICK
CLERK OF COURT
JASPER COUNTY, SC
BY:
DATE: 5-7-2020

Att. #1.1

*ORIGINAL* *ORIGINAL* *ORIGINAL* *ORIGINAL* *ORIGINAL* *ORIGINAL* *ORIGINAL*

THE STATE OF SOUTH CAROLINA

COUNTY OF JASPER

| BENCH WARRANT |
| FAILURE TO APPEAR |

THE STATE
VS.
Randal Keith Beane

2014GS2700554

2014A2720200234

Resisting / Resisting Arrest; Oppose or resist
law enforcement officer serving process or
making arrest

**To all and Singular the Sheriffs Deputy Sheriffs Constables and other Peace Officers of the said State Greeting:**

WHEREAS, at the Term of Court of General Sessions County Court for the County aforesaid, it was among other things Ordained

that a Bench Warrant should be issued for the arrest of **Randal Keith Beane**

THESE ARE, THEREFORE, to command you and every one of you to make diligent search after the said above named and him to take and safely keep until he be delivered to the keeper of the Common Jail of the County or discharged by due course of law. And this shall be a good and sufficient warrant for you doing so, and for the keeper of said Jail receiving said above named from you and keeping him safely until he be discharged by due course of law.

WITNESS, Margaret Bostick, Clerk of Court of General Sessions and Common Pleas for the County of Jasper,

| April 17, 2015. |

Clerk of Court of General Sessions and Common Pleas

TRUE COPY
MARGARET BOSTICK
CLERK OF COURT
JASPER COUNTY, SC
BY:
DATE:

Att. #1.2



# Jasper County
# Fourteenth Judicial Circuit
# Public Index



Jasper County Home Page South Carolina Judicial Department Home Page SC.GOV Home Page

Switch View

## The State of South Carolina VS Randal Keith Beane

| | | | | | |
|---|---|---|---|---|---|
| Case Number: | 2014A2720200234 | Court Agency: | General Sessions | Filed Date: | 10/14/2014 |
| Case Type: | Criminal-Clerk | Case Sub Type: | | | |
| Status: | Failure to Appear | Assigned Judge: | Clerk Of Court C P, G S, And Family Court | Disposition Judge: | Solicitor |
| Disposition: | Failure to Appear | | | | |
| Disposition Date: | 07/17/2015 | Date Received: | 10/14/2014 | Arrest Date: | 10/13/2014 |
| Law Enf. Case: | 14-907 | True Bill Date: | 11/20/2014 | No Bill Date: | |
| Prosecutor Case: | | Indictment Number: | 2014GS2700554 | Waiver Date: | |
| Probation Case: | | | | | |

Case Parties   Charges   Sentencing   Associated Cases   Actions   Financials   Bonds

Click the 🖳 icon to show associated parties.

Att. #2.1

Att. #2.2



**Rodger says :**

August 32, 2017 at 2:55 pm

The State of South Carolina VS Randal Keith Beane
Case Number: 2014A2720200234
Court Agency: General Sessions
Filed Date: 10/14/2014
Case Type: Criminal-Clerk
Case Sub Type:
Status: Failure to Appear
Assigned Judge: Clerk Of Court C P, G S, And Family Court
Disposition Judge: Solicitor
Disposition: Failure to Appear
Disposition Date: 07/17/2015
Date Received: 10/14/2014
Arrest Date: 10/13/2014
Law Enf. Case: 14-907
True Bill Date: 11/20/2014
No Bill Date:
Prosecutor Case:
Indictment Number: 2014GS2700554
Waiver Date:
Probation Case:

SEALED

# UNITED STATES DISTRICT COURT
for the

Eastern District of Tennessee

United States of America
v.

RANDALL KEITH BEANE

*Defendant*

Case No. 3:17-CR-82

## ARREST WARRANT    SEALED

To: Any authorized law enforcement officer

YOU ARE COMMANDED to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   RANDALL KEITH BEANE

who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment  ☐ Superseding Indictment  ☐ Information  ☐ Superseding Information  ☐ Complaint
☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice  ☐ Order of the Court

This offense is briefly described as follows:

the defendant, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, signals and sounds including funds the old own, via wire, all in violation of Title 18, United States Code, Section 1343; devised a scheme to defraud financial institutions and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of financial institutions by means of false and fraudulent pretenses, representations, and promises, in order to obtain money and property fraudulently, in violation of Title, 18, United States Code, Section 1344; did unlawfully and knowingly combine, conspire, confederate, and agree with each other and with other persons known and unknown to commit money laundering, in violation of Title 18, United States Code, Sections 1956 and 1957

Date:  07/28/2017

City and state:  Knoxville, TN

## Return

This warrant was received on *(date)* 7-28-17 , and the person was arrested on *(date)* 7-27-17

at *(city and state)* Knoxville, TN

Date: 7-27-17

FID# 103365288

Att. #3

FBI/Skill
RECEIVED BY:
U.S. MARSHAL E/TN
KNOXVILLE, TN

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Tennessee

United States of America

v.

HEATHER ANN TUCCI-JARRAF

*Defendant*

Case No. 3:17-CR-82

## ARREST WARRANT

Case No: 1:17-mj-531
Assigned To: Magistrate Judge Deborah A. Robinson
Date Assigned: 7/26/2017
Description: Arrest Warrant (Rule 40)

To: Any authorized law enforcement officer

YOU ARE COMMANDED to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)* HEATHER ANN TUCCI-JARRAF

who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☐ Complaint
☐ Probation Violation Petition ☐ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of the Court

This offense is briefly described as follows:

the defendant, did unlawfully and knowingly combine, conspire, confederate, and agree with each other and with other
persons known and unknown to the Grand Jury to commit money laundering, in violation of Title 18, United States Code,
Sections 1956 and 1957.

Date: 07/26/2017

*Issuing officer's signature*

City and state: Knoxville, TN

U.S. Magistrate Judge
*Printed name and title*

SEALED

SEALED

## Return

This warrant was received on *(date)* 7-20-17 , and the person was arrested on *(date)* 7-26-17
at *(city and state)*

Date: 7-26-17

*Arresting officer's signature*

*Printed name and title*

Att. #4

FBI/Still

RECEIVED BY:

DATE: 7-26-17    TIME:
U.S. MARSHAL E/TN
KNOXVILLE, TN

FBI#103-65908

1774-0720-2495-J

Case 3:17-cr-00082-TAV-DCP    Document 173-1    Filed 05/03/18    Page 76 of 77    PageID #: 17785

# 28 U.S. Code § 1331.Federal question

U.S. Code          Notes

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

(June 25, 1948, ch. 646, 62 Stat. 930; Pub. L. 85–554, § 1, July 25, 1958, 72 Stat. 415; Pub. L. 94–574, § 2, Oct. 21, 1976, 90 Stat. 2721; Pub. L. 96–486, § 2(a), Dec. 1, 1980, 94 Stat. 2369.)

Att. #5

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 7 of 164   PageID #: 19968

# Federal Question Jurisdiction

## Overview

Federal question jurisdiction is one of the two ways for a federal court to gain subject-matter jurisdiction over a case (the other way is through diversity jurisdiction).

Generally, in order for federal question jurisdiction to exist, the cause of action must arise under federal law. More specifically, however, there are both constitutional and statutory requirements that must be met before jurisdiction can be found.

## Interpreting "Arising Under" - Constitutional Requirement

Under Article III of the Constitution, federal courts can hear "all cases, in law and equity, arising under this Constitution, [and] the laws of the United States…." US Const, Art III, Sec 2. The Supreme Court has interpreted this clause broadly, finding that it allows federal courts to hear any case in which there is a federal ingredient. Osborn v. Bank of the United States, 9 Wheat. (22 U.S.) 738 (1824).

## 28 USC 1331 - The Statutory Component

For federal question jurisdiction to exist, the requirements of 28 USC 1331 must also be met. This statute gives federal courts jurisdiction only to those cases which "aris[e] under" federal law. 28 USC 1331. This requirement has been found to be narrower than the requirements of the constitution. The Supreme Court has found that a "suit arises under the law that creates the cause of action." American Well Works v. Layne, 241 US 257 (1916), and therefore, only suits based on federal law, not state law suits, are most likely to create federal question jurisdiction, Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149 (1908).

## Well-Pleaded Complaint Rule

Typically, in order to have federal question jurisdiction, the plaintiff's complaint must be a well-pleaded one. This means that the plaintiff's initial complaint must contain the references to the federal question and the federal issue evoked. The federal question and issue cannot arise in an anticipated defense, it must be presented from the initial complaint. This requirement was established in Louisville & Nashville R. Co. v. Mottley, and as such it is often referred to as the "Mottley Rule."

## Grable Test

Another test that courts will often use to determine federal question jurisdiction is called the Grable Test, established in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing. This is a two-part test

Att. #6

# 28 U.S. Code § 1332.Diversity of citizenship; amount in controversy; costs

U.S. Code    Notes

**(a)**The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

Att. #7

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 9 of 164   PageID #: 19970

https://www.law.cornell.edu/uscode/text/28/132

# 28 U.S. Code § 132.Creation and composition of district courts

U.S. Code          Notes

**(a)**There shall be in each judicial district a district court which shall be a court of record known as the United States District Court for the district.

**(b)**Each district court shall consist of the district judge or judges for the district in regular active service. Justices or judges designated or assigned shall be competent to sit as judges of the court.

**(c)**Except as otherwise provided by law, or rule or order of court, the judicial power of a district court with respect to any action, suit or proceeding may be exercised by a single judge, who may preside alone and hold a regular or special session of court at the same time other sessions are held by other judges.

(June 25, 1948, ch. 646, 62 Stat. 895; Pub. L. 88–176, § 2, Nov. 13, 1963, 77 Stat. 331.)

Att. #8

# BLACK'S

# LAW DICTIONARY

Definitions of the Terms and Phrases of
American and English Jurisprudence,
Ancient and Modern

By

## HENRY CAMPBELL BLACK, M. A.

Author of Treatises on Judgments, Tax Titles, Intoxicating Liquors,
Bankruptcy, Mortgages, Constitutional Law, Interpretation
of Laws, Rescission and Cancellation of Contracts, Etc.

REVISED FOURTH EDITION

BY

THE PUBLISHER'S EDITORIAL STAFF

ST. PAUL, MINN.
WEST PUBLISHING CO.
1968

Att. #9.1

memory and testimony, and which have power to fine or imprison for contempt. Error lies to their judgments, and they generally possess a seal. Courts not of record are those of inferior dignity, which have no power to fine or imprison, and in which the proceedings are not enrolled or recorded. 3 Bl. Comm. 24; 3 Steph. Comm. 383; The Thomas Fletcher, C.C.Ga., 24 F. 481; Ex parte Thistleton, 52 Cal. 225; Erwin v. U.S., D.C.Ga., 37 F. 488, 2 L.R.A. 229; Heininger v. Davis, 96 Ohio St. 205, 117 N.E. 229, 231.

A "court of record" is a judicial, organized tribunal having attributes and exercising functions independently of the person of the magistrate designated generally to hold it, and proceeding according to the course of common law, its acts and proceedings being enrolled for a perpetual memorial. Jones v. Jones, 188 Mo.App. 220, 175 S.W. 227, 229; Ex parte Gladhill, 8 Metc. Mass. 171, per Shaw, C.J.; See, also, Ledwith v. Rosalsky, 244 N.Y. 406, 155 N.E. 688, 689.

Courts may be at the same time of record for some purposes and not of record for others, Lester v. Redmond, 6 Hill, N.Y. 590; Ex parte Gladhill, 8 Metc. Mass., 168.

**Superior and inferior courts.** The former being courts of general original jurisdiction in the first instance, and which exercise a control or supervision over a system of lower courts, either by appeal, error, or *certiorari;* the latter being courts of small or restricted jurisdiction, and subject to the review or correction of higher courts. Sometimes the former term is used to denote a particular group or system of courts of high powers, and all others are called "inferior courts."

To constitute a court a superior court as to any class of actions, within the common-law meaning of that term, its jurisdiction of such actions must be unconditional, so that the only thing requisite to enable the court to take cognizance of them is the acquisition of jurisdiction of the persons of the parties. Simons v. De Bare, 4 Bosw., N.Y., 547.

An inferior court is a court whose judgments or decrees can be reviewed, on appeal or writ of error, by a higher tribunal, whether that tribunal be the circuit or supreme court. Nugent v. State, 18 Ala. 521.

**Civil and criminal courts.** The former being such as are established for the adjudication of controversies between subject and subject, or the ascertainment, enforcement, and redress of private rights; the latter, such as are charged with the administration of the criminal laws, and the punishment of wrongs to the public.

**Equity courts and law courts.** The former being such as possess the jurisdiction of a chancellor, apply the rules and principles of chancery law, and follow the procedure in equity; the latter, such as have no equitable powers, but administer justice according to the rules and practice of the common law.

As to the division of courts according to their *jurisdiction,* see Jurisdiction.

As to several names or kinds of courts not specifically described in the titles immediately following, see Arches Court, Appellate, Circuit Courts, Consistory Courts, County, Customary Courts, Ecclesiastical Courts, Federal Courts, Forest Courts, High Commission Court, Instance Court, Justice Court, Justiciary Court, Legislative Courts, Maritime Court, Mayor's Court,

Moot Court, Municipal Court, Orphans' Court, Police Court, Prerogative Court, Prize Court, Probate Court, Superior Courts, Supreme Court, and Surrogate's Court.

As to court-hand, court-house, court-lands, court rolls, courtyard, see those titles in their alphabetical order *infra.*

## General

**Court above, court below.** In appellate practice, the "court above" is the one to which a cause is removed for review, whether by appeal, writ of error, or *certiorari;* while the "court below" is the one from which the case is removed. Going v. Schnell, 6 Ohio Dec. 933.

**Court in bank.** A meeting of all the judges of a court, usually for the purpose of hearing arguments on demurrers, points reserved, motions for new trial, etc., as distinguished from sessions of the same court presided over by a single judge or justice.

**Court of competent jurisdiction.** One having power and authority of law at the time of acting to do the particular act. Ex parte Plaistridge, 68 Okl. 256, 173 P. 646, 647.

One having jurisdiction under the state Constitution and laws to determine the question in controversy. Texas Employers' Ins. Ass'n v. Nunamaker, Tex.Civ.App., 267 S.W. 749, 751. A court for the maintenance of order, as established by the Constitution or statute. Bradley v. Town of Bloomfield, 85 N.J.Law, 506, 89 A. 1009.

**Court of limited jurisdiction.** When a court of general jurisdiction proceeds under a special statute, it is a "court of limited jurisdiction" for the purpose of that proceeding, and its jurisdiction must affirmatively appear. Osage Oil & Refining Co. v. Interstate Pipe Co., 124 Okl. 7, 253 P. 66, 71.

**De facto court.** One established, organized, and exercising its judicial functions under authority of a statute apparently valid, though such statute may be in fact unconstitutional and may be afterwards so adjudged; or a court established and acting under the authority of a *de facto* government. 1 Bl. Judgm. § 173; In re Manning, 139 U.S. 504, 11 S.Ct. 624, 35 L.Ed. 264; Gildemeister v. Lindsay, 212 Mich. 299, 180 N.W. 633, 635.

**Full court.** A session of a court, which is attended by all the judges or justices composing it.

**Spiritual courts.** In English law. The ecclesiastical courts, or courts Christian. See 3 Bl. Comm. 61.

**COURT-BARON.** In English law. A court which, although not one of record, is incident to every manor, and cannot be severed therefrom. It was ordained for the maintenance of the services and duties stipulated for by lords of manors, and for the purpose of determining actions of a personal nature, where the debt or damage was under forty shillings. Wharton; 1 Poll. & Maitl. Hist. E.L. 580.

*Customary court* entirely to copyholder

426

ODIO ET ATIA. See De Odio et Atia.

ODIOSA ET INHONESTA NON SUNT IN LEGE PRESUMENDA. Odious and dishonest acts are not presumed in law. 11 Co. Litt. 78; Jackson v. Miller, 6 Wend. (N. Y.) 228, 231, 21 Am.Dec. 316.

ODIOSA NON PRESUMUNTUR. Odious things are not presumed. Burrows, Sett. Cas. 190.

ODIUM. Means hatred and dislike. In venue statute, it implies such a general ill feeling toward a party to an action as will render it uncertain whether the cause can be tried by impartial triers, free from an atmosphere impregnated with malice or corrupting prejudices. Brow v. Levy, 3 Ind.App. 464, 29 N.E. 417.

ODIOUS. Synonymous with infamous. Poison v. Poison, 140 Ind. 310, 39 N.E. 498.

ECONOMICUS. L. Lat. In old English law. The executor of a last will and testament. Cowell.

ECONOMUS. Lat. In the civil law. A manager or administrator. Calvin.

OEDEMA. A bogging down of the kidneys, heart and lungs because of heavy load of gas poison, entering through the lungs and infecting the tissues and organs of the whole system. Ogletree v. Jones, 44 N.M. 567, 106 P.2d 302.

OF. A term denoting that from which anything proceeds; indicating origin, source, descent, and the like; as he is of a race of kings; he is of noble blood. Stone v. Riggs, 43 Okl. 209, 142 P. 298, 299. Associated with or connected with, usually in some causal relation, efficient, material, formal, or final. Harlan v. Industrial Accident Commission, 194 Cal. 352, 228 P. 654, 657.

The word has been held equivalent to after, 10 L.J.Q.B. 10, at, or belonging to, Davis v. State, 38 Ohio St. 506; in possession of, Bell County v. Hines, Tex.Civ.App., 219 S.W. 556, 557; Stokes v. Great Southern Lumber Co., D.C.Miss., 21 F.2d 185, 186; manufactured by, 2 Bing. N.C. 668; by, Hannum v. Kingsley, 107 Mass. 355; residing at, Porter v. Miller, 3 Wend. (N.Y.) 3229; 8 A. & E. 232; from, State v. Wong Fong, 75 Mont. 81, 241 P. 1072, 1074; in, Kellogg v. Ford, 70 Or. 213, 139 P. 751, 752.

OF COUNSEL. A phrase commonly applied in practice to the counsel employed by a party in a cause, and particularly to one employed to assist in the preparation or management of a cause, or its presentation on appeal, but who is not the principal attorney of record for the party.

OF COURSE. As a matter of right. Stoddard v. Treadwell, 29 Cal. 281; Jones v. McGonigle, 327 Mo. 457, 37 S.W.2d 892, 74 A.L.R. 550. Any action or step taken in the course of judicial proceedings which will be allowed by the court upon mere application, without any inquiry or contest, or which may be effectually taken without even applying.

OF FORCE. In force; extant; not obsolete; existing as a binding or obligatory power.

OF GRACE. This phrase had its origin in an age when kings dispensed their royal favors at the hands of chancellors, but has no rightful place in American jurisprudence. Sullivan v. Jones & Laughlin Steel Co., 208 Pa. 540, 57 A. 1065, 66 L.R. A. 712. A term applied to any permission or license granted to a party in the course of a judicial proceeding which is not claimable as a matter of course or of right, but is allowed by the favor or indulgence of the court. See Walters v. McElroy, 151 Pa. 549, 25 A. 125.

OF NEW. A Scotch expression, closely translated from the Latin "de novo," (q. v.).

OF RECORD. Recorded; entered on the records; existing and remaining in or upon the appropriate records.

A mortgage to be "of record" must be recorded in the county in which it is properly and legally recordable for purpose of constructive notice. Riley v. Commonwealth, 275 Ky. 370, 121 S.W.2d 921.

Under statute providing that recognizances shall be "of record," the term means of record in the sense that it is taken by proper tribunal, that they have been properly certified to the clerk of the court of record and by him recorded. King v. State, 18 Neb. 375, 25 N.W. 519.

OF RIGHT. As a matter of course. Atkins v. Garrett, D.C.La., 252 F. 280, 282. See "Of Course."

OFFA EXECRATA. In old English law. The morsel of execration; the corsned, (q. v.). 1 Reeve, Eng. Law, 21.

OF THE BLOOD. A technical legal phrase meaning to be descended from the person referred to or from the same common stock and from a common ancestor. In re Easter's Estate, 24 Cal.2d 191, 148 P.2d 601.

OFFENDER. Commonly used in statutes to indicate person implicated in the commission of a crime and includes person guilty of a misdemeanor. State ex rel. Smith v. Jameson, 70 S.D. 503, 19 N.W.2d 505, 508.

OFFENSE. A crime or misdemeanor; a breach of the criminal laws. People v. Brenta, 64 Cal. App. 91, 220 P. 447; State v. Hirsch, 91 Vt. 330, 100 A. 877, 879; Ex parte Brady, 116 Ohio St. 512, 157 N.E. 69, 70. State v. Johnson, 212 N.C. 566, 194 S.E. 319, 322.

It is used as a genus, comprehending every crime and misdemeanor, or as a species, signifying a crime not indictable, but punishable summarily or by the forfeiture of a penalty. In re Terry, C.C.Cal., 37 F. 649.

The word "offense," while sometimes used in various senses, generally implies a crime or a misdemeanor infringing public rights, and distinguished from mere private wrongs, and may also include the violation of a criminal laws, though it may also include the violation of a civil suit to recover the penalty, the remedy is merely a civil suit to recover the penalty. Commonwealth v. Brown, 264 Pa. 85, 107 A. 676, 678.

Under a statute, declaring that one guilty of an offense or fault causing another damage is obliged to repair it, refers to one's meaning as tort. Caldwell v. Montgomery Ward & Co., La.App.Orleans, 271 F. 647, 651; and.

Att. #9.3

"Crime" and "misdemeanor," properly speaking, are synonymous terms; though in common usage "crime" is made to denote such offenses as are of a deeper and more atrocious dye, 4 Bl.Comm. 5; People v. Schiaffino, 73. Cal.App. 357, 238 P. 725; Guelfing v. State, 199 Ind. 630, 158 N.E. 593, 594; McIntyre v. Commonwealth, 154 Ky. 149, 156 S. W. 1058, 1059; Commonwealth v. Smith, 266 Pa. 511, 109 A. 786, 788, 9 A.L.R. 922; Ex parte Brady, 116 Ohio St. 512, 157 N.E. 69, 70; An act committed or omitted in violation of a public law. City of Mobile v. McCown Oil Co., 226 Ala. 688, 148 So. 402, 405. Crimes are those wrongs which the government notices as injurious to the public, and punishes in what is called a "criminal proceeding," in its own name. 1 Bish.Crim.Law, § 43; In re Jacoby, 74 Ohio App. 147, 57 N.E.2d 932, 934, 935. A crime may be defined to be an act done in violation of those duties which an individual owes to the community, and for the breach of which the law has provided that the offender shall make satisfaction to the public. Bell. A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments: (1) Death; (2) imprisonment; (3) fine; (4) removal from office; or (5) disqualification to hold and enjoy any office of honor, trust, or profit in this state. Pen.Code Cal. § 15. "Crime" is strictly a violation of law either human or divine; in present usage the term is commonly applied to grave offenses against the laws of the state. Van Riper v. Constitutional Government League, 1 Wash.2d 635, 96 P.2d 588, 591, 125 A.L.R. 1100. A crime or misdemeanor shall consist in a violation of a public law, in the commission of which there shall be a union or joint operation of act and intention, or criminal negligence. Code Ga. 1882, § 4292, Pen.Code 1910, § 31.

**Synonyms**

According to Blackstone, the word "crime" denotes such offenses as are of a deeper and more atrocious dye, while smaller faults and omissions of less consequence are called "misdemeanors". But the better use appears to be to make crime a term of broad and general import, including both felonies and misdemeanors, and hence covering all infractions of the criminal law. In this sense it is not a technical phrase, strictly speaking, (as "felony" and "misdemeanor" are,) but a convenient general term. In this sense, also, "offense" or "public offense" should be used as synonymous with it.

The distinction between a crime and a tort or civil injury is that the former is a breach and violation of the public right and of duties due to the whole community considered as such, and in its social and aggregate capacity; whereas the latter is an infringement or privation of the civil rights of individuals merely. Brown.

A crime, as opposed to a civil injury, is the violation of a right, considered in reference to the evil tendency of such violation, as regards the community at large. 4 Steph.Comm. 4.

**Varieties of Crimes**

Capital crime. See Capital, adj.

**Common law crimes**

Such crimes as are punishable by the force of the common law, as distinguished from crimes created by statute. Wilkins v. U. S., C.C.A.Pa., 96 F. 837, 37 C.C.A. 588; In re Greene, C.C.Ohio, 52 F. 111. These decisions (and many others) hold that there are no common-law crimes against the United States.

**Constructive crime**

See Constructive Crime.

**Continuous crime**

One consisting of a continuous series of acts, which endures after the period of consummation, as, the offense of carrying concealed weapons. In the case of instantaneous crimes, the statute of limitations begins to run with the consummation, while in the case of continuous crimes it only begins with the cessation of the criminal conduct or act. U. S. v. Owen, D.C.Or., 32 F. 537.

**Crime against nature**

The offense of buggery or sodomy. State v. Vicknair, 52 La.Ann. 1921, 28 So. 273; Ausman v. Veal, 10 Ind. 355, 71 Am.Dec. 331. The strict common-law meaning has been greatly enlarged by statute. Borden v. State, 3G Okl.Cr. 69, 252 P. 446, 447; State v. Murry, 136 La. 253, 66 So. 963, 964; State v. Long, 133 La. 580, 63 Ss. 180; Frazier v. Grob, 194 Mo.App. 405, 183 S.W. 1083, 1084; State v. Griffin, 175 N.C. 767, 94 S.E. 678, 679. See Bestiality; Sodomy.

At common law the term "crime against nature" embraced both sodomy and "bestiality," defined as a connection between a human being and a brute of the opposite sex. State v. Poole, 59 Ariz. 44, 122 P.2d 415, 416. Within the statute it is the "perverted act of uniting the mouth of one participant with the sexual organ of the other in a view of gratifying the sexual desire; and a mere kiss or lick of the private organ, even though lewdly done, is not a "copulation" within the statute. People v. Angier, 44 Cal.App.2d 417, 112 P.2d 659, 660.

**Crime against the other (husband or wife)**

As used in 22 Okl.St.Ann. 702, providing that neither husband nor wife shall be a witness against the other except in a prosecution for a "crime committed against the other," the phrase denotes a direct violation of the rights of the other. Hunter v. State, 10 Okl.Cr. 119, 134 P.1134, 1136, L.R.A. 1915A, 564. It does not make the wife a competent witness in a prosecution against the husband for incest. Lacey v. State, 27 Okl.Cr. 42, 224 P. 994, 995.

Murder by wife of husband's child, O'Loughlin v. People, 90 Colo. 368, 10 P.2d 543, 546. Rape against stepdaughter. State v. Goff, 64 S.D. 80, 264 N.W. 665, 666.

445

"Crimes mala in se . . .

Att. #9.4

**ATTORNARE REM.** To turn over money or goods, *i. e.,* to assign or appropriate them to some particular use or service.

**ATTORNATO FACIENDO VEL RECIPIENDO.** An obsolete writ, which commanded a sheriff or steward of a county court or hundred court to receive and admit an attorney to appear for the person that owed suit of court. Fitz.N.B. 156, 349.

**ATTORNATUS.** One who is attorney, or put in the place of another; a substitute; hence, an attorney. 7 C.J.S. p. 694.

**ATTORNATUS FERE IN OMNIBUS PERSONAM DOMINI REPRESENTAT.** An attorney represents the person of his master in almost all respects. Adams Gloss., citing Bract. fol. 342.

**ATTORNE.** L. Fr. In old English law. An attorney. Britt. c. 126.

**ATTORNEY.** In the most general sense this term denotes an agent or substitute, or one who is appointed and authorized to act in the place or stead of another. Nardi v. Poinsatte, D.C.Ind., 46 F.2d 347, 348. An agent, or one acting on behalf of another. Sherts v. Fulton Nat. Bank of Lancaster, 342 Pa. 337, 21 A.2d 18.

One who is put in place, stead, and turn of another to manage his matters of law. Kaufman v. Jurczak, 102 N.J.Eq. 66, 139 A. 716. An agent employed by party to case to manage it for him. McLyman v. Miller, 52 R.I. 374, 161 A. 111, 112.

When used with reference to the proceedings of courts, or the transaction of business in the courts, the term always means "attorney at law" (*q. v.*) unless a contrary meaning is clearly intended. In re Morse, 98 Vt. 85, 126 A. 550, 551, 36 A.L.R. 527.

"Lawyer" and "attorney" are synonymous. People v. Taylor, 56 Colo. 441, 138 P. 762, 763.

—**Attorney ad hoc.** See Ad Hoc.

—**Attorney at large.** In old practice. An attorney who practiced in all the courts. Cowell.

—**Attorney at law.** An advocate, counsel, or official agent employed in preparing, managing, and trying cases in the courts. An officer in a court of justice, who is employed by a party in a cause to manage it for him. In re Bergeron, 220 Mass. 472, 107 N.E. 1007, 1008; Ann.Cas.1917A, 549.

In English law. A public officer belonging to the superior courts of common law at Westminster, who conducted legal proceedings on behalf of others, called his clients, by whom he was retained; he answered to the solicitor in the courts of chancery, and the proctor of the admiralty, ecclesiastical, Probate, and divorce courts. An attorney was almost invariably also a solicitor. It is now provided by the judicature act, 1873, § 87, that solicitors, attorneys, or proctors of, or by law empowered to practice in, any court the jurisdiction of which is by that act transferred to the high court of justice or the court of appeal, shall be called "so citors of the supreme court." Wharton.

The term "attorney at law," as used in the United States, usually includes "barrister," "counsellor," and "solicitor," in the sense in which those terms are used in England; and, under some circumstances, it includes all these, as well as "proctor." Formerly, in some states, attorneys, at law were a distinct class from "solicitors" and "counsellor," were distinguishable, the former term being applied to the practitioners of the bar, and to those who carry on the practice in courts of law, but no attorney as a private attorney, or attorney in fact.

**Attorney in fact.** A private attorney authorized by another to act in his place and stead, either for some particular purpose, as to do a particular act, or for the transaction of business in general, not of a legal character. This authority is conferred by an instrument in writing, called a "letter of attorney," or more commonly a "power of attorney." Treat v. Tolman, C.C.A.N.Y., 113 F. 893, 51 C.C.A. 522; Massachusetts Bonding & Insurance Co. v. Bankers' Surety Co., 96 Ind.App. 250, 179 N.E. 329, 334.

This term is employed to designate persons who act under a special agency, or a special letter of attorney, so that they are appointed in *fact-um,* for the deed, or special act to be performed; but in a more extended sense it includes all other agents employed in any business, or to do any particular act for another. Bacon, Abr. *Attorney;* Story, Ag. § 25.

—**Attorney of record.** Attorney whose name must appear somewhere in permanent records or files of case, or on the pleadings or some instrument filed in the case, or on appearance docket. Delaney v. Husband, 64 N.J.L. 275, 45 A. 265. Persons whom the client has named as his agent upon whom service of papers may be made. Reynolds v. Reynolds, 21 Cal.2d 580, 134 P.2d 251, 254.

—**Attorney of the wards and liveries.** In English law. This was the third officer of the duchy court. Bac.Abr. "Attorney."

—**Attorney's certificate.** In English practice, a certificate of the commissioners of stamps that the attorney therein named has paid the annual tax or duty. This must be renewed yearly, and the penalty for practising without such certificate is fifty pounds; Stat. 37 Geo. III. c. 90, §§ 26, 28, 30. See also 7 & 8 Vict. c. 73, §§ 21-26; 16 & 17 Vict. c. 63.

—**Attorney's lien.** See Attorney's Lien.

—**Letter of attorney.** A power of attorney; a written instrument by which one person constitutes another his true and lawful attorney, in order that the latter may do for the former, and in his place and stead, some lawful act. People v. Smith, 112 Mich. 192, 70 N.W. 466, 67 Am.St.Rep. 392. An instrument of writing, appointing an attorney in fact for an avowed purpose and setting forth his powers and duties. Mullins v. Commonwealth, 179 Ky. 71, 200 S.W. 9, 11. It is, in effect, a mere contract of agency. Flitsch v. Bishop, 118 Okl. 272, 247 P. 1110, 1111. A *general* power authorizes the agent to act generally in behalf of the principal. A *special* power is one limited to particular acts.

—**Power of attorney.** Commonly meant the instrument by which authority of one person to act in place and stead of another as attorney in fact is set forth. In re Katz' Estate, 274 N.Y.S. 202, 152 Misc. 757.

—**Public attorney.** A name sometimes given to an attorney at law, as distinguished from a *private* attorney, or attorney

tors and administrators. Conley v. Jamison, 205 Iowa 1326, 219 N.W. 485, 486, 59 A.L.R. 835.

LAWING OF DOGS. The cutting several claws of the forefeet of dogs in the forest, to prevent their running at deer. Expeditation (q. v.).

LAWLESS. Not subject to law; not controlled by law; not authorized by law; not observing the rules and forms of law. See Arkansas v. Kansas & T. Coal Co., C.C.Ark., 96 F. 362.

LAWLESS COURT. An ancient local English court, said to have been held in Essex once a year, at cock-crowing, without a light or pen and ink, and conducted in a whisper. Jacob.

LAWLESS MAN. An outlaw.

LAWNDE, LOWNDE. In old English law. A plain between woods. Co. Litt. 5b.

LAWS. Rules promulgated by government as a means to an ordered society. Miami Laundry Co. v. Florida Dry Cleaning & Laundry Board, 134 Fla. 1, 183 So. 759, 764, 119 A.L.R. 956. Session laws or statutes and not decisions ofcourt. State ex rel. Helena Allied Printing Council v. Mitchell, Mont., 105 Mont. 326, 74 P.2d 417, 425. See, also, Law.

LAWS OF ANOTHER STATE. Statutory laws and laws established by judicial decisions. Holderness v. Hamilton Fire Ins. Co. of New York, D.C.Fla., 54 F.Supp. 145, 146.

LAWS OF THE SEVERAL STATES. As used in conformity act, means local statutes and decisions construing them, not decisions relating to matters of general jurisprudence. Ford v. Grocers' Mut. Ins. Co., D.C.Pa., 4 F.Supp. 911, 913. As used in statute requiring federal courts to apply laws of the several states, includes not only state statutory law, but also state decisions on questions of general law. Erie R. Co. v. Tompkins, N.Y., 304 U.S. 64, 58 S.Ct. 817, 822, 82 L.Ed. 1188, 114 A.L.R. 1487.

LAWS OF OLERON. See Oleron, Laws of.

LAWS OF WAR. See War.

LAWS OF WISBY. See Wisby, Laws of.

LAWSUIT. A vernacular term for a suit, action, or cause instituted or depending between two private persons in the courts of law. A suit at law or in equity; an action or proceeding in a civil court; a process in law instituted by one party to compel another to do him justice. Shepherd v. Standard Motor Co., 263 Ky. 329, 92 S.W.2d 337.

LAWYER. A person learned in the law; as an attorney, counsel, or solicitor; a person licensed to practice law.

Any person who, for fee or reward, prosecutes or defends causes in courts of record or other judicial tribunals of the United States, or of any of the states, or whose business it is to give legal advice in relation to any cause or matter whatever. Act of July 13, 1866, § 9 (14 St. at Large, 121.)

LAY, n. A share of the profits of a fishing or whaling voyage, alloted to the officers and sea-

men, in the nature of wages. Coffin v. Jenkins, 5 Fed.Cas. 1190; Thomas v. Osborn, 19 How. 33, 15 L.Ed. 534.

LAY, adj. Relating to persons or things not clerical or ecclesiastical; a person not in ecclesiastical orders. Also non-professional.

LAY, v. To state or allege in pleading.

LAY CORPORATION. See Corporation.

LAY DAMAGES. To state at the conclusion of the declaration the amount of damages which the plaintiff claims.

LAY DAYS. In the law of shipping. Days allowed to charter-parties for loading and unloading the cargo. 3 Kent, Comm. 202, 203.

LAY FEE. A fee held by ordinary feudal tenure, as distinguished from the ecclesiastical tenure of *frankalmoign*, by which an ecclesiastical corporation held of the donor. The tenure of *frankalmoign* is reserved by St. 12 Car. II, which abolished military tenures. 2 Bl.Comm. 101.

LAY IMPROPRIATOR. In English ecclesiastical law. A lay person holding a *spiritual* appropriation. 3 Steph.Comm. 72.

LAY INVESTITURE. In ecclesiastical law. The ceremony of putting a bishop in possession of the temporalities of his diocese.

LAY JUDGE. A judge who is not learned in the law, i. e., not a lawyer; formerly employed in some of the states as assessors or assistants to the presiding judges in the nisi prius courts or courts of first instance.

LAY OUT. This term has come to be used technically in highway laws as embracing all the series of acts necessary to the complete establishment of a highway. Graham County v. Dowell, 50 Ariz. 221, 71 P.2d 1019, 1020; Hitchcock v. Aldermen of Springfield, 121 Mass. 382; Mansur v. County Com'rs, 83 Me. 514, 22 A. 358. See Borrowdale v. Board of County Comrs of Socorro County, 23 N.M. 1, 163 P. 721, 723, L.R.A.1917E, 456; Paterson v. City of Baltimore, 130 Md. 645, 101 A. 589, 591.

LAY PEOPLE. Jurymen.

LAY SYSTEM. As applied to fishing vessels, the fish caught are sold at auction and from the proceeds is deducted charges for supplies furnished and balance distributed to the master and the crew. The Dirigo First, D.C.Mass., 60 F.Supp. 675.

LAYE. L. Fr. Law.

LAYING THE VENUE. Stating in the margin of a declaration the county in which the plaintiff proposes that the trial of the action shall take place.

LAYMAN. One of the people, and not one of the clergy; one who is not of the legal profession; one who is not of a particular profession.

LAYOFF. A termin[ation] will of employer. In

Att. #9.6

9/27/2020

18a U.S. Code Court Rule 9 - Arrest Warrant or Summons on an Indictment or Information | U.S. Code | US Law | LII / Legal Information I...

# 18a U.S. Code Rule 9. Arrest Warrant or Summons on an Indictment or Information

U.S. Code        Notes

## (a) ISSUANCE.

The court must issue a warrant—or at the government's request, a summons—for each defendant named in an indictment or named in an information if one or more affidavits accompanying the information establish probable cause to believe that an offense has been committed and that the defendant committed it. The court may issue more than one warrant or summons for the same defendant. If a defendant fails to appear in response to a summons, the court may, and upon request of an attorney for the government must, issue a warrant. The court must issue the arrest warrant to an officer authorized to execute it or the summons to a person authorized to serve it.

## (b) FORM.

(1) Warrant. The warrant must conform to Rule 4(b)(1) except that it must be signed by the clerk and must describe the offense charged in the indictment or information.

(2) Summons. The summons must be in the same form as a warrant except that it must require the defendant to appear before the court at a stated time and place.

## (c) EXECUTION OR SERVICE; RETURN; INITIAL APPEARANCE.

(1) Execution or Service.

(A) The warrant must be executed or the summons served as provided in Rule 4(c)(1), (2), and (3).

(B) The officer executing the warrant must proceed in accordance with Rule 5(a)(1).

(2) Return. A warrant or summons must be returned in accordance with Rule 4(c)(4).

(3) Initial Appearance. When an arrested or summoned defendant first appears before the court, the judge must proceed under Rule 5.

## (d) WARRANT BY TELEPHONE OR OTHER MEANS.

In accordance with Rule 4.1, a magistrate judge may issue an arrest warrant or summons based on information communicated by electronic means.

Att. #10

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 17 of 164   PageID #: 19978

# 18 U.S. Code § 912.Officer or employee of the United States

U.S. Code          Notes

Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined under this title or imprisoned not more than three years, or both.

(June 25, 1948, ch. 645, 62 Stat. 742; Pub. L. 103–322, title XXXIII, §330016(1)(H), Sept. 13, 1994, 108 Stat. 2147.)

Att. #11

# 18 U.S. Code § 2234.Authority exceeded in executing warrant

U.S. Code          Notes

Whoever, in executing a search warrant, willfully exceeds his authority or exercises it with unnecessary severity, shall be fined under this title or imprisoned not more than one year, or both.

(June 25, 1948, ch. 645, 62 Stat. 803; Pub. L. 104–294, title VI, § 601(a)(8), Oct. 11, 1996, 110 Stat. 3498; Pub. L. 107–273, div. B, title III, § 3002(a)(3), Nov. 2, 2002, 116 Stat. 1805.)

Att. #12

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 19 of 164   PageID #: 19980

# 18 U.S. Code § 2236.Searches without warrant

U.S. Code　　Notes

Whoever, being an officer, agent, or employee of the United States or any department or agency thereof, engaged in the enforcement of any law of the United States, searches any private dwelling used and occupied as such dwelling without a warrant directing such search, or maliciously and without reasonable cause searches any other building or property without a search warrant, shall be fined under this title for a first offense; and, for a subsequent offense, shall be fined under this title or imprisoned not more than one year, or both.

This section shall not apply to any person—

(a) serving a warrant of arrest; or

(b) arresting or attempting to arrest a person committing or attempting to commit an offense in his presence, or who has committed or is suspected on reasonable grounds of having committed a felony; or

(c) making a search at the request or invitation or with the consent of the occupant of the premises.

(June 25, 1948, ch. 645, 62 Stat. 803; Pub. L. 104–294, title VI, §601(a)(8), Oct. 11, 1996, 110 Stat. 3498; Pub. L. 107–273, div. B, title IV, §4002(d)(1)(C)(iii), Nov. 2, 2002, 116 Stat. 1809.)

Att. #13

# 18 U.S. Code § 3041.Power of courts and magistrates

U.S. Code    Notes

For any offense against the United States, the offender may, by any justice or judge of the United States, or by any United States magistrate judge, or by any chancellor, judge of a supreme or superior court, chief or first judge of the common pleas, mayor of a city, justice of the peace, or other magistrate, of any state where the offender may be found, and at the expense of the United States, be arrested and imprisoned or released as provided in chapter 207 of this title, as the case may be, for trial before such court of the United States as by law has cognizance of the offense. Copies of the process shall be returned as speedily as may be into the office of the clerk of such court, together with the recognizances of the witnesses for their appearances to testify in the case.

A United States judge or magistrate judge shall proceed under this section according to rules promulgated by the Supreme Court of the United States. Any state judge or magistrate acting hereunder may proceed according to the usual mode of procedure of his state but his acts and orders shall have no effect beyond determining, pursuant to the provisions of section 3142 of this title, whether to detain or conditionally release the prisoner prior to trial or to discharge him from arrest.

(June 25, 1948, ch. 645, 62 Stat. 815; Pub. L. 89–465, § 5(a), June 22, 1966, 80 Stat. 217; Pub. L. 90–578, title III, § 301(a)(1), (3), Oct. 17, 1968, 82 Stat. 1115; Pub. L. 98–473, title II, § 204(a), Oct. 12, 1984, 98 Stat. 1985; Pub. L. 101–650, title III, § 321, Dec. 1, 1990, 104 Stat. 5117.)

Att. #14

# 18 U.S. Code § 3052. Powers of Federal Bureau of Investigation

## U.S. Code    Notes

The Director, Associate Director, Assistant to the Director, Assistant Directors, inspectors, and agents of the Federal Bureau of Investigation of the Department of Justice may carry firearms, serve warrants and subpoenas issued under the authority of the United States and make arrests without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony.

(June 25, 1948, ch. 645, 62 Stat. 817; Jan. 10, 1951, ch. 1221, § 1, 64 Stat. 1239.)

Att. #15

Att. #16.1

- Security Division — Larissa L. Knapp
- Training Division — Renae McDermott



**Most Wanted**

Ten Most Wanted

Fugitives

Terrorism

Kidnappings/Missing Persons

Seeking Information

Bank Robbers

ECAP

ViCAP

**News**

Stories

Videos

Press Releases

Speeches

Testimony

Podcasts and Radio

Photos

Español

Apps

**What We Investigate**

Terrorism

Counterintelligence

Cyber Crime

Public Corruption

Civil Rights

Organized Crime

White-Collar Crime

Violent Crime

WMD

**Services**

CJIS

CIRG

Laboratory Services

Training Academy

Operational Technology

Information Management

**About**

Mission & Priorities

**FBI**

Reportedly coined in 1939, the term white-collar crime is now synonymous with the full range of frauds committed by business and government professionals. These crimes are characterized by deceit, concealment, or violation of trust and are not dependent on the application or threat of physical force or violence. The motivation behind these crimes is financial—to obtain or avoid losing money, property, or services or to secure a personal or business advantage.

These are not victimless crimes. A single scam can destroy a company, devastate families by wiping out their life savings, or cost investors billions of dollars (or even all three). Today's fraud schemes are more sophisticated than ever, and the FBI is dedicated to using its skills to track down the culprits and stop scams before they start.

The FBI's white-collar crime work integrates the analysis of intelligence with its investigations of criminal activities such as public corruption, money laundering, corporate fraud, securities and commodities fraud, mortgage fraud, financial institution fraud, bank fraud and embezzlement, fraud against the government, election law violations, mass marketing fraud, and health care fraud. The FBI generally focuses on complex investigations—often with a nexus to organized crime activities—that are international, national, or regional in scope and where the FBI can bring to bear unique expertise or capabilities that increase the likelihood of successful investigations.

FBI special agents work closely with partner law enforcement and regulatory agencies such as the Securities and Exchange Commission, the Internal Revenue Service, the U.S. Postal Inspection Service, the Commodity Futures Trading Commission, and the Treasury Department's Financial Crimes Enforcement Network, among others, targeting sophisticated, multi-layered fraud cases that harm the economy.

# Major Threats & Programs

## Corporate Fraud

Corporate fraud continues to be one of the FBI's highest criminal priorities—in addition to causing significant financial losses to investors, corporate fraud has the potential to immeasurable damage to the U.S. economy and investor confidence. As the lead agency investigating corporate fraud, the Bureau focuses its efforts on cases that involve a schemes, self-dealing by corporate executives, and obstruction of justice.

Att. #16.2

# 28 U.S. Code § 516.Conduct of litigation reserved to Department of Justice

## U.S. Code    Notes

Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.

(Added Pub. L. 89–554, § 4(c), Sept. 6, 1966, 80 Stat. 613.)

---

**Att. #17**

# 28 U.S. Code § 547 .Duties

U.S. Code     Notes

Except as otherwise provided by law, each United States attorney, within his district, shall—

**(1)**prosecute for all offenses against the United States;

**(2)**prosecute or defend, for the Government, all civil actions, suits or proceedings in which the United States is concerned;

**(3)**appear in behalf of the defendants in all civil actions, suits or proceedings pending in his district against collectors, or other officers of the revenue or customs for any act done by them or for the recovery of any money exacted by or paid to these officers, and by them paid into the Treasury;

**(4)**institute and prosecute proceedings for the collection of fines, penalties, and forfeitures incurred for violation of any revenue law, unless satisfied on investigation that justice does not require the proceedings; and

**(5)**make such reports as the Attorney General may direct.

(Added Pub. L. 89–554, § 4(c), Sept. 6, 1966, 80 Stat. 618.)

Att. #18

# 1 U.S. Code § 204.Codes and Supplements as evidence of the laws of United States and District of Columbia; citation of Codes and Supplements

**(a)UNITED STATES CODE.—**

In all courts, tribunals, and public offices of the United States, at home or abroad, of the District of Columbia, and of each State, Territory, or insular possession of the United States—

The matter set forth in the edition of the Code of Laws of the United States current at any time shall, together with the then current supplement, if any, establish prima facie the laws of the United States, general and permanent in their nature, in force on the day preceding the commencement of the session following the last session the legislation of which is included: Provided, however, That whenever titles of such Code shall have been enacted into positive law the text thereof shall be legal evidence of the laws therein contained, in all the courts of the United States, the several States, and the Territories and insular possessions of the United States.

**(b)DISTRICT OF COLUMBIA CODE.—**

The matter set forth in the edition of the Code of the District of Columbia current at any time shall, together with the then current supplement, if any, establish prima facie the laws, general and permanent in their nature, relating to or in force in the District of Columbia on the day preceding the commencement of the session following the last session the legislation of which is included, except such laws as are of application in the District of Columbia by reason of being laws of the United States general and permanent in their nature.

**(c)DISTRICT OF COLUMBIA CODE; CITATION.—**

The Code of the District of Columbia may be cited as "D.C. Code".

**(d)SUPPLEMENTS TO CODES; CITATION.—**

Supplements to the Code of Laws of the United States and to the Code of the District of Columbia may be cited, respectively, as "U.S.C., Sup.     ," and "D.C. Code, Sup.     ", the blank in each case being filled with Roman figures denoting the number of the supplement.

**(e)NEW EDITION OF CODES; CITATION.—**

New editions of each of such codes may be c
ed.," and "D.C. Code,     ed."; the blank in ei
denoting the last year the legislation of whic

Att. #19

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 27 of 164   PageID #: 19988

# 1 U.S. Code § 112.Statutes at Large; contents; admissibility in evidence

## U.S. Code    Notes

The Archivist of the United States shall cause to be compiled, edited, indexed, and published, the United States Statutes at Large, which shall contain all the laws and concurrent resolutions enacted during each regular session of Congress; all proclamations by the President in the numbered series issued since the date of the adjournment of the regular session of Congress next preceding; and also any amendments to the Constitution of the United States proposed or ratified pursuant to article V thereof since that date, together with the certificate of the Archivist of the United States issued in compliance with the provision contained in section 106b of this title. In the event of an extra session of Congress, the Archivist of the United States shall cause all the laws and concurrent resolutions enacted during said extra session to be consolidated with, and published as part of, the contents of the volume for the next regular session. The United States Statutes at Large shall be legal evidence of laws, concurrent resolutions, treaties, international agreements other than treaties, proclamations by the President, and proposed or ratified amendments to the Constitution of the United States therein contained, in all the courts of the United States, the several States, and the Territories and insular possessions of the United States.

(July 30, 1947, ch. 388, 61 Stat. 636; Sept. 23, 1950, ch. 1001, § 1, 64 Stat. 979; Oct. 31, 1951, ch. 655, § 3, 65 Stat. 710; Pub. L. 98–497, title I, § 107(d), Oct. 19, 1984, 98 Stat. 2291.)

Att. #20

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 28 of 164   PageID #: 19989

# 18 U.S. Code § 1001.Statements or entries generally

U.S. Code    Notes

**(a)**Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

**(1)**falsifies, conceals, or covers up by any trick, scheme, or device a material fact;

**(2)**makes any materially false, fictitious, or fraudulent statement or representation; or

**(3)**makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years.

**(b)**Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.

**(c)**With respect to any matter within the jurisdiction of the legislative branch, subsection (a) shall apply only to—

**(1)**administrative matters, including a claim for payment, a matter related to the procurement of property or services, personnel or employment practices, or support services, or a document required by law, rule, or regulation to be submitted to the Congress or any office or officer within the legislative branch; or

**(2)**any investigation or review, conducted pursuant to the authority of any committee, subcommittee, commission or office of the Congress, consistent with applicable rules of the House or Senate.

Att. #21

Att. #22

# 22 U.S. Code § 7102 - Definitions

U.S. Code    Notes

In this chapter:

**(1)ABUSE OR THREATENED ABUSE OF LAW OR LEGAL PROCESS**

The term "abuse or threatened abuse of the legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

**(2)APPROPRIATE CONGRESSIONAL COMMITTEES**

The term "appropriate congressional committees" means the Committee on Foreign Relations and the Committee on the Judiciary of the Senateand the Committee on Foreign Affairs and the Committee on the Judiciary of the House of Representatives.

**(3)COERCION**The term "coercion" means—

**(A)**threats of serious harm to or physical restraint against any person;

**(B)**any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

**(C)**the abuse or threatened abuse of the legal process.

# § 1-206. Presumptions.

Whenever the Uniform Commercial Code creates a "presumption" with respect to a fact, or provides that a fact is "presumed," [the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence.]

‹ § 1-205. Reasonable time; Seasonableness.  up  PART 3. TERRITORIAL APPLICABILITY AND GENERAL RULES ›

Att. #23

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 31 of 164   PageID #: 19992

# 18 U.S. Code § 3231.District courts

U.S. Code      Notes

The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.

(June 25, 1948, ch. 645, 62 Stat. 826.)

Att. #24

# Standing

## Overview

Standing, or *locus standi*, is capacity of a <u>party</u> to bring <u>suit</u> in court.

## Standing in State Court

A state's <u>statutes</u> will determine what constitutes standing in that particular state's courts. These typically revolve around the requirement that <u>plaintiffs</u> have sustained or will sustain direct <u>injury</u> or harm and that this harm is redressable.

Att. #25

## Standing in Federal Court

At the federal level, legal actions cannot be brought simply on the ground that an individual or group is displeased with a government action or law. Federal courts only have constitutional authority to resolve actual disputes (see <u>Case or Controversy</u>).

In <u>Lujan v. Defenders of Wildlife (90-1424), 504 U.S. 555 (1992)</u>, the Supreme Court created a three-part test to determine whether a party has standing to sue:

1. The plaintiff must have suffered an "<u>injury in fact</u>," meaning that the injury is of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent

2. There must be a causal connection between the injury and the conduct brought before the court

3. It must be likely, rather than speculative, that a favorable decision by the court will redress the injury

## Further Reading

For Supreme Court decisions focusing on the "standing" issue, see, e.g., <u>County of Riverside v. McLaughlin, 500 U.S. 44 (1991)</u>, <u>Northeastern Fla. Chapter of the Associated Gen. Contractors v. City of Jacksonville, 508 U.S. 656 (1993)</u> and <u>Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)</u>.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE KNOXVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | JUDGMENT IN A CRIMINAL CASE |
| | (For Offenses committed on or after November 1, 1987) |
| v. | Case Number: 3:17-CR-00082-TAV-DCP(1) |
| RANDALL KEITH BEANE | **Randall Keith Beane, pro se** |
| USM#52505-074 | Defendant |
| | **Stephen G McGrath** |
| | Defendant's Elbow Counsel |

THE DEFENDANT:

☐ pleaded guilty to count(s):

☐ pleaded nolo contendere to count(s)    which was accepted by the court.

☒ was found guilty on count(s) 1-7 of the Indictment  after a plea of not guilty.

ACCORDINGLY, the court has adjudicated that the defendant is guilty of the following offense(s):

| Title & Section and Nature of Offense | Date Violation Concluded | Count |
|---|---|---|
| 18 U.S.C. § 1343 – Wire Fraud | 07/11/2017 | 1-5 |
| 18 U.S.C. § 1344 – Bank Fraud | 07/11/2017 | 6 |
| 18 U.S.C. § 1956(h) – Conspiracy to Commit Money Laundering | 07/11/2017 | 7 |

The defendant is sentenced as provided in pages 2 through 7    of this judgment. The sentence is imposed pursuant to the Sentencing
Reform Act of 1984 and 18 U.S.C. 3553.

☐ The defendant has been found not guilty on count(s).

☐ All remaining count(s) as to this defendant are dismissed upon motion of the United States.

   IT IS ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of
name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.
If ordered to pay restitution, the defendant shall notify the court and the United States attorney of any material change in the
defendant's economic circumstances.

| | |
|---|---|
| | July 24, 2018 |
| | Date of Imposition of Judgment |
| | |
| | s/ Thomas A. Varlan |
| | Signature of Judicial Officer |
| | |
| | **Thomas A Varlan , United States District Judge** |
| | Name & Title of Judicial Officer |
| | |
| | July 24, 2018 |
| | Date |

Att. #26.1

DEFENDANT: RANDALL KEITH BEANE
CASE NUMBER: 3:17-CR-00082-TAV-DCP(1)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the Schedule of Payments sheet of this judgment.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| TOTALS | $700.00 | $.00 | $.00 | $510,589.02 |

☐ The determination of restitution is deferred until _____. *An Amended Judgment in a Criminal Case (AO245C)* will be entered after such determination.

☒ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

Restitution of $510,589.02 to:

```
USAA BANK
10750 W. INTERSTATE 10
SAN ANTONIO, TX 78288
```

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options under the Schedule of Payments sheet of this judgment may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☒ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☒ the interest requirement is waived for the   ☐ fine   ☒ restitution

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Att. #26.2

DEFENDANT: RANDALL, KEITH BEANE
CASE NUMBER: 3:17-CR-00082-TAV-DCP(1)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☒ Lump sum payments of $ $11,289.02    due immediately, balance due
   ☐ not later than    , or
   ☐ in accordance with    ☐ C,    ☐ D,    ☐ E, or    ☐ F below; or

B ☐ Payment to begin immediately (may be combined with    ☐ C,    ☐ D,    ☐ F below); or

C ☐ Payment in equal    (e.g., weekly, monthly, quarterly) installments of $    over a period
   of    (e.g., months or years), to commence    (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in equal    (e.g., weekly, monthly, quarterly) installments of $    over a period
   of    (e.g., months or years), to commence    (e.g., 30 or 60 days) after release from imprisonment to a term of
   supervision; or

E ☐ Payment during the term of supervised release will commence within    (e.g., 30 or 60 days) after release from
   imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is
due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons
Inmate Financial Responsibility Program, are made to U.S. District Court, 800 Market Street, Suite 130, Howard H. Baker, Jr.
United States Courthouse, Knoxville, TN, 37902. Payments shall be in the form of a check or a money order, made payable to U.S.
District Court, with a notation of the case number including defendant number.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several
   See above for Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint
   and Several Amount, and corresponding payee, if appropriate.
   ☐ Defendant shall receive credit on his restitution obligation for recovery from other defendants who contributed to the same
   loss that gave rise to defendant's restitution obligation.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☒ The defendant shall forfeit the defendant's interest in the following property to the United States: as set forth in the
   Preliminary Order of Forfeiture (doc. 224) entered July 24, 2018.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) JVTA Assessment, (8) penalties, and (9) costs, including cost of prosecution and court
costs.

Att. #26.3

# Article III.

## Section. 1.

The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

## Section. 2.

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;— between a State and Citizens of another State,— between Citizens of different States,—between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

In all Cases affecting Ambassadors, other public Ministers and Consuls, and those in which a State shall be Party, the supreme Court shall have original Jurisdiction. In all the other Cases before mentioned, the supreme Court shall have appellate Jurisdiction, both as to Law and Fact, with such Exceptions, and under such Regulations as the Congress shall make.

The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed.

## Section. 3.

Treason against the United States, shall consist only in levying War against them, or in adhering to their Enemies, giving them Aid and Comfort. No Person shall be convicted of Treason unless on the Testimony of two Witnesses to the same overt Act, or on Confession in open Court.

The Congress shall have Power to declare the Punishment of Treason, but no Attainder of Treason shall work Corruption of Blood, or Forfeiture except during the Life of the Person attainted.

Att. #27

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 37 of 164   PageID #: 19998

## Section. 8.

The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States;

To borrow Money on the credit of the United States;

To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes;

To establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States;

To coin Money, regulate the Value thereof, and of foreign Coin, and fix the Standard of Weights and Measures;

To provide for the Punishment of counterfeiting the Securities and current Coin of the United States;

To establish Post Offices and post Roads;

To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries;

To constitute Tribunals inferior to the supreme Court;

To define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations;

To declare War, grant Letters of Marque and Reprisal, and make Rules concerning Captures on Land and Water;

To raise and support Armies, but no Appropriation of Money to that Use shall be for a longer Term than two Years;

To provide and maintain a Navy;

To make Rules for the Government and Regulation of the land and naval Forces;

To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions;

To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress;

To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings;—And

To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof.

Att. #28

Att. #29.1

# TESTIMONY

## OF

PARKER STILL

Before the

# GRAND JURY

Impaneled February, 2017

And Convened in

THE EASTERN DISTRICT OF TENNESSEE

Meeting in

Grand Jury Room
Howard H. Baker, Jr. Federal Courthouse
800 Market Street
Knoxville, Tennessee

* * * * *

Testimony July 18, 2017

Examination Conducted by:

CYNTHIA DAVIDSON
Assistant United States Attorney
800 Market Street
Knoxville, Tennessee

KENNEDY REPORTING SERVICES
205 NORTH 20TH STREET
SUITE 408
BIRMINGHAM, ALABAMA 35203

ORIGINAL

7

1    999,000.  Y'all have to forgive me, I am lawyer, so these

2    numbers run together.

3                 Nine nine nine comma, zero, zero, zero, that's

4    the -- that's the two CDs that were actually funded, yes,

5    ma'am.

6    Q            And so what appeared once these CDs were funded?

7    A            Okay.  Once these CDs were funded Mr. Beane then

8    proceeded to liquidate the CDs, cash them out early,

9    incurring a penalty for doing so because they were 30-day

10   CDs.

11                So he incurs a penalty and then takes that --

12   the money from the CD and moves it into his personal bank

13   account at USAA.

14   Q            And then what did he do with these funds?

15   A            The funds were then used for basically personal

16   expenses.  One -- a portion of the funds -- approximate --

17   the exact number, four nine three one ten sixty-eight,

18   $493,110.68, was used to purchase a 2017 Integra Cornerstone

19   45 foot motor home.

20                And then additional funds from what USAA

21   provided us were used to pay off -- you know, pay insurance

22   needs, pay off, you know, USAA credit cards and that type of

23   stuff within the USAA system, yes, ma'am.

24   Q            And what happened to the one, t'

25   A            USAA was able to freeze a signi

Att. #29.2

1    Q        And since Mr. Beane was arrested by the FBI, is

2    that correct?

3    A        He was arrested.  Just to clarify, he was

4    arrested by us on -- he had an outstanding warrant on a

5    state charge.

6    Q        And since that arrest have -- has Ms.

7    Tucci-Jarraf or however you say her name, have things been

8    posted online regarding that?

9    A        Yes, ma'am.  We've seen a video now, a video and

10   audio where she explains about Mr. Beane obtaining CDs,

11   cashing them out early, which I would say to the Grand Jury

12   that that shows knowledge.

13   Q        Yes.

14   A        And she admits to following along to make sure

15   everything is running well and preparing legal documents.

16            She stated that the coach deal, I say -- when

17   she says coach deal, I take that to mean the motor coach

18   purchased from Buddy Gregg was successful and homes were

19   going to be next.

20            Based on my investigative experience that, to me

21   means that, they had success on this type of transaction.

22   They were going to try to do something with real property

23   next.

24            She stated in there that Beane

25   the scheme out and see what the road bumps

Att. #29.3

1    do you want us to just step out.

2         A JUROR: I've got one question.

3         In other words, he opened these CDs with ghost

4    funds and then he got real funds.

5         And based on memory there was about $40,000 that

6    they didn't recover; is that right?

7         MS. DAVIDSON: No. There was about -- I think

8    it's closer to the amount of the five -- it's more than

9    500,000.

10        THE JUROR: Oh, yeah, but I mean --

11        MS. DAVIDSON: Because all of the money that

12   went to Whitney Bank for the motor home is gone?

13        THE JUROR: Right, right.

14        MS. DAVIDSON: Because that was a, you know, a

15   bona fide purchaser.

16        THE WITNESS: I think it will be a big benefit

17   to show this, this full transaction sheet that's been

18   provided to me by USAA for the benefit. You can see -- it's

19   just easy to see the money coming in and how it went right

20   out. I think it would be a benefit to answer your question,

21   sir, and anybody else's. Just give me one second.

22        MS. DAVIDSON: So they have lost over 500,000.

23        If you'll look at the forfeiture allegations the

24   thing that -- this is where we get th(

25   seeking in money judgment. It's $553

Att. #29.4

46

clear.

Not only have you reviewed these records, but,
you know, the USAA fraud investigator has reviewed these
extensively and relayed all the information that you've
previously testified about?

A    Right. I rely on it —

Q    And so with bringing out these records, which
are extremely confusing, we're only just trying to answer
your question. So —

A    Well — so just moving up you'll see — let's go
into —

Q    See those right there.

A    Right. On 7-6 transfer from CD.

Can everybody see those?

A JUROR: Yes.

THE WITNESS: So there. And then right below it
— again, this is kind of — I understand how confusing this
is, but right below it you'll see the transfer out of the
450 and the 500,000, 450,000 and 50,000, also on 7-6.
Does everybody see that?

A JUROR: Uh-huh (affirmative response).

THE WITNESS: Okay. I'm going to switch us to
another account. Bear with me.

Q    (By Ms. Davidson) Show the ac...

A    I'll show you this account nur...

Att. #29.5

Att. #30.1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                         Case No.: 3:17-CR-82

RANDALL KEITH BEANE AND
HEATHER ANN TUCCI-JARRAF,

        Defendants.

VOLUME I of VIII

JURY TRIAL PROCEEDINGS
BEFORE THE HONORABLE THOMAS A. VARLAN

January 23, 2018
9:16 a.m. to 5:00 p.m.

APPEARANCES:

FOR THE PLAINTIFF:
                CYNTHIA F. DAVIDSON, ESQUIRE
                ANNE-MARIE SVOLTO, ESQUIRE
                Assistant United States Attorney
                United States Department of Justice
                Office of the United States Attorney
                800 Market Street
                Suite 211
                Knoxville, Tennessee 37902

FOR THE DEFENDANT:
RANDALL BEANE
                RANDALL KEITH BEANE, PRO SE
                Blount County Detention Center
                920 East Lamar Alexander Parkway
                Maryville, Tennessee 37804

FOR THE DEFENDANT:
RANDALL BEANE
(As Elbow Counsel)
                STEPHEN G. McGRATH, ESQUIRE
                9111 Cross Park Drive
                Suite D-200
                Knoxville, Tennessee 37923

REPORTED BY:
        Rebekah M. Lockwood, RPR, CRR
            Official Court Reporter
               (865) 210-6698
               P.O. Box 1823
        Knoxville, Tennessee 37901-1823

1    and then I think there was some kind of maybe IP logs that

2    showed a -- where, you know -- just IP logs.

3        Q    And that is what you used to make a determination

4    that a -- when you were working on an affidavit for the

5    warrant, because you have to basically have an application of

6    affidavit, an affidavit application for a warrant in order for

7    a warrant to be issued.  Is that correct?

8        A    You have -- yeah, well you have an affidavit that we

9    swear to, you know, facts, and then, yeah, it's -- yes, ma'am.

10   You would then, I guess, you -- yeah, there is an application,

11   an affidavit, and then you ultimately get an order from the

12   court -- from the magistrate judge, yes, ma'am.

13        But I'm not just working on that.  I mean, we are

14   working on this from multiple angles.  We've got people looking

15   into the background.  We've got people -- like I said, I'm

16   working on the affidavit.  We're trying to get calls in to USAA

17   to understand more detail.

18        Like I said, we were working on the affidavit.  It is

19   not a finished product at this time.  We are working on it.  We

20   have credible, reliable information from one of the, you know,

21   a large financial -- United States financial institution that a

22   theft has occurred.  And we are conducting an investigation

23   accordingly and reacting accordingly.  Have no reason to doubt

24   USAA's information that they provided to us.

25        Q    So at that point, you had determined that USAA Bank

Att. #30.2

Parker Still - Cross-Examination

1    you stop the lawful process, the criminal procedures you're

2    supposed to follow in order to have a warrant to be able to

3    arrest someone? What -- who called you with that information

4    that had you abandon protocols and process?

5        A     I never --

6        Q     For what you had stated was to protect victim and

7    asset?

8        A     The argument that I abandoned protocols and process,

9    I strongly disagree with.    I did not abandon anything.    We

10   have -- we can make a probable cause arrest based on

11   information.

12            Just like tonight if I see a shoplifter running down

13   the aisle at Walmart, I can tackle them.    You know, I can make

14   a probable cause arrest in Tennessee.

15            So let's -- I didn't abandon any type of protocols or

16   anything.    Our job is to stop criminal activity.    So I strongly

17   disagree with that assumption that we abandoned anything.

18            I was working on a seizure warrant.    That is correct.

19   At the time I was working on a seizure warrant in coordination

20   with the U.S. Attorney's Office.    Once the facts changed, and

21   Mr. Beane starts -- is -- plans to leave in that motor home or

22   it's going to be -- the keys are going to be turned over to him

23   at Buddy Gregg, we had to react.    There was not time for me to

24   get in front of the magistrate judge.    There was not time for

25   me to finish an affidavit.    We had to react at the time.

UNITED STATES DISTRICT COURT

Att. #30.3

1    to jail.

2         Q    Did you ever provide a copy of that alleged South

3    Carolina outstanding warrant to Ms. Davidson or anyone on

4    the -- at the DOJ?

5         A    You know, I would have to look back on it. What we

6    normally do is we turn our file -- our discovery file over to

7    the prosecutors.

8         Q    Okay.    On July 11th, prior to or at any moment, did

9    you ever present a warrant to Mr. Beane or the other

10   unidentified male and unidentified female that you found in

11   that vehicle?    Did you ever present an actual paper warrant or

12   electronic warrant to any of those three?

13        A    No, ma'am.    And I -- I don't -- I mean, that's -- I

14   think that's some of TV stuff where we serve people, put a

15   warrant in their hands.    You know, that's -- I don't -- that's

16   just not general practice where you would, you know, serve

17   someone -- hand someone a warrant, generally.

18        Q    Okay.

19        A    I'm not saying it doesn't happen.    I'm just saying,

20   you know, the fact that we -- you know, we've made -- you know,

21   we have -- it's a team effort.    We rely on information that is

22   provided to us, and we go out and we do our jobs.    And on that

23   day --

24        Q    Sorry.

25        A    Oh, go ahead.

UNITED STATES DISTRICT COURT

Att. #30.4

1    not know who all -- you know, we don't -- it's -- we're

2    reacting to a situation. We do not know what -- you know, if

3    there's other people involved. We just don't know. We have to

4    make that arrest, get him cuffed up.

5    He was -- he did, as you said, he obtained a cut on

6    his head. We had an EMT, Jason, who was at the scene, is an

7    agent who's also an EMT and he treated him immediately. Also,

8    we called an ambulance just to be on the safe side, and

9    Mr. Beane refused treatment.

10   Q    When -- after he received the head injury, he refused

11   treatment?

12   A    I disagree with that -- I don't know -- I mean, an

13   injury, he got a cut on his head.

14   Q    302 that he had a head injury. The actual -- okay.

15   Let's step aside from that. When you approached the vehicle,

16   were weapons drawn?

17   A    I don't recall a weapon being drawn, no, ma'am. I

18   don't --

19   Q    How many officers were there?

20   A    At the time, there were initially four total FBI

21   agents that were there at the scene.

22   Q    And supporting officers, how many?

23   A    Got there a little bit later. There were some Knox

24   County deputies that arrived and some of our task force

25   officers.

Att. #30.5

1    A    Yes.

2    Q    And what did he call this funding account?

3    A    It was listed as trust.

4    Q    Okay.  And what was the routing number of that

5    funding account?

6    A    I don't have the exact number, but it was for the

7    Federal Reserve Bank.

8    Q    And what was the account number?

9    A    The account number was Randall Beane's Social

10   Security number.

11   Q    So his actual -- his actual Social Security number?

12   A    Yes.

13   Q    So Federal Reserve routing number and then his actual

14   Social Security number on July 3rd?

15   A    Correct.

16   Q    Okay.  And so once he added that funding account,

17   what did he do?

18   A    He used that account to pay -- to completely pay off

19   the four loans, to pay off his credit card, and to pay his auto

20   insurance in full.

21   Q    Okay.  And so he added this account, and then made

22   all these payments.  Is that an instantaneous process?  Does --

23   when he adds this account, is the money immediately sucked out

24   of whatever he put on the website?

25   A    The account is added.  And to pay your bills, it

UNITED STATES DISTRICT COURT

Att. #30.6

Att. #31.1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

    Case No.: 3:17-CR-82

RANDALL KEITH BEANE AND
HEATHER ANN TUCCI-JARRAF,

    Defendants.

VOLUME II of VIII

JURY TRIAL PROCEEDINGS
BEFORE THE HONORABLE THOMAS A. VARLAN

January 24, 2018
9:09 a.m. to 5:16 p.m.

APPEARANCES:

FOR THE PLAINTIFF:
    CYNTHIA F. DAVIDSON, ESQUIRE
    ANNE-MARIE SVOLTO, ESQUIRE
    Assistant United States Attorney
    United States Department of Justice
    Office of the United States Attorney
    800 Market Street
    Suite 211
    Knoxville, Tennessee 37902

FOR THE DEFENDANT:
RANDALL BEANE
    RANDALL KEITH BEANE, PRO SE
    Blount County Detention Center
    920 East Lamar Alexander Parkway
    Maryville, Tennessee 37804

FOR THE DEFENDANT:
(As Elbow Counsel)
    STEPHEN G. McGRATH, ESQUIRE
    9111 Cross Park Drive
    Suite D-200
    Knoxville, Tennessee 37923

REPORTED BY:
Rebekah M. Lockwood, RPR, CRR
Official Court Reporter
(865) 210-6698
P.O. Box 1823
Knoxville, Tennessee 37901-1823

1    A    ENALRR67@gmail.com.

2    Q    Okay.    And member number?

3    A    40540949.

4    Q    Social Security number?

5    A    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.

6    Q    Okay.    And let's go to the -- David, if you can, to

7    the information regarding -- no, not that.    I'm sorry.    If you

8    could go to the information regarding -- okay.    Go to the

9    second page of this exhibit, please.

10    Q    Okay.    And tell me what is the initial deposit.

11    A    500,000.

12    Q    Okay.    And what is the routing number?

13    A    That's the Federal Reserve routing number.

14    Q    And what is the funding number -- I mean, I'm sorry,

15    the funding account number?

16    A    It's 244391135.

17    Q    Okay.    So did you do a spreadsheet of all the CDs

18    that the defendant attempted to purchase in this way on -- or

19    did purchase in this way from July 5th through July 7th?

20    A    I did.

21    Q    Would this spreadsheet assist you in your testimony?

22    A    Yes, it will.

23    Q    Okay.    If you could pull up Government's Exhibit 2.

24    Okay.    Explain to the jury what's contained -- first

25    of all, is this for Randall Beane's account?

Att. #31.2

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 51 of 164   PageID #: 20012

1  and how people can use the Treasury -- the routing number, the

2  Federal Reserve routing number and your social to pay your

3  bills.

4      Q     Okay.   During the theft from the defendant, Randall

5  Keith Beane, roughly July 30 -- I'm sorry, July 3rd, 2017

6  through July 10th, 2017, was USAA Bank FDIC insured?

7      A     Yes.

8      Q     Okay.   Total amount of CDs purchased by Randall Beane

9  using the routing number of the Federal Reserve Bank and the

10 bad account number?

11     A     There were 32 successfully opened CDs.

12     Q     And what was the amount of the -- that were funded?

13     A     It was over $31 million.

14     Q     So if I told you the number was $31,000,494,974

15 [sic], would that sound right?

16     A     That sounds right.

17     Q     Okay.   You talked a little bit about USAA trying to

18 claw the money back?

19     A     Yes.

20     Q     What's the total loss to USAA Bank based on this

21 fraud scheme?

22     A     Right now the consumer loans are in default about

23 $25,000, the credit cards are in default about another 25,000,

24 and then the checking amount, over 500,000, so over $550,000.

25         MS. DAVIDSON:   May I have a moment, Your Honor.

UNITED STATES DISTRICT COURT

Jaron Patterson - Cross-Examination

1    Q    Is there a reason why you didn't take a record of a

2    screenshot of the entire post?

3    A    I don't recall why, no.

4    Q    Okay.  Were you at the event at Buddy Gregg's on

5    July 11th, 2017?

6    A    I was.

7    Q    Okay.  You were one of the arresting officers?

8    A    No.  I wasn't an arresting officer, but I was there.

9    Q    You were on the scene.  Okay.  Do you know if there

10   was a warrant on the premises?

11   A    On the premises?

12   Q    Did you -- did the task force that went to Buddy

13   Gregg that day?

14   A    The FBI personnel who went to the scene did -- were

15   all aware there was an active arrest warrant for Randall Beane,

16   but there were no -- I don't know what you mean by "on the

17   premises."  Did we have a warrant for the premises?

18   Q    No.  Did you have a warrant for Mr. Beane with you?

19   A    I didn't have one with me, but we had knowledge there

20   was an active arrest warrant.

21   Q    And per your knowledge, what was -- who issued that

22   active arrest warrant?

23   A    I don't recall.

24   Q    And what steps, if any, did you take to confirm there

25   was an -- personally, what steps did you take to confirm that

UNITED STATES DISTRICT COURT

Att. #31.4

1  there was an active outstanding warrant?

2        A   Law enforcement personnel confirmed it, acting on

3  good faith with other law enforcement officers.

4        Q   And you said law enforcement, someone in the law

5  enforcement, who -- which -- because you work for many, or you

6  work with many that you had stated here, FBI, U.S. Marshals?

7        A   It would have been FBI.

8        Q   Do you know which law enforcement?

9        A   It would have been FBI that confirmed.

10       Q   So FBI was the one that informed you that there was

11  an outstanding warrant?

12       A   Yes.

13       Q   Do you remember specifically which FBI agent?

14       A   No.   I don't.

15       Q   And did you receive that information prior to

16  arriving to Buddy Gregg --

17       A   Yes.

18       Q   -- site?   Were you en route or were you in the office

19  when you got that?

20       A   We were in the office.

21       Q   Is there any reason why you guys didn't pull a copy

22  of that alleged active outstanding warrant?

23       A   That's not very common to take a copy.

24       Q   So it's not common to take a copy or to have a

25  warrant to show someone that you were arresting?

UNITED STATES DISTRICT COURT

Att. #31.5

Jaron Patterson – Cross-Examination

1    A    The original copy would have been with the issuing

2    agency, so it was an out-of-state warrant. The original copy

3    would have been in another state.

4    Q    In another state. If there was an outstanding

5    warrant, do you know what kind of outstanding warrant it was?

6    A    I don't recall specifically. It was either a failure

7    to appear or -- I don't recall specifically.

8    Q    Do you recall it was a felony warrant or --

9    A    I don't.

10   Q    -- misdemeanor?

11   A    I don't recall, no.

12   Q    Are there ways to actually check to see if there's

13   a -- any outstanding warrants, like what's your procedure?

14   A    Can either check with the operations center or

15   whoever has access to an NCIC terminal, or you can also

16   physically call the agency who issued it.

17   Q    Did you actually call the physical agency?

18   A    I did not.

19   Q    And did you check with the operations unit to see if

20   they checked the NCIC?

21   A    I don't recall if I actually talked to the operations

22   center or if another officer did.

23   Q    Are you aware of whether anybody that day that was on

24   the premises at Buddy Gregg had actually contacted the

25   operations center?

UNITED STATES DISTRICT COURT

Att. #31.6

1    A    I don't recall who did, no.

2    Q    Okay.  And are you aware of anyone that was at the

3    Buddy Gregg in law enforcement or that was law enforcement at

4    the Buddy Gregg incident on July 7th -- excuse me, July 11th,

5    had actually requested a copy of the physical warrant from the

6    physical agency that issued it?

7    A    No, I don't recall that.

8    Q    So you're not sure if it was ever -- truly existed?

9    A    No.

10   Q    Other than relying on the statement of a fellow FBI

11   agent?

12   A    Correct.

13   Q    Couple final questions.

14        Regarding Facebook, when you went to go get those

15   snapshots, did you have to befriend myself or Mr. Randall to be

16   able to view those or it's just open?

17   A    It was just open.

18   Q    So anybody anywhere on this planet would be able to

19   see them?

20   A    Sure.  As long as they had a Facebook account.

21        MS. TUCCI-JARRAF:  Thank you.

22        THE WITNESS:  You're welcome.

23        THE COURT:  Thank you.

24        Cross-examination, Mr. Beane?

25        MR. BEANE:  No, thank you.

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 56 of 164   PageID #: 20017

Jerald Byrne - Direct Examination

1    A    Well, a lot of times they'll go find something wrong

2    that needs servicing, they'll bring it back, put it in the

3    campground. Other times, they may want to get themselves

4    acquainted with the motor home. He was leaving for a -- from

5    what I recall, he was leaving for a trip to go out west and

6    wanted to -- before he went out west, he wanted to familiarize

7    himself with the motor home.

8    Q    And so do you know when he brought the motor home

9    back?

10   A    It would have been sometime on Saturday, because we

11   got the key.

12   Q    Okay. So Saturday, was that July 8th?

13   A    I'd have to look at that. I believe it was, yes.

14   Yeah. Actually, it was, July 8th. And it would have been --

15   he would have left, the day that the wire came through is the

16   day that the motor home was taken possession of.

17   Q    So then after Mr. Beane came in and after he brought

18   the motor coach home, did you guys do any warranty work?

19   A    It wasn't -- it was never brought home. It left the

20   premises and came directly back.

21   Q    Okay.

22   A    So I -- it would have never been brought to his --

23   well, I mean, it may have stopped by, but it never spent the

24   night. It went back to us the same time -- the same day it

25   left.

UNITED STATES DISTRICT COURT

Att. #31.8

Att. #32.1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,

          Plaintiff,

vs.                                    Case No.:   3:17-CR-82

RANDALL KEITH BEANE AND
HEATHER ANN TUCCI-JARRAF,

          Defendants.

VOLUME III of VIII

JURY TRIAL PROCEEDINGS
BEFORE THE HONORABLE THOMAS A. VARLAN

January 25, 2018
9:08 a.m. to 4:50 p.m.

APPEARANCES:

FOR THE PLAINTIFF:      CYNTHIA F. DAVIDSON, ESQUIRE
                        ANNE-MARIE SVOLTO, ESQUIRE
                        Assistant United States Attorney
                        United States Department of Justice
                        Office of the United States Attorney
                        800 Market Street
                        Suite 211
                        Knoxville, Tennessee 37902

FOR THE DEFENDANT:      RANDALL KEITH BEANE, PRO SE
RANDALL BEANE           Blount County Detention Center
                        920 East Lamar Alexander Parkway
                        Maryville, Tennessee 37804

FOR THE DEFENDANT:      STEPHEN G. McGRATH, ESQUIRE
(As Elbow Counsel)      9911 Cross Park Drive
                        Suite D-200
                        Knoxville, Tennessee 37923

REPORTED BY:
Rebekah M. Lockwood, RPR, CRR
      Official Court Reporter
        (865) 210-6698
        P.O. Box 1823
Knoxville, Tennessee 37901-1823

Jerald Byrne - Recross-Examination

1    A    All they had was -- was the collateral that -- that

2    USAA felt that they owned, so ...

3    Q    But the funds had proven to be legitimate?

4    A    The funds had cleared our account.

5    Q    Okay.  Who convinced you -- at some point, you said

6    that you felt comfortable with me as a customer, and you wanted

7    to protect me as a customer.  Who convinced you otherwise to

8    let you believe that I had committed a crime to the point where

9    you allowed the FBI on the property to ambush me, basically?

10   A    Well, it wasn't a convincing of anything.  It's

11   called obstruction of justice.  I'm not going to get involved.

12   My main goal is to keep our customers satisfied and safe.

13   Okay.  When someone above my authority comes in on that

14   property, I don't get involved until the dust settles.

15   Q    Had they been on the property prior to --

16   A    Never.

17   Q    Never?  Just on phone calls?

18   A    I'm sorry?

19   Q    Just phone calls?

20   A    Phone calls.

21        MR. BEANE:  All right.  I have no further questions.

22        THE COURT:  All right.  Thank you, Mr. Beane.

23        Ms. Tucci-Jarraf, any recross in response to the

24   redirect?

25        MS. TUCCI-JARRAF:  Without prejudice, just brief

UNITED STATES DISTRICT COURT

Att. #32.2

1    A    Yeah.  I mean, it's hard to know how you were

2    feeling, but I know I was feeling kind of confused because too

3    much stuff was going on at once.

4    Q    I think we were all trying to -- you know, just kind

5    of -- we didn't know what to do, because we'd never dealt with

6    that before either, none of us.

7         Oh, I did want to ask you, on the extended warranty,

8    is it typical of someone who is -- in all your years in the

9    business, for someone who is planning on turning around and

10   selling the vehicle for profit to buy an extended warranty on

11   it?

12   A    I was never under the impression you were trying to

13   sell it for profit.

14         MR. BEANE:  Thank you.  No further questions.

15         THE COURT:  Thank you.

16         Cross-examination?

17         MS. TUCCI-JARRAF:  Yes, please.

18         THE COURT:  Ms. Tucci-Jarraf.

19                    CROSS-EXAMINATION

20   BY MS. TUCCI-JARRAF:

21   Q    Without prejudice, I have a few questions for you,

22   Mr. Byrne.

23   A    Mr. Byrne, I'm sorry?

24   A    Yes, sir.

25   Q    I misrepresented your name.

UNITED STATES DISTRICT COURT

Att. #32.3

Att. #33.1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                          Case No.: 3:17-CR-82

RANDALL KEITH BEANE AND
HEATHER ANN TUCCI-JARRAF,

        Defendants.

VOLUME IV of VIII

JURY TRIAL PROCEEDINGS
BEFORE THE HONORABLE THOMAS A. VARLAN

January 26, 2018
9:04 a.m. to 4:32 p.m.

APPEARANCES:

FOR THE PLAINTIFF:          CYNTHIA F. DAVIDSON, ESQUIRE
                            ANNE-MARIE SVOLTO, ESQUIRE
                            Assistant United States Attorney
                            United States Department of Justice
                            Office of the United States Attorney
                            800 Market Street
                            Suite 211
                            Knoxville, Tennessee 37902

FOR THE DEFENDANT:          RANDALL KEITH BEANE, PRO SE
RANDALL BEANE               Blount County Detention Center
                            920 East Lamar Alexander Parkway
                            Maryville, Tennessee 37904

FOR THE DEFENDANT:          STEPHEN G. McGRATH, ESQUIRE
(As Elbow Counsel)          9111 Cross Park Drive
                            Suite D-200
                            Knoxville, Tennessee 37923

                            REPORTED BY:
                       Rebekah M. Lockwood, RPR, CRR
                          Official Court Reporter
                            (865) 210-6698
                            P.O. Box 1823
                     Knoxville, Tennessee 37901-1823

1   window.

2   Q   So, then, ACH credits are given to USAA in this

3   particular instance.  Is that what you're saying?

4   A   So in this particular instance, USAA received a

5   credit, but basically what they did is they debited out of the

6   Ginnie Mae's securities account at the Federal Reserve Bank of

7   New York, and they pulled $30.5 million out of the account in

8   30-some-odd tranches, and each one of those ACH debits that

9   were pulled out of the Ginnie Mae securities had to be returned

10  within a two-day window, and they were, so that USAA -- the

11  funds were taken back out of the USAA account, put back in the

12  Ginnie Mae securities account, and there was no loss to the

13  U.S. government.

14  Q   What is Ginnie Mae securities account?

15  A   That is the account -- the routing number of the

16  account that was debited.

17  Q   Okay.  So each routing number of all 12 Federal

18  Reserve Banks, they all go to the Ginnie Mae's securities

19  account?

20  A   No.  So the ACH fraud started out by people looking

21  up Federal Reserve routing numbers and using those routing

22  numbers to debit or pull money out of those routing numbers.

23  It morphed into looking for any U.S. government routing number

24  and then they started pulling it from the various different

25  routing numbers that we talked about, U.S. -- the Federal

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE, TENNESSEE

UNITED STATES OF AMERICA,

    Government,

vs.

    Case No. 3:17-cr-82

RANDALL KEITH BEANE,
HEATHER ANN TUCCI-JARRAF,

    Defendants.

TRIAL PROCEEDINGS
BEFORE THE HONORABLE THOMAS A. VARLAN
Volume V of VIII

Monday, January 29, 2018
9:03 a.m. to 5:38 p.m.

APPEARANCES:

ON BEHALF OF THE GOVERNMENT:

    CYNTHIA F. DAVIDSON, ESQ.
    ANNE-MARIE SVOLTO, ESQ.
    U.S. DEPARTMENT OF JUSTICE
    OFFICE OF U.S. ATTORNEY
    800 Market Street, Suite 211
    Knoxville, TN 37902

ON BEHALF OF THE DEFENDANT RANDALL KEITH
BEANE: (Appearing Pro Se)

    STEPHEN G. MC GRATH, ESQ. (Elbow Counsel)
    ATTORNEY AT LAW
    9111 Cross Park Drive
    Building D, Suite 200
    Knoxville, TN 37923

REPORTED BY:

    Teresa S. Grandchamp, RPR, CRR
    P.O. Box 1362
    Knoxville, Tennessee 37901
    (630) 842-0030

Att. #34.1

1   USAA, did you?

2        A.   Yes.

3        Q.   You told the Wegners that you were going to

4   talk to someone at USAA Bank in Texas?

5        A.   That was the only purpose to go to Texas.

6        Q.   And you told that to Alex and Valerie

7   Wegner?

8        A.   I did.

9        Q.   And so if they said otherwise, if they said

09:11AM 10   that you never mentioned going to USAA, would they

11   be lying?

12        A.   Yes, they would be lying.

13        Q.   All right.  So you're upset at the Wegners

14   right now, aren't you?

15        A.   Only at Alex.

16        Q.   Only at Alex.

17        A.   Yes.

18        Q.   Is that because he opened the door to the

19   RV when the FBI arrived?

09:12AM 20        A.   Yes.

21        Q.   And so you were mad at him for opening the

22   door to the RV?

23        A.   Yes.

24        Q.   Because you had told him not to open the

25   door; isn't that correct?

Att. #34.2

1   A.   I didn't say anything about opening the

2   door.

3   Q.   But you didn't think he should have opened

4   the door?

5   A.   Not without a warrant.

6   Q.   So you had mentioned going to USAA to talk

7   to -- excuse me -- to go to Texas to USAA to talk to

8   someone there, but you knew who to talk to at USAA

09:12AM

9   Bank, didn't you?

10  A.   No, ma'am.

11  Q.   You didn't know that you should -- that the

12  person who was asking questions about this

13  whole -- these -- all of these transactions was True

14  Brown?

15  A.   No.   No, at that point, he was identified

16  as an FBI agent.

17  Q.   You knew on the call with Buddy Gregg that

18  True Brown was with USAA, and Lauren Palmisano with

19  Whitney Bank gave you that information on that

20  conference call, didn't she?

09:13AM

21  A.   Mr. Brown was introduced as an FBI agent to

22  begin with.

23  Q.   And when Lauren Palmisano with Whitney Bank

24  discusses with you that she received a call from

25  True Brown while speaking with you and Heather, she

Att. #34.3

1 to the office for?"

2 And so I walked with him to the office.

3 When I walked in, everybody in the office was

4 looking at me. And I just stood there and looked at

5 them. I didn't feel very comfortable.

6 He said, "Have a seat right here." And

7 I said, "Who am I here to see?" He said, "The boss.

8 He's out to lunch." I said, "Well, when he comes

9 back, I'll be in the coach. Have him to come out

10 there and get me."

11:38AM

11 So I walked out. And as soon as I

12 walked out the door, there was a car pulled up with

13 a couple of these agents in. I didn't know they

14 were agents, but I could tell with -- by the suits

15 and ties they had on, they were not customers.

16 So I walked -- I proceeded to go on to

17 the coach, and at that time I was on the telephone

18 with you.

19 So I sat down in the coach and was

20 waiting for it to cool off, and here comes this car

11:38AM

21 pull up in front of the coach blocking it in. And

22 all these fellows get out and run -- come to the

23 door telling me to open the door.

24 And then Alex opens the door and let's

25 them in, and they're coming in telling me I'm under

Att. #34.4

1  arrest; I'm a fugitive out of Colorado, and I'm

2  trying to tell them I've never been to Colorado.

3      Well, they grab me and pulled me

4  outside the coach and start beating me and throwing

5  me on the ground. One of them has got his foot on

6  my head and telling me to -- I'm telling him, "I

7  can't breathe." And he's saying, "You're going to

8  have to breathe."

9      Well, when I did breathe, my mouth was

10  stuck full of dirt and grass because he had my head

11  so far down in the grass, I couldn't do anything.

12      Q.   If you can -- is that officer here in this

13  room right now?

14      A.   I didn't -- at that point, I think -- I

15  don't see him now. He was in here.

16      This gentleman here known as Mr. Pack

17  who I've pointed to several times, and then

18  Mr. Parker still.

19      Q.   Uh-huh.

20      A.   There was a lady who was pregnant and then

21  the bald-headed guy. I don't remember his name.

22  Jimmy Duran or something like that.

23      Q.   Okay.

24      A.   I think Mr. Duran was the one that was

25  manhandling me the most.

11:39AM (at lines 10, 20)

Att. #34.5

1  A.  Right.

2  Q.  Uh-huh.  But to let me speak with them to

3  at least figure their identification --

4  A.  Right.

5  Q.  -- and their purpose?

6  A.  Right.

7  Q.  Okay.  And then so you could talk to them?

8  A.  Exactly.

9  Q.  Figure out what's going on?

10  A.  Right.

11  Q.  Because at that time I told you perhaps it

12  was part of trying to figure out the identity of who

13  was messing around with the accounts?

14  A.  Exactly.

15  Q.  Uh-huh.

16  A.  Exactly.

17  Q.  It appears they weren't calm that day?

18  A.  They were not calm.

19  Q.  They didn't ask to talk to you?

20  A.  No, they wouldn't let me talk.  They

21  wanted -- they wanted -- it was obvious that they

22  wanted me -- they wanted to manhandle me and they

23  wanted me down.

24  Q.  Okay.  And you received an injury that day?

25  A.  On the back of my head.  Of course, you

Att. #34.6

1   know, I'm in handcuffs; so I can't feel it, but I

2   can feel blood trickling.

3       Q.    You had stated that and we had heard

4   testimony that it was facedown on the ground.

5       A.    Yes, it was facedown.

6       Q.    So how did you receive an injury to the

7   back of your head?

8       A.    They manhandled me pretty good. They

9   twisted this arm up pretty good (indicating). But I

11:42AM

10  don't remember. There was so much activity going

11  on. Things were flying by. So I don't remember

12  exactly how the back of the head got hurt, but I was

13  hurting all over. I had a black eye and --

14      Q.    Okay.

15      A.    -- several bruises all over my body after a

16  couple days.

17      Q.    Did they offer you medical attention?

18      A.    They -- they amazingly had an ambulance

19  pull up and ask me to -- if I wanted to be looked

11:42AM

20  at, and I told them no.

21      Q.    So an ambulance was already present

22  before --

23      A.    I mean, the ambulance --

24      Q.    -- you came out of the RV?

25      A.    -- pulled up during the arrest.

Att. #34.7

```
 1    Q.   Oh, okay.  I see what you're saying.

 2              The ambulance arrived while you were

 3    being arrested?

 4    A.   Yes.

 5    Q.   And -- I'm sorry -- I didn't hear your

 6    answer.  Did you get medical attention?

 7    A.   No.

 8    Q.   Did you refuse the medical attention?

 9    A.   Yes, I did.

10    Q.   Okay.  After that, did they put you into a
11:43AM
11    patrol car?

12    A.   No, at that point, they -- they pulled my

13    pants down around my waist and made me stand there

14    in handcuffs.  And there were people everywhere,

15    just everywhere watching, but I was standing there

16    in my underwear, basically, with my shorts down

17    around my thighs with my handcuffs on with a bandage

18    wrapped tight around my head.

19    Q.   But you said you had refused medical

20    attention.  Who did the bandage around your head?
11:43AM
21    A.   Mr. Pack did.

22    Q.   Mr. Pack?

23    A.   Yes.

24    Q.   Mr. Pack.

25    A.   The gentleman with the glasses there.
```

Att. #34.8

1   Q.   Okay.

2   A.   And he put it on really tight.

3   Q.   And you were in your underwear?

4   A.   They had pulled my pants down so that I was

5   standing there with my underwear showing with my

6   hands cuffed.

7   Q.   And there were people around?

8   A.   There were people everywhere.

9   Q.   Okay.  Did they say -- were you told why

10   your pants were pulled down?

11:44AM

11   A.   I was told nothing.  I was just told there

12   was a warrant for my arrest out of Colorado, and I

13   kept trying to tell them, "I've never been to

14   Colorado."

15   Q.   You told them that?

16   A.   Yes.  They said they didn't care.

17   Q.   Did you ask to see the warrant?

18   A.   Yes.

19   Q.   Did they produce a warrant --

11:44AM

20   A.   No.

21   Q.   -- that day?

22   A.   No.

23   Q.   Did they identify themselves?

24   A.   No.

25   Q.   Did they say what agency they worked for?

Att. #34.9

1    A.    No, nothing.

2    Q.    Did they give you -- nothing?

3    A.    Nothing.

4    Q.    Did they at least tell you why you were

5    arrested?

6    A.    No, nothing; nothing.  They didn't say

7    anything to me.  Other than the fact that

8    Colorado -- I was a fugitive of Colorado.

9    Q.    Okay.  So they did tell you --

10   A.    They told me I was a fugitive out of

11   Colorado.

12   Q.    "Fugitive out of Colorado."

13         So the first time you had ever heard

14   that was from the F- -- from whoever was present,

15   Mr. Parker Still, Mr. Pack, and Mr. --

16   A.    Yes, that's correct.

17   Q.    -- Duran, I think.

18         Was Mr. Patter- -- or Officer

19   Patterson there as well?  He was the one that

20   testified about cyber -- he does cyber stuff

21   from --

22   A.    I never saw him.

23   Q.    -- the University of Tennessee Police

24   Department.

25   A.    There were several officers walking around.

Att. #34.10

## Articles of the Covenant

The Covenant follows the structure of the UDHR and ICESCR, with a preamble and fifty-three articles, divided into six parts.[11]

**Part 1** (Article 1) recognizes the right of all peoples to self-determination, including the right to "freely determine their political status",[12] pursue their economic, social and cultural goals, and manage and dispose of their own resources. It recognises a negative right of a people not to be deprived of its means of subsistence,[13] and imposes an obligation on those parties still responsible for non-self governing and trust territories (colonies) to encourage and respect their self-determination.[14]

**Part 2** (Articles 2 – 5) obliges parties to legislate where necessary to give effect to the rights recognised in the Covenant, and to provide an effective legal remedy for any violation of those rights.[15] It also requires the rights be recognised "without distinction of any kind, such as race, colour, sex, language, religion, political or other opinion, national or social origin, property, birth or other status,"[16] and to ensure that they are enjoyed equally by women.[17] The rights can only be limited "in time of public emergency which threatens the life of the nation,"[18] and even then no derogation is permitted from the rights to life, freedom from torture and slavery, the freedom from retrospective law, the right to personhood, and freedom of thought, conscience and religion.[19]

**Part 3** (Articles 6 – 27) lists the rights themselves. These include rights to:

- physical integrity, in the form of the right to life and freedom from torture and slavery (Articles 6, 7, and 8);
- liberty and security of the person, in the form of the right to freedom from arbitrary arrest and detention and the right to *habeas corpus* (Articles 9 – 11);
- procedural fairness in law, in the form of rights to due process, a fair and impartial trial, the presumption of innocence, and recognition as a person before the law (Articles 14, 15, and 16);
- individual liberty, in the form of the freedoms of movement, thought, conscience and religion, speech, association and assembly, family rights, the right to a nationality, and the right to privacy (Articles 12, 13, 17 – 24);
- prohibition of any propaganda for war as well as any advocacy of national or religious hatred that constitutes incitement to discrimination, hostility or violence by law (Article 20);
- political participation, including the right to the right to vote (Article 25);
- Non-discrimination, minority rights and equality before the law (Articles 26 and 27).

Many of these rights include specific actions which must be undertaken to realise them.

**Part 4** (Articles 28 – 45) governs the establishment and operation of the Human Rights Committee and the reporting and monitoring of the Covenant. It also allows parties to recognise the competence of the Committee to resolve disputes between parties on the implementation of the Covenant (Articles 41 and 42).

**Part 5** (Articles 46 – 47) clarifies that the Covenant shall not be interpreted as interfering with the operation of the United Nations or "the inherent right of all peoples to enjoy and utilize fully and freely their natural wealth and resources".[20]

**Part 6** (Articles 48 – 53) governs ratification, entry into for

Att. #35.1

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 73 of 164   PageID #: 20034

## Rights to physical integrity

**Article 6** of the Covenant recognises the individual's "inherent right to life" and requires it to be protected by law.[21] It is a "supreme right" from which no derogation can be permitted, and must be interpreted widely.[22] It therefore requires parties to take positive measures to reduce infant mortality and increase life expectancy, as well as forbidding arbitrary killings by security forces.[22]

While Article 6 does not prohibit the death penalty, it restricts its application to the "most serious crimes"[23] and forbids it to be used on children and pregnant women[24] or in a manner contrary to the Convention on the Prevention and Punishment of the Crime of Genocide.[25] The UN Human Rights Committee interprets the Article as "strongly suggest[ing] that abolition is desirable," [22] and regards any progress towards abolition of the death penalty as advancing this right.[22] The Second Optional Protocol commits its signatories to the abolition of the death penalty within their borders.

**Article 7** prohibits torture and cruel, inhuman or degrading punishment.[26] As with Article 6, it cannot be derogated from under any circumstances.[19] The article is now interpreted to impose similar obligations to those required by the United Nations Convention Against Torture, including not just prohibition of torture, but active measures to prevent its use and a prohibition on refoulement.[27] In response to Nazi human experimentation during WW2 this article explicitly includes a prohibition on medical and scientific experimentation without consent.[26]

**Article 8** prohibits slavery and enforced servitude in all situations.[28] The article also prohibits forced labour, with exceptions for criminal punishment, military service and civil obligations.[29]

## Liberty and security of person

**Article 9** recognises the rights to liberty and security of the person. It prohibits arbitrary arrest and detention, requires any deprivation of liberty to be according to law,[30] and obliges parties to allow those deprived of their liberty to challenge their imprisonment through the courts.[31] These provisions apply not just to those imprisoned as part of the criminal process, but also to those detained due to mental illness, drug addiction, or for educational or immigration purposes.[32]

**Articles 9.3 and 9.4** impose procedural safeguards around arrest, requiring anyone arrested to be promptly informed of the charges against them, and to be brought promptly before a judge.[33] It also restricts the use of pre-trial detention,[34] requiring that it not be 'the general rule'.[32]

**Article 10** requires anyone deprived of liberty to be treated with dignity and humanity.[36] This applies not just to prisoners, but also to those detained for immigration purposes or psychiatric care.[36] The right complements the Article 7 prohibition on torture and cruel, inhuman or degrading treatment.[36] The article also imposes specific obligations around criminal justice, requiring prisoners in pretrial detention to be separated from convicted prisoners, and children to be separated from adults.[37] It requires prisons to be focused on reform and rehabilitation rather than punishment.[38]

**Article 11** prohibits the use of imprisonment as a punishment for breach of contract.[39]

## Procedural fairness and rights of the accused

Att. #35.2

**Article 14** recognizes and protects a right to justice and a fair trial. **Article 14.1** establishes the ground rules: everyone must be equal before the courts, and any hearing must take place in open court before a competent, independent and impartial tribunal, with any judgment or ruling made public.[40] Closed hearings are only permitted for reasons of privacy, justice, or national security, and judgments may only be suppressed in divorce cases or to protect the interests of children.[40] These obligations apply to both criminal and civil hearings, and to all courts and tribunals.[41] **Article 14.3** mandates that litigants must be informed promptly and in detail in a language which they understand.[42]

The rest of the article imposes specific and detailed obligations around the process of criminal trials in order to protect the rights of the accused and the right to a fair trial. It establishes the Presumption of innocence[43] and forbids double jeopardy.[44] It requires that those convicted of a crime be allowed to appeal to a higher tribunal,[45] and requires victims of a Miscarriage of justice to be compensated.[46] It establishes rights to a speedy trial, to counsel, against self-incrimination, and for the accused to be present and call and examine witnesses.[47]

**Article 15** prohibits prosecutions under Ex post facto law and the imposition of retrospective criminal penalties, and requires the imposition of the lesser penalty where criminal sentences have changed between the offence and conviction.[48] But except the criminal according to general principles of lawrecognized by international community.[49] (jus cogens)

**Article 16** requires states to recognize everyone as a person before the law.[50]

## Individual liberties

**Article 12** guarantees freedom of movement, including the right of persons to choose their residence, to leave and return to a country.[51] These rights apply to legal aliens as well as citizens of a state,[52] and can be restricted only where necessary to protect national security, public order or health, and the rights and freedoms of others.[53] The article also recognises a right of people to enter their own country; the right of return.[54] The Human Rights Committee interprets this right broadly as applying not just to citizens, but also to those stripped of or denied their nationality.[52] They also regard it as near-absolute; "there are few, if any, circumstances in which deprivation of the right to enter one's own country could be reasonable".[52]

**Article 13** forbids the arbitrary expulsion of resident aliens and requires such decisions to be able to be appealed and reviewed.[55]

**Article 17** mandates the right of privacy.[56] This provision, specifically article 17(1), protects private adult consensual sexual activity, thereby nullifying prohibitions on homosexual behaviour.[57] however, the wording of this covenant's marriage right (Article 23) excludes the extrapolation of a same-sex marriage right from this provision.[58] Article 17 also protects people against unlawful attacks to their honor and reputation. Article 17 (2) grants the protection of the law against such attacks.[56]

**Article 18** mandates freedom of religion or belief.[59]

**Article 19** mandates freedom of expression.[60]

**Article 20** mandates sanctions against inciting war and hatred.[61]

Att. #35.3

Case 3:17-cr-00082-TAV-DCP Document 275 Filed 11/04/21 Page 75 of 164 PageID #: 20036

**Article 21** mandates freedom of assembly and **22** mandates freedom of association. These provisions guarantee the right to freedom of association, the right to trade unions and also defines the International Labour Organization. [62][63]

**Article 23** mandates the right of marriage. [64] The wording of this provision neither requires nor prohibits same-sex marriage. [65]

**Article 24** mandates special protection, the right to a name, and the right to a nationality for every child. [66]

**Article 27** mandates the rights of ethnic, religious and linguistic minority to enjoy their own culture, to profess their own religion, and to use their own language. [67]

## Political rights

**Article 3** provides an accessory non-discrimination principle. Accessory in the way that it cannot be used independently and can only be relied upon in relation to another right protected by the ICCPR.

In contrast, **Article 26** contains a revolutionary norm by providing an autonomous equality principle which is not dependent upon another right under the convention being infringed. This has the effect of widening the scope of the non-discrimination principle beyond the scope of ICCPR.

Att. #35.4

Case 3:17-cr-00082-TAV-DCP  Document 275  Filed 11/04/21  Page 76 of 164  PageID #: 20037



ABOUT          RESOURCES          ANALYSIS          NEWS

## Other situations not insured by the FDIC:

**Safe Deposit Boxes** - The contents of a safe deposit box are not insured by the FDIC. (Make sure you read the contract you signed with the bank when you rented the safe deposit box in the event that some other type of insurance is provided; some banks may make a very limited payment if the box or contents are damaged or destroyed, depending on the circumstances.) If you are concerned about the safety, or replacement, of items you have put in a safe deposit box, you may wish to consider purchasing fire and theft insurance. Usually such insurance is part of a homeowner's or tenant's insurance policy for a residence and its contents. Again, consult your insurance agent for more information.

In the event of a bank failure, in most cases an acquiring institution would take over the failed bank's offices, including locations with safe deposit boxes. If no acquirer can be found the FDIC would send boxholders instructions for removing the contents of their boxes.

**Robberies and Other Thefts** - Stolen funds may be covered by what's called a banker's blanket bond, which is a multi-purpose insurance policy a bank purchases to protect itself from fire, flood, earthquake, robbery, defalcation, embezzlement and other causes of disappearing funds. In any event, an occurrence such as a fire or bank robbery may result in a loss to the bank but should not result in a loss to the bank's customers.

Unauthorized access to your funds may be covered by the Electronic Funds Transfer Act and other consumer protections. If a third party somehow gains access to your account and transacts business you did not authorize, you must contact the bank as soon as you notice the loss to learn about their procedures for protecting your rights.

## How to File a Complaint

If you have a problem or a concern with a deposit or investment, try to resolve your complaint directly with an officer of the bank or firm before involving an outside agency. Financial institutions value their customers and most will be helpful. If you are unable to resolve the matter with the financial institution, use the following guidelines to determine where to direct your complaint.

If your complaint is against a salesperson who represents a third-party investment firm, call the number below for instructions on where to write:

The Financial Industry Regulatory Authority (www.finra.org)
(formerly the National Association of Securities Dealers)
(301) 590-6500

If your complaint or inquiry is about a specific financial product or investment, contact:

contains the following clause: "If any person, through temptation or melancholy, shall destroy himself, his estate, real and personal, shall, notwithstanding, (descend to his wife and children, or relations, as if he had died a natural death."

FELON, crimes. One convicted and sentenced for a felony.

2. A felon is infamous, and cannot fill any office, or become a witness in any case, unless pardoned, except in cases of absolute necessity, for his own preservation, and defence; as, for example, an affidavit in relation to the irregularity of a judgment in a cause in which he is a party. 2 Salk. R. 461; 2 Str. 1148; Martin's R. 25; Stark. Ev. part 2, tit. Infamy. As to the effect of a conviction in one state, where the witness is offered in another, see 17 Mass. R. 515 2 Harr. & McHen. R. 120, 378; 1 Harr. & Johns. R. 572. As to the effect upon a copartnership by one of the partners becoming a felon, see 2 Bouv. Inst. n. 1493.

FELONIOUSLY, pleadings. This is a technical word which must be introduced into every indictment for a felony, charging the offence to have been committed feloniously; no other word, nor any circumlocution, will supply its place. Com. Dig. Indictment, G 6; Bac. Ab. Indictment, G 1; 2 Hale, 172, 184; Hawk. B. 2. c. 25, s. 55 Cro. C. C. 37; Burn's Just. Indict. ix.; Williams' Just. Indict. iv.-, Cro. Eliz. .193; 5 Co. 121; 1 Chit. Cr. Law, 242.

FELONY, crimes. An offence which occasions a total forfeiture of. either lands or goods, or both, at common law, to which capital or other punishment may be super-added, according to the degree of guilt. 4 Bl. Com, 94, 5; 1 Russ. Cr. *42; 1 Chit. Pract. 14; Co. Litt . 391; 1 Hawk. P. C. c. 37; 5 Wheat. R. 153, 159.

FEMALE. This term denotes the sex which bears young.

2. It is a general rule, that the young of female animals which belong to us, are ours, nam fetus ventrem sequitur. Inst. 2, 1, 19; Dig. 6, 1, 5, 2. The rule is, in general, the same with regard to slaves; but when a female slave comes into. a free state, even without the consent of her master, and is there delivered of a child, the latter is free. Vide Feminine; Gender; Masculine.

FEME, or, more properly,

FEMME. Woman.

2. This word is frequently used in law. Baron and feme, husband and wife; feme covert, a. married woman; feme sole, a single woman.

3. A feme covert, is a married woman. A feme covert may sue and [...] a feme sole, when the husband is civiliter mortuus. Bac. Ab. Baron [...] Actions, part 1, section 1, §7, n. 3; or where, as it has been decided [...]

Att. #37

# 18 U.S. Code § 241.Conspiracy against rights

U.S. Code    Notes

Intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—

They shall be fined under this title or imprisoned not more than ten years, or both, and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

If two or more persons conspire to injure, oppress, threaten, or

(June 25, 1948, ch. 645, 62 Stat. 696; Pub. L. 90–284, title I, § 103(a), Apr. 11, 1968, 82 Stat. 75; Pub. L. 100–690, title VII, § 7018(a), (b)(1), Nov. 18, 1988, 102 Stat. 4396; Pub. L. 103–322, title VI, § 60006(a), title XXXII, §§ 320103(a), 320201(a), title XXXIII, § 330016(1)(L), Sept. 13, 1994, 108 Stat. 1970, 2109, 2113, 2147; Pub. L. 104–294, title VI, §§ 604(b)(14)(A), 607(a), Oct. 11, 1996, 110 Stat. 3507, 3511.)

Att. #38

# 18 U.S. Code § 242.Deprivation of rights under color of law

## U.S. Code    Notes

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

(June 25, 1948, ch. 645, 62 Stat. 696; Pub. L. 90–284, title I, § 103(b), Apr. 11, 1968, 82 Stat. 75; Pub. L. 100–690, title VII, § 7019, Nov. 18, 1988, 102 Stat. 4396; Pub. L. 103–322, title VI, § 60006(b), title XXXII, §§ 320103(b), 320201(b), title XXXIII, § 330016(1)(H), Sept. 13, 1994, 108 Stat. 1970, 2109, 2113, 2147; Pub. L. 104–294, title VI, §§ 604(b)(14)(B), 607(a), Oct. 11, 1996, 110 Stat. 3507, 3511.)

Att. #39

# 18 U.S. Code § 1590.Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor

U.S. Code    Notes

**(a)**Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

**(b)**Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be subject to the penalties under subsection (a).

(Added Pub. L. 106–386, div. A, § 112(a)(2), Oct. 28, 2000, 114 Stat. 1487; amended Pub. L. 110–457, title II, § 222(b)(4), Dec. 23, 2008, 122 Stat. 5069.)

Att. #40

# 1033 KIDNAPPING—18 U.S.C. §§ 1201, 1202

Conviction for the offense of kidnapping requires proof of transportation in interstate commerce, of an unconsenting person, who is held for ransom or reward or otherwise, where the accused's acts were knowingly and willfully committed. *See United States v. Osborne*, 68 F.3d 94 (5th Cir. 1995). *See also United States v. Crosby*, 713 F.2d 1066 (5th Cir.), *cert. denied*, 464 U.S. 1001 (1983). Proof is not required that the accused carried out the kidnapping for personal financial gain. *See United States v. Childress*, 26 F.3d 498 (4th Cir. 1994), *cert. denied*, ___ U.S. ___, 115 S. Ct. 1115 (1995). Situations falling within the "or otherwise" language of the statute have included those where the purpose of the kidnapping was to silence a potential witness, *see United States v. Satterfield*, 743 F.2d 827 (11th Cir. 1984), *on remand*, 599 F. Supp. 958, *cert. denied*, 471 U.S. 1117 (1985), and kidnapping for the purpose of sexual gratification, *see United States v. McBryar*, 553 F.2d 433 (5th Cir.), *cert. denied*, 434 U.S. 862 (1977). Section 2A4.1 of the United States Sentencing Commission's guidelines governs kidnapping offenses.

[cited in JM 9-60.100]

‹ 1032. Sentencing Enhancement—"Three Strikes" Law

up

1034. Kidnapping—Federal Jurisdiction ›

*Updated January 21, 2020*

Att. #41

# 18 U.S. Code § 1621.Perjury generally

U.S. Code    Notes

Whoever—

**(1)**having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

**(2)**in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

(June 25, 1948, ch. 645, 62 Stat. 773; Pub. L. 88–619, § 1, Oct. 3, 1964, 78 Stat. 995; Pub. L. 94–550, § 2, Oct. 18, 1976, 90 Stat. 2534; Pub. L. 103–322, title XXXIII, § 330016(1)(I), Sept. 13, 1994, 108 Stat. 2147.)

**Att. #42**

1/1

# 18 U.S. Code § 2382.Misprision of treason

U.S. Code      Notes

Whoever, owing allegiance to the United States and having knowledge of the commission of any treason against them, conceals and does not, as soon as may be, disclose and make known the same to the President or to some judge of the United States, or to the governor or to some judge or justice of a particular State, is guilty of misprision of treason and shall be fined under this title or imprisoned not more than seven years, or both.

(June 25, 1948, ch. 645, 62 Stat. 807; Pub. L. 103–322, title XXXIII, § 330016(1)(H), Sept. 13, 1994, 108 Stat. 2147.)

Att. #43

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 84 of 164   PageID #: 20045

# 18 U.S. Code § 4.Misprision of felony

U.S. Code          Notes

Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

(June 25, 1948, ch. 645, 62 Stat. 684; Pub. L. 103–322, title XXXIII, §330016(1)(G), Sept. 13, 1994, 108 Stat. 2147.)

Att. #44

# 18 U.S. Code § 2381. Treason

U.S. Code    Notes

Whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason and shall suffer death, or shall be imprisoned not less than five years and fined under this title but not less than $10,000; and shall be incapable of holding any office under the United States.

(June 25, 1948, ch. 645, 62 Stat. 807; Pub. L. 103–322, title XXXIII, §330016(2)(J), Sept. 13, 1994, 108 Stat. 2148.)

Att. #45

# 18 U.S. Code § 371.Conspiracy to commit offense or to defraud United States

U.S. Code    Notes

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

(June 25, 1948, ch. 645, 62 Stat. 701; Pub. L. 103–322, title XXXIII, §330016(1)(L), Sept. 13, 1994, 108 Stat. 2147.)

Att. #46

# 25 CFR § 11.411 - Criminal trespass.

CFR

## § 11.411 Criminal trespass.

**(a)** A person commits an offense if, knowing that he or she is not licensed or privileged to do so, he or she enters or surreptitiously remains in any building or occupied structure. An offense under this subsection is a misdemeanor if it is committed in a dwelling at night. Otherwise it is a petty misdemeanor.

**(b)** A person commits an offense if, knowing that he or she is not licensed or privileged to do so, he or she enters or remains in any place as to which notice against trespass is given by:

**(1)** Actual communication to the actor; or

**(2)** Posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or

**(3)** Fencing or other enclosure manifestly designed to exclude intruders.

**(c)** An offense under this section constitutes a petty misdemeanor if the offender defies an order to leave personally communicated to him or her by the owner of the premises or other authorized person. Otherwise it is a violation.

Att. #47

# Tenn. Code Ann. § 39-13-101

[Copy Citation]

Current through the 2020 Regular Session.

**TN - Tennessee Code Annotated**   **Title 39 Criminal Offenses**   **Chapter 13 Offenses Against Person**   **Part 1 Assaultive Offenses**

## 39-13-101. Assault.

**(a)** A person commits assault who:

**(1)** Intentionally, knowingly or recklessly causes bodily injury to another;

**(2)** Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

**(3)** Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

**(b)**

**(1)** Assault under:

**(A)** Subdivision (a)(1) is a Class A misdemeanor, punishable by incarceration and a fine not to exceed fifteen thousand dollars ($15,000);

**(B)** Subdivision (a)(2) is a Class A misdemeanor; and

**(C)** Subdivision (a)(3) is a Class B misdemeanor.

**(2)** Any conduct by an inmate against a correctional officer, guard, jailer, or other full-time employee of a penal institution, local jail, or workhouse, that would constitute an assault under subdivision (a)(1) shall be reported by the managing authority of the institution to the appropriate district attorney general for prosecution.

**(3)** In addition to any other punishment that may be imposed for a violation of this section, if the relationship between the defendant and the victim of the assault is such that the victim is a domestic abuse victim as defined in § 36-3-601, and if, as determined by the court, the defendant possesses the ability to pay a fine in an amount not in excess of two hundred dollars ($200), then the court shall impose a fine at the level of the defendant's ability to pay, but no less than one hundred dollars ($100) and not in excess of two hundred dollars ($200). The additional fine shall be paid to the clerk of the court imposing sentence, who shall transfer it to the state treasurer, who shall credit the fine to the general fund. All fines so credited to the general fund shall be subject to appropriation by the general assembly for the exclusive purpose of funding family violence shelters and shelter services. Such appropriation shall be in addition to any amount appropriated pursuant to § 67-4-411.

**(c)** For purposes of this section and § 39-13-102, "health care provider" means a person who is licensed, certified or otherwise authorized or permitted by the laws of this state to administer health care in the ordinary course of business in the practicing of a profession.

Att. #48

# Tenn. Code Ann. § 39-13-102

**Copy Citation**

Current through the 2020 Regular Session.

## 39-13-102. Aggravated assault.

(a)

(1) A person commits aggravated assault who:

(A) Intentionally or knowingly commits an assault as defined in § 39-13-101, and the assault:

(i) Results in serious bodily injury to another;

(ii) Results in the death of another;

(iii) Involved the use or display of a deadly weapon; or

(iv) Involved strangulation or attempted strangulation; or

(B) Recklessly commits an assault as defined in § 39-13-101(a)(1), and the assault:

(i) Results in serious bodily injury to another;

(ii) Results in the death of another; or

(iii) Involved the use or display of a deadly weapon.

(2) For purposes of subdivision (a)(1)(A)(iv), "strangulation" means intentionally or knowingly impeding normal breathing or circulation of the blood by applying pressure to the throat or neck or by blocking the nose and mouth of another person, regardless of whether that conduct results in any visible injury or whether the person has any intent to kill or protractedly injure the victim.

(b) A person commits aggravated assault who, being the parent or custodian of a child or the custodian of an adult, intentionally or knowingly fails or refuses to protect the child or adult from an aggravated assault as defined in subdivision (a)(1) or aggravated child abuse as defined in § 39-15-402.

(c) A person commits aggravated assault who, after having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit an assault against an individual or individuals, intentionally or knowingly attempts to cause or causes bodily injury or commits or attempts to commit an assault against the individual or individuals.

(d) [Deleted by 2018 amendment.]

(e)

(1)

(A) Aggravated assault under:

(i) [Deleted by 2018 amendment.]

(ii) Subdivision (a)(1)(A)(i), (iii), or (iv) is a Class C felony;

(iii) Subdivision (a)(1)(A)(ii) is a Class C felony;

(iv) Subdivision (b) or (c) is a Class C felony;

(v) Subdivision (a)(1)(B)(i) or (iii) is a Class D felony;

(vi) Subdivision (a)(1)(B)(ii) is a Class D felony.

(B) However, the maximum fine shall be fifteen thousand dollars ($15,000) for an offense under subdivision (a)(1)(A) or (a)(1)(B), or subsection (c), committed against any of the following persons who are discharging or attempting to

**Att. #49**

Tenn. Code Ann. § 39-14-405

Copy Citation

Current through the 2020 Regular Session.

## 39-14-405. Criminal trespass.

(a) A person commits criminal trespass if the person enters or remains on property, or any portion of property, without the consent of the owner. Consent may be inferred in the case of property that is used for commercial activity available to the general public or in the case of other property when the owner has communicated the owner's intent that the property be open to the general public.

(b) It is a defense to prosecution under this section that:

(1) A person entered or remained on property that the person reasonably believed to be property for which the owner's consent to enter had been granted;

(2) The person's conduct did not substantially interfere with the owner's use of the property; and

(3) The person immediately left the property upon request.

(c) The defenses to prosecution set out in subsection (b) shall not be applicable to a person violating this section if the property owner:

(1) Posts the property with signs that are visible at all major points of ingress to the property being posted and the signs are reasonably likely to come to the attention of a person entering the property; or

(2) Places identifying purple paint marks on trees or posts on the property; provided, that at least one (1) sign is posted at a major point of ingress to the property in a manner that is reasonably likely to come to the attention of a person entering the property and that the sign includes language describing that the use of purple paint signifies "no trespassing." If purple paint is used, then purple paint must be vertical lines of not less than eight inches (8") in length and not less than one inch (1") in width; placed so that the bottom of the mark is not less than three feet (3') or more than five feet (5') from the ground; and placed at locations that are reasonably likely to come to the attention of a person entering the property.

(d) For purposes of this section, "enter" means intrusion of the entire body or when a person causes an unmanned aircraft to enter that portion of the airspace above the owner's land not regulated as navigable airspace by the federal aviation administration.

(e) Entering or remaining on railroad or utility right-of-way property by an adjoining landowner for usual and customary activities of the type defined in §§ 1-3-105(a)(2)(A)(i) and (ii), (B) and (C) and 43-1-113(a), (b)(1)(A) and (B), (b)(2) and (b)(3) shall not be considered trespass under this section. This subsection (e) shall not apply if the railroad or utility right-of-way owner, by a personal communication or posting at the site by someone with either actual authority or apparent authority to act for the railroad or utility right-of-way owner, has communicated to the adjoining landowner that the activity is not permitted.

(f)

(1) The secretary of state shall establish a no trespass public notice list identifying employers in this state who have requested established private property rights to be recognized and recorded against a trespasser under subsection (a).

(2) To be included on the list, an employer shall provide to the secretary ░░░ ░hat establish the employer's private property rights, including the address ai ░░░ i it

# Tenn. Code Ann. § 39-11-614

Copy Citation

Current through the 2020 Regular Session.

TN - Tennessee Code Annotated   Title 39 Criminal Offenses   Chapter 11 General Provisions   Part 6
Justification Excluding Criminal Responsibility

## 39-11-614. Protection of property.

(a) A person in lawful possession of real or personal property is justified in threatening or using force against another, when and to the degree it is reasonably believed the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property.

(b) A person who has been unlawfully dispossessed of real or personal property is justified in threatening or using force against the other, when and to the degree it is reasonably believed the force is immediately necessary to reenter the land or recover the property, if the person threatens or uses the force immediately or in fresh pursuit after the dispossession:

(1) The person reasonably believes the other had no claim of right when the other dispossessed the person; and

(2) The other accomplished the dispossession by threatening or using force against the person.

(c) Unless a person is justified in using deadly force as otherwise provided by law, a person is not justified in using deadly force to prevent or terminate the other's trespass on real estate or unlawful interference with personal property.

Att. #51

# Tenn. Code Ann. § 40-6-103

Copy Citation

Current through the 2020 Regular Session.

**TN – Tennessee Code Annotated**    **Title 40 Criminal Procedure**    **Chapter 6 Warrants**    **Part 1 Search**
**Warrants**

## 40-6-103. Probable cause and affidavit.

A search warrant can only be issued on probable cause, supported by affidavit, naming or describing the person, and
particularly describing the property, and the place to be searched.

**Att. #52**

Case 3:17-cr-00082-TAV-DCP Document 275 Filed 11/04/21 Page 93 of 164 PageID #: 20054

# Tenn. Code Ann. § 40-6-104

Copy Citation

Current through the 2020 Regular Session.

**TN - Tennessee Code Annotated**     **Title 40 Criminal Procedure**     **Chapter 6 Warrants**     **Part 1 Search**
**Warrants**

## 40-6-104. Examination of complainant.

The magistrate, before issuing the warrant, shall examine on oath the complainant and any witness the complainant may produce, and take their affidavits in writing, and cause them to be subscribed by the persons making the affidavits. The affidavits must set forth facts tending to establish the grounds of the application, or probable cause for believing the grounds exist.

**Att. #53**

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 94 of 164   PageID #:
20055

# Tenn. Code Ann. § 40-6-208

Copy Citation

Current through the 2020 Regular Session.

TN - Tennessee Code Annotated    Title 40 Criminal Procedure    Chapter 6 Warrants    Part 2 Arrest Warrants

## 40-6-208. Contents of warrant.

**(a)** The warrant should specify the name of the defendant, but if it is unknown to the magistrate, the defendant may be designated in the warrant by any name.

**(b)** It should also state the offense either by name, or so that it can be clearly inferred.

**(c)** It should also show, in some part, the county in which issued, the name and initials of the magistrate in office.

**(d)** The warrant shall include a copy of the affidavit of complaint.

Att. #54

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 95 of 164   PageID #: 20056

# Tenn. Code Ann. § 40-6-216

**Copy Citation**

Current through the 2020 Regular Session.

**TN - Tennessee Code Annotated**   **Title 40 Criminal Procedure**   **Chapter 6 Warrants**   **Part 2 Arrest**
**Warrants**

## 40-6-216. Copies of warrants.

**(a)** A criminal defendant or such defendant's attorney shall have the right to request and receive at a reasonable time a copy of any warrant or summons issued pursuant to this part that is served upon the defendant.

**(b)** Any agency, department or employee or agent of an agency or department who knowingly refuses to provide a copy of the warrant of arrest or summons to a defendant or the defendant's attorney within a reasonable time upon being requested to do so may be in contempt of the court issuing the warrant or summons. In addition to the punishment for contempt, the agency or department shall be required to pay all attorney fees and court costs reasonably incurred by the defendant or the defendant's attorney in obtaining a copy of the warrant or summons.

Att. #55

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 96 of 164   PageID #: 20057

# Tenn. Code Ann. § 47-1-101

Copy Citation

Current through the 2020 Regular Session.

TN - Tennessee Code Annotated    Title 47 Commercial Instruments And Transactions    Chapter 1
Uniform Commercial Code — General Provisions    Part 1 General Provisions

## 47-1-101. Short title.

**(a)** Chapters 1-9 of this title shall be known and may be cited as the Uniform Commercial Code.

**(b)** This chapter shall be known and may be cited as the "Uniform Commercial Code — General Provisions."

Att. #56

Tenn. Code Ann. § 47-1-103

Current through the 2020 Regular Session.

**Copy Citation**

TN - Tennessee Code Annotated   Title 47 Commercial Instruments And Transactions   Chapter 1
Uniform Commercial Code — General Provisions   Part 1 General Provisions

**47-1-103.** Construction of chapters 1-9 to promote their purposes and policies
— Applicability of supplemental principles of law.

(a) Chapters 1-9 of this title must be liberally construed and applied to promote its underlying purposes and policies, which are:

(1) To simplify, clarify, and modernize the law governing commercial transactions;

(2) To permit the continued expansion of commercial practices through custom, usage, and agreement of the parties; and

(3) To make uniform the law among the various jurisdictions.

(b) Unless displaced by the particular provisions of chapters 1-9 of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions.

(c) In any dispute as to the proper construction of one (1) or more sections of chapters 1-9 of this title, the Official Comments pertaining to the corresponding sections of the Uniform Commercial Code, Official Text, as adopted by the National Conference of Commissioners on Uniform State Laws and the American Law Institute and as in effect on July 1, 2013, in this state, shall constitute evidence of the purposes and policies underlying such sections, unless:

(1) The sections of chapters 1-9 of this title that are applicable to the dispute differ materially from the sections of the Official Text that would be applicable thereto; or

(2) The Official Comments are inconsistent with the plain meaning of the applicable sections of chapters 1-9 of this title.

Att. #57

# Report *of the* Commission on Unalienable Rights

Att. #58.1

"For happily the Government of the United States, which gives to bigotry no sanction, to persecution no assistance requires only that they who live under its protection should demean themselves as good citizens, in giving it on all occasions their effectual support."

George Washington, Letter to the Jews of Newport, 1790

its powers in such form, as to them shall seem most likely to effect their Safety and Happiness."

In the American constitutional tradition, this right of the people to alter or abolish government is both essential and highly restricted. If, as Jefferson writes, "a long train of abuses and usurpations, pursuing invariably the same Object evinces a design to reduce them under absolute Despotism," then it is the people's "right, it is their duty to throw off such Government, and to provide new Guards for their future security." Only, however, in the extreme and dire circumstance in which a government has lost its legitimacy by systematic conduct that denies the very idea of unalienable rights are citizens released from the limitations to which they agreed to be bound as members of a free society and justified in establishing a new form of government to secure their rights.

The aim must always be to restore political society. The civil liberty that political society makes possible — the rights to travel] to enter contracts and agreements; to possess, use, purchase, and dispose of property; to the protection of person and property; to the equal application of criminal laws; and to fair and equal treatment in court — enables individuals to live safely in their families and communities and to enjoy their unalienable rights.

Foremost among the unalienable rights that government is established to secure, from the founders' point of view, are property rights and religious liberty. A political society that destroys the possibility of either loses its legitimacy.

For the founders, property refers not only to physical goods and the fruit of one's labor but also encompasses

life, liberty, and the pursuit of happiness. They assumed, following philosopher John Locke, that the protection of property rights benefits all by increasing the incentive for producing goods and delivering services desired by others.

The benefits of property rights, though, are not only pecuniary. Protection of property rights is also central to the effective exercise of positive rights and to the pursuit of happiness in family, community, and worship. Without the ability to maintain control over one's labor, goods, land, home, and other material possessions, one can neither enjoy individual rights nor can society build a common life. Moreover, the choices we make about what and how to produce, exchange, distribute, and consume can be tightly bound up with the kinds of human beings we wish to become. Not least, the right of private property sustains a sphere in which individuals, their families, and the communities they form can pursue happiness in peace and prosperity.

The importance that the founders attached to private property only compounds the affront to unalienable rights involved at America's founding in creating fellow human beings as property. It also explains why many abolitionists thought that owning property was a necessary element of emancipation: only by becoming property-owning citizens could former slaves exercise economic independence and so fully enjoy their unalienable rights.

Religious liberty enjoys similar primacy in the American political tradition — as an unalienable right, an enduring limit on state power, and a protector of seedbeds of civic virtues. In 1785, James Madison gave classic expression to

Att. #58.2

Att. #59.1

NATURAL LAW AND
ENLIGHTENMENT CLASSICS

# The Law of Nations,

Or, Principles of the Law of Nature,
Applied to the Conduct and Affairs
of Nations and Sovereigns, with Three
Early Essays on the Origin and Nature
of Natural Law and on Luxury

Emer de Vattel

Edited and with an Introduction
by Béla Kapossy and Richard Whatmore

LIBERTY FUND

Indianapolis

resolved to submit to the authority of a monarch,—those citizens who are more jealous of that privilege, so invaluable to those who have tasted it,—though obliged to suffer the majority to do as they please,—are under no obligation at all to submit to the new government: they may quit a society which seems to have dissolved itself in order to unite again under another form: they have a right to retire elsewhere, to sell their lands, and take with them all their effects.

§34. Of the legislative power, and whether it can change the constitution.

Here again a very important question presents itself. It essentially belongs to the society to make laws both in relation to the manner in which it desires to be governed, and to the conduct of the citizens:—this is called the *legislative power*. The nation may intrust the exercise of it to the prince, or to an assembly, or to that assembly and the prince jointly; who have then a right to make new laws and to repeal old ones. It is asked whether their power extends to the fundamental laws,—whether they may change the constitution of the state? The principles we have laid down lead us to decide with certainty, that the authority of these legislators does not extend so far, and that they ought to consider the fundamental laws as sacred, if the nation has not, in very express terms, given them power to change them. For the constitution of the state ought to possess stability: and since that was first established by the nation, which afterwards intrusted certain persons with the legislative power, the fundamental laws are excepted from their commission. It is visible that the society only intended to make provision for having the state constantly furnished with laws suited to particular conjunctures, and, for that purpose, gave the legislature the power of abrogating the ancient civil and political laws that were not fundamental, and of making new ones: but nothing leads us to think that it meant to submit the constitution itself to their will. In short, it is from the constitution that those legislators derive their power: how then can they change it, without destroying the foundation of their own authority? By the fundamental laws of England, the two houses of parliament, in concert with the king, exercise the legislative power: but if the two houses should resolve to suppress themselves, and to invest the king with full and absolute authority, certainly the nation would <12> not suffer it. And who would dare to assert that they would not have a right to oppose it? But if the

Att. #59.2

741 F.2d 336

James C. TREZEVANT, Plaintiff-Appellant,

v.

CITY OF TAMPA, a municipal corporation, et al.,
Defendants-Appellees.

James C. TREZEVANT, Plaintiff-Appellee,

v.

CITY OF TAMPA, a municipal corporation, Hillsborough County
Board of Criminal Justice, et al., Defendants-Appellants.

Nos. 83-3370, 83-3038.

United States Court of Appeals,
Eleventh Circuit.

Sept. 6, 1984.

1

Robert V. Williams, Tampa, Fla., for James C. Trezevant.

Chris W. Altenbernd, Tampa, Fla., for defendants-appellees in No. 83-3370.

Bernard C. Silver, Asst. City Atty., Tampa, Fla., City of Tampa.

Donald G. Greive, Chris W. Altenbernd, Tampa, Fla., for Hillsborough County Bd. of Criminal Justice.

Appeals from the United States District Court for the Middle District of Florida.

Before FAY, VANCE and HATCHETT, Circuit Judges.

FAY, Circuit Judge:

1

In Florida a motorist who receives a traffic citation may sign a promise to appear or post a bond pending court disposition. Mr. Trezevant elected to post a bond, had the necessary cash with him to do so, but found himself in a holding cell behind bars. Feeling that such a procedure deprived him of his civil rights (to remain at liberty), he brought this action. The jury agreed with his contentions and we affirm.

2

This matter was tried before the Honorable William J. Castagna, United States District Court, Middle District of Florida, beginning on October 20, 1983. The amended complaint then before the trial court contained four counts. Count I charged that the City of Tampa and Officer Eichold deprived Mr. Trezevant of his civil rights by improperly arresting him. Count II similarly charged the Hillsborough County Board of Criminal Justice ("HBCJ") and Deputy Edwards with improperly incarcerating Mr. Trezevant. Counts III and IV were included as pendent common law and state law claims against the same defendants. Count III was voluntarily dismissed by the plaintiff and Count IV was disposed of on a motion for directed verdict against the plaintiff. The jury returned a verdict of $25,000 in favor of the plaintiff and against the HCBJ and the City of Tampa. The individual defendants were absolved of all liability.

FACTS

3

The case is now before this court on cross appeals pursuant to 28 U.S.C. Sec. 1291. Mr. Trezevant has appealed the amount of attorney's fees awarded to him and the City of Tampa and the HBCJ have appealed the judgment against them. The parties have raised multiple issues on appeal but we find that a determination of three is dispositive of the entire matter. These three issues are whether the evidence supports the verdict rendered by the jury; whether the amount of the verdict rendered is excessive; and whether the trial court erred in the amount of attorney's fees awarded pursuant to 42 U.S.C. Sec. 1988.

4

Att. #60.1

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 103 of 164   PageID #: 20064

5

On the morning of April 23, 1979, the plaintiff, James C. Trezevant, was en route from his home in northwest Hillsborough County to his office in central Tampa. When he reached the intersection of Habana Avenue and Columbus Drive he stopped for a red light, he was third in line at the intersection. When the light changed, Mr. Trezevant and the two cars in front of him proceeded through the intersection. Just south of the intersection the other two cars came to a sudden stop and turned into a parking lot. In order to avoid a collision, Mr. Trezevant came to a screeching halt. Having avoided an accident, he then proceeded on. Six or seven blocks later, Mr. Trezevant was stopped by Officer Eicholz of the Tampa police department and was issued a citation for reckless driving.2 Officer Eicholz explained to Mr. Trezevant that if Trezevant did not sign the citation he would have to post a bond. Mr. Trezevant elected to go to central booking and post a bond.

6

Central booking has two entrances. In 1979, one of the entrances was used by bail bondsmen and lawyers to post bail bonds. Through a series of halls, this entrance leads to a glass window adjacent to the central booking desk. The only other entrance was used by policemen who were taking arrestees to be booked. This second entrance opened into a large room adjacent to the booking desk. Officer Eicholz escorted Mr. Trezevant to central booking and when they arrived he frisked Mr. Trezevant and took him through the door normally used by policemen with arrestees in custody. Officer Eicholz walked up to the central booking desk and presented the jailer on duty with Mr. Trezevant and with the citations that Mr. Trezevant had refused to sign. The jailer took Mr. Trezevant's valuables and his belt and shoes and placed Mr. Trezevant in a holding cell until he could be processed. Mr. Trezevant was in the holding cell for a total of twenty-three minutes.

7

Mr. Trezevant's complaint centers around the fact that he was incarcerated for a civil infraction. It is true that because Mr. Trezevant could not produce his vehicle registration he could have been arrested. However, it is also true that no one ever thought that Mr. Trezevant was not the owner of the car he was driving. The only reason that he was escorted to central booking was that he had elected to post a bond for the civil infraction of reckless driving. Officer Eicholz consistently maintained that he did not arrest Mr. Trezevant.

SUFFICIENCY OF THE EVIDENCE

8

The City of Tampa and the HBCJ contend that the trial court erred in failing to grant a directed verdict in their favor. A directed verdict decides contested substantive issues as a matter of law, thus we apply the same standard as was applied by the district court:

9

Courts view all the evidence, together with all logical inferences flowing from the evidence, in the light most favorable to the non-moving party....

10

"... [I]f there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury."

11

Neff v. Kehoe, 708 F.2d 639 (11th Cir.1983) (quoting Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969)).

12

Applying this standard to the case at bar, the City of Tampa and HBCJ would hav[...]
caused the deprivation of the plaintiff's rights. They would each have us look at t[...]
Tampa contends that once Officer Eicholz properly escorted Mr. Trezevant to central [...]
The City argues that once Officer Eicholz reached the booking desk and handed t [...]

Mr. Trezevant always had enough cash to bond himself out. No one ever told Mr. Trezevant what he was being incarcerated for; he was not allowed to call an attorney before he was incarcerated; and, he was incarcerated with other persons who were under arrest for criminal violations. Further, while he was being held in the holding cell, Mr. Trezevant suffered severe back pain and his cries for medical assistance were completely ignored.

Att. #60.2

ug.
solved

at
solved

For the reasons stated, we find that the jury verdict was supported by sufficient evidence; the verdict was not excessive; and, the trial court did not abuse its discretion in setting the attorney fee award. Accordingly, the judgment of the district court is AFFIRMED.

---

**1**

This ruling has not been appealed

**2**

Officer Eicholz issued a total of three citations: (1) reckless driving, (2) failure to produce a motor vehicle registration certificate, and (3) refusal to sign a traffic citation. The parties agreed that the third citation was a nullity there being no such offense

**3**

Some confusion surrounds the three citations. The jury could have concluded that Officer Eicholz had not completed the citations until after Mr. Trezevant was placed in the holding cell. The check showing that Mr. Trezevant had been arrested was apparently a mistake

**4**

The City of Tampa was one member of the group that supervised the HBCJ

**5**

Decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding as precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala., 661 F.2d 1206* (11th Cir.1981). Del Casal was decided on January 16, 1981, and, so, is binding precedent in the Eleventh Circuit

**Att. #60.3**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RANDALL BEANE,

    Defendant.

Case No.:  3:17-CR-82

PROCEEDINGS
BEFORE THE HONORABLE C. CLIFFORD SHIRLEY, JR.

August 29, 2017
2:36 p.m. to 3:25 p.m.

APPEARANCES:

FOR THE PLAINTIFF:

CYNTHIA F. DAVIDSON, ESQUIRE
ANNE-MARIE SVOLTO, ESQUIRE
Assistant United States Attorney
United States Department of Justice
Office of the United States Attorney
800 Market Street
Suite 211
Knoxville, Tennessee 37902

FOR THE DEFENDANT:

BOBBY E. HUTSON, JR., ESQUIRE
Federal Defender Services of
Eastern Tennessee, Inc.
800 South Gay Street
Suite 2400
Knoxville, Tennessee 37929-9714

REPORTED BY:

Rebekah M. Lockwood, RPR, CRR
Official Court Reporter
(865) 210-6698
800 Market Street, Suite 130

Att. #61.1

1    the Court could give me a few moments -- a few moments to

2    discuss with him the implications.

3         THE COURT: I doubt that will have much effect on him.

4         MR. HUTSON: It may not.

5         THE COURT: He's got a litany he needs to say. I'm

6    used to this. I've had dozens of this.

7         MR. HUTSON: He also --

8         THE COURT: And he can keep coming back every few days,

9    say it. We'll keep doing it. Doesn't bother me. I'm here all

10   day every day.

11        MR. HUTSON: I understand, Your Honor. He is also

12   potentially going to want to request some type of detention

13   hearing or update.

14        THE COURT: We can't get started. And perhaps that may

15        MR. HUTSON: Correct, your Honor.

16   alleviate some of these issues. I would be happy to take a

17   moment to talk to him, or we can reschedule for another day.

18        THE COURT: Well, I'll give you a couple minutes. I

19   just don't like your chances.

20        MR. HUTSON: Duly noted, Your Honor.

21        THE COURT: Okay. How much time you think you need?

22   Want to get -- want to have five minutes?

23        MR. HUTSON: Five minutes is fine, Your Honor.

24        THE COURT: All right. Why don't you make sure that

25   the sound is off so nobody's picking up a

UNITED STATES DISTRICT C

Att. #61.2

**Doran, James J. (KX) (FBI)**

| | |
|---|---|
| **From:** | Still, Parker H. (KX) (FBI) |
| **Sent:** | Wednesday, July 12, 2017 3:27 PM |
| **To:** | Doran, James J. (KX) (FBI) |
| **Subject:** | FW: Randall Beane |

**From:** Still, Parker H. (KX) (FBI)
**Sent:** Wednesday, July 12, 2017 1:33 PM
**To:** 'Brown, True' <True.Brown@usaa.com>
**Subject:** FW: Randall Beane

**From:** Brown, True [mailto:True.Brown@usaa.com]
**Sent:** Tuesday, July 11, 2017 5:33 PM
**To:** Still, Parker H. (KX) (FBI) <phstill@fbi.gov>
**Subject:** RE: Randall Beane

**From:** Brown, True
**Sent:** Tuesday, July 11, 2017 4:25 PM
**To:** 'parker.stell@fbi.ic.gov' <parker.stell@fbi.ic.gov>
**Subject:** FW: Randall Beane

**From:** Brown, True
**Sent:** Tuesday, July 11, 2017 4:20 PM
**To:** 'parker.stell@ic.fbi.gov' <parker.stell@ic.fbi.gov>
**Subject:** FW: Randall Beane

**From:** Brown, True
**Sent:** Tuesday, July 11, 2017 4:07 PM
**To:** 'parker.stell@ic.fbi.gov' <parker.stell@ic.fbi.gov>
**Subject:** Randall Beane

Parker

1

Att. #62.1

Att. #62.2

I was wondering if you could provide an update as to status of effort to secure the RV.

Also, this link was provided by Tom Grasso, a SSA in CIRFU which lays out the fraud scheme (of course he says it is legit and you are entitled to the money)

https://www.youtube.com/watch?v=R6KK6oAu3k0

The link is to a YouTube video from the Intellectual Freedom Movement on "pay your bills using your secret account" – in the video the narrator (Harvey Dent) advises that everyone has a secret Social Security Trust Account which they can access to pay bills. The key is an indicator on your SSN card which will correspond to a specific Federal Reserve Bank; the account number is same as your SSN.

In regard to our member, Randall K Beane; the acquisition of the CDs; the member entered the routing number for the Federal Reserve Bank on NY and then for the account number entered his SSN (with one digit altered). The member's correct SSN per USAA records and confirmed with open source credit reports was 243-three nine-1135; entered on the funding instructions for the CDs was account 244threenine1135.

As far as the matter with our member, Randall Beane, the loss amount is at approximately $500,000 in addition to the purchase of the RV, the member paid off several consumer loans and a credit card balance; all up totaling $43,458. FCI is taking steps to have the payments reversed and loans and credit card debt placed back on the books. The RV purchase includes a wire transfer of $493,110.68 and a debit card transaction of $10,000 to Buddy Gregg Motor Home.

Again, we appreciate the assistance; pass on my regards to the McAllen crew. Hopefully they did not bring to many bad habits to Knoxville. We tried our best to clean them up before they left the Valley.

True

True Brown
Director, Financial Crimes Investigation
Enterprise Financial Crimes Management, Enterprise Security Group, USAA
9800 Fredericksburg Road, San Antonio, Texas 78288
Desk: (210) 498-0853
Cell: (210) 508-6594
True.Brown@usaa.com

2

**Doran, James J. (KX) (FBI)**

| | |
|---|---|
| **From:** | Still, Parker H. (KX) (FBI) |
| **Sent:** | Wednesday, July 12, 2017 3:27 PM |
| **To:** | Doran, James J. (KX) (FBI) |
| **Subject:** | FW: Information request on arrest and RV |

**From:** Still, Parker H. (KX) (FBI)
**Sent:** Wednesday, July 12, 2017 1:34 PM
**To:** 'Brown, True' <True.Brown@usaa.com>
**Subject:** FW: Information request on arrest and RV

**From:** Brown, True [mailto:True.Brown@usaa.com]
**Sent:** Wednesday, July 12, 2017 9:10 AM
**To:** Still, Parker H. (KX) (FBI) <phstill@fbi.gov>
**Subject:** Information request on arrest and RV

Parker

Now that the smoke has cleared a little; are you in a position to advise:    1. what charges Randall Beane was
arrested/detained on

    2. Do you have any info on the RV such as the VIN (trying to get a pic for my
management) – if I have VIN I can go to dealer website

    3. Do you anticipate charging Beane on complaint

Again, thank you again for jumping on this matter. The quick actions taken has really impressed USAA Executive
Management team.  Makes me proud of the organization.

Let me know what additional information you need and we will pull it.

True

Att. #63

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA

v.                                                          3:17-CR-82
                                                            Judges Varlan/Shirley
RANDALL KEITH BEANE, and
HEATHER ANN TUCCI-JARRAF

## UNITED STATES OF AMERICA'S MOTION *IN LIMINE* TO PROHIBIT JURISDICTION ARGUMENT

The United States of America, by and through J. Douglas Overbey, United States Attorney for the Eastern District of Tennessee, hereby respectfully requests under Federal Rule of Evidence 401, 402 and 403 that the Court grant its First Motion *in Limine* to prohibit evidence relating to this Court's jurisdiction. Defendants have asserted that this Court lacks jurisdiction and that the federal government is "defaulted" and therefore lacks any authority over the defendants or the proceedings in this case. Given the defendants' previous filings and assertions, the United States expects the defendants to advance these theories before the jury at trial. However, any evidence suggesting this Court lacks jurisdiction is irrelevant, confusing and misleading. Moreover, it is wrong. *See* 18 U.S.C. § 3231; *United States v. Pryor*, 842 F.3d 441 (6th Cir. 2016); (Doc. 62, Report and Recommendation, pg. 8-10; Doc. 69, Memorandum and Order Accepting R &R, pg. 5.) Accordingly, such testimony and evidence should be excluded pursuant to Rules 401, 402 and 403 of the Federal Rules of Evidence.

## PROCEDURAL HISTORY

On July 18, 2017, a Grand Jury sitting in the Eastern District of Tennessee returned an Indictment charging Beane with five counts of wire fraud in violation of 18 U.S.C. § 1343 and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); Tucci-

Att. #64.1

Att. #64.2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                           No.:   3:17-CR-82-TAV-CCS

RANDALL KEITH BEANE and
HEATHER ANN TUCCI-JARRAF,

Defendants.

MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on the government's Motion in Limine to
Prohibit Jurisdictional Argument [Doc. 78]. This is the only motion in limine filed in this
case, and the deadline for filing further motions in limine has now passed [Doc. 77 p. 2].
The Court held a final pretrial conference on January 12, at which the defendants requested
additional time to review and respond to the government's motion. The Court granted this
request and ordered the defendants to file any responses to the government's motion by
January 16. Defendant Heather Ann Tucci-Jarraf has now filed a response brief [Doc. 86],
as well as an additional filing that the Court likewise construes as a response [Doc. 81].
Defendant Randall Beane has not responded to the government's motion. For the reasons
explained below, the Court will grant the government's motion in limine.

I.    Standard of Review

"Motions in limine allow the Court to rule on evidentiary issues prior to trial in order
to avoid delay and focus pertinent issues for the jury's consideration." *United States v.*

## III.  Conclusion

Accordingly, the Court hereby **GRANTS** the government's Motion in Limine to Prohibit Jurisdictional Argument [Doc. 78]. It is therefore **ORDERED** that the defendants are prohibited from offering any evidence, testimony, or argument at trial concerning the following subjects: (1) whether this Court has subject-matter jurisdiction over these proceedings; (2) whether the United States government is defaulted, has been foreclosed, or is otherwise legally impaired; and (3) whether the United States government has legal authority to bring a prosecution of the defendants for the charged offenses.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

Att. #64.3

Att. #65.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,

Plaintiff,

v.

RANDALL KEITH BEANE,

Defendant.

No. 3:17-cr-82-TAV-DCP

USAA FEDERAL SAVINGS BANK'S PETITION OF THIRD-PARTY INTEREST

1. I, David True Brown Jr., am a Director of Financial Crimes Investigations for USAA. As part of my job duties, I am responsible for leading/coordinating internal investigations into member fraud, including fraud against USAA Federal Savings Bank ("USAA FSB"). In that role, I have reviewed the documents associated with the fraud perpetrated by Randall Keith Beane against USAA FSB.

2. As set out in the Indictment filed by the United States on July 18, 2017, (Doc. 3), and Preliminary Order of Forfeiture (Doc. 224), Defendant Randall Keith Beane ("the Defendant") fraudulently obtained at least $553,749.99 from USAA FSB through bank fraud. The Defendant used a portion of the funds fraudulently obtained from USAA FSB to purchase a 2017 Entegra Cornerstone 45B 45-foot diesel motorhome, VIN 4VZVU1ED4HC082752 ("the Motorhome").

3. Tennessee state law governs USAA FSB's interest in the vehicle as a result of the Defendant's fraudulent acts. *See, e.g., United States v. Shefton*, 548 F.3d 1360, 1364 (11th Cir. 2008) ("[W]e apply state law to determine the nature of the [petitioner]'s interest in the Forfeited Property"). However, "whether the [petitioner]'s interest in the Forfeited Property is superior and

1

2.

thus renders the forfeiture order invalid under [28 U.S.C.] § 853(n)(6) is a matter of federal law."

*Id.*

4.  Tennessee law imposes a constructive trust when a party "holds the legal right to property which he ought not" as a result of "fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means." *Central Bus Lines v. Hamilton Nat'l Bank*, 239 S.W.2d 583, 585 (Tenn. Ct. App. 1951). Further, a constructive trust may be placed on property where "the funds misappropriated [can] be traced into the specific property sought to be made the subject of the trust." *McConnell v. Henochsberg*, 11 Tenn. App. 176, 187 (1929).

5.  As established at the Defendant's trial, and according to the records of USAA FSB, the funds used to purchase the Motorhome in question are directly traceable to those funds fraudulently obtained from USAA FSB by Defendant. On July 6, 2017, Defendant used a fictitious bank account number and Federal Reserve Bank routing number to fraudulently purchase jumbo Certificate of Deposits (CDs) from USAA FSB, proceeded to immediately liquidate the fraudulently acquired CDs, and then transferred the liquidated funds to his USAA FSB deposit account. On July 7, 2017, Defendant wire transferred $493,110.68 in fraudulently obtained funds from his USAA FSB deposit account to an account at Whitney Bank belonging to a motorhome dealership in order to purchase the Motorhome from the dealership. Defendant purchased the Motorhome entirely with the fraudulently obtained funds and obtained possession of the Motorhome prior to his arrest and the Motorhome's seizure. The dealership sold the Motorhome to Defendant in exchange for the wired funds that were fraudulently obtained from USAA FSB. As a result of the foregoing activity, all of the monies used to purchase the Motorhome are directly

Att. #65.2

traceable to Defendant's bank fraud against USAA FSB. Therefore, USAA FSB contends it should have a constructive trust over the Motorhome.

6. USAA FSB's constructive trust over the Motorhome constitutes a superior legal interest pursuant to 21 U.S.C. § 853(n). *See United States v. Campos*, 859 F.2d 1233, 1238 (6th Cir. 1988) (explaining in dicta that a constructive trust would constitute a superior legal interest under § 853(n)); *see also Shefton*, 548 F.3d at 1365 (holding that "a constructive trust, despite being an equitable remedy, constitutes a 'legal right, title, or interest in . . . property' under § 853(n)(6)(A)," which "can render a forfeiture order invalid pursuant to that subsection").

7. Accordingly, USAA FSB's legal interest in the Motorhome entitles USAA FSB to recover the Motorhome and manage any sale or disposition of the asset as it sees fit. If, however, USAA FSB is not awarded the Motorhome as requested, USAA FSB claims it is entitled to at least $53,749.99 as part of this forfeiture action based on the fraudulently obtained proceeds.

8. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the factual statements in the foregoing are true and correct. The legal arguments were provided by counsel.

Executed on this 24 day of September, 2018.

David True Brown Jr.
Director, Financial Crimes Investigations
On Behalf of USAA Federal Savings Bank

3.

Att. #65.3

Case 3:17-cr-00082-TAV-DCP   Document 246-1   Filed 09/26/18   Page 3 of 3   PageID #: 19142

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 116 of 164   PageID #: 20077

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA

v.

RANDALL KEITH BEANE

3:17-CR-82
Judge Varlan

MOTION FOR ENTRY OF PRELIMINARY ORDER OF FORFEITURE

The United States of America, by and through J. Douglas Overbey, United States Attorney for the Eastern District of Tennessee, and pursuant to Rule 32.2(b) of the Federal Rules of Criminal Procedure, moves this Court for the entry of a Preliminary Order of Forfeiture, and in support thereof, states as follows:

On July 18, 2017, an Indictment was filed charging the defendant, Randall Keith Beane, with wire fraud, bank fraud and conspiracy to launder money, in violation of 18 U.S.C. §§ 1343, 1344 and 1956(h) (Counts One through Seven). (Doc. 3, Indictment.) The United States included forfeiture allegations in the Indictment. (Id. at pg.7.)

The United States seeks forfeiture of the interest of the defendant in any property derived from or traceable to property derived from proceeds of the wire fraud and bank fraud violations and property involved in the commission of money laundering offense, as set forth in the Indictment, pursuant to 18 U.S.C. §§ 982(a)(1) and 982(a)(2). Specifically, the United States seeks to forfeit the defendant's interest in a 2017 Entegra Cornerstone 45B; 45 foot diesel motorhome; VIN 4VZVU1E94HC082752 and a personal money judgment in favor of the United States and against the defendant for $553,749.99 ("subject property"), such amount representing the proceeds the defendant personally obtained as a result of the defendant's criminal violations.

On February 1, 2018, after trial, a duly empaneled jury returned guilty verdicts against the defendant for violations of 18 U.S.C. §§ 1343, 1344 and 1956(h). (Doc. 119, Jury Verdict.)

Att. #66.1

By virtue of the conviction and the evidence produced at trial, the United States asks the Court to determine that the subject property be forfeited pursuant to 18 U.S.C. §§ 982(a)(1) and 982(a)(2), and that the United States has established the requisite nexus between the subject property and the offense pursuant to 21 U.S.C. § 853, as incorporated by 18 U.S.C. § 982(b)(1), and Rule 32.2(b) of the Federal Rules of Criminal Procedure.

The evidence produced at trial demonstrates that the defendant purchased the 2017 Entegra motorhome with funds he obtained directly as a result of the defendant's criminal violations. (Doc. 165, Trial Tr. Volume IV, pgs. 175, 179, 195, 207.) The defendant admitted to purchasing over 30 jumbo certificates of deposit using a fictitious bank account number (i.e., defendant's Social Security Number) and a routing number to the Federal Reserve. (Id. at pg. 179.) The defendant further admitted that he used the funds from those CDs to pay bills, purchase a truck from Ted Russell Ford and to buy the motorhome. (Id. at pgs. 179, 195, 207.) Thus, the motorhome is directly traceable to the defendant's fraud violations.

The money judgment amount, as alleged in the Indictment, is a conservative estimate of the funds the defendant obtained and used as a result of the fraudulent wire transfers. At trial, the evidence showed the defendant paid off four consumer loans, bought a truck (later returned) and the motorhome. (Doc. 162, Trial Tr. Vol I, pg. 123-124.) In total, the United States submits that the amount the defendant personally obtained as a result of the fraudulent purchase of the certificates of deposit was at least $553,749.99.[1]

Accordingly, it is now time for entry of a Preliminary Order of Forfeiture to direct the United States Marshals Service to secure custody of the properties and to begin the publication

---

[1] This amount is different from the restitution amount owed to the victim bank. This is because some of the payments the defendant made with the fraudulently obtained funds went directly to the victim bank to pay consumer loans the defendant had with the victim bank.

2

Att. #66.2

and notice process to all interested third parties in the case, pursuant to 21 U.S.C. § 853, as incorporated by 18 U.S.C. § 982(b)(1). To effectuate the procedural mandates of 21 U.S.C. § 853, a proposed Preliminary Order of Forfeiture is submitted to the Court.

Wherefore, the United States respectfully moves for entry of the proposed Preliminary Order of Forfeiture.

                                                    J. DOUGLAS OVERBEY
                                                    United States Attorney

                                        By:    s/Anne-Marie Svolto
                                               ANNE-MARIE SVOLTO
                                               Assistant United States Attorney
                                               800 Market Street, Suite 211
                                               Knoxville, Tennessee 3702
                                               (865) 545-4167

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system. All other parties will be served by regular U.S. mail.

                                               s/Anne-Marie Svolto
                                               ANNE-MARIE SVOLTO
                                               Assistant U.S. Attorney

3

Att. #66.3

**Department of State: Division of Corporations**



HOME
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
Entity Search
Status
Validate Certificate
Customer Service Survey

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
Taxes
Expedited Services
Service of Process
Registered Agents
GetCorporate Status
Submitting a Request
How to Form a New Business Entity
Certifications, Apostilles & Authentication
of Documents

## Entity Details

THIS IS NOT A STATEMENT OF GOOD STANDING

Allowable Characters

| | |
|---|---|
| File Number: | 2193946 |
| | Incorporation Date / Formation Date: 4/19/1989 (mm/dd/yyyy) |
| Entity Name: | UNITED STATES OF AMERICA, INC. |
| Entity Kind: | Corporation | Entity Type: | Exempt |
| Residency: | Domestic | State: | DELAWARE |

### REGISTERED AGENT INFORMATION

| | |
|---|---|
| Name: | THE COMPANY CORPORATION |
| Address: | 251 LITTLE FALLS DRIVE |
| City: | WILMINGTON | County: | New Castle |
| State: | DE | Postal Code: | 19808 |
| Phone: | 302-636-5440 |

Additional Information is available for a fee. You can retrieve Status for a fee of
$10.00 or
more detailed information including current franchise tax assessment, current filing
history
and more for a fee of $20.00.
Would you like ○ Status ○ Status, Tax & History Information

Submit!

View Search Results   New Entity Search

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov

https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx

1/1

Att. #67

https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx

Department of State: Division of Corporations

Entity Details

Allowable Characters

THIS IS NOT A STATEMENT OF GOOD STANDING

| File Number: | 4525682 | Incorporation Date / Formation Date: | 4/14/2008 (mm/dd/yyyy) |

| Entity Name: | THE UNITED STATES OF AMERICA, INC. |

| Entity Kind: | Corporation | Entity Type: | General |

| Residency: | Domestic | State: | DELAWARE |

REGISTERED AGENT INFORMATION

| Name: | SPIEGEL & UTRERA, P.A. |

| Address: | 9 EAST LOOCKERMAN ST STE 202 |

| City: | DOVER | County: | Kent |

| State: | DE | Postal Code: | 19901 |

| Phone: | 302-744-9800 |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information

[Submit]

[View Search Results]  [New Entity Search]

For help on a particular field click on the Field Tag to take you to the help area.

site map  |  privacy  |  about this site  |  contact us  |  translate  |  delaware.gov

HOME
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location
**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
Entity Search
Status
Validate Certificate
Customer Service Survey
**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
Taxes
Expedited Services
Service of Process
Registered Agents
GetCorporate Status
Submitting a Request
How to Form a New Business Entity
Certifications, Apostilles & Authentication of Documents

Att. #68

**OFFENCE**, crimes. The doing that which a penal law forbids to be done, or omitting to do what it commands; in this sense it is nearly synonymous with crime. (q. v.) In a more confined sense, it may be considered as having the same meaning with misdemeanor, (q.v.) but it differs from it in this, that it is not indictable, but punishable summarily by the forfeiture of a penalty. 1 Chit. Prac. 14.

**OFFER**, contracts. A proposition to do a thing.

2. An offer ought to contain a right, if accepted, of compelling the fulfilment of the contract, and this right when not expressed, is always implied.

3. By virtue of his natural liberty, a man may change his will at any time, if it is not to the injury of another; he may, therefore, revoke or recall his offers, at any time before they have been accepted; and, in order to deprive him of this right, the offer must have been accepted on the terms in which it was made. 10 Ves. 438; 2 C. & P. 553.

4. Any qualification of, or departure from those terms, invalidates the offer, unless the same be agreed to by the party who made it. 4 Wheat. R. 225; 3 John. R. 534; 7 John. 470; 6 Wend. 103.

5. When the offer has been made, the party is presumed to be willing to enter into the contract for the time limited, and, if the time be not fixed by the offer, then until it be expressly revoked, or rendered nugatory by a contrary presumption. 6 Wend. 103. See 8 S. & R. 243; 1 Pick. 278; 10 Pick. 326; 12 John. 190; 9 Porter, 605; 1 Bell's Com. 326, 5th ed.; Poth. Vente, n. 32; 1 Bouv. Inst. n. 577, et seq.; and see Acceptance of contracts; Assent; Bid.

**OFFICE**. An office is a right to exercise a public function or employment, and to take the fees and emoluments belonging to it, Shelf. on Mortm. 797; Cruise, Dig. Index, h. t.; 3 Serg. & R. 149.

2. Offices may be classed into civil and military.

3. – 1. Civil offices may be classed into political, judicial, and ministerial.

4. – 1. The political offices are such as are not connected immediately with the administration of justice, or the execution of the mandates of a superior officer; the office of the president of the United States, of the heads of departments, of the members of the legislature, are of this number.

5. – 2. The judicial offices are those which relate to the administration of justice, and which must be exercised by persons of sufficient skill and experience in the duties which appertain to them.

6. – 3. Ministerial offices are those which give the officer no power to judge of the matter to be done, and require him to obey the mandates of a superior. 7 Mass. 280. See 5 Wend. 170; 10 Wend. 514; 8 Verm. 512; Breese, 280. It is a general rule, that a judicial offic[e] [...while a] ministerial may.

Att. #69

and have shore on either side of them. The latter, viz. breeks of ports, are by a kind of civil denomination such.

They are such, that though possibly for their extent and situation they might be ports, yet they are either members of or dependent upon other ports. In England it began thus: the king, could not conveniently have a customer and comptroller in every port or haven. But these custom officers were fixed at some eminent port, and the smaller adjacent ports became by that means creeks, or appendants, of that where these custom officers were placed. 1 Chit. Com. Law, 726; Hale's Tract. de Portibus Maris, part 2, c. 1, vol. 1, p. 46; Com. Dig. Navigation, C; Callis, 34.

2. In a more popular sense, creek signifies a small stream, less than a river. 12 Pick. R. 194,

CRETION, civil law. The acceptance of a succession. Cretion was an act made before a magistrate, by which an instituted heir, who was required to accept of the succession within a certain time, declares within that time that he accepted the succession. Clef cles Lois Rom. h. t.

2. Cretion is also used to signify the term during which the heir is allowed to make his election to take or not to take the inheritance. It is so called, because the heir is allowed to see, cernere, examine, and decide. Gaii, Just. lib. 2, 164.

CREW. Those persons who are employed in the navigation of a vessel.

2. A vessel to be seaworthy must have a sufficient crew. 1 Caines, R. 32; 1 John. R. 184.

3. In general, the master or captain (q.v.) has the selection of the crew. Vide Muster roll; Seaman; Ship; Shipping articles.

CRIB-BITING. A defect in horses, which consists in biting the crib while in the stable. This is not, considered as a breach of general warranty of soundness. Holt's Cas. 630.

CRIER. An inferior officer of a court, whose duty it is to open and adjourn the court, when ordered by the judges; to make proclamations and obey the directions of the court in anything which concerns the administration of justice.

CRIME. A crime is an offence against a public law. This word, in its most general signification, comprehends all offences but, in its limited sense, it is confined to felony. 1 Chitty, Gen. Pr. 14.

2. The term misdemeanor includes every offence inferior to felony, but punishable by indictment or by particular prescribed proceedings.

3. The term offence, also, may be considered as, having the same meaning, but is usually, by itself, understood to be a crime not indictable but punishable, summarily, or by the forfeiture of, a penalty. Burn's Just. Misdemeanor.

4. Crimes are defined and punished by statutes and by the common law. Most common law offences are as well known, and as precisely ascertained, as those which are defined by statutes; yet, from the difficulty of exactly defining and describing every act which ought to be punished, the vital and preserving principle has been adopted, that all immoral acts which tend to the prejudice of the community are punishable by courts of justice. 2 Swift's Dig.

5. Crimes are mala in se, or bad in themselves; and these include, all offen[ces] mala prohibita, bad because prohibited, as being against sound policy; wh[...]

Att. #70

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

FILED
2017 JUL 18 P 5: 29
U.S. DISTRICT COURT
EASTERN DIST. TN.

UNITED STATES OF AMERICA

v.

RANDALL KEITH BEANE, and
HEATHER ANN TUCCI-JARRAF

No. 3:17-CR- 82
Judges: Varlan/Shirley

Case No: 1:17-mj-531
Assigned To: Magistrate Judge Deborah A. Robinson
Date Assigned: 7/26/2017
Description: Arrest Warrant (Rule 40)

INDICTMENT

COUNTS ONE THROUGH FIVE

Wire Fraud
(18 U.S.C. § 1343)

INTRODUCTION

The Grand Jury charges as follows:

At all times relevant to this indictment:

1. United States Automobile Association ("USAA") is a financial institution insured by the Federal Deposit Insurance Corporation ("FDIC") with a home office in San Antonio, Texas. USAA offers products in the insurance, banking investing, real estate and retirement arenas.

2. Federal Reserve Bank in New York is a financial institution, located in New York, New York.

3. Whitney Bank is a FDIC insured financial institution with a home office in Louisiana.

4. The defendant, RANDALL KEITH BEANE, was a member and account holder at United States Automobile Association ("USAA").

Att. #71.1

2

5.    The defendant, RANDALL KEITH BEANE, did not have an account ending in xxxxx-1115 at the Federal Reserve Bank.

6.    All wire transfers discussed herein went through the Automated Clearing House and Fedwire.

7.    HEATHER ANN TUCCI-JARRAF, is not a duly licensed attorney in the states of Tennessee and Washington authorized to represent others in legal matters.

THE SCHEME

8.    In or around July 2017, RANDALL KEITH BEANE, and others known and unknown to the Grand Jury, embarked upon a scheme through which they sought to obtain and access funds that did not belong to them by exploiting the online banking options available through USAA.

9.    The scheme involved the use of a valid routing number ending in xxxxx-1452, belonging to Federal Reserve Bank, and a fictitious bank account number ending in xxxxx-1135.

10.    It was part of the scheme to make numerous attempts using the valid routing number and fictitious bank account number to purchase jumbo Certificates of Deposit ("CDs"), until a transfer was completed.

11.    It was further part of the scheme to immediately liquidate the CDs and then transfer proceeds from the CDs to BEANE'S personal bank account to purchase assets and pay personal expenses with funds that did not belong to him, including the purchase of a 2017 Entegra Cornerstone 45B; 45 foot diesel motorhome.

12.    It was further part of the scheme that HEATHER ANN TUCCI-JARRAF purported to be BEANE'S attorney in order to induce, coerce and convince certain financial institutions to accept the fraudulently obtained funds for payment of a 2017 Entegra Cornerstone 45B; 45 foot diesel motorhome.

Att. #71.2

## MANNER AND MEANS

13. In furtherance of the scheme, and to accomplish the ends thereof, the defendant, RANDALL KEITH BEANE, and others known and unknown to the Grand Jury, used the following means, among others:

a. Defendant RANDALL KEITH BEANE was a member and account holder at United States Automobile Association ("USAA");

b. The defendant, RANDALL KEITH BEANE, did not hold an account ending in xxxxx-1135 at Federal Reserve Bank.

c. The defendant, RANDALL KEITH BEANE, obtained from others known and unknown to the Grand Jury, the valid routing number of Federal Reserve Bank, that is routing number ending in xxxxx-1452.

d. The defendant, RANDALL KEITH BEANE used his mobile device to access his USAA account.

e. The defendant, RANDALL KEITH BEANE, would and did conduct electronic financial transactions, including the purchase and attempted purchase of jumbo CDs through USAA, in which the defendant RANDALL KEITH BEANE, falsely represented the funding source by using a fictitious account number, that is account number ending in xxxxx-1135.

f. The vast majority of CDs the defendant, RANDALL KEITH BEANE, attempted to purchase through the scheme were returned as invalid because there was no valid account number entered. However, two CDs were funded by USAA bank and liquidated by the defendant, RANDALL KEITH BEANE, before U[        ]

the transaction.

3

Att. #71.3

g. The defendant, RANDALL KEITH BEANE, would and did use funds fraudulently acquired through the CD purchase scheme to make purchases for his own personal benefit to include the purchase of a 2017 Entegra Cornerstone 45B, 45 foot diesel motorhome.

## EXECUTION OF THE SCHEME

14. The allegations set forth in Paragraphs One through Thirteen are incorporated herein for reference for the purpose of alleging violations of 18 U.S.C. § 1343.

15. On or about the dates set forth below, within the Eastern District of Tennessee and elsewhere, the defendant, RANDALL KEITH BEANE, for the purposes of executing and attempting to execute the above-described scheme and artifice to defraud, purchased jumbo CDs with funds that did not belong to him by using routing numbers that did not belong to his accounts and fictitious bank accounts, and in so doing did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, signals and sounds including, without limitation the following:

| COUNT | DATE | DESCRIPTION OF TRANSMISSION |
|---|---|---|
| 1 | 7/6/2017 | BEANE transferred funds he did not own, via wire, using Federal Reserve New York, routing number xxxxx-1452 and fictitious account number ending xxxxx-1135 to purchase CD number xxxxx-4613 in the amount of $500,000. |
| 2 | 7/6/2017 | CD number xxxxx-4613 in the amount of $500,000 was closed and funds in the amount of $499,909.59 were transferred, via wire, to one of BEANE'S personal bank accounts at USAA, account number ending in xxxxx-3062. |
| 3 | 7/6/2017 | BEANE transferred funds he did not own, via wire, using Federal Reserve New York, routing number xxxxx-1452 and fictitious account number(xxxxxx-1135 to purchase CD number xxxxx-4623 in the amount of $999,000. |

4

| COUNT | DATE | DESCRIPTION OF TRANSMISSION |
|---|---|---|
| 4 | 7/5/2017 | CD number xxxxx-4623 in the amount of $999,000 was closed and funds in the amount of $998,819.36 were transferred, via wire, to one of BEANE'S personal bank accounts at USAA, account number xxxxx-3062. |
| 5 | 7/7/2017 | BEANE transferred the sum of $497,110.68, via wire from BEANE's personal account number xxxxx-4026 to Whitney Bank account number xxxxx-4960 belonging to B.G., whose identity is known to the Grand Jury, for the purchase of a 2017 Entegra Cornerstone 45B; 45 foot diesel motorhome. |

All in violation of Title 18, United States Code, Section 1343.

## COUNT SIX
### BANK FRAUD
(18 U.S.C. § 1344)

16. The allegations contained above in Paragraphs One through Fifteen are incorporated herein by reference for the purpose of alleging a violation of Title 18, United States Code, Section 1344.

17. From on or about July 5, 2017, continuing through at least on or about July 11, 2017, in the Eastern District of Tennessee, for the purpose of executing the scheme described above, the defendant, RANDALL KEITH BEANE, devised a scheme to defraud financial institutions and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of financial institutions by means of false and fraudulent pretenses, representations, and promises, executed and attempted to wit, to purchase Certificates of Deposit with money that did not belong to him, without permission or authority, alter the financial instruments, and liquidate the CDs at and through financial institutions in order to obtain money and property fraudulently and for defendant's own use and benefit.

All in violation of Title 18, United States Code, Section 1344.

5

Att. #71.5

Att. #71.6

## COUNT SEVEN

### CONSPIRACY TO COMMIT MONEY LAUNDERING
### (18 U.S.C. § 1956(h))

18.     The allegations contained above in Paragraphs One through Seventeen are incorporated herein by reference for purpose of alleging conspiracy to commit money laundering in violation of Title 18, United States Code, Section 1956(h).

19.     The Grand Jury further charges that in on or about July 2017, in the Eastern District of Tennessee and elsewhere, the defendants RANDALL KEITH BEANE and HEATHER ANN TUCCI-JARRAF, did unlawfully and knowingly combine, conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to commit certain offenses against the United States, in violation of Title 18, United States Code, Sections 1956 and 1957, as follows:

        a.     knowingly conducting and attempting to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, (wire fraud, bank fraud), in violation of Title 18, United States Code, Sections 1343 and 1344, with the intent to promote the carrying on of a specified unlawful activity, that is bank and wire fraud, and that while conducting such financial transactions knew that the property involved in the financial transactions represented the proceeds for some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

        b.     knowingly conducting and attempting to conduct financial transactions affecting interstate commerce, which involved the proceeds of specified unlawful activity, that is: (1) wire fraud in violation of 18 U.S.C. § 1343 and (2) bank fraud in violation of 18 U.S.C. § 1344, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew

6

that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

   c.    knowingly engaging and attempting to engage in monetary transactions by, through or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is (1) wire fraud in violation of 18 U.S.C. § 1343; and (2) bank fraud in violation of 18 U.S.C. § 1344, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATIONS

20.    The allegations contained in Counts One through Seven of this Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. §§ 982(a)(1), 982(a)(2) and 28 U.S.C. § 2461.

21.    Pursuant to 18 U.S.C. § 982(a)(2), upon conviction of any offense in violation of 18 U.S.C. §§ 1344, 1343, and any defendant so convicted shall forfeit to the United States any property, real or personal, constituting or traceable to the proceeds of any violation of 18 U.S.C. §§ 1344, 1343, including but not limited to the following property:

   a.   2017 Entegra Cornerstone 45B, 45 foot diesel motorhome; VIN # 4VZVU1E94HC082752; topaz in color with eight wheels ("motorhome"); and

   b.   A personal money judgment in favor of the United States and against the defendant, RANDALL KEITH BEANE, in the amount of $553,749.99, which represents the proceeds the defendant personally obtained, directly or indirectly, as a result of the criminal violations of 18 U.S.C. §§ 1343 and 1344.

22.    Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of an offense in violation of 18 U.S.C. 1956(b), any defendant so convicted shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to the following property:

Att. #71.7

Att. #71.8

a.  2017 Entegra Cornerstone 45B; 45 foot diesel motorhome; VIN #
    4VZVU1E94HC082752; topaz in color with eight wheels ("motorhome").

23.  Pursuant to Title 21, United States Code, Section 853(p), the defendants shall
forfeit substitute property, up to the value of the property subject to forfeiture, if by any act or
omission of any of the defendants, said property, or any portion thereof:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred, sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property that cannot be divided
    without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant
to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461.

A TRUE BILL:

Signature Redacted
FOREPERSON

NANCY STALLARD HARR
UNITED STATES ATTORNEY

CYNTHIA F. DAVIDSON
ANNE-MARIE SVOLTO
Assistant United States Attorneys

8

Case 3:17-cr-00082-TAV-CCS *SEALED*   Document 3   Filed 07/18/17   Page 8 of 8   PageID
#: 10

Case 3:17-cr-00082-TAV-DCP   Document 173-1   Filed 05/03/18   Page 75 of 77   PageID #:
17784

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 131 of 164   PageID #:
20092



# LAWS

*S. Pawling*

# THE UNITED STATES OF AMERICA,

FROM

THE 4th OF MARCH, 1789, TO THE 4th OF MARCH, 1815,

INCLUDING

THE CONSTITUTION OF THE UNITED STATES, THE OLD ACT OF
CONFEDERATION, TREATIES,

AND MANY OTHER VALUABLE ORDINANCES AND DOCUMENTS;

WITH

## COPIOUS NOTES AND REFERENCES.

ARRANGED AND PUBLISHED UNDER THE AUTHORITY OF AN ACT OF CONGRESS.

## IN FIVE VOLUMES.

VOL. I.

PUBLISHED BY

JOHN BIOREN AND W. JOHN DUANE, PHILADELPHIA, AND
R. C. WEIGHTMAN, WASHINGTON CITY.

1815.

Att. #72.1

Digitized by Google

Att. #72.2

Actual mode tives, open all the certificates, and the votes shall then be count-
of electing the ed: the person having the greatest number of votes for president,
president and shall be the president, if such number be a majority of the
vice president whole number of electors appointed; and if no person have such
of the United majority, then from the persons having the highest numbers, not
States. exceeding three, on the list of those voted for as president, the
house of representatives shall choose immediately, by ballot, the
president. But in choosing the president, the votes shall be
taken by states, the representation from each state having one
vote; a quorum for this purpose shall consist of a member or
members from two thirds of the states, and a majority of all the
states shall be necessary to a choice. And if the house of repre-
[Note, in il- sentatives shall not choose a president whenever the right of
lustration of choice shall devolve upon them, before the fourth day of March
this amend- next following, then the vice-president shall act as president, as
ment, see in the case of the death or other constitutional disability of the
chap. 403, vol. president.
3.]

2. The person having the greatest number of votes as vice
president, shall be the vice president, if such number be a majo-
rity of the whole number of electors appointed; and if no person
have a majority, then from the two highest numbers on the list,
the senate shall choose the vice president; a quorum for the pur-
pose shall consist of two thirds of the whole number of senators,
and a majority of the whole number shall be necessary to a choice.

3. But no person constitutionally ineligible to the office of
president, shall be eligible to that of vice president of the United
States.

## ARTICLE 15.

If any citizen of the United States shall accept, claim, re-
ceive, or retain any title of nobility or honor, or shall, without
the consent of congress, accept and retain any present, pension,
office, or emolument of any kind whatever, from any emperor,
king, prince, or foreign power, such person shall cease to be a
citizen of the United States, and shall be incapable of holding
any office of trust or profit under them, or either of them.

Citizenship
forfeited by
the accept-
ance, from a
foreign pow-
er, of any title
of king, prince, or
foreign power,
nobility, office
of emolument
of any kind,
&c. [See, as
connected
with this sub-
ject, ante, art.
sect. 9, clause
7, page 65.]

[Note. The 11th article of the amendments to the constitution, was proposed at the
second session of the third congress: the 12th article, at the first session of the eighth
congress; and the 13th article, at the second session of the eleventh congress.]

## CHAPTER 5.

Treaties, contracts, and conventions, concluded, at different periods, between the
United States of America and France, up to the year 1814.

No. 1. Treaty of amity and commerce between the United States of America and his
most christian majority.

ORIGINAL.
Treaty of amity and commerce.

ORIGINAL.
Traite d'amitie et de commerce.

This most christian king,   La roi très chrétien, et les
and the thirteen United States   treize Etats Unis de l'Amérique
if North America, to wit New-   Septentrionale, savoir, New
Hampshire, Massachusetts Bay,   Hampshire, la Baye de Massa-

Digitized by Google

Att. #73.1

# CONSTITUTION OF THE STATE OF TENNESSEE

## Preamble and Declaration of Rights

Whereas, The people of the territory of the United States south of the river Ohio, having the right of admission into the general government as a member state thereof, consistent with the Constitution of the United States, and the act of cession of the state of North Carolina, recognizing the ordinance for the government of the territory of the United States north west of the Ohio River, by their delegates and representatives in convention assembled, did on the sixth day of February, in the year of our Lord one thousand seven hundred and ninety-six, ordain and establish a Constitution, or form of government, and mutually agreed with each other to form themselves into a free and independent state by the name of the state of Tennessee, and,

Whereas, The General Assembly of the said state of Tennessee, (pursuant to the third section of the tenth article of the Constitution), by an act passed on the Twenty-seventh day of November, in the year of our Lord one thousand eight hundred and thirty-three, entitled, "An Act" to provide for the calling of a convention, passed in obedience to the declared will of the voters of the state, as expressed at the general election of August, in the year of our Lord one thousand eight hundred and thirty-three, did authorize and provide for the election by the people of delegates and representatives, to meet at Nashville, in Davidson County, on the third Monday in May, in the year of our Lord one thousand eight hundred and thirty-four, for the purpose of revising and amending, or changing, the Constitution, and said convention did accordingly meet and form a Constitution which was submitted to the people, and was ratified by them, on the first Friday in March, in the year of our Lord one thousand eight hundred and thirty-five, and,

Whereas, The General Assembly of said state of Tennessee, under and in virtue of the first section of the first article of the Declaration of Rights, contained in and forming a part of the existing Constitution of the state, by an act passed on the fifteenth day of November, in the year of our Lord one thousand eight hundred and sixty-nine, did provide for the calling of a convention by the people of the state, to meet at Nashville, on the second Monday in January, in the year of our Lord one thousand eight hundred and seventy, and for the election of delegates for the purpose of amending or revising the present Constitution, or forming and making a new Constitution; and,

Whereas, The people of the state, in the mode provided by said Act, have called said convention, and elected delegates to represent them therein; now therefore,

We, the delegates and representatives of the people of the state of Tennessee, duly elected, and in convention assembled, in pursuance of said act of Assembly have ordained and established the following Constitution and form of government for this state, which we recommend to the people of Tennessee for their ratification: That is to say

## ARTICLE I.

## Declaration of Rights.

**Section 1.** That all power is inherent in the people, and all free governments are founded on their authority, and instituted for their peace, safety, and happiness; for the advancement of those ends they have at all times, an unalienable and indefeasible right to alter, reform, or abolish the government in such manner as they may think proper.

2

**Section 2.** That government being instituted for the common benefit, the doctrine of nonresistance against arbitrary power and oppression is absurd, slavish, and destructive of the good and happiness of mankind.

**Section 3.** That all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience; that no man can of right be compelled to attend, erect, or support any place of worship, or to maintain any minister against his consent; that no human authority can, in any case whatever, control or interfere with the rights of conscience; and that no preference shall ever be given, by law, to any religious establishment or mode of worship.

**Section 4.** That no political or religious test, other than an oath to support the Constitution of the United States and of this state, shall ever be required as a qualification to any office or public trust under this state.

**Section 5.** The elections shall be free and equal, and the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto, except upon a conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction.

**Section 6.** That the right of trial by jury shall remain inviolate, and no religious or political test shall ever be required as a qualification for jurors.

**Section 7.** That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not be granted.

**Section 8.** That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers, or the law of the land.

**Section 9.** That in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and in prosecutions by indictment or presentment, a speedy public trial, by an impartial jury of the county in which the crime shall have been committed, and shall not be compelled to give evidence against himself.

**Section 10.** That no person shall, for the same offence, be twice put in jeopardy of life or limb.

**Section 11.** That laws made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal, are contrary to the principles of a free government; wherefore no *ex post facto* law shall be made.

**Section 12.** That no conviction shall work corruption of blood or forfeiture of estate. The estate of such persons as shall destroy their own lives shall descend or vest as in case of natural death. If any person be killed by casualty, there shall be no forfeiture in consequence thereof.

**Section 13.** That no person arrested and confined in jail shall be treated with unnecessary rigor.

3

Att. #73.2

Section 14. That no person shall be put to answer any criminal charge but by presentment, indictment or impeachment.

Section 15. That all prisoners shall be bailable by sufficient sureties, unless for capital offences, when the proof is evident, or the presumption great. And the privilege of the writ of *Habeas Corpus* shall not be suspended, unless when in case of rebellion or invasion, the General Assembly shall declare the public safety requires it.

Section 16. That excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

Section 17. That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. Suits may be brought against the state in such manner and in such courts as the Legislature may by law direct.

Section 18. The Legislature shall pass no law authorizing imprisonment for debt in civil cases.

Section 19. That the printing press shall be free to every person to examine the proceedings of the Legislature; or of any branch or officer of the government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions, is one of the invaluable rights of man and every citizen may freely speak, write, and print on any subject, being responsible for the abuse of that liberty. But in prosecutions for the publication of papers investigating the official conduct of officers, or men in public capacity, the truth thereof may be given in evidence; and in all indictments for libel, the jury shall have a right to determine the law and the facts, under the direction of the court, as in other criminal cases.

Section 20. That no retrospective law, or law impairing the obligations of contracts, shall be made.

Section 21. That no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefore.

Section 22. That perpetuities and monopolies are contrary to the genius of a free state, and shall not be allowed.

Section 23. That the citizens have a right, in a peaceable manner, to assemble together for their common good, to instruct their representatives, and to apply to those invested with the powers of government for redress of grievances, or other proper purposes, by address of remonstrance.

Section 24. That the sure and certain defense of a free people, is a well regulated militia; and, as standing armies in time of peace are dangerous to freedom, they ought to be avoided as far as the circumstances and safety of the community will admit; and that in all cases the military shall be kept in strict subordination to the civil authority.

Section 25. That no citizen of this state, except such as are employed in the army of the United States, or militia in actual service, shall be subjected to punishment under the martial or military law. That martial law, in the sense of the unrestricted power of military officers, or others, to dispose of the persons, liberties or property of the citizen, is inconsistent with the principles of free government, and is not confided to any department of the government of this state.

4

Att. #73.3

CASE NO. 18-5752

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA, Appellee,

– vs –

HEATHER ANN TUCCI-JARRAF, Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

OPENING BRIEF OF APPELLANT HEATHER ANN TUCCI-JARRAF

DENNIS G. TEREZ
Ohio Bar: 0030065
P.O. Box 22128
Beachwood, Ohio 44122
Phone: 216-256-4059
Facsimile: 216-932-8901
njcdgt@yahoo.com

Counsel for Appellant Heather Ann Tucci-Jarraf

Att. #74.1

## JURISDICTIONAL STATEMENT

The United States District Court for the Eastern District of Tennessee had original jurisdiction over this case pursuant to 18 U.S.C. § 3231, which gives district courts original and exclusive jurisdiction over federal crimes and subsequent violations of federal sentences. Heather Ann Tucci-Jarraf appeals as a matter of right the judgment entered against her on July 17, 2018 [R. 216, Judgment and Commitment Order, 07/19/18, PageID# 18599], the conviction adjudged against her on February 1, 2018 [R. 117, Minute Entry, 02/01/18, PageID# 3491; R. 119, Jury Verdict, 02/01/18, PageID# 3497], and various orders entered against her in the pretrial, trial, and post-trial phases of her case. 28 U.S.C. § 1291; 18 U.S.C. § 3742. Ms. Tucci-Jarraf filed a timely notice of appeal on July 19, 2018. [R. 218, Notice of Appeal, 07/19/18, Page ID# 18609] The judgment entered against her disposed of all claims, and was a final decision of the lower court. The Court thus has jurisdiction over Ms. Tucci-Jarraf's appeal pursuant to 28 U.S.C. § 1291.

Att. #74.2

1

# IN THE
# United States Court of Appeals
## FOR THE SIXTH CIRCUIT

---

### UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RANDALL KEITH BEANE
(#52505-074),

*Defendant-Appellant,*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

---

## OPENING BRIEF OF APPELLANT
## RANDALL KEITH BEANE

---

Stephen L. Braga
Sarah Crandall (*Third Year Law Student*)
Brian Diliberto (*Third Year Law Student*)
Elizabeth Joynes (*Third Year Law Student*)
Amanda Lineberry (*Third Year Law Student*)
UNIVERSITY OF VIRGINIA
SCHOOL OF LAW
Appellate Litigation Clinic
580 Massie Road
Charlottesville, Virginia 22903-1789
(434) 924-3825
stevebraga@virginia.edu

*Counsel for Appellant*

Att. #75.1

## STATEMENT OF JURISDICTION

The district court had jurisdiction of this action pursuant to 28 U.S.C. § 1331 (1980) as it arose under laws of the United States, 18 U.S.C. §§ 1343–1344 (2008) and 18 U.S.C. § 1956(h) (2016). This court has jurisdiction under 28 U.S.C. § 1291 (1982) because the district court entered a final judgment against Beane on all counts on February 1, 2018, from which he timely appealed on July 25, 2018.

## STATEMENT OF ISSUE FOR REVIEW

1. Whether the trial court erred in granting Beane's request to proceed *pro se*, and/or in failing to revisit that decision, in the face of Beane's repeated demonstrations throughout every stage of the proceedings below that under any objective standard he was incompetent to represent himself, especially at a joint trial where he was subject to being unduly influenced by his alleged coconspirator?

## STATEMENT OF THE CASE

On July 18, 2017, Beane was indicted on five counts of wire fraud, one count of bank fraud, and one count of conspiracy to commit money laundering. Indictment, R. 3, Page ID # 3–10. Heather Anne Tucci-Jarraf ("Tucci-Jarraf") was indicted as Beane's coconspirator in the money laundering conspiracy. After a jury trial, *at which Beane and Tucci-Jarraf both represented themselves*, the defendants were convicted on all charges. Transcript, R. 168, Page

Att. #75.2

Att. #76



FBI

Search FBI 🔍

## What is Money Laundering?

Money laundering is the process by which criminals conceal or disguise their proceeds and make them appear to have come from legitimate sources.

Money laundering allows criminals to hide and accumulate wealth, avoid prosecution, evade taxes, increase profits through reinvestment, and fund further criminal activity.

While many definitions for money laundering exist, it can be defined very simply as turning "dirty" money into "clean" money. And it's a significant crime—money laundering can undermine the integrity and stability of financial institutions and systems, discourage foreign investment, and distort international capital flows.

The FBI focuses its efforts on money laundering facilitation, targeting professional money launderers, key facilitators, gatekeepers, and complicit financial institutions, among others.

Acrobat Reader DC

Case 3:17-cr-00082-TAV-DCP   Document 224   Filed 07/24/18   Page 1 of 4   PageID #: 18704

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA

v.

RANDALL KEITH BEANE

No.: 3:17-CR-82-TAV-DCP

**PRELIMINARY ORDER OF FORFEITURE**

Att. #77.1

On July 18, 2017, an Indictment (Doc. 3) was filed charging the defendant, RANDALL KEITH BEANE, with wire fraud, bank fraud and conspiracy to launder money, in violation of 18 U.S.C. §§ 1343, 1344 and 1956(h) (Counts One through Seven).

In the forfeiture allegations of the Indictment, the United States sought forfeiture of the interest of the defendant in any property derived from or traceable to property derived from proceeds of the wire fraud and bank fraud violations and an property involved in the commission of money laundering offense, as set forth in the Indictment, pursuant to 18 U.S.C. §§ 982(a)(1) and 982(a)(2).

On February 1, 2018, the defendant was convicted of the offenses charged in the Indictment. By virtue of the conviction, and the evidence produced at trial, the Court has determined that the properties identified below are subject to forfeiture pursuant to 18 U.S.C. §§ 982(a)(1) and 982(a)(2), and that the United States has established the requisite nexus between the properties and the offense pursuant to 21 U.S.C. § 853, as incorporated by 18 U.S.C. § 982(b)(1), and Rule 32.2(b) of the Federal Rules of Criminal Procedure.

Accordingly, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

1.      Based upon the jury verdict finding the defendant guilty of the offenses in violation of 18 U.S.C. §§ 1343, 1344, and 1956(h), all right, title and interest of the defendant in the following are hereby forfeited to the United States pursuant to 18 U.S.C. §§ 982(a)(1) and 982(a)(2), and Rule 32.2(b) of the Federal Rules of Criminal Procedure:

(a)     2017 Entegra Cornerstone 45B; 45 foot diesel motorhome; VIN 4VZVU1I94HC082752; topaz in color with eight wheels; and

(b)     A money judgment in favor of the United States and against the defendant, RANDALL KEITH BEANE, for $553,749.99, which represents the minimum amount of proceeds RANDALL KEITH BEANE personally obtained, directly or indirectly, as a result of the criminal violations of 18 U.S.C. §§ 1343 and 1344.

2.      The aforementioned forfeited properties are to be held by the United States Marshal's Service, or its designated representative, until the case is completed.

3.      Pursuant to Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the United States hereby gives notice of its intent to dispose of the forfeited properties in such a manner as the United States Attorney General may direct. The Notice shall provide that any person other than the defendant, having or claiming a legal interest in the above-listed forfeited properties must file a petition with the Court within sixty (60) days from the first day of publication of this Notice on the official United States Government internet website, which is www.forfeiture.gov.

4.      The notice shall also state that the petition for a hearing to adjudicate the validity of the petitioner's alleged interest in the properties shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right,

2

Att. #77.2

title and interest in the properties, the time and circumstances of the petitioner's acquisition of the right, title and interest in the properties and any additional facts supporting the petitioner's claim and the relief sought. The United States, to the extent practicable, may also provide direct written notice to any person, as a substitute for published notice as to those persons so notified.

5. Because Rule 32.2(c)(1) of the Federal Rules of Criminal Procedure provides that "no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment," and pursuant to Rule 32.2(b)(4)(A) and (b)(4)(B), this Preliminary Order of Forfeiture will become final as to the money judgment in the amount of $553,749.99 at the time of sentencing, and will be made part of the sentence and included in the Judgment.

6. The United States may, at any time, move pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure to amend this Order of Forfeiture to substitute property having a value not to exceed $553,749.99 to satisfy the money judgment in whole or in part.

7. Upon adjudication of all other or third-party interests in the properties, this Court will enter a Final Order of Forfeiture pursuant to 21 U.S.C. § 853, as incorporated by 18 U.S.C. § 982(b)(1), in which all interests will be addressed.

8. The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary, pursuant to the Rule 32.2(e) of the Federal Rules of Criminal Procedure.

ENTER:

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

Att. #77.3

Submitted by:

J. DOUGLAS OVERBEY
United States Attorney

By: s/Anne-Marie Svolto
Anne-Marie Svolto
Cynthia F. Davidson
Assistant United States Attorneys

4

Att. #77.4

```
 1
 2
 3                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE EASTERN DISTRICT OF TENNESSEE
 4                        AT KNOXVILLE, TENNESSEE

 5   UNITED STATES OF AMERICA,

 6         Government,

 7   vs.                                    Case No. 3:17-cr-82-1

 8   RANDALL KEITH BEANE,

 9         Defendant.

10
                         SENTENCING PROCEEDINGS
11              BEFORE THE HONORABLE THOMAS A. VARLAN

12                   Tuesday, July 24th, 2018
                  10:09 a.m. to 10:51 a.m.
13
     APPEARANCES:
14
         ON BEHALF OF THE GOVERNMENT:
15
              CYNTHIA F. DAVIDSON, ESQ.
16            ANN-MARIE SVOLTO, ESQ.
              U.S. DEPARTMENT OF JUSTICE
17            OFFICE OF U.S. ATTORNEY
              800 Market Street
18            Suite 211
              Knoxville, TN 37902
19
         ON BEHALF OF THE DEFENDANT HEATHER ANN
20       TUCCI-JARRAF: (Appearing Pro Se)

21            STEPHEN G. MC GRATH, ESQ. (Elbow Counsel)
              ATTORNEY AT LAW
22            9111 Cross Park Drive
              Building D, Suite 200
23            Knoxville, TN 37923

24       REPORTED BY:

25            Teresa S. Grandchamp, RMR, CRR
              P.O. Box 1362
              Knoxville, Tennessee 37901
              (865) 244-0454
```

Att. #78.1

Case 3:17-cr-00082-TAV-DCP    Document 240    Filed 08/01/18
18977

**Att. #78.2**

1    derived from proceeds of the wire fraud and bank

2    fraud violations and property involved in the

3    commission of a money laundering offense, as set

4    forth in the Indictment and pursuant to 18 United

5    States Code §§ 982(a)(1) and 982(a)(2).

6              Specifically, as set forth in the

7    motion, the United States seeks to forfeit the

8    defendant's interest in the motor home that was the

9    subject or testimony at trial, specifically

10:18AM  10   identified as a 2017 Entegra Cornerstone 45B 45-foot

11   diesel motor home, VIN number listed in the motion.

12             The United States or the government

13   also seeks a personal money judgment in favor of the

14   government and against the defendant for

15   $553,749.99, which the government contends is the

16   amount representing the proceeds the defendant

17   personally obtained as a result of the defendant's

18   criminal violations.

19             First, to the extent -- based on the

10:19AM  20   defendant's statement, to the extent the defendant

21   is applying his arguments regarding the lack of

22   jurisdiction of the Court or the lack of the

23   authority of the Court to enter orders or address

24   matters pertaining to the defendant, to the extent

25   the defendant is raising those arguments as a

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 147 of 164   PageID #:
20108

# Public Law 97-280

## 97TH UNITED STATES CONGRESS
### 1ST SESSION

### Joint Resolution.

A joint resolution authorizing and requesting the President to proclaim 1983 as the "Year of the Bible".

*Whereas* the Bible, the Word of God, has made a unique contribution in shaping the United States as a distinctive and blessed nation and people;

*Whereas* deeply held religious convictions springing from the Holy Scriptures led to the early settlement of our Nation;

*Whereas* Biblical teachings inspired concepts of civil government that are contained in our Declaration of Independence and the Constitution of the United States;

*Whereas* many of our great national leaders—among them Presidents Washington, Jackson, Lincoln, and Wilson-paid tribute to the surpassing influence of the Bible in our country's development, as in the words of President Jackson that the Bible is "the rock on which our Republic rests";

*Whereas* the history of our Nation clearly illustrates the value of voluntarily applying the teachings of the Scriptures in the lives of individuals, families, and societies;

*Whereas* this Nation now faces great challenges that will test this Nation as it has never been tested before; and

*Whereas* that renewing our knowledge of and faith in God through Holy Scripture can strengthen us as a nation and a people:

*Now, therefore,* be it

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,*

That the President is <u>authorized</u> and <u>requested</u> to <u>designate</u> 1983 as a national <u>"Year of the Bible"</u> in recognition of both the formative influence the Bible has been for our Nation, and our national need to study and apply the teachings of the Holy Scriptures.

*Approved October 4, 1982.*

# Notes

Att. #79

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 148 of 164   PageID #: 20109



Att. #80.1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                          Case No.: 3:17-CR-82

RANDALL KEITH BEANE AND
HEATHER ANN TUCCI-JARRAF,

Defendants.

VOLUME VI of VIII

JURY TRIAL PROCEEDINGS
BEFORE THE HONORABLE THOMAS A. VARLAN

January 30, 2018
9:19 a.m. to 4:18 p.m.

APPEARANCES:

FOR THE PLAINTIFF:        CYNTHIA F. DAVIDSON, ESQUIRE
                          ANNE-MARIE SVOLTO, ESQUIRE
                          Assistant United States Attorney
                          United States Department of Justice
                          Office of the United States Attorney
                          800 Market Street
                          Suite 211
                          Knoxville, Tennessee 37902

FOR THE DEFENDANT:        RANDALL KEITH BEANE, PRO SE
RANDALL BEANE             Blount County Detention Center
                          920 East Lamar Alexander Parkway
                          Maryville, Tennessee 37804

FOR THE DEFENDANT:        STEPHEN G. McGRATH, ESQUIRE
(As Elbow Counsel)        9111 Cross Park Drive
                          Suite D-200
                          Knoxville, Tennessee 37923

REPORTED BY:
Rebekah M. Lockwood, RPR, CRR
Official Court Reporter
(865) 210-6698
P.O. Box 1823
Knoxville, Tennessee 37901-1823

1  at the time, for my federal defender's job down in San Diego,

2  left three days before the bar and decided to do Washington

3  State bar and passed it. It was not hard. It was easy. It

4  was an essay, all essays.

5  Q    No problem.

6  A    No.

7  Q    And after you graduated, you were state prosecutor in

8  Washington state. Right? That's what you testified to.

9  A    Actually, no. I went overseas. At one point, for --

10  during the cleanup, I did take on a job at the -- at the public

11  defender's office first, and then moved over to the

12  prosecutor's office in Pierce County.

13  Q    Okay. And so you did work for the state prosecutor's

14  office. Right?

15  A    I did. For three years, approximately -- May 26th,

16  2003 all the way to February of 2006.

17  Q    Okay. And so you're very familiar with the law?

18  A    Yes.

19  Q    Yes. And you know that the law applies to everyone,

20  don't you?

21  A    Yes.

22  Q    And you've seen this Black's Law Dictionary?

23  A    I'm familiar with Black's Law.

24  Q    Everybody buys --

25  A    It used to be a joke book --

UNITED STATES DISTRICT COURT

Att. #80.2

1     Q    I'm sorry.

2     A    -- and then it got turned into a dictionary. Yes,

3 I'm very familiar with it.

4     Q    Okay. And so you know that there is absolutely no

5 difference between the definition of attorney and lawyer, don't

6 you?

7     A    Actually, in Bouvier's Dictionary, which is the law

8 book or the law dictionary that at least the judges I worked

9 with at the federal and state levels, that's the one they use.

10 It was Bouvier's. Black's Law, that's what we used in law

11 school.

12     Q    Okay. And so you know there's no difference between

13 attorney and lawyer?

14     A    Actually, I know there's a difference between

15 attorney and lawyer, based on my experience with DOJ and with

16 the attorneys and the judges that assisted here. That was the

17 part of the fraudulent legal -- or excuse me, the fraud in the

18 legal structure is the difference, the legal terms and how, you

19 know, the general public doesn't understand what the legal

20 standing is of the terms that are used, so pro -- excuse me,

21 pro se and pro per, persona, the difference between that and

22 the legal standing and the consequences, the legal consequences

23 that come from each of those.

24     Q    So you're the only one that knows the difference

25 between attorney and lawyer?

Att. #80.3



The **ESSENTIAL**

**LAW**

**DICTIONARY**

es·sen·tial. ADJ. Of the utmost importance.

- The most comprehensive pocket-size dictionary
- Easy-to-understand definitions
- Written by a leading authority in the field

Amy Hackney Blackwell

SPHINX DICTIONARIES

With MORE THAN 3000 Legal Terms and Phrases

Att. #81.1

**attainder.** N. Under common law, the forfeiting of all civil and property rights after being convicted of treason or a felony. See also *bill of attainder*.

**attempt.** N. The act of trying to do something, usually unsuccessfully; in criminal law, an intentional effort to commit a crime that failed but could have succeeded. V. *attempt*.

**attendant circumstances.** N. The facts and circumstances surrounding an event.

**attest.** V. To declare something to be true; to sign a document as a witness. N. *attestation*.

**attorney.** N. A lawyer; more generally, an agent appointed to act for another person.

**attorney at law.** N. A lawyer admitted by a court to practice law in a particular jurisdiction, including drafting legal documents and representing clients in court.

**attorney-client privilege.** N. In evidence law, the right of attorneys and their clients to withhold information about confidential communications made in the course of their professional relationship.

**attorney general.** N. An attorney who serves as the head of the Department of Justice and chief legal adviser to the president and who represents the United States in legal matters; each state also has its own attorney general who performs the same functions at the state level.

**attorney's fees.** N. The fees charged by a lawyer for services rendered to clients. See also *contingent*.

**attractive nuisance.** N. A doctrine in tort law that a person who keeps something on his or her property that is lik

Att. #81.2

students, usually compiled and edited by a staff of students chosen for their excellent academic record.

**Law School Admission Test.** N. A test that is required for admission to most law schools. ABBRV. *LSAT.*

**laws of war.** The laws that govern the actions nations may take when they are at war. See also *Geneva Conventions, jus in bello.*

**lawsuit.** N. An action at law or equity; a dispute brought before a court for determination.

**lawyer.** N. An attorney; a person who has studied law or who practices law.

**lay.** ADJ. Not professional or expert in a particular field; nonecclesiastical or nonclergy.

**lay judge.** N. A judge who has not studied law.

**layman.** N. A person who is not a professional or expert in a particular field, e.g., in legal situations, a nonlawyer.

**layoff.** N. The firing of one or many employees in response to business conditions, not for any wrongdoing of the employee; the temporary or permanent termination of one or more workers. See also *downsize.*

**lay witness.** N. A witness who is not an expert in the field on which he or she is called to testify; see also *expert.*

**lead counsel.** N. The head lawyer on one side of a lawsuit who is in charge of managing the case and all other attorneys and other people working on it.

**leading case.** N. A case that is recognized as determining the law on a particular topic and is often cited for that purpose.

Att. #81.3

2. These laws are inserted in the beginning of the book entitled "Us et Coutumes de la Mer," with a very excellent commentary on each section by Clairac, the learned editor. A translation is to be found in the Appendix to 1 Pet. Adm. Dec.; Marsh. Ins. B. 1, c. 1, p. 16. See Laws of Wisbuy: Laws of the Hanse Towns; Code

LAWS OF WISBUY, maritime law. A code of sea laws established by "the merchants and masters of the magnificent city of Wisbuy." This city was the ancient capital of Gothland, an island in the Baltic sea, anciently much celebrated for its commerce and wealth, now an obscure and inconsiderable place. Malyne, in his collection of sea laws, p. 44, says that the laws of Oleron were translated into Dutch by the people of Wisbuy for the use of the Dutch coast. By Dutch probably means German, and it cannot be denied that many of the provisions contained in the Laws of Wisbuy, are precisely the same as those which are found in the Laws of Oleron. The northern writers pretend however that they are more ancient than the Laws of Oleron, or than even the Consolato del Mare. Clairac treats this notion with contempt, and declares that at the time of the promulgation of the laws of Oleron, in 1266, which was many years after they were compiled, the magnificent city of Wisbuy had not yet acquired the denomination of a town. Be this as it may, these laws were for some ages, and indeed still remain, in great authority in the northern part of Europe. "Lex Rhodia navalis," says Grotius, "pro jure gentium, in illo mare Mediterraneo vigebat; sicut apud Gallium leges Oleronis, et apud omnes transrhenanos, leges Wisbuenses." Grotius de Jure bel. lib. 2, c. 3.

A translation of these laws is to be found in 1 Peter's Adm. Dec. Appendix. See Code; Laws of Oleron.

LAWS, RHODIAN, maritime. law. A code of laws adopted by the people of Rhodes, who had, by their commerce and naval victories, obtained the sovereignty of the sea, about nine hundred, years before the Christian era. There is reason to suppose this code has not been transmitted to posterity, at least not in a perfect state. A collection of marine constitutions, under the denomination of Rhodian Laws, may be seen in Vinnius, but they bear evident marks of a spurious origin. See Marsh. Ins. B. 1, c. 4, p. 15; this Dict; Code; Laws of Oleron; Laws of Wisbuy; Laws of the Hanse Towns.

LAWYER. A counsellor; one learned in the law. Vide Attorney.

LEGACY. A bequest or gift of goods or chattels by testament. 2 Bl. Com. 512; Bac. Abr. Legacies, A. See Merlin, RCpertoire, mot Legs, s. 1; Swinb. 17; Domat, liv. 4, t. 2, §1, n. 1. This word, though properly applicable to bequests of personal estate only, has nevertheless been extended to property not technically within its import, in order to effectuate the intention of the testator, so as to include real property and annuities. 5 T. R. 716; 1 Burr. 268; 7 Ves. 522; id. 391; 2 Cain. R. 345. Devise is the term more properly applied to gifts of real estate. Godolph. 271.

2. As the testator is presumed at the time of making his will to be inops concilii, his intention is to, be sought for, and any words which manifest the intention to give or create a legacy, are sufficient. Godolph. 281, pt. 3, c. 22, s. 21; Com. Dig. Chancery, 3 Y 4; Bac. Abr.

Att. #82.1

http://www.constitution.org/bouv/bouvier_a.htm (222 of 237)10/10/2005 2:18:09 PM

attestation clause to a will, is in the following formula, to wit: "Signed, sealed, published and declared by the above named A B, as and for his last will and testament, in the presence of us, who have hereunto subscribed our names as the witnesses thereto, in the presence of the said testator, and of each other." That of deeds is generally in these words " Sealed and delivered in the presence of us."

2. When there is an attestation clause to a will, unsubscribed by witnesses, the presumption, though slight, is that the will is in an unfinished state; and it must be removed by some extrinsic circumstances. 2 Eccl. Rep. 60. This presumption is infinitely slighter, where the writer's intention to have it regularly attested, is to be collected only from the single word " witnesses." Id. 214. See 3 Phillim. R. 323; S. C. 1 Eng. Eccl. R. 407.

ATTESTING WITNESS. One who, upon being required by the parties to an instrument, signs his name to it to prove it, and for the purpose of identification.

2. The witness must be desired by the parties to attest it, for unless this be done, he will not be an attesting witness, although he may have seen the parties execute it. 3 Campb. 232. See Competent witness; Credible witness; Disinterested witness; Respectable witness; Subscribing witness; and Witness; Witness instrumentary; 5 Watts, 399; 3 Bin. 194.

ATTORNEY. One who acts for another byvirtue of an appointment by the latter. Attorneys are of various kinds.

2. Attorney in fact. A person to whom the authority of another, who is called the constituent, is by him lawfully delegated. This term is employed to designate persons who act under a special agency, or a special letter of attorney, so that they are appointed in factum, for the deed, or special act to be performed; but in a more extended sense it includes all other agents employed in any business, or to do any act or acts in pais for another. Bac. Ab. Attorney; Story, Ag. 25.

3. All persons who are capable of acting for themselves, and even those who are disqualified from acting in their own capacity, if they have sufficient understanding, as infants of a proper age and femes covert, may act as attorneys of others. Co. Litt. 52, a; 1 Esp. Cas. 142, 2 Esp. Cas.

4. The form of his appointment is by letter of attorney. (q. v.)

5. The object of his appointment is the transaction of some business of the constituent by the attorney.

6. The attorney is bound to act with due diligence after having accepted the employment, and in the end to 'render an account to his principal of the acts which be has performed for him. Vide Agency; Agent; Authority; and Principal.

7. Attorney at law. An officer in a court of justice, who is employed by a party in a cause to manage the same for him. Appearance by an attorney has been allowed in England, from the time of the earliest

Att. #82.2

# United States v. Throckmorton, 98 U.S. 61 (1878)

## U.S. Supreme Court

Syllabus    Case

United States v. Throckmorton, 98 U.S. 61 (1878)

### United States v. Throckmorton

**98 U.S. 61**

*APPEAL FROM THE CIRCUIT COURT OF THE UNITED*

*STATES FOR THE DISTRICT OF CALIFORNIA*

*Syllabus*

1. It is essential to a bill in chancery on behalf of the United States to set aside a patent for lands or the final confirmation of a Mexican grant that it shall appear in some way, without regard to the special form, that the Attorney General has brought it himself or given such authority for bringing it as will make him officially responsible therefor through all stages of its presentation.

2. The frauds for which a bill to set aside a judgment or a decree between the same parties, rendered by a court of competent jurisdiction, will be sustained are those which are extrinsic or collateral to the matter tried, and not a fraud which was in issue in the former suit.

3. The cases where such relief has been granted are those in which, by fraud or deception practiced on the unsuccessful party, he has been prevented from exhibiting fully his case, by reason of which there has never been a real contest before the court of the subject matter of the suit.

4. The circuit court of the United States has now no original jurisdiction to reform surveys made by the land department of confirmed Mexican grants in California.

The facts are stated in the opinion of the Court.

Page 98 U. S. 62

MR. JUSTICE MILLER delivered the opinion of the Court.

In this case a bill in chancery is brought in the Circuit Court of the United States for the District of California, to use the language of the bill itself, "by Walter Van Dyke, United States attorney for that district, on behalf of the United States," against Throckmorton, Howard, Goold, and Haggin.

The object of the bill is to have a decree of the court setting aside and declaring to be null and void a

Att. #83.1

his office, the important final decree of concession was not there.' The attention, therefore, of all the parties and of the court must have been drawn to a close scrutiny of any proceeding to supply this important document.

There was also ample time to make all necessary inquiries and produce the necessary proof, if it existed, of the fraud. The allegation of the bill is that this simulated concession was filed with the board of commissioners in January, 1853, and the decree rendered on December 27, thereafter. The appeal was pending after this in the district court over two years, and after the final decree in that court it remained under the consideration of the Attorney General another year, when he authorized the dismissal of the appeal. The case, then, unless these officers neglected their duties, underwent the scrutiny of two judicial tribunals and of the Attorney General of the United States, as well as of his subordinate in the State of California, and was before them for a period of five years of litigation.

The bill in this case is filed May 13, 1876, more than twenty years after the rendition of the decree which it seeks to annul. During that time, Richardson, the claimant and the man who is personally charged with the guilt of the fraud, has died, his heirs, who with himself were claimants in the suit, are not made parties, and the land has passed from his ownership to that of the present defendants by purchase and conveyance.

It is true that the defendants are charged in general terms with being purchasers with notice.

It is true that the United States is not bound by the statute of limitations as an individual would be. And we have not recited any of the foregoing matters found in the bill as sufficient of itself to prevent relief in a case otherwise properly cognizable in equity. But we think these are good reasons why a bill which seeks under these circumstances to annul a decree thus surrounded by every presumption which should give it support shall present on its face a clear and unquestionable ground on which the jurisdiction it invokes can rest.

Let us inquire if this has been done.

---

There is no question of the general doctrine that fraud vitiates the most solemn contracts, documents, and even judgments.

---

There is also no question that many rights originally founded in fraud become -- by lapse of time, by the difficulty of proving the fraud, and by the protection which the law throws around rights once established by formal judicial proceedings in tribunals established by law, according to the methods of the law -- no longer open to inquiry in the usual and ordinary methods. Of this class are judgments and decrees of a court deciding between parties before the court and subject to its jurisdiction, in a trial which has presented the claims of the parties, and where they have received the consideration of the court.

There are no maxims of the law more firmly established or of more value in the administration of justice than the two which are designed to prevent repeated litigation between the same parties in regard to the same subject of controversy -- namely, interest rei publicae, ut sit finis litium, and nemo debet bis vexari pro una et eadam causa.

If the court has been mistaken in the law, there is a remedy by writ of error. If the jury has been mistaken in the facts, the remedy is by motion for new trial. If there has been evidence discovered since the trial, a motion for a new trial will give approp---- ---- ---- --- -- ---- ---- ame
proceeding, relief is given in the same suit, and the part --- --- --- --- --- ---- ---- ---- ---- ---- --te same
matter. So in a suit in chancery, on proper showing a re --- --- --- ---- ---- ---- ---- ---- ---- ---- ained of
is an erroneous decision, an appeal to a higher court gi --- --- --- --- --- --- --- --- ---- ---- ---- --- new

https://supreme.justia.com/cases/federal/us/98/61/

Att. #83.2

## Page 98 U. S. 66

But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise, or where the

defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff, or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat, or where the attorney regularly employed corruptly sells out his client's interest to the other side -- these and similar cases which show that there has never been a real contest in the trial or hearing of the case are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree and open the case for a new and a fair hearing. *See* Wells, *Res Adjudicata*, sec. 499; *Pearce v. Olney*, 20 Conn. 544; *Wierich v. De Zoya*, 7 Ill. 385; *Kent v. Ricards*, 3 Md.Ch. 392; *Smith v. Lowry*, 1 Johns. (N.Y.) Ch. 320; *De Louis v. Meek*, 2 Ia. 55.

In all these cases and many others which have been examined, relief has been granted on the ground that, by some fraud practiced directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court.

On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed. Mr. Wells, in his very useful work on *Res Adjudicata*, says, sec. 499:

> "Fraud vitiates every thing, and a judgment equally with a contract -- that is, a judgment obtained directly by fraud, and not merely a judgment founded on a fraudulent instrument; for in general the court will not go again into the merits of an action for the purpose of detecting and annulling the fraud.... Likewise, there are few exceptions to the rule that equity will not go behind the judgment to interpose in the cause itself, but only when there was some hindrance besides the negligence of the defendant in presenting the defense in the legal action. There is an old case in South Carolina to the effect that fraud in obtaining a bill of sale would justify equitable interference as to the judgment obtained thereon. But I judge it stands almost or quite alone, and has no weight as a precedent."

The case he refers to is *Crayford v. Crayford*, 4 Desau. (S.C.) 176. *See also* Bigelow on Fraud 170-172.

## Page 98 U. S. 67

The principle and the distinction here taken was laid down as long ago as the year 1702 by the Lord Keeper in the High Court of Chancery in the case of *Tovey v. Young*, Pr.Ch. 193.

This was a bill in chancery brought by an unsuccessful party to a suit at law for a new trial, which was at that time a very common mode of obtaining a new trial. One of the grounds of the bill was that complainant had discovered since the trial was had that the principal witness against him was a partner in interest with the other side. The Lord Keeper said:

> "New matter may in some cases be ground for relief, but i[ ] when it consists in swearing only, will I ever grant a new [ ] that a witness on whose testimony the verdict was given [ ]

evidence is discovered after the decree has become final, a bill of review on that ground may be filed within the rules prescribed by law on that subject. Here again, these proceedings are all part of the same suit, and the rule framed for the repose of society is not violated.

Att. #83.3

ior, ting, or



**Location**

**Ringgold, GA**
5568 Battlefield Parkway
Ringgold, GA 30736
706-965-7929

## Used 2017 Entegra Coach Cornerstone 45B

*Luxury Diesel Motor Coach, 600 HP Cummins, 4 Slides, Passive Tag Axle, Collision Avoidance*



**SOLD**
Stock #: 4583
Ringgold, GA
Chassis: Spartan K3

Contact us to see if we have more available

**Question?**
Click here to chat with us

×

**ONLINE - Click here to chat!**

### What we inspect for Option A Price

2017 45B Features and Options

SHOWN BY APPOINTMENT ONLY. PLEASE CALL BEFORE COMING TO LOOK.

Please watch video or call us for condition report, questions, etc. Please call (706) 965-7929 before coming to look to verify availability . Please note the get lowest price feature is our Option B as-is price only . For pricing details please call us or read below. Shown By Appointment Only, Unit is not on our sales lot.

If you are looking for DUAL sinks in a rear master bath, an entertainment center with a fireplace, and a half bath this quad slide Entegra Coach Corner_____ _____ _____s your ne__

### 2017 45B Specifications

| | |
|---|---|
| Sleeps | 4 |
| Slides | 4 |
| Length | 44 ft 11 in |
| Ext Width | 8 ft 5 in |
| Ext Height | 12 ft 11 in |
| Int Height | 7 ft |
| Hitch Weight | 20000 lbs |
| Gross Weight | 54000 lbs |
| Fresh Water Capacity | 100 gals |
| Grey Water Capacity | 62 gals |
| Black Water Capacity | 41 gals |
| Tire Size | 22.5" |
| Generator | 12.5 KW Onan Diesel |
| Fuel Type | Diesel |
| Engine | Cummins ISX 600HP |
| Chassis | Spartan K3 |
| Horsepower | 600 hp |
| Fuel Capacity | 150 gals |

**TEXT US**   × 

https://www.parkwayrvcenter.com/product/used-2017-entegra-coach-cornerstone-45b-11290

**Att. #84.1**

1/4

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 160 of 164   PageID #: 20121

Used 2017 Entegra Coach Cornerstone 45B Motor Home Class A - Diesel at Parkway RV Center | Ringgold, GA | #4583

| | |
|---|---|
| Torque | 1950 rt-lb |
| Refrigerator Type | Residential |
| Refrigerator Size | 18 cu ft |
| Convection Cooking | Yes |
| Number of Awnings | 3 |
| Water Heater Type | Aqua Hot |
| AC BTU | 46000 btu |
| Awning Info | Power |
| Washer/Dryer Available | Yes |
| Electrical Service | 50 amp |
| VIN | 4VZVU1E9#HC082752 |

On the passenger side of the motor home you find a slide with an expandable sofa and two ottomans or you can choose an optional hide-a-bed sofa. Also within the slide is a double kitchen sink, two burner range, microwave, overhead cabinets, and a shelf. The opposite side of the motor home offers a slide with an entertainment center, fireplace and a 50" LED TV, and a dinette with chairs, desk, plus a refrigerator.

Just past the slide in the main living area you will find a half bath.

The bedroom offers a king bed slide with overhead cabinets, and nightstands on either side of the bed. Across from the foot of the bed you will find a slide out with a vanity, dresser, and 32" LED TV in the cabinet plus a pantry that is located in the hallway. Across from this you find a countertop.

Questions? Click here to chat!

In the rear there is a master bath featuring a vanity with DUAL sinks on one side, plus a shower and toilet on the opposite side. Along the rear wall you will find a wardrobe with sliding mirror doors and a washer and dryer.

Outside you can even enjoy an exterior entertainment center with a 40" LED TV when relaxing in the great outdoors.

ONLINE - Click here to chat!

We offer you two options on how to buy this RV. Option A is $379,000 which is haggle free / firm (no matter if you pay cash, finance and or trade) Includes a inspection by our RV Techs that is completed after purchase (please visit our website for a list of what we inspect and repair if needed for the price you pay.) 1 Year Nationwide Limited Warranty, Walk Thru / Demo, Starter Kit , Temp Tag , a year of free camping , and more . Option B is buyer declines all services and buys RV as-it sits (just like we purchased it) , no

TEXT US  X

Att. #84.2

Latin Dictionary

praeter : adv, beyond, after

praeter : adj., except; prep. + acc., besides, beyond, more than.

praeterea : preterea : besides, further, hereafter.

praeterea : adv, besides, moreover, as indeed it is

Att. #85

archives.nd.edu/latin.htm

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 162 of 164   PageID #: 20123



**U.S. Department of Justice**
United States Marshals Service

**SUBMIT FORM**

# Complaint Regarding United States Marshals Service (USMS) Personnel or Programs

*\* Required Field*

**Your Name:** PLEASE SEE BELOW AND ATTACHED FORMAL GRIEVANCE COMPLAINT

**Email Address:**

**Phone Number:**

**Other Number:**

**Street Address:**

**City:**

**State:**

**ZIP Code:**

**County:**

☑ *\* I certify that the information contained herein is true and correct to the best of my knowledge.*

*\* COMPLAINT DETAILS - Please provide a description of the facts and circumstances surrounding the reported activities, such as the evidence forming the basis of this report, the names of the individuals involved, dates, location, and their involvement:*

US District Court for the Eastern District of Tennessee issued two fraudulent arrest warrants. US Marshals (Amanda Shields and Matthew S. Dusim-?) used those unlawful warrants and kidnapped Randall-Keith:Beane and Heather-Ann:Tucci:Jarraf in violation of DOJ section 1033 (18 U.S.C §§ 1201, 1202). Mr. Beane and Mrs. Tucci:Jarraf did not give consent to be transported without a valid arrest warrant. Mr. Beane and Mrs. Tucci:Jarraf were illegally and unlawfully arrested and detained. Please see attached complaint for details - Att. #3 (Randall-Keith:Beane fraudulent arrest warrant), Att. #4 (Heather-Ann:Tucci:Jarraf fraudulent arrest warrant), Att. #10 - 18a U.S. Code Rule 9. Arrest Warrant on an Indictment - (b) Form - (1) "The warrant must...be signed by the clerk...." Att. #38 - 18 U.S. Code §241. Conspiracy against rights, and Att. #39 - 18 U.S. Code §242. Deprivation of rights under color of law. Thank you.

**Privacy Act Statement:** The USMS is authorized to collect this information from you pursuant to 28 C.F.R. § 0.111(n) and 28 C.F.R. § 0.113. The USMS will use the information you provide to investigate your complaint regarding USMS personnel and/or programs, and may contact you for more information. The information may be shared within the USMS, or to other components of the Department of Justice. In addition, the USMS may share the information with law enforcement agencies investigating a violation of law (whether criminal, civil, and/or administrative), or agencies implementing a statute, rule, or order. The contents of your complaint may be shared with Congressional offices. Additionally, the USMS may disclose relevant portions of the information to appropriate parties engaged in litigation and for other routine uses as specified in the Federal Register. You are not required by law to provide the requested information, but if you do not provide data in the fields listed, the USMS may not be able to properly address your complaint.

*OMB Control Number 1105-0108 (Exp. 08/31/2023)*

Att. #86

The Civil Rights Division enforces civil rights laws in a wide variety of contexts. You may use the information on this page to find the appropriate way to submit a complaint or report of a potential civil rights violation. If you are not sure which Section is the appropriate one to receive your complaint, you may contact the Civil Rights Division at toll-free 855-856-1247 or (202) 514-3847.

Criminal Section

Disability Rights Section

Educational Opportunities
Section

Employment Litigation Section

Federal Coordination and
Compliance

Housing and Civil
Enforcement Section

Immigrant and Employee Rights
Section

Special Litigation Section

Voting Section

Please let us know if you have trouble understanding English or need help communicating with the Civil Rights Division. Ask for an interpreter or if translated material is available when you contact us. If you can, please tell us your language (or dialect).

Availability of Language Assistance Services   (English)
توافر خدمات المساعدة اللغوية   (Arabic)
語言協助服務現成可用   (Simplified Chinese)
語言協助服務現成可用   (Traditional Chinese)
Magagamit na Mga Paglilingkod Ukol sa Tulong na Pangwikain — Sangay sa Mga Karapatang Sibil   (Filipino)
Disponibilité de services d'aide linguistique   (French)
언어 지원 서비스 이용 안내   (Korean)
Disponibilidade de Serviços de Assistência Linguística – Divisão dos Direitos Civis   (Portuguese)
Управление по делам о нарушениях гражданских прав   (Russian)
Disponibilidad de servicios de asistencia lingüística   (Spanish)
Sự Sẵn Sàng của Dịch Vụ Hỗ Trợ Ngôn Ngữ   (Vietnamese)

**CRIMINAL:**

Contact your local FBI field office to report incidents of:

* Hate crimes;
* Excessive force or other Constitutional violations by persons acting as law enforcement officials or public officials;
* Human trafficking and involuntary servitude;
* Force, threats, or physical obstruction to interfere with access to reproductive health care services;
* Force or threats to interfere with the exercise of religious beliefs and destruction, defacing, or damage of religious property; or,
* Force or threats to interfere with the right to vote based on race, color, national origin, or religion.

You can find your local office here:
https://www.fbi.gov/contact-us/field-offices

Please include as many details of the incident as possible, such as the dates and times; names of possible witnesses; and supporting documents, such as police and medical reports, or photographs.

You may also mail a written copy of the complaint and materials you submitted to the FBI to the Criminal Section at:

US Department of Justice
Civil Rights Division
Criminal Section - 4CON
950 Pennsylvania Avenue, NW
Washington, DC 20530

Case 3:17-cr-00082-TAV-DCP   Document 275   Filed 11/04/21   Page 164 of 164   PageID #: 20125