**Gmail**

# Randall-Keith:Beane Habeas Corpus and Void Judgment Petition of Remonstrance

1 message

Sat, Jul 31, 2021 at 2:39 PM

To: "russell.humphrey@capitol.tn.gov" <tammy.letzler@capitol.tn.gov>
Cc: rep.sam.mckenzie@capitol.tn.gov, sen.richard.briggs@capitol.tn.gov

Hello Clerk Russell Humphrey and Clerk Tammy Letzler:

Because the US Postal Service did not update its system to show "delivered" status for the tracking numbers below, we are emailing the Habeas Corpus and Void Judgment Petition of Remonstrance and Motion to Expunge the Case and Record to ensure you receive it and that it is recorded:

USPS Tracking Number: 9114 9012 3080 3100 8742 12 (Russell Humphrey – Clerk – Tennessee General Assembly – Senate)

USPS Tracking Number: 9114 9012 3080 3100 8742 36 (Tammy Letzler – Clerk – Tennessee General Assembly – House)

PLEASE respond to Randall-Keith:Beane:

> Randall-Keith:Beane
> Reg. #52505-074
> FCI Elkton
> P.O. Box 10
> Lisbon, Ohio (44432)
> Phone: (330) 420-6200

Thank you.

**2 attachments**

📄 **1-RKB Habeas Corpus Remonstrance.pdf**
2672K

📄 **2-RKB HCR ATTACHMENTS.pdf**
3526K

TRUE COPY
MARGARET BOSTICK
CLERK OF COURT
JASPER COUNTY, SC
BY: _____ DATE: 5-1-2020

## ARREST WARRANT

### 2014A2720200234

**STATE OF SOUTH CAROLINA**

☐ County/  ☒ Municipality of

Ridgeland

---

| THE STATE | 14-907 |
|---|---|

against

~~R~~andal Keith Beane

~~Ad~~dress: 3283 Grays Hwy
Ridgeland, SC 29936-

~~Se~~x: **M**   Race:   Height:   ~~SS~~

ORI #: **SC0270200**

~~Ridgeland~~ Police Department

~~Pro~~secuting Officer: Jason Stone - 0048

~~O~~ffense: Resisting / Resisting Arrest; Oppose or resist law
enforcement officer serving process or making

~~O~~ffense Code: **0326**

~~C~~ode/Ordinance Sec: **16-09-0320(A)**

~~T~~his warrant is **CERTIFIED FOR SERVICE** in the

☐ County/   ☐ Municipality of

The accused

~~is~~ to be arrested and brought before me to be
~~de~~alt with according to the law.

_____
Signature of Judge

~~D~~ate:

(L.S.)

### RETURN

~~A~~ copy of this arrest warrant was delivered to
~~de~~fendant   *Randal Keith Beane*

*10/13/14*

_____
~~Signature of Serving~~ Law Enforcement Officer

~~R~~ETURN WARRANT TO:
General Sessions
265 Russell Street
Po Box 248
Ridgeland, SC 299360248

*ORIGINAL*

---

**STATE OF SOUTH CAROLINA**

☐ County/   ☒ Municipality of

Ridgeland

**AFFIDAVIT**

*ORIGINAL*

Form Approved by
S.C. Attorney General
April 21, 2005
SCCA 518

Personally appeared before the affiant   Jason Stone   who
being duly sworn deposes and says that defendant   Randal Keith Beane
did within this county and state on or about   10/13/2014
State of South Carolina (or ordinance of  ☐ County/  ☒ Municipality of   Ridgeland )
in the following particulars:

**DESCRIPTION OF OFFENSE:**  Resisting / Resisting Arrest; Oppose or resist law enforcement officer serving process or making arrest

I further state that there is probable cause to believe that the defendant named above did commit the crime set forth and that probable cause is based on the following facts:

That on October 13, 2014 in the city/county of Jasper, Town of Ridgeland, one Randal Keith Beane did knowingly and willfully oppose and/or resist the lawful arrest by a law enforcement officer, or the defendant did knowingly and willfully assault, beat and/or wound a law enforcement officer while resisting arrest. Defendant was stopped by Ridgeland Police for a traffic violation. Defendant refused to provide police with identification information and physically resisted police after being placed under arrest.

NOT Made Under Penalty of Perjury
NOT Signed Under Oath
NOT Sworn

_____
Signature of Affiant

**STATE OF SOUTH CAROLINA**

☐ County/   ☒ Municipality of

Ridgeland

Affiant's Address   P.O. Box 1119
Ridgeland, SC 29936-

Affiant's Telephone   (843)726-7530

---

### ARREST WARRANT

**TO ANY LAW ENFORCEMENT OFFICER OF THIS STATE OR MUNICIPALITY OR ANY CONSTABLE OF THIS COUNTY:**

It appearing from the above affidavit that there are reasonable groun~~ds~~ ~~th~~at

on or about   10/13/2014   defendant   Randal Keith Beane
did violate the criminal laws of the State of South Carolina (or ordinance of
☐ County/   ☒ Municipality of   Ridgeland )   as set forth below:

**DESCRIPTION OF OFFENSE:**   Resisting / Resisting Arrest; Oppose or resist law enforcement officer serving pro~~cess or making~~ arrest

Having found probable cause and the above affiant having sworn before me, you are empowered and directed to arrest the said de~~fendant~~
~~and bring~~ her before me forthwith to be dealt with according to law. A copy of this Arrest Warrant shall be delivered to the defendant at the tim~~e of arrest or as~~
soon thereafter as is practicable

Sworn to and subscribed before me
on   10/13/2014

_____
Signature of Issuing Judge

Thomas L. Scoggins

Judge Code:   **6563**

(L.S.)

Judge's Address   One Town Square
Ridgeland, SC 29936-1119

Judge's Telephone   (843)726-7500

Issuing Court:  ☐ Magistrate   ☒ Municipal   ☐ Circuit

*ORIGINAL*

Exh. #1

THE STATE OF SOUTH CAROLINA

COUNTY OF JASPER

**BENCH WARRANT**
**FAILURE TO APPEAR**

THE STATE
VS.
Randal Keith Beane

2014GS2700554                 2014A2720200234          Resisting / Resisting Arrest; Oppose or resist law enforcement officer serving process or making arrest

**To all and Singular the Sheriffs Deputy Sheriffs Constables and other Peace Officers of the said State Greeting:**

WHEREAS, at the Term of Court of General Sessions County Court for the County aforesaid, it was among other things Ordained

that a Bench Warrant should be issued for the arrest of  **Randal Keith Beane**

THESE ARE, THEREFORE, to command you and every one of you to make diligent search after the said above named and him to take and safely keep until he be delivered to the keeper of the Common Jail of the County or discharged by due course of law. And this shall be a good and sufficient warrant for you doing so, and for the keeper of said Jail receiving said above named from you and keeping him safely until he be discharged by due course of law.

WITNESS, Margaret Bostick, Clerk of Court of General Sessions and Common Pleas for the County of Jasper,

April 17, 2015.

_Margaret Bostick_

Clerk of Court of General Sessions and Common Pleas



TRUE COPY
MARGARET BOSTICK
CLERK OF COURT
JASPER COUNTY, SC
BY:
DATE:

Exh. #2



# Jasper County
# Fourteenth Judicial Circuit
# Public Index



Jasper County Home Page   South Carolina Judicial Department Home Page   SC.GOV Home Page

Switch View

## The State of South Carolina VS Randal Keith Beane

| Case Number: | 2014A2720200234 | Court Agency: | General Sessions | Filed Date: | 10/14/2014 |
|---|---|---|---|---|---|
| Case Type: | Criminal-Clerk | Case Sub Type: | | | |
| Status: | Failure to Appear | Assigned Judge: | Clerk Of Court C P, G S, And Family Court | Disposition Judge: | Solicitor |
| Disposition: | Failure to Appear | | | | |
| Disposition Date: | 07/17/2015 | Date Received: | 10/14/2014 | Arrest Date: | 10/13/2014 |
| Law Enf. Case: | 14-907 | True Bill Date: | 11/20/2014 | No Bill Date: | |
| Prosecutor Case: | | Indictment Number: | 2014GS2700554 | Waiver Date: | |
| Probation Case: | | | | | |

Case Parties   Charges   Sentencing   Associated Cases   Actions   Financials   Bonds

Click the ☑ icon to show associated parties.

| Name | Address | Race | Sex | Year Of Birth | Party Type | Party Status | Last Updated |
|---|---|---|---|---|---|---|---|
| ☑Beane, Randal Keith | 3283 Grays Hwy Ridgeland SC 29936 | | M | 1967 | Defendant | | 10/14/2014 |
| ☑Beane, Randall | 3283 Grays Hwy Ridgeland SC 29936 | | M | | Bond Entity | | 12/12/2014 |
| ☑Hughes, Robert Milton(Inactive) | PO Box 388 Ridgeland SC 29936 | | | | Defendant Attorney | | 11/18/2014 |
| Stone, Jason | P.O. Box 1119 Ridgeland SC 29936 | | | | Officer | | 10/14/2014 |
| Toporek, Matthew Alexander | PO Box 187 Ridgeland SC 29936 | | | | Solicitor | | 10/15/2014 |

CMSWeb 6.1 © 2019 South Carolina Judicial Branch • All rights reserved

## Exh. #3

AO 442 (Rev. 01/09) Arrest Warrant

FBI/Still

RECEIVED BY: RC
DATE: 7/20/17  TIME: 0630
U.S. MARSHAL E/TN
KNOXVILLE, TN

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Tennessee

SEALED

SEALED

United States of America
v.

RANDALL KEITH BEANE
*Defendant*

) 
) 
) 
)  Case No. 3:17-CR-82
) 
)

## ARREST WARRANT

SEALED

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*     RANDALL KEITH BEANE

who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment      ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☐ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

the defendant, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, signals and sounds including funds he did not own, via wire, all in violation of Title 18, United States Code, Section 1343; devised a scheme to defraud financial institutions and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of financial institutions by means of false and fraudulent pretenses, representations, and promises, in order to obtain money and property fraudulently, in violation of Title 18, United States Code, Section 1344; did unlawfully and knowingly combine, conspire, confederate, and agree with each other and with other persons known and unknown to commit money laundering, in violation of Title 18, United States Code, Sections 1956 and 1957

Date:  07/18/2017

City and state:   Knoxville, TN

*Issuing officer's signature*

_____ H. Bruce _____
*Printed name and title*    U.S. Magistrate Judge

Deputy Clerk

## Return

This warrant was received on *(date)* 7-20-17 , and the person was arrested on *(date)* 7-27-17
at *(city and state)* Knox Co Jail

Date:  7-27-17

*Arresting officer's signature*

Amanda Shields  ausi
*Printed name and title*

## Exh. #4

FID# 10365588

1774-070-2481-J

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee

RECEIVED BY: LO

DATE: 7/20/17   TIME: 0830

U.S. MARSHAL E/TN
KNOXVILLE, TN

SEALED

SEALED

United States of America

v.

HEATHER ANN TUCCI-JARRAF

*Defendant*

Case No. 3:17-CR- 82

Case No: 1:17-mj-531
Assigned To: Magistrate Judge Deborah A. Robinson
Date Assigned: 7/26/2017
Description: Arrest Warrant (Rule 40)

## ARREST WARRANT

To:     Any authorized law enforcement officer

YOU ARE COMMANDED to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   HEATHER ANN TUCCI-JARRAF
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment   ☐ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☐ Complaint
☐ Probation Violation Petition   ☐ Supervised Release Violation Petition   ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:
the defendant, did unlawfully and knowingly combine, conspire, confederate, and agree with each other and with other
persons known and unknown to the Grand Jury to commit money laundering, in violation of Title 18, United States Code,
Sections 1956 and 1957.

Date:   07/18/2017

City and state:   Knoxville, TN

*Issuing officer's signature*

*Printed name and title*

U.S. Magistrate Judge

Deputy Clerk

## Return

This warrant was received on *(date)*  7-20-17  , and the person was arrested on *(date)*  7-26-17
at *(city and state)*

Date:   7-26-17

*Arresting officer's signature*

Matthew Sams   DUSM
*Printed name and title*

# Exh. #5

FID# 10365908

17M-0720-2445-5

# 18a U.S. Code Rule 9.Arrest Warrant or Summons on an Indictment or Information

U.S. Code    Notes

(a)**ISSUANCE.**

The court must issue a warrant—or at the government's request, a summons—for each defendant named in an indictment or named in an information if one or more affidavits accompanying the information establish probable cause to believe that an offense has been committed and that the defendant committed it. The court may issue more than one warrant or summons for the same defendant. If a defendant fails to appear in response to a summons, the court may, and upon request of an attorney for the government must, issue a warrant. The court must issue the arrest warrant to an officer authorized to execute it or the summons to a person authorized to serve it.

(b)**FORM.**

(1)Warrant. The warrant must conform to Rule 4(b)(1) except that it must be signed by the clerk and must describe the offense charged in the indictment or information.

(2)Summons. The summons must be in the same form as a warrant except that it must require the defendant to appear before the court at a stated time and place.

(c)**EXECUTION OR SERVICE; RETURN; INITIAL APPEARANCE.**

(1)*Execution or Service.*

(A)The warrant must be executed or the summons served as provided in Rule 4(c)(1), (2), and (3).

(B)The officer executing the warrant must proceed in accordance with Rule 5(a)(1).

(2)Return. A warrant or summons must be returned in accordance with Rule 4(c)(4).

(3)Initial Appearance. When an arrested or summoned defendant first appears before the court, the judge must proceed under Rule 5

(d)**WARRANT BY TELEPHONE OR OTHER MEANS.**
In accordance with Rule 4.1, a magistrate judge may issue summons based on information communicated by telephone electronic means.

**Exh. #6**

# UNDERSTANDING
# THE FEDERAL COURTS



**Exh. #7.1**

ADMINISTRATIVE OFFICE OF THE U.S. COURTS

# THE JURISDICTION OF THE FEDERAL COURTS



Before a federal court can hear a case, or exercise its jurisdiction, certain conditions must be met.

First, under the Constitution, federal courts exercise only "judicial" powers. This means that federal judges may interpret the law only through the resolution of actual legal disputes, referred to in Article III of the Constitution as "Cases or Controversies." A court cannot attempt to correct a problem on its own initiative, or to answer a hypothetical legal question.

Second, in an actual case or controversy, the plaintiff in a federal lawsuit also must have legal "standing" to ask the court for a decision. That means the plaintiff must have been aggrieved, or legally harmed in some way, by the defendant.

Third, the case must present a category of dispute that the law in question was designed to address, and it must be a complaint that the court has the power to remedy. In other words, the court must be authorized, under the Constitution or a federal law, to hear the case and grant appropriate relief to the plaintiff.

Finally, the case cannot be "moot," that is, it must present an ongoing problem for the court to resolve. The federal courts, thus, are courts of "limited" jurisdiction because they may only decide certain types of cases as provided by Congress or as identified in the Constitution.

Although the details of the complex web of federal jurisdiction that Congress has given the federal courts is beyond the scope of this brief guide, it is important to understand that there are two main sources of the cases coming before the federal courts: "federal question" jurisdiction and "diversity" jurisdiction.

In general, federal question jurisdiction arises in cases that involve the U.S. government, the U.S. Constitution or federal laws, or controversies between states or between the United States and foreign governments. A case that raises such a "federal question" may be filed in federal court. Examples of such cases might include a claim by an individual for entitlement to money under a federal government program such as Social Security, a criminal prosecution by the government that alleges someone violated a federal law, or a challenge to actions taken by a federal agency.

A case also may be filed in federal court based on the "diversity of citizenship"

## Exh. #7.2

The Administrative Office of the U.S. Courts

# Federal Question Jurisdiction

## Overview

Federal question jurisdiction is one of the two ways for a federal court to gain subject-matter jurisdiction over a case (the other way is through diversity jurisdiction). Generally, in order for federal question jurisdiction to exist, the cause of action must arise under federal law. More specifically, however, there are both constitutional and statutory requirements that must be met before jurisdiction can be found.

## Interpreting "Arising Under" - Constitutional Requirement

Under Article III of the Constitution, federal courts can hear "all cases, in law and equity, arising under this Constitution, [and] the laws of the United States..." US Const, Art III, Sec 2. The Supreme Court has interpreted this clause broadly, finding that it allows federal courts to hear any case in which there is a federal ingredient. Osborn v. Bank of the United States, 9 Wheat. (22 U.S.) 738 (1824).

## 28 USC 1331 - The Statutory Component

For federal question jurisdiction to exist, the requirements of 28 USC 1331 must also be met. This statute gives federal courts jurisdiction only to those cases which "aris[e] under" federal law. 28 USC 1331. This requirement has been found to be narrower than the requirements of the constitution. The Supreme Court has found that a "suit arises under the law that creates the cause of action," American Well Works v. Layne, 241 US 257 (1916), and therefore, only suits based on federal law, not state law suits, are most likely to create federal question jurisdiction, Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149 (1908).

## Well-Pleaded Complaint Rule

Typically, in order to have federal question jurisdiction, the plaintiff's complaint must be a well-pleaded one. This means that the plaintiff's initial complaint must contain the references to the federal question and the federal issue evoked. The federal question and issue cannot arise in an anticipated defense, it must be presented from the initial complaint. This requirement was established in *Louisville & Nashville R. Co. v. Mottley*, and as such it is often referred to as the "Mottley Rule."

## Grable Test

Another test that courts will often use to determine federal question jurisdiction is called the Grable Test, established in *Grable & Sons Metal Products, Inc. v. Darue Engingeering & Manufacturing*. This is a two-part test

### Exh. #8

Case 3:17-cr-00082-TAV-DCP   Document 276-2   Filed 11/03/21   Page 10 of 55   PageID #: 20301

# § 1-206. Presumptions.

Whenever the Uniform Commercial Code creates a "presumption" with respect to a fact, or provides that a fact is "presumed," the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence.

**Exh. #9**

# § 1-304. Obligation of Good Faith.

Every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement.

‹ § 1-303. Course of Performance, Course of Dealing, and Usage of Trade. up § 1-305. Remedies to be Liberally Administered. ›

**Exh. #10**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | No.: 3:17-CR-82-TAV-CCS |
| RANDALL KEITH BEANE and HEATHER ANN TUCCI-JARRAF, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on the government's Motion in Limine to Prohibit Jurisdictional Argument [Doc. 78]. This is the only motion in limine filed in this case, and the deadline for filing further motions in limine has now passed [Doc. 77 p. 2]. The Court held a final pretrial conference on January 12, at which the defendants requested additional time to review and respond to the government's motion. The Court granted this request and ordered the defendants to file any responses to the government's motion by January 16. Defendant Heather Ann Tucci-Jarraf has now filed a response brief [Doc. 86], as well as an additional filing that the Court likewise construes as a response [Doc. 81]. Defendant Randall Beane has not responded to the government's motion. For the reasons explained below, the Court will grant the government's motion in limine.

I.     **Standard of Review**

"Motions in limine allow the Court to rule on evidentiary issues prior to trial in order to avoid delay and focus pertinent issues for the jury's consider

**Exh. #11.1**

### III.    Conclusion

Accordingly, the Court hereby **GRANTS** the government's Motion in Limine to Prohibit Jurisdictional Argument [Doc. 78].  It is therefore **ORDERED** that the defendants are prohibited from offering any evidence, testimony, or argument at trial concerning the following subjects:  (1) whether this Court has subject-matter jurisdiction over these proceedings; (2) whether the United States government is defaulted, has been foreclosed, or is otherwise legally impaired; and (3) whether the United States government has legal authority to bring a prosecution of the defendants for the charged offenses.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

**Exh. #11.2**

# Standing

## Overview

Standing, or *locus standi*, is capacity of a party to bring suit in court.

## Standing in State Court

A state's statutes will determine what constitutes standing in that particular state's courts. These typically revolve around the requirement that plaintiffs have sustained or will sustain direct injury or harm and that this harm is redressable.

## Standing in Federal Court

At the federal level, legal actions cannot be brought simply on the ground that an individual or group is displeased with a government action or law. Federal courts only have constitutional authority to resolve actual disputes (see Case or Controversy).

In Lujan v. Defenders of Wildlife (90-1424), 504 U.S. 555 (1992), the Supreme Court created a three-part test to determine whether a party has standing to sue:

1. The plaintiff must have suffered an "injury in fact," meaning that the injury is of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent
2. There must be a causal connection between the injury and the conduct brought before the court
3. It must be likely, rather than speculative, that a favorable decision by the court will redress the injury

## Further Reading

For Supreme Court decisions focusing on the "standing" issue, see, e.g., County of Riverside v. McLaughlin, 500 U.S. 44 (1991), Northeastern Fla. Chapter of the Associated Gen. Contractors v. City of Jacksonville, 508 U.S. 656 (1993) and Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992).

**Exh. #12**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )
                                   )
vs.                                )   Case No.:   3:17-CR-82
                                   )
RANDALL KEITH BEANE AND            )
HEATHER ANN TUCCI-JARRAF,          )
                                   )
          Defendants.              )

---

## VOLUME I of VIII

### JURY TRIAL PROCEEDINGS
### BEFORE THE HONORABLE THOMAS A. VARLAN

**January 23, 2018**
**9:16 a.m. to 5:00 p.m.**

APPEARANCES:

FOR THE PLAINTIFF:            CYNTHIA F. DAVIDSON, ESQUIRE
                             ANNE-MARIE SVOLTO, ESQUIRE
                             Assistant United States Attorney
                             United States Department of Justice
                             Office of the United States Attorney
                             800 Market Street
                             Suite 211
                             Knoxville, Tennessee 37902

FOR THE DEFENDANT:           RANDALL KEITH BEANE, PRO SE
RANDALL BEANE                Blount County Detention Center
                             920 East Lamar Alexander Parkway
                             Maryville, Tennessee 37904

FOR THE DEFENDANT:           STEPHEN G. McGRATH, ESQUIRE
(As Elbow Counsel)           9111 Cross Park Drive
                             Suite D-200
                             Knoxville, Tennessee 37923

REPORTED BY:
Rebekah M. Lockwood, RPR, CRR
Official Court Reporter
(865) 210-6698
P.O. Box 1823
Knoxville, Tennessee 37901-1823

**Exh. #13.1**

Parker Still - Direct Examination

1  there in Farragut.

2      Q    Okay.  Did someone from the FBI actually reach out to

3  Buddy Gregg?

4      A    Yes, ma'am.  It's my understanding that we did reach

5  out.  Someone from our office did reach out to Buddy Gregg.

6      Q    And what was your goal in reaching out to them?

7      A    So if I may back up just one step there,

8  Ms. Davidson.

9          So our goal in reaching out to them, at the time, we

10  had information that the motor home was there or going to be

11  there.  So in an effort to find out that additional

12  information, that's why they were reached out to, just to

13  determine where the motor home was at the time.

14      Q    Okay.  And were you seeking not only to find the

15  defendant, but also to protect the asset?

16      A    Oh, absolutely.  So, I mean, in this case, we had

17  half a mill -- half-a-million-dollar motor home.  And what our

18  goal is to, a lot of times in these victim cases is, we want to

19  recover the asset for the victim.  In this case, USAA is our

20  victim, and we have -- we know where the motor home is located.

21  Absolutely right.

22          We had multiple issues.  One is safety.  The -- if

23  Mr. Beane had gotten out on the open road, we had -- we don't

24  know.  I mean, at this time, we don't know.  We know he used

25  funds to purchase a -- used stolen funds to purchase an RV.  We

UNITED STATES DISTRICT COURT

**Exh. #13.2**

Parker Still - Direct Examination

1  don't know anything else about, you know, what his ultimate

2  intent with that.  It's 45 feet.  You know, you can imagine

3  our -- what, you know -- the possibilities are unlimited.

4       And absolutely, we want to recover an asset for the

5  victim in any case.  That's always one of our -- we want to

6  prosecute the bad guys and we want to get the assets.

7  Absolutely right.  That's what the American public expects of

8  us.

9       Q    Okay.  And so did you learn from Buddy Gregg that the

10  defendant was coming to pick the RV up?

11      A    We did.  So our office is -- had information that

12  later in the day or at some time Mr. Beane would be out there

13  to purchase -- to pick that RV up.  And to the point where

14  my -- at this point, I'm drafting an affidavit to put together

15  so we can go try to seize the motor home.

16      Q    Okay.  And did you have to act quick and go to get

17  Mr. Beane?

18      A    Yeah.  We did.  We -- absolutely.  So we had

19  information that came -- it was relayed down to me.  So I'm at

20  the computer there working on this affidavit to go seize the

21  motor home.  I think I'm speaking with Ms. Svolto and I

22  primarily and as you, Ms. Davidson, so we're getting this

23  information in.

24       All of a sudden, we have information that Buddy Gregg

25  is going to turn it over or he is going to leave in this motor

UNITED STATES DISTRICT COURT

**Exh. #13.3**

<u>Parker Still - Direct Examination</u>

1  home.  So, yeah, it was similar to a bank robbery.  I grabbed

2  Special Agent Jimmy Durand.  We literally run towards the door.

3         Because, I mean, you got to understand where we're at

4  on this.  We've got a motor home, an asset that is

5  potentially -- we don't know where it's going to be.  And you

6  say, well, it's a 45-foot motor home.  You may be able to find

7  it.  I don't know.  You just don't know.  You don't know if

8  these things could be stripped down.  A million different

9  things could happen.

10        So I literally jump up from the computer, I grab

11  Jimmy, and we start running towards the door to go out and stop

12  this transaction from taking place.

13        In the meantime, in the parking garage, we literally

14  go down our steps, I come across Special Agent Jason Pack,

15  Special Agent Joelle Vehec.  I say, "Come with us.  We've got

16  to get out to Buddy Gregg.  We've got -- the motor home is

17  leaving."  Task Force Officer Jaron Patterson is also involved,

18  and I think additional Knox County deputies were contacted all

19  in this time frame.

20        So we're out trying -- yes, we're flying down 40,

21  lights on, to get out there and stop this transaction.

22  Q    Okay.  And before you went out there, did you do a

23  records search to see whether or not there was an outstanding

24  warrant?

25  A    Yeah.  Our office did.  There was -- it was

UNITED STATES DISTRICT COURT

# Exh. #13.4

## Parker Still - Direct Examination

1  resist?

2      A    He did.  He continued to resist.  Even while Jimmy

3  was putting the cuffs on him at the end, he was continuing --

4  you know, ultimately, he did stop resisting once Jimmy was able

5  to get his arms -- hands behind his back.

6      Q    Did you have to put him on the ground?

7      A    He did.  He was what we refer to as proned out.  You

8  know, I mean, he was out on the concrete right there on the

9  side there.

10     Q    Okay.  Were you -- after he was arrested, were you

11  asked to contact anyone by the defendant's friends?

12     A    Yes.  I was provided a piece of paper with the name

13  Heather on it.  And it contained a phone number.  And at this

14  time, it was represented at the scene to us that this was an

15  attorney or someone we should call, yes, ma'am.

16     Q    Okay.  And I'm going to show you what's marked as

17  Government's Exhibit 1.  If you look in front of you, there's

18  an exhibit folder.

19     A    Okay.

20     Q    And just turn to No. 1.

21     A    Okay.  I'm there.

22     Q    Do you recognize those pictures?

23     A    Yes.  That is the motor home that was -- that

24  Mr. Beane was on the day that was purchased with stolen money.

25     Q    Is that -- are those pictures an accurate

UNITED STATES DISTRICT COURT

**Exh. #13.5**

1  of them that we are bound by, the United States Constitution,

2  the FBI internal rules, Department of Justice, big umbrella,

3  you know, that we fall under.  State of Tennessee, you know, I

4  mean, there's a lot of rules and regulations out there.

5      Q    Okay.  And what are the laws regarding an arrest, a

6  physical arrest and detainment?  What are the actual criminal

7  rules of procedure that you are required to follow, such as a

8  warrant to be able to take that, do you have to have a warrant

9  to be able to arrest someone?

10     A    No, ma'am.  I can arrest someone on probable cause

11 without a warrant.  I don't need a warrant to arrest someone.

12     Q    Okay.  But let's go into the probable cause.  That

13 day, do you believe that you had probable cause that day to

14 arrest Randy Keith Beane?

15     A    Without a doubt, ma'am.  He is sitting in a vehicle

16 purchased with stolen money with the vehicle running.  You

17 better believe I had probable cause.  I saw it with my own two

18 eyes.

19     Q    Okay.  And you stated that you -- that there are

20 basically two ways that you receive cases.  You stated, one,

21 that you receive complaints, you rely on private citizens

22 making complaints, and the second one was that -- the second

23 one was that banks and institutions are a big source of your

24 cases received.  Is that correct?

25     A    Yes, ma'am.  That's correct.  But we do receive cases

UNITED STATES DISTRICT COURT

**Exh. #13.6**

Parker Still - Cross-Examination

1  their career, is they go work for financial institutions.

2      Q     Uh-huh.  Okay.  So on July 11th, let's go to that

3  date --

4      A     Yes, ma'am.

5      Q     -- if you would.

6      A     Sure.

7      Q     Now, you stated you were working on an affidavit to

8  seize this vehicle.  You said it was 45 feet long.  You were

9  concerned about safety if this vehicle had gotten out, you

10  know, it's 45 feet long, it could hurt someone, it could -- you

11  never know.  And you wanted -- you're always there to protect?

12      A     You never know.  Looking to what just happened in New

13  York with somebody mowing people down, that stuff's going on

14  everywhere.  We don't know.  We know a vehicle is purchased

15  with stolen funds and we do not know what the intent of that

16  individual is to use with that vehicle.

17      Q     So what actual information, when you were writing

18  this affidavit, okay, for the seizure of the vehicle --

19      A     Right.

20      Q     -- what actual information had you received that

21  there was actually a possible crime committed by Mr. Beane to

22  believe that the RV wasn't his?

23      A     The information primarily from what I've stated from

24  USAA at the time.  That's what we were relying on, that

25  information from USAA that is telling us that their money has

UNITED STATES DISTRICT COURT

**Exh. #13.7**

## Parker Still - Cross-Examination

1  been stolen.

2      Q    Was there a complaint filed so it's in writing or was

3  this just a phone conversation?

4      A    No.  So we got some -- we had some written

5  information from USAA, and then we -- I believe I was

6  referencing back to my 302, again that -- the memorandum, where

7  I'm actually on the phone.  We're conducting an interview with

8  Mr. Brown, at this time who you're referencing, to get all that

9  information, yes, ma'am.

10     Q    Okay.  So you found out about the funds approximately

11 the 10th?

12     A    Uh-huh.

13     Q    And on the 11th, you didn't have any kind of written

14 report from USAA, just that someone had stolen their money.

15     A    We had just some -- some basic facts that were

16 provided to us by USAA in a document, yes, ma'am.

17     Q    In a document?

18     A    Yes, ma'am.

19     Q    And that document is what document?

20     A    I believe.

21     Q    On USAA letterhead or --

22     A    I think it was attached to an e-mail from USAA.

23 Again, and I followed up with an interview.

24     Q    Uh-huh.  And what was this attachment?

25     A    There was some notes I know, like I was describing,

UNITED STATES DISTRICT COURT

**Exh. #13.8**

Parker Still - Cross-Examination

1    Q    Please just answer the question --

2    A    No.  I'll --

3    Q    -- yes or no, was the first time that you met Randall

4    on July 11th when your teams passed him out of the vehicle?

5    Was that the first time?

6    A    The first time we ever met Mr. Beane was on

7    July 11th.

8    Q    When you pulled him out of the RV.  Is that correct?

9    A    When I -- when we -- when we removed him from an RV

10   purchased with stolen money that was running.

11   Q    Okay.  I asked you, is that correct?  And I can

12   appreciate --

13          THE COURT:  Was the first time you met Mr. Beane was

14   when you approached him and took him out of the RV on or around

15   July 11th?

16          THE WITNESS:  Yes, Your Honor.

17          THE COURT:  All right.  Go on to the next question.

18          MS. TUCCI-JARRAF:  Thank you.

19   BY MS. TUCCI-JARRAF:

20   Q    Okay.  I want to keep this very --

21   A    Oh, no, ma'am.  I'm just -- I'm here to answer your

22   questions.

23   Q    Okay.

24   A    I'm happy to do so, as long as you want to ask them.

25   Q    Okay.  So at no other time prior to that had you

UNITED STATES DISTRICT COURT

**Exh. #13.9**

### Parker Still - Cross-Examination

1   actually tried to figure out whether that money could possibly

2   be Mr. Beane's?

3       A    We had information from USAA, ma'am, that we --

4   credible, reliable information from their financial

5   investigators that this money was stolen.  That's what we were

6   working with at the time.

7       Q    Okay.

8       A    Uh-huh.

9       Q    So then I have a question for you, if your -- I get

10  your experience regarding investigating crimes.

11      A    Sure.

12      Q    Trying to locate them, I appreciate that.

13      A    Yes, ma'am.

14      Q    More than you could know.  My question is, is how

15  familiar are you with actual banking, as far as how banking

16  actually works, money transactions actually work, the inner

17  workings of banking?  Have you ever worked for a bank?

18      A    No, ma'am.  I have never worked for a bank.

19      Q    Okay.  Have you ever been an attorney in private

20  capacity, as far as a consultant or any other for a bank?

21      A    You know, I did work some for a -- I did some work

22  for a bank.  I don't know -- I wouldn't go as far as saying I

23  was in-house counsel or anything like that.  But I have done

24  work for a bank, yes, ma'am.

25      Q    Okay.

UNITED STATES DISTRICT COURT

**Exh. #13.10**

Parker Still - Cross-Examination

1  they literally went in, took this man out because he believed

2  that USAA Bank was a victim based off of the information.

3  We're trying to determine what information they had in order to

4  arrest Randall Beane without any kind of warrant at that point.

5          THE COURT:  All right.  I'll overrule the objection,

6  since we've gone down this line.  Maybe we can finish it up.

7  But go ahead.

8          MS. TUCCI-JARRAF:  Thank you.

9          THE COURT:  Answer the question to the extent you

10  can.

11          THE WITNESS:  Yes, Your Honor.

12          Ma'am, the general understanding of the ACH transfer

13  system and a Fedwire, is that your question?

14  BY MS. TUCCI-JARRAF:

15      Q    My question is, just what is your general

16  understanding -- because were you the one that made the call to

17  go and arrest -- well, to arrest, we'll just say at this point,

18  to arrest Randall Beane and seize the vehicle?  Were you the

19  one that made that call?

20      A    You know, I think we -- I spoke to the U.S.

21  Attorney's Office to let them know what we were on the way to

22  do, yes, ma'am.  I -- so I guess, yeah, I did.  I was letting

23  know the U.S. Attorney's Office.

24          I think we're getting a little off track here.  I

25  mean, you know, when an FBI gets a call that a bank is getting

UNITED STATES DISTRICT COURT

**Exh. #13.11**

Parker Still - Cross-Examination

1  robbed, we don't sit there and say, "Hey, do you know" -- I

2  mean, we don't ask a million questions.  We go.  That's what we

3  did today or did then.

4      Q    When a bank gets robbed, do you usually have a bank

5  robber and a banker and a gun or some kind of weapon and cash?

6  You're talking about, per Ms. Svolto's opening statement, that

7  he was robbing a bank?  I'm asking you, because it appears from

8  what you have said that you believed that he had stolen money

9  using a transfer system that unless you are inside the Federal

10  Reserve Banking System and the IT source code dealing with the

11  source code and all that, most people don't know what it is.

12      A    Yes, ma'am.

13      Q    I'm asking you, because you are the one that

14  supposedly made the call, except for what inference you just

15  tried to make that U.S. attorneys might have some

16  responsibility as --

17      A    No.

18      Q    -- to the events that day, but that you made the call

19  to go in and arrest what you believed was the criminal to

20  protect what you believed at the time was the victim.

21          You stated that because of documents you had

22  received, which were IP coding and their e-mail, which we don't

23  know what was in it, but that they had been robbed, something

24  to that effect, that you believed that Randall Beane was

25  already a criminal and that the money could not have been his,

UNITED STATES DISTRICT COURT

**Exh. #13.12**

## Parker Still - Cross-Examination

1  to jail.

2      Q      Did you ever provide a copy of that alleged South

3  Carolina outstanding warrant to Ms. Davidson or anyone on

4  the -- at the DOJ?

5      A      You know, I would have to look back on it.  What we

6  normally do is we turn our file -- our discovery file over to

7  the prosecutors.

8      Q      Okay.  On July 11th, prior to or at any moment, did

9  you ever present a warrant to Mr. Beane or the other

10  unidentified male and unidentified female that you found in

11  that vehicle?  Did you ever present an actual paper warrant or

12  electronic warrant to any of those three?

13      A      No, ma'am.  And I -- I don't -- I mean, that's -- I

14  think that's some of TV stuff where we serve people, put a

15  warrant in their hands.  You know, that's -- I don't -- that's

16  just not general practice where you would, you know, serve

17  someone -- hand someone a warrant, generally.

18      Q      Okay.

19      A      I'm not saying it doesn't happen.  I'm just saying,

20  you know, the fact that we -- you know, we've made -- you know,

21  we have -- it's a team effort.  We rely on information that is

22  provided to us, and we go out and we do our jobs.  And on that

23  day --

24      Q      Sorry.

25      A      Oh, go ahead.

UNITED STATES DISTRICT COURT

**Exh. #13.13**

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

UNITED STATES OF AMERICA )
                     )
                     )      No. 3:17-cr-82-01
        v.              )
                     )
RANDALL KEITH BEANE )
                     )

## NOTICE OF APPEAL

Notice is hereby given that Randall Keith Beane hereby appeals to the United States Court of Appeals for the Sixth Circuit from the Final Judgment entered in this action on 24th day of July, 2018.

Defendant's signature _WITHOUT PREJUDICE_ _Randall Keith Beane_

## Exh. #14

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA

v.

HEATHER ANN TUCCI-JARRAF,

Case No.    3:17-CR-82-02

## NOTICE OF APPEAL

Notice is hereby given that Heather Ann Tucci-Jarraf, hereby appeals to the United States

Court of Appeals for the Sixth Circuit from the Final Judgment entered in this action on the 17th

day of    July, 2018

Defendant's signature _____

## Exh. #15

# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  September 14, 2018

Mr. Stephen Louis Braga
University of Virginia
Appellate Litigation Clinic
580 Massie Road
SL-251
Charlottesville, VA 22903

Re:  Case No. 18-5777, *USA v. Randall Beane*
Originating Case No. : 3:17-cr-00082-1

Dear Counsel,

This confirms your appointment to represent the defendant in the above appeal under the
Criminal Justice Act, 18 U.S.C. § 3006A.

You must file your appearance form and order transcript within 14 days of this letter.  The
appearance form and instructions for the transcript order process can be found on this court's
website.  Please note that transcript ordering in CJA-eligible cases is a two-part process,
requiring that you complete both the financing of the transcript (following the district court's
procedures) and ordering the transcript (following the court of appeals' docketing
procedures).  Additional information regarding the special requirements of financing and
ordering transcripts in CJA cases can be found on this court's website at
http://www.ca6.uscourts.gov/criminal-justice-act under "Guidelines for Transcripts in CJA
Cases."

Following this letter, you will receive a notice of your appointment in the eVoucher
system.  That will enable you to log into the eVoucher system and track your time and expenses
in that system.  To receive payment for your services at the close of the case you will submit
your voucher electronically via eVoucher.  Instructions for using eVoucher can be found on this
court's website.  Your voucher must be submitted electronically no later than 45 days after the
final disposition of the appeal. *No further notice will be provided that a voucher is
due.*  Questions regarding your voucher may be directed to the Clerk's Office at 513-564-7078.

# Exh. #16.1

Finally, if you become aware that your client has financial resources not previously disclosed or is no longer eligible for appointed counsel under the Criminal Justice Act, please contact the Clerk or Chief Deputy for guidance.

Sincerely yours,

s/Ken Loomis
Administrative Deputy
Direct Dial No. 513-564-7067

cc:  Mr. Randall Keith Beane
Mr. Bryant L. Crutcher
Ms. Cynthia F. Davidson
Mr. John L. Medearis
Ms. Anne-Marie Svolto

**Exh. #16.2**

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0251p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

HEATHER ANN TUCCI-JARRAF (18-5752); RANDALL
KEITH BEANE (18-5777),

*Defendants-Appellants.*

Nos. 18-5752/5777

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:17-cr-00082—Thomas A. Varlan, District Judge.

Decided and Filed: September 24, 2019

Before: SUTTON, COOK, and THAPAR, Circuit Judges.

_____

COUNSEL

**ON BRIEF:** Dennis G. Terez, Beachwood, Ohio, for Appellant in 18-5752. Stephen L. Braga, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant in 18-5777. Anne-Marie Svolto, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

_____

**OPINION**               **Exh. #17.1**
_____

SUTTON, Circuit Judge. Faced with financial challenges and rising unpaid bills, the individual has two legal options: shed the debts through the humbling act of filing for bankruptcy or find a new source of assets. Randall Beane, with Heather Tucci-Jarraf's assistance, tried to find a new source of assets: an alleged trust fund of government money in his

persuade them that he rightfully owned the money he was spending. Her assurances worked, and the bank stopped cancelling the payments.

But just for a while. By then, as it happens, a federal investigation had begun. On July 11, federal officers learned that Beane planned to drive off the dealership lot in his new motor home. Officers rushed to the scene, arriving just as Beane started the engine. He refused to exit the vehicle, and agents had to remove him. One of the motor home's other occupants provided officers with Tucci-Jarraf's phone number and requested that they contact her. On the phone, Tucci-Jarraf claimed that she was "planning military operations." R. 162 at 37. Officers arrested her in Washington, D.C., where she had gone after contacting the Secret Service to request a meeting with the President.

Beane and Tucci-Jarraf responded to their arrests with a flood of frivolous motions. They demanded hearings on their own identities, the identities of the arresting officers, and the identity of the presiding judge. They asserted that United States courts cannot hold anyone "except by their own consent" and that the United States (a tad more plausibly) is a "bankrupt corporation." R. 61 at 29, 61. They submitted hundreds of pages of pointless Uniform Commercial Code filings, allegedly related to something called "The One People's Public Trust." R. 18. They mailed the court an itemized bill seeking payment of over $46 quintillion dollars. On and on it went. Concerned that such conduct might confuse a jury, the judge granted a motion in limine that barred the defendants from raising similar arguments at trial.

Beane and Tucci-Jarraf asked to represent themselves. The judge held a hearing for each of them, complete with the standard-issue inquiries and cautions about self-representation. The defendants provided some unusual answers, but after an extended colloquy the judge concluded that they had knowingly and intelligently waived their right to counsel. He granted their requests. As a safeguard, he granted their request to appoint standby counsel, who can help the defendant during the trial and who can take over if the judge ends the defendant's self-representation. *See McKaskle v. Wiggins*, 465 U.S. 168, 176–78 (1984).

The defendants did their best. They cross-examined the government's witnesses, introduced evidence, testified on their own behalf, and used their closing statements to justify

**Exh. #17.2**

Nos. 18-5752/5777          *United States v. Tucci-Jarraf, et al.*          Page 5

their worldview.  But their best was not good enough.  The jury convicted Beane of bank and wire fraud, 18 U.S.C. §§ 1343, 1344, and both defendants of conspiracy to commit money laundering, *id.* § 1956(h).

The court sentenced Beane to 155 months and ordered him to pay over a half-million dollars in restitution.  The court sentenced Tucci-Jarraf to 57 months.

## II

Beane and Tucci-Jarraf have had second thoughts about representing themselves.  On appeal, they argue that the trial judge should have saved them from themselves.  No cause for reversal has been shown.

The right to counsel of the Sixth Amendment has paternalistic and libertarian components to it.  On one side, all defendants have the right to counsel in criminal cases, along with the right to have the government appoint counsel if the defendant cannot afford it, all to the end of ensuring that the government does not remove someone's liberty to live freely in society without sound legal representation.  U.S. Const. amend. VI; *see Gideon v. Wainwright*, 372 U.S. 335, 344 (1963).  On the other side, all defendants, whether lawyers or not, have a right to represent themselves—what amounts to the right to reject counsel and to confront the government alone. *See Faretta v. California*, 422 U.S. 806, 817–18 (1975).  Vindication of the goals of the second option often comes at the expense of the goals of the first.

Look no further than one reality of self-representation to see the tension.  While the Sixth Amendment guarantees a minimum level of competence that all criminal defense lawyers must meet during a criminal case, *see Strickland v. Washington*, 466 U.S. 668, 686 (1984), that guarantee does not apply to self-representation, *see Faretta*, 422 U.S. at 834 n.46.  The right to waive counsel includes the right to waive effective counsel.  The self-lawyer thus is free to behave as the eccentric his client selected, and that is no concern of the Sixth Amendment.  *See Wiggins*, 465 U.S. at 177 n.8.  Libertarian indeed.

All of this confirms that, generally speaking, the only way out of the consequences of bad representation in a self-represented criminal trial is proof that the trial court erred in letting the

**Exh. #17.3**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.:   3:17-CR-82 |
| | ) | Judges Varlan/Shirley |
| RANDALL KEITH BEANE, and | ) | |
| HEATHER ANN TUCCI-JARRAF | ) | |

## UNITED STATES'S REQUESTED JURY INSTRUCTIONS

The United States of America, by and through the United States Attorney for the Eastern District of Tennessee, submits the following proposed jury instructions for the trial of this case. The United States requests that this instruction be given, along with the Court's standard jury charge.

Respectfully submitted,

J. DOUGLAS OVERBEY
UNITED STATES ATTORNEY

By:    s/ Cynthia F. Davidson
       Cynthia F. Davidson
       Anne-Marie Svolto
       Assistant United States Attorneys
       800 Market Street, Suite 211
       Knoxville, Tennessee 37902
       (865) 545-4167

statements to be true. This guilty knowledge, however, cannot be established by demonstrating that the defendant was merely negligent or foolish.[1]

    d.     A misrepresentation or concealment is "material" if it has a natural tendency to influence or is capable of influencing the decision of a person of ordinary prudence and comprehension.

    e.     To act with "intent to defraud" means to act with an intent to deceive or cheat for the purpose of either causing a financial loss to another or bringing about a financial gain to oneself.

    f.     To "cause" wire, radio or television communications to be used is to do an act with knowledge that the use of the communications will follow in the ordinary course of business or where such use can reasonably be foreseen.

    g.     The term "interstate commerce" includes wire, radio or television communications which crossed a state line.

3) It is not necessary that the government prove all of the details alleged concerning the precise nature and purpose of the scheme or that the material transmitted by wire, radio or television communications was itself false or fraudulent or that the alleged scheme actually succeeded in defrauding anyone or that the use of the wire, radio or television communications was intended as the specific or exclusive means of accomplishing the alleged fraud or that someone relied on the misrepresentation or false statement or that the defendant obtained money or property for his own benefit.

4) If you are convinced that the government has proved all of the elements as to the charge you are considering, say so by returning a guilty verdict on that charge. If you have a

---

[1] Adapted from 2.09 Pattern Jury Instructions, Criminal Cases, Sixth Circuit (20

**Exh. #18.2**





# Mason's Manual of Legislative Procedure | 2010 Edition

1/4/2019

## To Play by the Rules, You Need to Know the Rules



Mason's Manual of Legislative Procedure is the only parliamentary manual designed specifically for state legislatures. It addresses problems and concepts in the contexts that occur most often in legislatures, so it's the easiest guide to understand and use.

Used by more than 70 percent of the nation's legislatures, Mason's Manual is the No. 1 resource for information on legislative procedure.

Order today!

Legislators and legislative staff receive a special rate of $60 (plus shipping and handling) per copy. That's a 20% saving off the $75 cover price!

Preview the Table of Contents and an excerpt from this publication.

Copyright 2020 by National Conference of State Legislatures

**Exh. #19.1**

principles, such as the requirement of a meeting, a quorum or a majority vote, apply to all groups in all instances and without adoption, superseding adopted rules and statutes, while other rules, sometimes also called parliamentary law, are mere customs and give way to adopted rules and apply only when the assembly has not adopted any contrary rule or practice. It is often necessary to determine in what sense the term is used.

6. There is a reason for every form of parliamentary procedure that has been long sanctioned by general usage. These procedures have been approved by experience, have been found useful and expedient in practice, and have grown into general acceptance.

*Sec. 4 Par. 5; Waples, Sec. 201.*

# CHAPTER 2.
## CONSTITUTIONAL PROVISIONS GOVERNING PROCEDURE

*Waples, Sec. 281, Right of Legislative Bodies to Suspend Rules*

### Sec. 6 Legislative Procedure Is Controlled by Constitutional Provisions

*See also Sec. 3, Each House Determines the Rules of Its Own Proceeding.*

1. Provisions in the constitutions of the states usually provide, among other things, that each house of the legislature shall determine the rules of its proceedings; that each house shall judge the qualifications, election and returns of members; that each house may choose its officers; that a majority of the house shall constitute a quorum; that each house may discipline or expel members; and that each house shall keep a journal.

2. A constitutional provision regulating procedure controls over all other rules of procedure.

### Sec. 7 Constitutional Requirements Concerning Procedure Must Be Complied With

*See also Ch. 64, Secs. 694, 708, Journal and Quorum.*

Being organic in character, constitutional provisions stand on a higher plane than statutes and are mandatory. Constitutional provisions prescribing exact or exclusive time or methods for certain acts are mandatory and must be complied with. Constitutional provisions that are general in nature and not exclusive may be directory. Examples of directory provisions are given below.

**Exh. #19.2**

Exh. #19.3

(a) Where there is not constitutional provision requiring that a legislature read a bill on three separate days, a law to that effect is directory only, and an act passed without complying with the statute is not invalidated thereby.

(b) A provision for recording the yeas and nays on the passage of a bill may be directory only and not mandatory.

2. If Congress or a state legislature violates a constitutional requirement, the courts will declare its enactment void.

3. Under a state constitution, unlike the U.S. Constitution, legislation not prohibited may be allowed. State constitutional provisions are not grants of power but, instead, are limitations on otherwise plenary power of the people of a state exercised through its legislature. A legislature may enact any laws that state or federal constitutions do not prohibit.

Sec. 7, Par. 1, Caplor v. Topping (Wn., 1909).
Sec. 7, Par. 1(a), Schwenzer v. Territory (Okla., 1897); Capitol Iron Works v. Topping (Wn., 1909).
Sec. 7, Par. 1(b), People ex rel. Scott v. Supervisors of Chenango (N.Y., 1853).
Sec. 7, Par. 2, Missouri ex rel. Fox v. Alt (Mo., 1887).
Sec. 7, Par. 3, New Orleans Firefighters Ass'n v. Civil Service Com'n of City of New Orleans (La., 1982); Aguillard v. Treen (La., 1983); Banner County, Nebraska v. State Bd. of Equalization and Assessment (Neb., 1987).

# CHAPTER 3
# ADOPTED RULES GOVERNING PROCEDURE

*See also Ch. 28, Sec. 279-286, Suspension of the Rules.*

## Sec. 10 Right to Adopt Rules

1. A legislative body has the right to adopt rules of procedure.

2. It is customary for every legislative body to adopt rules that provide for its organization, for its officers and committees, and for special rules of procedure. In practice, most of the rules relating to procedure are based upon general parliamentary law, but they also may contain rules of procedure applicable to the body that deviate from parliamentary usage.

3. The power of each house of a state legislature to make its own rules is subordinate to the rules contained in the constitution.

4. Either house of Congress or other house of a state legislature may make special rules for itself. Any other assembly may make regulations for its own government and they may be partly or wholly different from those of the established parliamentary procedure.

Sec. 10, Par. 1, French v. California Senate (Calif. 1905); Witherspoon v. Mississippi (Miss., 1925).
Sec. 10, Par. 2, Cushing's Legislative Assemblies, Secs. 206-213; Hughes, Sec. 15; Taylor v. Davis (Ala., 1924); Dye v. Mississippi (Miss., 1987); Heimbach v. New York (N.Y., 1982).
Sec. 10, Par. 3, Taylor v. Davis (Ala., 1924).
Sec. 10, Par. 4, Wopis, Sec. 205; Heimbach v. New York (N.Y., 1982).

4. The rules under which a deliberative body will operate may be changed, suspended or, waved at the body's pleasure where the rules of procedure are within control of the majority.

## Sec. 15. Failure of a House of the Legislature to Conform to Its Rules Does Not Invalidate Its Acts

*See also Sec. 13, Rights to Change Rules; Sec. 22, Effects of Adoption of Parliamentary Authority, particularly Par. 3; Sec. 75, Powers of Courts over Legislative Bodies Generally, particularly Par. 3.*

*Sec. 281, Right of Legislative Bodies to Suspend Rules; Sec. 284, Suspension of Rules by Implication; and Sec. 407, Amendment of Rules.*

1. Violation of rules of procedure adopted by a house of the legislature for its own convenience and not required by the constitution, will not impair the validity of a statute.

2. A legislature body having the right to do an act must be allowed to select the means of accomplishing such act within reasonable bounds.

3. A rule is virtually repealed for the occasion when it is disregarded by those who have power to control it, and the act of breaking it is at least a suspension of it. The body at its preceding meetings does not have the power

*Sec. 14  Par. 4    Commonwealth ex rel Fox v. Chace (Pa., 1961).*
*Sec. 15, Par. 1, Taylor v. Davis (Ala., 1924); Goodwin v. State Bd. of Admin. (Ala., 1925); Missouri ex rel Fox v. Air (Mo., 1887); Ohio ex rel Grandell v. Davidson (Ohio, 1899); Bryan v. Libud (Virginia, 1956).*
*Sec. 15, Par. 2    Attorney General v. Brissenden (Mass., 1930).*

---

to bind its successors or to put shackles on it that might be cast off only in a particular way.

2. Under a constitutional provision declaring that each house of the legislature shall determine the rules of its own proceedings, the fact that a house acted in violation of its own rules or in violation of parliamentary law in a matter clearly within its power does not make its action, subject to review by the courts.

*See also Sec. 43, Indispensable Requirements for Making Valid Group Decisions, particularly Par. 9.*

## Sec. 16. Fraud Will Invalidate Acts

Where there is more than a mere technical violation of the rules of procedure, the violation may invalidate the act, and an act will be invalidated where there is fraud or bad faith.

*Sec. 15, Par. 3   Commonwealth v. Mayor of Lancaster (Pa., 1850).*
*Sec. 15, Par. 4   Connecticut v. Say, Bank of New London (Conn., 1900); Ohio ex rel Grandell v. Davidson (Ohio, 1899); Bryan v. Libud (Virginia Ls., 1956).*
*Sec. 16   South George Power Co. v. Baumann (Ga., 1929); People v. Albany and Susquehanna R. R. Co., (N.Y., 1869).*

# Exh. #19.4

## Sec. 727. Bill Numbers

1. The number of a bill is not part of the act but is a convenient device for identifying bills in legislative procedure.

2. When there is a discrepancy between the number and the title of a bill, the title will control.

3. When a bill is identified only by number and the number could refer to a different bill, it will not be presumed that a wrong number was erroneously used.

## Sec. 728. Titles to Legislation

1. The main object of a provision requiring that every act shall embrace but one subject that shall be expressed in its title is to prevent a legislative body and the public from being entrapped by misleading titles, whereby legislation relating to one subject might be obtained under the title of another; and in the accomplishment of this object, the provision is not to receive narrow or technical construction.

2. Discrepancies and irregularities in the title of legislation as it appears in various places in the journal will not invalidate the legislation as long as there is no question of identity and the legislation is properly enrolled.

*Sec. 727, Par. 1:* Volusia County v. Florida (Fla., 1929).
*Sec. 727, Par. 3:* Wisconsin v. Wendler (Wis., 1896).
*Sec. 728, Par. 1:* Thornton v. Alabama (Ala., 1990); Heron v. Riley (Calif., 1930); People v. Cannady (Ill., 1987); Liffeau v. Metropolitan Sports Facilities Comm'n (Minn., 1977); Scharbrough v. Texas (Texas, 1987); Benedict v. Polan (W.Va., 1991).

3. When the object of an act as passed is fully expressed in the title, the form or status at its introduction, or during the stages of legislation before it becomes a law, is immaterial.

4. It is not necessary that an act retain the same title through all its stages in both houses. The title of the bill as it is adopted by the legislature controls, not the title by which the bill may have been introduced or that it may have carried in reports of committees.

## Sec. 729. Enacting Clauses

*See also Sec. 146, Bills, particularly Par. 4.*

The enacting clause, which also may be called the enacting authority or enacting style, follows immediately after a bill's preamble or title and precedes the body of the bill. It is a statement of the words declaring enactment by the proper legislative authority which every bill must contain and which are requisite to the validity of a law. The usual introductory formula is "Be it enacted by ..."

*Sec. 728, Par. 2:* Town of Walnut v. Wade (U.S., 1880); Clifton v. Alabama (Ala., 1928); Desha-Drew Road Improvement Dist. v. Taylor (Ark., 1917); Florida v. Bethea (Fla., 1911); Weyand v. Stover (Kan., 1886); Ellis v. Parsell (Mich., 1894); *Ex parte* Seward (Mo., 1923); Tyson v. City of Salisbury (N.C., 1909); Nelson v. Haywood County (Tenn., 1892).
*Sec. 728, Par. 3:* People *ex rel.* Hart v. McElroy (Mich., 1888); Detroit Common Council v. Schmid (Mich., 1901); Nebraska *ex rel.* 1st Nat'l Bank of Atkinson v. Cronin (Neb., 1904).
*Sec. 728, Par. 4:* Town of Walnut v. Wade (U.S., 1880); Chicago B. & Q. R. Co. v. Smyth (D.C. Neb., 1900); Illinois Central R. Co. v. People (Ill., 1892); Missouri *ex rel.* Ault v. Field (Mo., 1894); *Ex parte* Seward (Mo., 1923); Nelson v. Haywood County (Tenn., 1892); Milwaukee County v. Isenring (Wis., 1901).

**Exh. #19.5**

# PART X
# INVESTIGATIONS AND PUBLIC ORDER

## CHAPTER 73
## INVESTIGATIONS BY LEGISLATIVE BODIES

### Sec. 795. Right of a Legislative Body to Make Investigations

1. The right of a legislative body to make investigations in order to assist it in the preparation of wise and timely laws must exist as an indispensable incident and auxiliary to the proper exercise of legislative power. This has been recognized from the earliest times in the history of U.S. legislation, both federal and state, and from even earlier epochs in the development of British jurisprudence.

2. The legislature has the power to investigate any subject regarding which it may desire information, in connection with the proper discharge of its function (to make, amend, or repeal statutes) or to perform any other act delegated to it by the constitution.

Sec. 795 Par. 1. Anderson v. Dunn (U.S., 1821); Kilbourn v. Thompson (U.S., 1880); In re Chapman (U.S., 1897); Hartman v. Interstate Commerce Comm'n (U.S., 1908); Marshall v. Gordon (U.S., 1917); Gallagher v. Olson (N.D. Wis., 1968); in re Battelle (Calif., 1929); Murphy v. Collins (Ill., 1974); Burnham v. Morrisey (Mass., 1859); Briggs v. MacKellar (N.Y., 1855); Robertson v. Peples (S.C., 1917).

Sec. 795 Par. 2. In re McCarthy (Calif., 1866); Greenfield v. Russel (Ill., 1920); Attorney-General v. Brissenden (Mass., 1930); Briggs v. MacKellar (N.Y., 1855); People v. Keeler (N.Y., 1855); Simpson v. Hill (Okla., 1927); Commonwealth v. Costello (Pa., 1913); Wisconsin ex rel. Rosenhiem v. Frear (Wis., 1909).

Exh. #19.6



Delaware.gov       Governor | General Assembly | Courts | Elected Officials | State Agencies

**Department of State: Division of Corporations**

HOME                      Allowable Characters

## Entity Details

### THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| File Number: | 2193946 | Incorporation Date / Formation Date | 4/19/1989 (mm/dd/yyyy) |
| Entity Name: | UNITED STATES OF AMERICA, INC. | | |
| Entity Kind: | Corporation | Entity Type: | Exempt |
| Residency: | Domestic | State: | DELAWARE |

### REGISTERED AGENT INFORMATION

| | | | |
|---|---|---|---|
| Name: | THE COMPANY CORPORATION | | |
| Address: | 251 LITTLE FALLS DRIVE | | |
| City: | WILMINGTON | County: | New Castle |
| State: | DE | Postal Code: | 19808 |
| Phone: | 302-636-5440 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or
more detailed information including current franchise tax assessment, current filing history
and more for a fee of $20.00.
Would you like ○ Status ○ Status,Tax & History Information

[ Submit ]

[ View Search Results ]          [ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov

## Exh. #20.1



Delaware.gov          Governor | General Assembly | Courts | Elected Officials | State Agencies

**Department of State: Division of Corporations**

Allowable Characters

HOME

Entity Details

### THIS IS NOT A STATEMENT OF GOOD STANDING

| | | |
|---|---|---|
| File Number | **4525682** | Incorporation Date / Formation Date: **4/14/2008** (mm/dd/yyyy) |

Entity Name:    **THE UNITED STATES OF AMERICA, INC.**

| | | | |
|---|---|---|---|
| Entity Kind: | **Corporation** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

### REGISTERED AGENT INFORMATION

| | | | |
|---|---|---|---|
| Name | **SPIEGEL & UTRERA, P.A.** | | |
| Address | **9 EAST LOOCKERMAN ST STE 202** | | |
| City | **DOVER** | County | **Kent** |
| State | **DE** | Postal Code | **19901** |
| Phone | **302-744-9800** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or
more detailed information including current franchise tax assessment, current filing history
and more for a fee of $20.00.
Would you like ○ Status ○ Status,Tax & History Information

[ Submit ]

[ View Search Results ]      [ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov

### Exh. #20.2

contains the following clause: "If any person, through temptation or melancholy, shall destroy himself, his estate, real and personal, shall, notwithstanding, (descend to his wife and children, or relations, as if he had died a natural death."

**FELON**, crimes. One convicted and sentenced for a felony.

2. A felon is infamous, and cannot fill any office, or become a witness in any case, unless pardoned, except in cases of absolute necessity, for his own preservation, and defence; as, for example, an affidavit in relation to the irregularity of a judgment in a cause in which he is a party. 2 Salk. R. 461; 2 Str. 1148;. Martin's R. 25; Stark. Ev. part 2, tit. Infamy. As to the effect of a conviction in one state, where the witness is offered in another, see 17 Mass. R. 515 2 Harr. & McHen. R. 120, 378; 1 Harr. & Johns. R. 572. As to the effect upon a copartnership by one of the partners becoming a felon, see 2 Bouv. Inst. n. 1493.

**FELONIOUSLY**, pleadings. This is a technical word which must be introduced into every indictment for a felony, charging the offence to have been committed feloniously; no other word, nor any circumlocution, will supply its place. Com. Dig. Indictment, G 6; Bac. Ab. Indictment, G 1; 2 Hale, 172, 184; Hawk. B. 2. c. 25, s. 55 Cro. C. C. 37; Burn's Just. Indict. ix.; Williams' Just. Indict. iv.-, Cro. Eliz. 193; 5 Co. 121; 1 Chit. Cr. Law, 242.

**FELONY**, crimes. An offence which occasions a total forfeiture of. either lands or goods, or both, at common law, to which capital or other punishment may be super-added, according to the degree of guilt. 4 Bl. Com, 94, 5; 1 Russ. Cr. *42; 1 Chit. Pract. 14; Co. Litt . 391; 1 Hawk. P. C. c. 37; 5 Wheat. R. 153, 159.

**FEMALE**. This term denotes the sex which bears young.

2. It is a general rule, that the young of female animals which belong to us, are ours, nam fetus ventrem sequitur. Inst. 2, 1, 19; Dig. 6, 1, 5, 2. The rule is, in general, the same with regard to slaves; but when a female slave comes into. a free state, even without the consent of her master, and is there delivered of a child, the latter is free. Vide Feminine; Gender; Masculine.

**FEME**, or, more properly,

## Exh. #21

**FEMME**. Woman.

2. This word is frequently used in law. Baron and feme, husband and wife; feme covert, a. married woman; feme sole, a single woman.

3. A feme covert, is a married woman. A feme covert may sue and be sued at law, and will be treated as a feme sole, when the husband is civiliter mortuus. Bac. Ab. Baron and Feme, M; see article, Parties to Actions, part 1, section 1, §7, n. 3; or where, as it has been decided in England, he is an alien and has left

# Judicial Officers

The district judges of our court are Article III judges, that is, they are appointed by the President of the United States, with approval of the Senate, under authority of Article III of the United States Constitution. They are appointed to lifetime terms.

We also have magistrate judges. They are appointed by the district judges and serve eight-year terms. Their duties are much like those of the district judges, except they do not have authority to try criminal cases, except misdemeanors. They can try civil cases by consent of the parties and do try a number of civil cases each year.



**Exh. #22**

# 28 U.S. Code § 1331 - Federal question

| U.S. Code | Notes |
|-----------|-------|

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

(June 25, 1948, ch. 646, 62 Stat. 930; Pub. L. 85–554, § 1, July 25, 1958, 72 Stat. 415; Pub. L. 94–574, § 2, Oct. 21, 1976, 90 Stat. 2721; Pub. L. 96–486, § 2(a), Dec. 1, 1980, 94 Stat. 2369.)

**Exh. #23**

## 28 U.S. Code § 1332 - Diversity of citizenship; amount in controversy; costs

U.S. Code          Notes

**(a)** The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

**Exh. #24**

Case 3:1 -cr-00082-TAV-DCP   Document 276-2   Filed 11/03/21   Page 49 of 55   PageID #: 20340



# LAWS

## THE UNITED STATES OF AMERICA,

FROM

THE 4th OF MARCH, 1789, TO THE 4th OF MARCH, 1815,

INCLUDING

THE CONSTITUTION OF THE UNITED STATES, THE OLD ACT OF
CONFEDERATION, TREATIES,

AND MANY OTHER VALUABLE ORDINANCES AND DOCUMENTS;

WITH

## COPIOUS NOTES AND REFERENCES.

ARRANGED AND PUBLISHED UNDER THE AUTHORITY OF AN ACT OF CONGRESS.

### IN FIVE VOLUMES.

VOL. I.

NEW YORK PUBLIC LIBRARY

ASTOR LIBR. NEW.

PUBLISHED BY

JOHN BIOREN AND W. JOHN DUANE, PHILADELPHIA, AND
R. C. WEIGHTMAN, WASHINGTON CITY.

1815.

Digitized by Google

**Exh. #25.1**

Actual mode of electing the president and vice president of the United States.

tives, open all the certificates, and the votes shall then be counted: the person having the greatest number of votes for president, shall be the president, if such number be a majority of the whole number of electors appointed; and if no person have such majority, then from the persons having the highest numbers, not exceeding three, on the list of those voted for as president, the house of representatives shall choose immediately, by ballot, the president. But in choosing the president, the votes shall be taken by states, the representation from each state having one vote; a quorum for this purpose shall consist of a member or members from two thirds of the states, and a majority of all the states shall be necessary to a choice. And if the house of representatives shall not choose a president whenever the right of choice shall devolve upon them, before the fourth day of March next following, then the vice-president shall act as president, as in the case of the death or other constitutional disability of the president.

[Note. In illustration of this amendment, see chap. 403, vol. 3.]

2. The person having the greatest number of votes as vice president, shall be the vice president, if such number be a majority of the whole number of electors appointed; and if no person have a majority, then from the two highest numbers on the list, the senate shall choose the vice president; a quorum for the purpose shall consist of two thirds of the whole number of senators, and a majority of the whole number shall be necessary to a choice.

3. But no person constitutionally ineligible to the office of president, shall be eligible to that of vice president of the United States.

## ARTICLE 18.

Citizenship forfeited by the acceptance, from a foreign power, of any title of nobility, office of emolument of any kind, &c. [See, as connected with this subject, ante, art. 1, sec. 9, clause 7, page 65.]

If any citizen of the United States shall accept, claim, receive, or retain any title of nobility or honor, or shall, without the consent of congress, accept and retain any present, pension, office, or emolument of any kind whatever, from any emperor, king, prince, or foreign power, such person shall cease to be a citizen of the United States, and shall be incapable of holding any office of trust or profit under them, or either of them.

[Note. The 11th article of the amendments to the constitution, was proposed at the second session of the third congress: the 12th article, at the first session of the eighth congress: and the 13th article, at the second session of the eleventh congress.]

## CHAPTER 5.

Treaty establishing the rules of correspondence and commerce between the United States and France.

Treaties, contracts, and conventions, concluded, at different periods, between the United States of America and France, up to the year 1814.

*No.* 1. Treaty of amity and commerce between the United States of America and his most christian majesty.

| ORIGINAL. | ORIGINAL. |
|---|---|
| Treaty of amity and commerce. | Traité d'amitié et de commerce. |

THE most christian king, and the thirteen United States of North America, to wit: New-Hampshire, Massachusetts Bay, New

LE roi très chrétien, et les treize Etats Unis de l'Amérique Septentrionale, savoir, New Hampshire, la Baye de Massa-

Digitized by Google

Exh. #25.2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 3:17-CR-82 |
| ) | |
| RANDALL KEITH BEANE AND ) | |
| HEATHER ANN TUCCI-JARRAF, ) | |
| ) | |
| Defendants. ) | |

## VOLUME IV of VIII

### JURY TRIAL PROCEEDINGS
### BEFORE THE HONORABLE THOMAS A. VARLAN

**January 26, 2018**
**9:04 a.m. to 4:32 p.m.**

APPEARANCES:

FOR THE PLAINTIFF:                CYNTHIA F. DAVIDSON, ESQUIRE
                                  ANNE-MARIE SVOLTO, ESQUIRE
                                  Assistant United States Attorney
                                  United States Department of Justice
                                  Office of the United States Attorney
                                  800 Market Street
                                  Suite 211
                                  Knoxville, Tennessee 37902

FOR THE DEFENDANT:                RANDALL KEITH BEANE, PRO SE
RANDALL BEANE                     Blount County Detention Center
                                  920 East Lamar Alexander Parkway
                                  Maryville, Tennessee 37904

FOR THE DEFENDANT:                STEPHEN G. McGRATH, ESQUIRE
(As Elbow Counsel)                9111 Cross Park Drive
                                  Suite D-200
                                  Knoxville, Tennessee 37923

**Exh. #26.1**

REPORTED BY:
Rebekah M. Lockwood, RPR, CRR
Official Court Reporter
(865) 210-6698
P.O. Box 1823
Knoxville, Tennessee 37901-1823

Sean O'Malley - Continued Cross-Examination

1   window.

2   Q    So, then, ACH credits are given to USAA in this

3   particular instance.  Is that what you're saying?

4   A    So in this particular instance, USAA received a

5   credit, but basically what they did is they debited out of the

6   Ginnie Mae's securities account at the Federal Reserve Bank of

7   New York, and they pulled $30.5 million out of the account in

8   30-some-odd tranches, and each one of those ACH debits that

9   were pulled out of the Ginnie Mae securities had to be returned

10  within a two-day window, and they were, so that USAA -- the

11  funds were taken back out of the USAA account, put back in the

12  Ginnie Mae securities account, and there was no loss to the

13  U.S. government.

14  Q    What is Ginnie Mae securities account?

15  A    That is the account -- the routing number of the

16  account that was debited.

17  Q    Okay.  So each routing number of all 12 Federal

18  Reserve Banks, they all go to the Ginnie Mae's securities

19  account?

20  A    No.  So the ACH fraud started out by people looking

21  up Federal Reserve routing numbers and using those routing

22  numbers to debit or pull money out of those routing numbers.

23  It morphed into looking for any U.S. government routing number

24  and then they started pulling it from the various different

25  routing numbers that we talked about, U.S. -- the Federal

UNITED STATES DISTRICT COURT

**Exh. #26.2**

it had been brought there by original process. And any attachment of the goods or estate of the defendant, by the original process, shall hold the goods or estate so attached, to answer the final judgment, in the same manner as by the laws of such state they would have been holden to answer final judgment, had it been rendered by the circuit court in which the suit commenced. Vide Act of September 24, 1789, 12; 4 Dall. 11; 5 Cranch, 303; 4 Johns. R. 493; 1 Pet. R. 220; 2 Yeates, R. 275; 4 W. C. C. R. 286, 344.

85. By the Constitution, art. 3, 2, 1, the judicial power shall extend to controversies between citizens of the same state, claiming lands under grants of different states.

86. By a clause of the 12th section of the Act of September 24th, 1789, it is enacted, that, if in any action commmenced in a state court, the title of land be concerned, and the parties are citizens of the same state, and the matter in dispute exceeds the sum or value of five hundred dollars, exclusive of costs, the sum or value being made to appear to the satisfaction of the court, either party, before the trial, shall state to the court, and make affidavit, if it require it, that he claims, and shall rely upon a right or title to the land, under grant from a state, other than that in which the suit is pending, and produce the original grant, or an exemplification of it, except where the loss of records shall put it out of his power, and shall move that the adverse party inform the court, whether he claims a right of title to the land under a grant from the state in which the suit is pending; the said adverse party shall give such information, otherwise not be allowed to plead such grant, or give it in evidence upon the trial; and if he informs that he does claim under any such grant, the party claiming under the grant first mentioned, may then, on motion, remove the cause for trial, to the next circuit court to be holden in such district. But if he is the defendant, he shall do it under the same regulations, as in the before mentioned case of the removal of a cause into such court by an alien, And neither party removing the cause shall be allowed to plead, or give evidence of, any other title than that by him stated as aforesaid, as the ground of his claim. See 9 Cranch, 292 2 Wheat. R. 378.

87. Application for removal must be made during the term at which the defendant enters his appearance. 1 J. J. Marsh. 232. If a state court agree to consider a petition to remove the cause as filed of the preceding term, yet if the circuit court see by the record, that it was not filed till a subsequent term, they will not permit the cause to be docketed. Pet. C.. C. R. 44 Paine, 410 but see 2 Penning. 625.

88. In chancery, when the defendant wishes to remove the suit, he must file his petition when he enters his appearance; 4 Johns. Ch. 94; and in an action in a court of law, at the time of putting in special bail. 12 Johns. 153. And if an alien file his petition when he filed special bail, he is in time, though the bail be excepted to. 1 Caines, 248; Coleman, 58. A defendant in ejectment may file his petition. when he is let in to defend. 4 Johns. 493. See Pet. C. C. R. 220; 2 Wash. C. C. R. 463; 2 Yeates, 275, 352; 3 Dall. 467; 4 Wash. C. C. R. 286; 2 Root 444; 5 John. Ch. R. 300 3 Harn. 48; 4 Wash. C. C. R. 84. 3d. Remedy by Mandamus.

89. The power of the circuit Court to issue a mandamus, is confined, exclusively, to cases in which it may be necessary for the exercise of a jurisdiction already existing; as, for instance, if the court below refuse to proceed to judgment, then a mandamus in the nature of a procedendo may issue. 7 Cranch, 504; 6 Wheat. R. 598. After the state court had refused to permit the removal of a cause on petition, the circuit
the cause.

**4th. Appellate Jurisdiction.**

**Exh. #27.1**

90. The appellate jurisdiction is exercised by means of, 1. Writs of error. 2 Appeals from the district courts in admiralty and maritime jurisdiction. 3. Certiorari. 4. Procedendo.

91. - [I.] This court has jurisdiction to issue writs of error to the district court, on judgments of that court in civil cases at common law.

92. The 11th section of the Act of September 24, 1789, provides, that the circuit courts shall also have appellate jurisdiction from the district courts, under the regulations and restrictions thereinafter provided.

93. By the 22d section, final decrees and judgments in civil actions in a district court, where the matter in dispute exceeds the sum or value of fifty dollars, exclusive of costs, may be reexamined, and reversed or affirmed in a circuit court holden in the same district, upon a writ of error, whereto shall be annexed and returned therewith at the day and place therein mentioned, an authenticated transcript of the record and assignment of errors, and prayer for reversal, with a citation to the adverse party, signed by the judge of such district court, or a justice of the supreme court, the adverse party having at least twenty days notice. But there shall be no reversal on such writ of error, for error in ruling any plea in abatement, other than a plea to the jurisdiction of the court, or for any error in fact. And writs of error shall not be brought but within five years after rendering or passing the judgment or decree complained of; or, in case the person entitled to such writ of error be an infant, non compos mentis, or imprisoned, then within five years, as aforesaid, exclusive of the time of such disability. And every justice or judge signing a citation or any writ of error as aforesaid, shall take good and sufficient security, that the plaintiff in error shall prosecute his writ to effect, and answer all damages and costs, if he fail to make his plea good.

94. The district judge cannot sit in the circuit court on a writ of error to the district court. 5 Wheat. R. 434.

95. It is observed above, that writs of error may be issued to the district court in civil cases at common law, but a writ of error does not lie from a circuit to a district court in an admiralty or maritime cause. 1 Gall. R. 5..

96. - [2.] Appeals from the district to the circuit court take place generally in civil causes of admiralty or maritime jurisdiction.

97. By the Act of March 3, 1803, 2, it is enacted, that from all final judgments or decrees in any of the district courts of the United States, an appeal where the matter in dispute, exclusive of costs, shall exceed the sum or value of fifty dollars, shall be allowed to the district court next to be holden in the district where such final judgment or judgments, decree or decrees shall be rendered: and the circuit courts are thereby authorized and required, to hear and determine such appeals.

98. - [3.] Although no act of congress authorizes the circuit court to, issue a certiorari to the district court for the removal of a cause, yet if the cause be so removed, and instead of taking advantage of the irregularity in proper time and in a proper manner, the defendant makes the defence and pleads to issue, he thereby waives the objection, and the suit will be considered as an original one in the circuit court, made so by consent of parties. 2 Wheat. R. 221.

99.-[4.] The circuit court may issue a writ of procedendo to the district court.

**Equity Jurisdiction of the Circuit Courts.**

__Exh. #27.2__

100. Circuit courts are vested with equity jurisdiction in certain cases. The Act of September, 1789, 11, gives original cognizance, concurrent with the courts of the several states, of all suits of a civil nature at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, and the United States are plaintiffs or petitioners, or an alien is a party, or. the suit is between a citizen of the state where the